Lori E. Andrus (SBN 205816)
Micha Star Liberty (SBN 215687)
Jennie Lee Anderson (SBN 203586)
ANDRUS LIBERTY & ANDERSON LLP
1438 Market Street
San Francisco, CA 94102
Telephone: (415) 896-1000
Facsimile: (415) 896-2249
lori@libertylaw.com
micha@libertylaw.com
jennie@libertylaw.com

*Attorneys for Plaintiff and the Proposed Class*

(Additional counsel appear on signature page)

FILED
08 JAN 24 PM 12:51

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CV 08 0536

| JAY J. RALSTON, On Behalf Of Himself And All Others Similarly Situated, Plaintiff, v. MORTGAGE INVESTORS GROUP, INC., MORTGAGE INVESTORS GROUP, a general partnership, AND DOES 1-10, Defendants. | Civil Case No.: **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |
|---|---|

Plaintiff Jay J. Ralston ("Plaintiff") brings this action against Mortgage Investors Group, Inc., Mortgage Investors Group, a general partnership, and DOES 1-10 (collectively "Defendants"), for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et seq.*, California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.*, and other statutory and common law, individually and on behalf of all others similarly situated ("Class Members") and alleges on information and belief as follows:

## I. INTRODUCTION

1. As home mortgage lenders, Defendants are required to clearly and

conspicuously disclose to consumers material information regarding any Adjustable Rate Mortgage ("ARM") sold pursuant to the Truth In Lending Act ("TILA"). TILA mandates disclosure of essential facts any consumer would need to assess the affordability and desirability of any given loan, including but not limited to the actual interest rate to be paid on the loan and whether the loan will result in negative amortization.

2. Despite their legal obligations, throughout the relevant time period, Defendants failed to clearly and conspicuously disclose and/or actively concealed material information regarding the ARM loans at issue here to lure Plaintiff and the Class Members into purchasing loans that would result in negative amortization, loss of equity and, in some cases, foreclosure on borrowers' homes.

3. Rather than notify borrowers of the true facts, Defendants provided Plaintiff and Class Members with intentionally confusing and misleading information and consistently failed to disclose in a clear and conspicuous manner material information about the loans, including but not limited to (a) the actual interest rate on the loans, (b) that loan payments based on the quoted "teaser" rate result in negative amortization, such that the principal balance increases with each monthly payment, (c) that when borrowers adhere to the payment schedule explicitly provided by Defendants, their payments are too small to cover all of the interest due on the principal balance, resulting in negative amortization, and (d) that the initial "teaser" rate was discounted and did not reflect the actual interest that Plaintiff and Class Members would have to pay, or that the "teaser" rate would only apply for a very limited time, in many cases no more than thirty (30) days. Such loans are frequently referred to as "Option ARM" loans. However, Defendants failed to clearly disclose to Plaintiff and Class Members, and fraudulently omitted, that there were payment options, instead providing Plaintiff and Class Members with a deceptive payment schedule that indicated borrowers would enjoy low payments without negative amortization.

4. As a result of their unlawful conduct, Defendants have profited mightily at the expense of Plaintiff and Class Members who purchased ARM loans that resulted in negative amortization, loss of equity, and, in some cases, foreclosure on their homes.

## II. THE PARTIES

5. Plaintiff is, and at all times relevant was, an individual residing in Salinas, California. On or about July 20, 2005, Plaintiff refinanced his existing home loan and entered into an ARM loan agreement with Defendants. The ARM loan was secured by Plaintiff's primary residence. Attached hereto as Exhibit 1 is a true and correct copy of the ARM Note and the TILA Disclosure Statement Defendants provided to Plaintiff.

6. Defendant Mortgage Investors Group, Inc., is a nationwide mortgage services company based in Nashville, Tennessee. Mortgage Investors Group, Inc. transacts and has transacted significant business in California and in Monterey County, California by distributing and selling ARM loans to Plaintiff and Class Members.

7. Defendant Mortgage Investors Group, a general partnership, is a mortgage services company which, at all times material hereto, had offices in both Irvine and Roseville, California. Mortgage Investors Group, a general partnership, transacts and has transacted significant business in California and in Monterey County, California by distributing and selling ARM loans to Plaintiff and Class Members.

8. DOES 1 through 10, inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are assignees to the loans which are the subject of this action. Plaintiff will seek leave of Court to replace the fictitious names of these entities with their true names when they are discovered by herein.

9. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, and each of them, are unknown to at this time, and Plaintiff therefore sues said Defendants by such fictitious names. Plaintiff alleges, on information and belief, that each Doe defendant is responsible for the actions herein alleged.

10. At all times mentioned herein, Defendants, and each of them, were engaged in the business of distributing and selling the ARM loans that are the subject of this Complaint, throughout California and the United States.

11. At all times material hereto, each of the Defendants (both named and DOE

defendants) sued herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of the other remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of the remaining Defendants.

12. There exists, and at all times relevant to this complaint existed, a unity of interests between certain the Defendants such that any individuality and separateness between these certain Defendants has ceased, and those certain Defendants are the alter ego of the other certain Defendants and exerted control over each other. Adherence to the fiction of the separate existence of these certain Defendants as an entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and/or promote injustice.

13. At all times herein mentioned, each Defendant was the co-conspirator of the remaining Defendants and was acting within the course and scope of said conspiracy and with the permission and consent of the other Defendants.

14. At all times mentioned herein, each Defendant was acting in concert or participation with the other Defendants, or was a joint participant and collaborator in the acts complained of herein.

## III. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28 U.S.C. § 1331.

16. This Court has personal jurisdiction over the parties in this action by the fact that Defendants have conducted significant business in California and/or have purposely targeted California residents in the distribution and/or sale of the ARM loans at issue here.

17. Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district, because a substantial part of the property that is the subject of this action is situated in this district, and further, because there is personal jurisdiction in this district over the named Defendants because they have regularly conducted business here.

## IV. FACTUAL ALLEGATIONS

18. Defendants are in the business of selling a variety of home loans to consumers, including the residential ARM mortgages that are the subject of this Complaint. As home mortgage lenders, Defendants are required by law to clearly and conspicuously disclose certain information to consumers, in writing, regarding the terms of the loans to protect the integrity of the home lending industry and shield consumers from predatory lending practices.

19. Throughout the relevant time period, Defendants have not met their legal obligations due to their failure to clearly and conspicuously disclose pertinent information regarding the ARM loans sold to Plaintiff and Class Members and by misleading Plaintiff and Class Members regarding the terms of the loans.

### The ARM Loans Sold To Plaintiff And Class Members

20. The ARM loans at issue here are sold with the promise of a low, fixed *loan payment*, based on a low "teaser" interest rate. However, the loan payments result in negative amortization because, once signed on to Defendants' loan, the "teaser" interest rate is immediately and significantly increased (while the payments, based on the "teaser" rate and provided in the loan payment schedule, remain the same for three (3) to five (5) years). If the homeowner adheres to the payment schedule provided by Defendants, the loan will *unquestionably* result in negative amortization and loss of equity. Defendants failed to disclose, and through omission, failed to inform the borrower of that fact, however. As a result, Plaintiff and others similarly situated did not receive the benefit of the low rate promised to them. Further, once lured into these loans, consumers are not able to easily extricate themselves because Defendants include an onerous prepayment penalty.

21. Defendants represented to Plaintiff and Class Members, and Plaintiff and Class Members reasonably believed, that if they made payments based on the promised low interest rate – which were the payments reflected in the written payment schedule provided by Defendants – the payments would be applied to both principal *and* interest and that the loans would not result in negative amortization.

22. Plaintiff and Class Members reasonably believed, based on the

representations contained in the documents Defendants provided to Plaintiff and the Class Members, that after the three (3) to five (5) years of fixed payments, they would be able to refinance their loan before their scheduled payments increased. However, the payment schedule provided by Defendants failed to clearly and conspicuously disclose, and by omission, failed to inform, consumers that due to the negative amortization that was purposefully built into these loans, Plaintiff and the Class Members would be unable to refinance their homes as there would be little or no equity left to refinance.

23. During the loan application process, in each case, Defendants intended Plaintiff and Class Members to believe that by entering into these loan contracts they would have low mortgage payments. Defendants initiated this scheme in order to maximize the number of the loans sold to consumers and to maximize their profits.

24. In stark contrast to reality, Defendants, through the standardized loan documents supplied to Plaintiff and Class Members, stated that negative amortization was only a mere *possibility*. Defendants failed to disclose and omitted the objectively material fact that negative amortization was *absolutely certain to occur* based on the payment schedule in the TILA Disclosure Statement. This information was critical for consumers because disclosure would have revealed that the loan's principal balance would increase if the payment schedule was followed, thereby rendering it impossible to refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest and payment rates reset.

25. The ARM loans Defendants sold and continue to sell to Plaintiff and Class Members share the following uniform characteristics:

a. They boast an initial low "teaser" rate, between one and three percent, used to entice Plaintiff and Class Members into entering into the loan;

b. They include a corresponding payment schedule that leads borrowers to believe the interest rate will not significantly increase in the first three years of the loan or longer;

c. They fail to disclose and omit that the fixed payments will not be enough to cover the interest charged;

d. They include a modest capped annual increase on the payment amount, usually 7.5 percent; and

e. They include a prepayment penalty preventing consumers from securing a new loan for a period of up to three (3) years.

**Defendants' Conduct Violates the Truth in Lending Act, 15 U.S.C. §1601, *et seq.***

26. The purpose of TILA is to assure a meaningful disclosure of credit terms so that the borrowers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit, and to protect consumers against inaccurate and unfair credit billing practices. TILA states in pertinent part:

> **§226.1 Authority, purpose, coverage, organization, enforcement and liability**. . .
>
> (b) Purpose. The purpose of this regulation is to *promote the informed use of consumer credit by requiring disclosures* about its terms and costs. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling . . .

12 C.F.R. § 226.1 (emphasis added).

27. TILA is thus designed to allow borrowers to make an informed use of credit. An informed use of credit means being able to make decisions, as well as being able to plan an individual's finances.

28. The Federal Reserve Board of Governors implements TILA through Regulation Z (12 C.F.R. §226). Compliance by lenders with Regulation Z has been mandatory since October 1, 1982. Additionally, Official Staff Commentary issued by the Federal Reserve Board is binding on all lenders.

29. Regulation Z requires a creditor to make all mandated disclosures *"clearly and conspicuously in writing, in a form that the consumer may keep."* 12 C.F.R. §226 (emphasis added). Further, the disclosures must be grouped together, segregated from everything else, and may not contain any information not directly related to the required disclosures.

30. Residential home loans require very specific disclosures:

> **§226.19. Certain residential mortgage and variable-rate transactions**. . . .

> (b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . . (vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.*

12 C.F.R. § 226.19 (emphasis added).

31. In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board made clear that when the loan is a variable rate loan with payment caps, such as those that are the subject of this lawsuit, the disclosures must include a definitive statement about negative amortization:

12 C.F.R. Part 226

[Regulation Z; Docket No. R-0863]

Monday, April 3, 1995

AGENCY: Board of Governors of the Federal Reserve System.

ACTION: Final rule; official staff interpretation.

> For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects of exercising it (such as *negative amortization occurs* and that the *principal balance will increase*)...

C.F.R. § 226.19 (emphasis added).

32. Variable rate loans are based on a "margin" and an "index." The index is often the Prime Rate or the LIBOR exchange rate. The margin is the amount the lender charges over that rate, which is essentially the lender's profit on the loan.

33. When loan payments are not based on these indexes and margins, a separate disclosure is required. The disclosure must inform the borrower that the payment they are making is not based on what the index and margin really should be in order to avoid negative amortization. The disclosure must also inform that the interest rate and payment may go up and clearly and conspicuously provide all circumstances under which the rate and payment may

increase. Further, the disclosure must inform the borrower of the true cost of the loan.

34. A lender must also disclose the frequency of interest rate and payment adjustments to borrowers for variable rate loans. If interest rate changes will be imposed more frequently or at different intervals than payment changes, a creditor must disclose the frequency and timing of both types of changes.

35. Despite their clear legal obligations under TILA, Regulation Z and the Official Staff Commentary, the ARM loans Defendants sold and continue to sell to Plaintiff and Class Members are unlawful in the following ways: 1) the loans fail to disclose that negative amortization will occur based on the payment schedule provided by Defendants, which, in turn, guarantees that the principal balance will increase; 2) the loans fail to clearly and conspicuously disclose the actual interest rates applied to the loans; 3) the loans fail to clearly and conspicuously disclose that the initial interest rate is discounted; 4) the loans fail to clearly and conspicuously disclose the composite interest rate; 5) the loans fail to clearly and conspicuously disclose the legal obligation between the parties; and 6) the loans fail to clearly and conspicuously disclose the effect of the payment cap on the true cost of the loan. Because the loan documents fail to provide this extremely important and mandatory material information in a manner that did not obscure its importance, Defendants failed to meet TILA's requirements.

**<u>Defendants Failed to Clearly and Conspicuously Disclose Negative Amortization.</u>**

36. Defendants failed to disclose and/or concealed information relating to negative amortization. Defendants' unlawful acts and omissions include, but are not limited to the following:

a. Defendants failed to disclose to Plaintiff and Class Members and omitted that the payment schedule published in their TILA Disclosure Statement results in negative amortization and loss of equity;

b. Defendants failed to disclose to Plaintiff and Class Members and omitted that the payments set forth in the schedule of payments are insufficient to cover the interest charged and without question will result in Plaintiff and Class Members losing equity in their homes; and

c. Defendants failed to disclose to Plaintiff and Class Members and omitted that when the principal balance increases to a certain level, they no longer have the option of making the fixed interest payment amount.

**Defendants Failed to Clearly and Conspicuously Disclose the Actual Interest Rate.**

37. Defendants failed to clearly and conspicuously disclose the actual interest rates of the loans in the following respects:

a. While Defendants state that the promised low interest rate is the rate until the "Interest Rate Change Date," what rates will apply to the loan and when is extremely difficult, if not impossible, to determine;

b. Defendants failed to disclose and omitted that the "Interest Rate Change Date" corresponds to the first monthly payment Plaintiff and Class Members make on their loans;

c. Defendants' ARM Note is deceptive in that the amount set forth as the initial monthly payment is equal to what the payment would be if the low interest rate promised was actually being applied to the principal balance on the loans, however, the real interest rate charged on the loan is much higher;

d. Defendants' TILA Disclosure Statements contain conflicting and confusing information—listing a payment schedule based on the low "teaser" rate, while listing a Annual Percentage Rate ("APR") that is much higher, without explanation;

e. The payment schedule deceptively indicates that the "teaser" rate will apply to for the first three years of the loan, or longer; and

f. Defendants failed to disclose in a clear and conspicuous manner that the fixed "teaser" rate will actually never apply to the loans, or, at most, will apply for a maximum of thirty (30) days.

**Defendants Failed to Clearly and Conspicuously Disclose That The Initial Interest Rate On The Loan Is Discounted.**

38. Defendants failed to clearly and conspicuously disclose and/or concealed that the initial interest rate was discounted. Defendants' conduct violated TILA in multiple

instances, including, but not limited to, the following:

a. Defendants failed to disclose to Plaintiff and Class Members and omitted that their payments were not based on the United States Treasury Security average as listed in the promissory note;

b. Defendants failed to inform Plaintiff and Class Members and omitted that their payments were not based on what the index and margin really should be in order to avoid negative amortization;

c. Defendants failed to disclose in a clear and conspicuous manner that the interest rates would certainly increase after thirty (30) days, instead merely stating that the interest rate *may* increase at some undetermined time in the future;

d. Defendants failed to disclose in a clear and conspicuous manner that the initial interest rate was discounted, creating the possibility of an increase even if the index remained constant or declined;

e. Defendants failed to clearly and conspicuously provide information to Plaintiff and Class Members regarding the circumstances under which their interest rates and/or payments would increase; and

f. The TILA Disclosure Statement falsely led Plaintiff and Class Members consumers to believe that their interest rate would remain stable for three years or longer since the loan payments are based on the low "teaser" interest rate promised.

**Defendants Failed to Clearly and Conspicuously Disclose the Composite Interest Rate.**

39. The official staff commentary to 226 C.F.R. § 17(C)(8) states:

> *Basis of disclosures in variable-rate transactions*. The disclosures for a variable-rate transaction must be given for the full term of the transaction and must be based on the terms in effect at the time of consummation. Creditors should base the disclosures only on the initial rate and should not assume that this rate will increase. For example, in a loan with an initial rate of 10 percent and a 5 percentage points rate cap, creditors should base the disclosures on the initial rate and should not assume that this rate will increase 5 percentage points. *However, in a variable-rate transaction with* a seller buydown that is reflected in the credit contract, a consumer buydown, or *a discounted or premium rate, disclosures should not be based solely on the initial terms. In those transactions, the disclosed annual percentage rate should be a composite rate based*

*on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term.* (See the commentary to section 226.17(c) for a discussion of buydown, discounted, and premium transactions and the commentary to section 226.19(a)(2) for a discussion of the redisclosure in certain residential mortgage transactions with a variable-rate feature.)

40. The reason for this requirement is clear. Consumers cannot make informed decisions when they cannot compare the cost of credit to other proposals. It is therefore legally incumbent upon Defendants to disclose the composite interest rate in effect so that the borrowers can understand exactly what they are paying for the loan.

41. A lender violates TILA, Regulation Z and the Federal Reserve Board's Official Staff Commentary by failing to list the composite rate in variable rate loans that have a discounted initial rate. At all times relevant during the liability period, Defendants listed an interest rate in the Notes that would only be provided for the first thirty (30) days of a thirty (30) year loan, and would, with one hundred percent certainty, be increased after that first month. Because Defendants failed to clearly and conspicuously disclose the composite annual percentage rate on these loans, and instead listed different interest rates in different places in the documents provided to consumers, Defendants violated TILA and Regulation Z, and failed to provide disclosures that did not obscure relevant information.

**Defendants Failed to Clearly and Conspicuously Disclose The Legal Obligation Between The Parties.**

42. 12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the terms of the legal obligation between the parties."

43. Official Staff Commentary on 12 C.F.R. § 226.17(c)(1) requires that: "[t]he disclosures shall reflect the credit terms to which the parties are legally bound as of the outset of the transaction. In the case of disclosures required under § 226.20(c), the disclosures shall reflect the credit terms to which the parties are legally bound when the disclosures are provided."

44. The Official Staff Commentary also states, at 12 C.F.R. § 226.17(c)(1)(2), that "[t]he legal obligation normally is presumed to be contained in the note or contract that

evidences the agreement."

45. Further, Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures."

46. At all times relevant, Defendants' ARM loans violated 12 C.F.R. § 226.17(c) in that the Notes and TILA Disclosure Statements did not disclose, and by omission, failed to disclose, what Plaintiff and Class Members were legally obligated to pay. Defendants accomplished this deception by only listing a partial payment in the TILA Disclosure Statements, rather than a payment amount that was sufficient to pay what the borrowers were being charged for their loans, and were legally obligated to pay.

47. As a direct and proximate result of Defendants' omissions and failures to clearly and conspicuously disclose Plaintiff's and Class Members' legal obligations under the loans, Defendants took the partial payments and secretly added the deficit, each month, to principal, thereby causing negative amortization to occur.

**Defendants Failed to Clearly and Conspicuously Disclose the Effect of the Payment Cap on the True Cost of the Loan.**

48. The ARM loans at issue each contain a variable rate feature with an initial teaser rate with payment caps. The payment cap limits how much the payment may be increased annually. The loans issued by Defendants had a 7.5% payment cap, which means that a borrower would only see their payment rise each year by a maximum of 7.5% (i.e., a $1,000 monthly payment in year one, could increase to a $1,075 monthly payment in year two).

49. The Official Staff Commentary to 12 C.F.R. § 226.17(c)(1)(10)(iii) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures." Thus, at all times relevant, Defendants had a duty to Plaintiff and the Class Members to disclose the effect the payment caps would have on the loans in the TILA Disclosure Statements.

50. At all times relevant, Defendants failed to disclose, and by omission, failed to inform Plaintiff and Class Members that the payment cap would cause hundreds, if not thousands of dollars, each month, to be secretly added to their principal balances.

51. As a result, Defendants failed to disclose, and by omission, failed to inform Plaintiff and the Class members of the effect of the payment cap in violation of 12 C.F.R. § 226.17.

52. Taken separately or in totality, the unclear and contradictory information Defendants provided to Plaintiff and Class Members violated TILA in that it failed to provide the clear and conspicuous disclosures as required under the Act.

## V. CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action on behalf of himself, and on behalf of all others similarly situated (the "Class" or "Classes") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b). The Classes Plaintiff seeks to represent are defined as follows:

> **The California Class:** All individuals who, within the four year period preceding the filing of Plaintiff's Complaint through the date notice is mailed to the Class, received an ARM loan through Defendants on their primary residence located in the State of California.
>
> **The National Class:** All individuals in the United States of America who, within the four year period preceding the filing of Plaintiff's complaint through the date notice is mailed to the Class, received an ARM loan through Defendants on their primary residence located in the United States of America.
>
> **The National Three Year Sub-Class:** All individuals in the United States of America who, within the three year period preceding the filing of Plaintiff's Complaint through the date notice is mailed to the Class, received an ARM loan through Defendants on their primary residence located in the United States of America.

54. Excluded from the Classes are: (1) Defendants, any entity or division in which any Defendant has a controlling interest, and its/their legal representatives, officers, directors, assigns and successors; (2) the judge to whom this case is assigned and any member of the judge's immediate family; and (4) claims for personal injury, wrongful death and emotional distress and claims of consequential property damage and loss.

55. Plaintiff reserves the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

56. **Numerosity:** The Classes are so numerous that the individual joinder of all members is impracticable under the circumstances of this case. While the exact number of Class Members is unknown at this time, Plaintiff is informed and believes that the Classes consist of approximately tens of thousands of members.

57. **Commonality:** Common questions of law or fact are shared by Class Members. This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues. Such common questions include, but are not limited to, the following:

a. Whether Defendants' acts and practices violate TILA;

b. Whether Defendants engaged in unfair business practices aimed at deceiving Plaintiff and Class Members before and during the loan application process;

c. Whether Defendants failed to disclose that the interest rate actually charged on these loans was higher than the rate represented;

d. Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

e. Whether Defendants' failure to apply Plaintiff's and Class Members' payments to principal as promised in the standardized form Notes constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

f. Whether Defendants' conduct in immediately raising the interest rate on consumers' loans so that no payments were applied to the principal balance constitutes breach of the covenant of good faith and fair dealing;

g. Whether Defendants' marketing scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time) but that interest rates were not, in fact, "fixed;"

h. Whether Plaintiff and Class Members are entitled to damages, including punitive damages; and

i. Whether Plaintiff and Class Members are entitled to rescission.

58. **Typicality:** Plaintiff's claims are typical of the claims of Class Members. Plaintiff and the other Class Members were subjected to the same kind of unlawful conduct and the claims of Plaintiff and the other Class Members are based on the same legal theories.

59. **Adequacy:** Plaintiff is an adequate representative of the Class and Sub-Classes because his interests do not conflict with the interests of the other members of the Class and Sub-Classes Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to prosecute this action vigorously. The interests of members of the Class and Sub-Classes will be fairly and adequately protected by Plaintiff and his counsel.

60. **Ascertainability:** The proposed Class and Sub-Classes are ascertainable in that the members can be identified and located using information contained in Defendants' mortgage lending records.

61. **Maintainability:** This case is brought and is maintainable as a class action under Rule 23(b)(1), 23(b)(2), and 23(b)(3):

a. Risk of Inconsistent Judgments: The unlawful acts and practices of Defendants constitute a course of conduct common to Plaintiff and Class Members. Prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of individual Class Members to protect their interests;

b. Injunctive and/or Declaratory Relief to the Class is Appropriate: Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the Class as a whole appropriate; and

c. Common Questions of Law or Fact Predominate: Questions of law or fact common to Class Members, including those identified above, predominate over questions

affecting only individual Class Members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require. Further, an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudicating each such individual lawsuit would be substantial.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.*)**

**(On Behalf of All Classes)**

62. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

63. Defendants failed to clearly and conspicuously disclose in writing the interest rate Defendants actually applied to Plaintiff's and Class Members' loans, as mandated by Regulation Z and the Official Staff Commentary issued by the Federal Reserve Board.

64. Defendants violated TILA by providing conflicting interest rate information in their Notes and the TILA Disclosure Statement and the information was not segregated as required.

65. Defendants failed to clearly and conspicuously disclose that the initial interest rate was discounted.

66. Defendants failed to disclose in a clear and conspicuous manner that the "teaser" rate promised only applies to the loan for a single month.

67. Defendants provided Plaintiff and Class Members with conflicting information regarding the interest rates to be charged, setting forth one interest rate on the TILA Disclosure Statement (which was different from the rate upon which the payment schedule was based) and another on the ARM Note.

68. Defendants failed to clearly and conspicuously disclose the composite

annual percentage rate on the loans.

69. Defendants failed to clearly and conspicuously disclose that the ARM loans were negative amortization loans and that negative amortization would occur based on the payment schedule provided by Defendants.

70. Defendants failed to clearly and conspicuously disclose that the payment schedule would result in unpaid interest is being added to principal.

71. Defendants failed to clearly and conspicuously disclose that the payment schedules are not based on standard indices.

72. Defendants failed to clearly and conspicuously disclose that their payments are not based on what the index should be in order to avoid negative amortization.

73. Defendants failed to clearly and conspicuously disclose all circumstances under which the rates and payments may increase or change.

74. Defendants failed to clearly and conspicuously disclose that a substantial interest rate increase after thirty (30) days was a virtual certainty.

75. As a direct and proximate result of Defendants' conduct in violation of TILA, Plaintiff and Class Members have suffered injury in an amount to be determined at time of trial. If Defendants had not violated TILA and had instead properly disclosed the material terms of Defendants' ARM loan product, as alleged herein, Plaintiff and Class Members would not have entered into the loans.

76. WHEREFORE, Plaintiff and Class Members are entitled to an order declaring that Defendants violated TILA, 15 U.S.C. §1601, *et seq.*, that Plaintiff and Class Members have the right to rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, damages pursuant to 15 U.S.C. § 1640, attorneys' fees, litigation costs and expenses and costs of suit, and for an order rescinding Plaintiff's individual mortgage and those of any Class Member desirous of such relief, and for an order awarding other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* "Unlawful" Business Acts or Practices Predicated on Violations of TILA**

**(On Behalf of the California Sub-Class)**

77. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

78. Plaintiff brings this cause of action on behalf of himself, the California Sub-Class, and in his capacity as a private attorney general against all Defendants for their unlawful business acts and/or practices pursuant to California Business and Professions Code Sections 17200 *et seq.*, which prohibits all unlawful business acts and/or practices.

79. Plaintiff asserts these claims as he is a representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by Business and Professions Code § 17200 *et seq.*

80. The unlawful acts and practices of Defendants alleged herein constitute unlawful business acts and/or practices within the meaning of Business and Professions Code Sections 17200 *et seq.*

81. Defendants' acts and practices are unlawful because they violate TILA, 15 U.S.C. §1601, *et seq.*, Regulation Z and the Official Staff Commentary issued by the Federal Reserve Board.

82. Defendants' unlawful conduct as alleged herein gave Defendants an unfair competitive advantage over their competitors.

83. As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continue to hold the monies expended by Plaintiff and others similarly situated who purchased the ARM loans described herein.

84. Plaintiff and Class Members would not have purchased these loans but for Defendants' unlawful conduct, which was committed with willful and wanton disregard for their legal obligations to disclose required information to Plaintiff and Class Members. At all relevant

times, Defendants possessed full and exclusive knowledge and information concerning the above facts about the ARM loans.

85. In addition to the relief requested below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

86. The unlawful acts and practices, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendants as described herein. Plaintiff and other members of the general public have no other remedy of law that will prevent Defendants' misconduct from occurring and/or reoccurring in the future.

87. As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiff and Class Members suffered an injury in fact and lost money.

88. WHEREFORE, Plaintiff and members of the California Sub-Class are entitled to equitable relief, including restitution, disgorgement of all profits accruing to Defendants because of their unlawful and deceptive acts and practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful activity.

## THIRD CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.*, "Unfair" or "Fraudulent" Business Acts or Practices**

**(On Behalf of the California Sub-Class)**

89. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

90. Plaintiff brings this cause of action on behalf of himself, on behalf of the California Sub-Class, and in his capacity as a private attorney general against all Defendants for their unfair, fraudulent and/or deceptive business acts and/or practices pursuant to Business and Professions Code § 17200 *et seq.*

91. Plaintiff asserts these claims as he is a representative of an aggrieved group and as private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable remedies provided by Business and Professions Code § 17200 *et seq.*

92. Defendants violated the Unfair Business Practices Act, Business and Professions Code § 17200, *et seq.*, when they misrepresented material facts to Plaintiff and Class Members. Defendants entered into contracts with Plaintiff and the Class and, therefore, had a duty to not misrepresent material facts and to refrain from unfair and deceptive business practices.

93. Defendants violated the Unfair Business Practices Act, Business and Professions Code § 17200, *et seq.*, when they engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their ARM loan.

94. Defendants violated the Unfair Business Practices Act, Business and Professions Code § 17200, *et seq.*, when they sold Plaintiff and Class Members a deceptively devised financial product.

95. Defendants violated the Unfair Business Practices Act, Business and Professions Code § 17200, *et seq.*, when they sold to Plaintiff and Class Members ARM loans as products with a very low interest rate and included a payment schedule indicating that the low interest rate would apply for a period of three years or more without disclosing that negative amortization would occur. Defendants disguised from Plaintiff and Class Members the fact that the ARM loan was designed to, and did, cause negative amortization to occur.

96. Defendants violated the Unfair Business Practices Act, Business and Professions Code § 17200, *et seq.*, when they lured Plaintiff and Class Members into the ARM loan with promises of low fixed interest and then, once Plaintiff and Class Members entered into these loans switched the interest rate charged on the loans to a much higher rate than the one they advertised and promised to Plaintiff and Class Members.

97. Defendants violated the Unfair Business Practices Act, Business and Professions Code § 17200, *et seq.*, when they failed to disclose and concealed from Plaintiff and Class Members that their interest rates were discounted and would increase substantially after thirty (30) days.

98. Defendants violated the Unfair Business Practices Act, Business and Professions Code § 17200, *et seq.*, when they failed to disclose or concealed that their interest rates would increase substantially years before they could extricate themselves from the loan,

which was subject to an extremely burdensome prepayment penalty.

99. Defendants violated the Unfair Business Practices Act, Business and Professions Code § 17200, *et seq.*, when they perpetrated a "bait and switch" scheme on Plaintiff and Class Members.

100. Defendants' conduct was likely to deceive members of the consuming public and, at all times, Defendants' failure to disclose and omissions of material facts was and continues to be unfair, fraudulent, untrue and/or deceptive.

101. Defendants' misconduct gave Defendants an unfair advantage over their competitors.

102. As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continue to hold the monies expended by Plaintiff and others similarly situated.

103. In addition to the relief requested in below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

104. The harm to Plaintiff, members of the general public and others similarly situated outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants' conduct herein constitutes an unfair, unlawful or fraudulent business act or practice within the meaning of Business & Professions Code § 17200 *et seq*.

105. The unfair, unlawful or fraudulent business practices of Defendants present a continuing threat to members of the public to be misled and/or deceived by Defendants' ARM loans as described herein. Plaintiff and other members of the general public have no other remedy of law that will prevent Defendants' misconduct from occurring and/or reoccurring in the future.

106. As a direct and proximate result of Defendants' unlawful, unfair or fraudulent conduct alleged herein, Plaintiff and Class Members have suffered injury in fact and lost money.

WHEREFORE, Plaintiff and members of the California Sub-Class are entitled to equitable relief, including restitution, disgorgement of all profits accruing to Defendants because

of their unfair, fraudulent, and deceptive acts and/or practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

**FOURTH CAUSE OF ACTION**
**Fraudulent Omission**
(On Behalf of the California Sub-Class)

107. Plaintiff incorporates by reference the allegations contained in preceding paragraphs of this Complaint.

108. As alleged herein, pursuant to TILA, 15 U.S.C. §1601, *et seq*., Regulation Z (12 C.F.R. §226 ) and the Federal Reserve Board's Official Staff Commentary, Defendants had a duty to disclose to Plaintiff, and each Class Member, (i) the actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the "principal balance *will* increase"; and (iii) that the initial interest rate on the note was discounted.

109. Defendants were and continue to be under a duty to Plaintiff and Class Members to disclose these facts because:

a. Defendants are in a superior position to know the truth about the terms of the ARM loans sold to Plaintiff and Class Members;

b. Defendants made partial disclosures regarding the loans while not revealing the true interest rates to be charged, that the interest rate was discounted, and that negative amortization would occur; and

c. Defendants actively concealed from Plaintiff and Class Members the negative amortization, the true interest rate to be charged and that the interest rate would in fact dramatically increase after thirty (30) days.

110. The facts concealed and/or not disclosed by Defendants to Plaintiff and Class Members are material facts that a reasonable person would have considered important in deciding whether or not to purchase or agree to the terms set forth in the ARM loans.

111. Plaintiff and Class Members justifiably acted or relied upon, to their detriment, the misrepresentations and/or concealed or non-disclosed facts, as evidenced by their purchase of the loans. Had Defendants disclosed the true character of loans, including, but not

limited to true interest rate to be charged, that the interest rate would increase dramatically after thirty (30) days, and that negative amortization would occur, Plaintiff and Class Members would not have purchased or agreed to the terms of the ARM loans in question here.

112. The aforementioned omitted material information was not known to Plaintiff and Class Members. At all times relevant, Defendants failed to disclose and/or actively concealed this material information by making such statements and partial, misleading representations to Plaintiff and all others similarly situated.

113. From the inception of Option ARM loan scheme, until the present, Defendants have engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not reasonably discoverable by Plaintiff or Class Members, regarding the true facts concerning the actual interest rate charged on the loans, the negative amortization that was certain to occur, and that the initial interest rate, in fact, was discounted, all of which Defendants were duty-bound to clearly and conspicuously disclose to Plaintiff and the Class members in the TILA Disclosure Statements. As a direct and proximate result of Defendants' failures to disclose and omission of material facts, Plaintiff and Class Members have suffered actual damages, which include, but are not limited to the loss of equity that Plaintiff and Class Members had in their homes prior to entering these loans.

115. The wrongful conduct of Defendants was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well being of Plaintiff and Class Members. Accordingly, Plaintiff and Class Members seek punitive damages against Defendants in an amount to deter similar conduct in the future.

116. WHEREFORE, Plaintiff and members of the California Sub-Class are entitled to all legal and equitable remedies provided by law, including but not limited to actual damages, exemplary damages, attorneys' fees, prejudgment interest and costs.

## FIFTH CAUSE OF ACTION

### Breach of Contract

### (On Behalf Of The California Sub-Class)

117. Plaintiff incorporates by reference all preceding paragraphs as though fully

set forth herein.

118. Plaintiff and Class Members entered into written contracts, *i.e.,* a written home loan or Note, with Defendants. The Note was drafted by Defendants and could not be modified by Plaintiff or Class Members. The Note describes terms and respective obligations applicable to the parties herein.

119. Due to Defendants' superior bargaining position, the Notes were offered on a take it or leave it basis and were contracts of adhesion.

120. Defendants' loans include a promise of a low, fixed interest rate, when in fact Plaintiff and Class Members were charged a different, much greater interest rate than promised.

121. The payment schedule Defendants provided represents that Plaintiff's and Class Members' monthly payment obligations are the exact payments necessary to pay off all principal and interest during the terms of the loans *if the interest rate actually charged by Defendants was the low interest rate promised.*

122. As such, Defendants led Plaintiff and Class Members to believe that their monthly payment obligations would be sufficient to pay both the principal *and* interest owed on the loans. Defendants breached their implicit agreement and never applied any of Plaintiff's and Class Members' payments to principal.

123. Defendants' loans indicate that negative amortization would occur only if Plaintiff and Class Members deviated from the payment schedule set forth in the TILA Disclosure Statement. However, Defendants' loans were designed making negative amortization certain to occur even though Plaintiff and Class Members paid the designated monthly payments.

124. Defendants' loans indicate that Plaintiff's and Class Members' monthly payments "will be applied to interest before Principal." See Exh. 1, section 3 However, Defendants did not apply, and never intended to apply, any of the monthly payments to principal, as the monthly payments are designed to be insufficient to cover the interest and principal.

125. In contrast, Plaintiff and Class Members did everything the contract required of them. Plaintiff and Class Members made monthly payments in the amount required

by the terms of the Notes and reflected in the payment schedule prepared by Defendants.

126. At all times relevant, there existed a gross inequality of bargaining power between the parties to the ARM loan contracts. At all times relevant, Defendants unreasonably and unconscionably exploited their superior bargaining position and foisted upon Plaintiff and Class Members extremely harsh, one-sided provisions in the contract, which Plaintiff and Class Members were not made aware of and did not comprehend (e.g., Defendants' deception and failures to clearly and conspicuously disclose as alleged herein), and which attempt to severely limit Defendants' obligations under the contracts at the expense of Plaintiff and Class Members. As a result of these extremely harsh, one-sided provisions, including but not limited to the provisions which seek to limit the "teaser" interest rate to one month or less, these provisions are unconscionable and therefore unenforceable.

127. As a result of Defendants' breach, Plaintiff and Class Members have suffered harm. Plaintiff and Class Members have incurred additional charges to their principal loan balance. Plaintiff and Class Members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiff's and Class Members' principal loan balances. Furthermore, Defendants' breach has placed Plaintiff and Class Members in danger of losing their homes through foreclosure, as Defendants have caused Plaintiff's and Class Members' principal loan balances to increase and limited these consumers' ability to make their future house payments or obtain alternative home loan financing.

128. WHEREFORE, Plaintiff and members of the California Sub-Class are entitled to declaratory relief, compensatory damages proximately caused by Defendants' breach of contract, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

**Breach of Implied Covenant of Good Faith and Fair Dealing**

**(On Behalf Of The California Sub-Class)**

129. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

130. Defendants entered into written agreements with Plaintiff and Class Members based on representations Defendants made directly and indirectly to Plaintiff and Class Members about the terms of their loans.

131. Defendants represented to Plaintiff and Class Members that they would provide loans secured by Plaintiff's and Class Members' homes at a low interest rate and indicated through their payment schedule that the low interest rate would apply for a period of three or more years.

132. Defendants fraudulently omitted the fact that the loans would result in negative amortization.

133. Plaintiff and Class Members had a right to receive the benefit of the Notes, *i.e.*, monthly payments in the prescribed amounts that would not result in negative amortization.

134. Defendants unfairly interfered with Plaintiff's and Class Members' rights by the acts alleged herein, including but not limited to immediately raising the interest rates, applying no part of the payment to the principal, and providing Plaintiff and Class Members with a payment schedule that was insufficient to cover the interest that Defendants charged, which unfairly resulted in an increase in the amount of principal Plaintiff and Class Members owed on their homes.

135. Plaintiff and Class Members did not receive the fixed low interest rate home loan promised them by Defendants.

136. Plaintiff and Class Members, by contrast, did all of those things the contract required of them. Plaintiff and Class Members made monthly payments in the amount required by the terms of the Notes and reflected in the payment schedule prepared by Defendants.

137. Defendants' breaches as alleged herein were committed with willful and wanton disregard for whether or not Plaintiff or others similarly situated would receive the benefits of the home loan promised. Defendants' conduct, as alleged herein conduct was malicious, oppressive, and/or fraudulent.

138. As a result of Defendants' conduct, Plaintiff and Class Members have suffered harm. Plaintiff and Class Members have incurred additional charges to their principal

loan balance. Plaintiff and Class Members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiff's and Class Members' principal loan balance. Furthermore, Defendants' breach has caused and/or otherwise placed Plaintiff and Class Members in danger of losing their homes through foreclosure and, as a direct and proximate result of said misconduct, caused Plaintiff's and Class Members' principal loan balances to increase, limiting these consumers' ability to make their future house payments or obtain alternative home loan financing.

139. WHEREFORE, Plaintiff and members of the California Sub-Class are entitled to declaratory relief, all damages proximately caused by Defendants' breach of the implied covenant of good faith and fair dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

**SEVENTH CAUSE OF ACTION**

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq.*, "Unlawful" Business Acts or Practices Predicated on Violations of Cal. Financial Code § 22302**

**(On Behalf Of The California Sub-Class)**

140. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

141. Plaintiff brings this cause of action on behalf of himself, on behalf of the California Sub-Class, and in his capacity as a private attorney general against all Defendants for their unlawful business acts and/or practices pursuant to California Business and Professions Code § 17200 *et seq.*, which prohibits all unlawful business acts and/or practices.

142. Plaintiff asserts these claims as he is a representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code § 17200 *et seq.*

143. Defendants' acts and practices are unlawful because they violate the California Financial Code § 22302.

144. The loans in question are consumer loan contracts.

145. The loans prepared by Defendants and entered into between Plaintiff and Class Members and Defendants were, and are, unconscionable pursuant to Section 1670.5 of the California Civil Code.

146. The loan contracts were unconscionable and unlawful because the relative bargaining power between Plaintiff and Class Members and Defendants was unequal. Plaintiff and Class Members could not negotiate or change any of the particular terms related to the loan and drafted by Defendants. Moreover, Defendants did not disclose pertinent information regarding the terms of the loan to Plaintiff and Class Members. To secure the loan, Plaintiff and Class Members were given no choice but to make payments as described in the payment schedule and to accept and sign all the associating documents, which number over a hundred pages. Defendants drafted these loan documents for use on thousands of individuals. The documents evidencing the loan were delivered to Plaintiff and Class Members at the time of signature. The loan process offered by Defendants did not permit for any meaningful negotiation of terms or even review of the loan documents at the time of execution.

147. The loan contracts were unconscionable and unlawful because the period of time where Defendants offered Plaintiff and Class Members a low interest rate, often was for only one month, although Defendants packaged the documents in such a manner as to lead Plaintiff and Class Members to believe that they had a low interest rate and therefore low payments for three years or more.

148. The loan contracts were unconscionable and unlawful because Defendants inserted into the loan documents a prepayment penalty that has as it sole purpose to cause Plaintiff and Class Members to continue under the terms of this loans or lose thousands of dollars if Plaintiff and Class Members try to refinance the loans.

149. The loan contracts were unconscionable and unlawful because they were so "one-sided" that they could only lead Plaintiff and Class Members to one result, which was a significant loss of money.

150. As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continue to hold the monies expended by Plaintiff and

others similarly situated who purchased the ARM loans as described herein.

151. In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

152. The unlawful acts and practices present a continuing threat to members of the public to be misled and/or deceived by Defendants as described herein. Plaintiff and other members of the general public have no other remedy of law that will prevent Defendants' misconduct from occurring and/or reoccurring in the future.

153. As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiff and Class Members have suffered injury in fact and lost money.

154. WHEREFORE, Plaintiff and members of the California Sub-Class are entitled to equitable relief, including restitution disgorgement of all profits accruing to Defendants because of their unlawful, unfair and fraudulent, and deceptive practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unlawful activity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and all Class Members pray for judgment against each Defendant, jointly and severally, as follows:

A. An order certifying this case as a class action and appointing Plaintiff and their counsel to represent the Class;

B. Actual damages according to proof;

C. Compensatory damages as permitted by law;

D. Consequential damages as permitted by law;

E. Statutory damages as permitted by law;

F. Punitive damages as permitted by law;

G. Rescission;

H. All equitable relief permitted by law, including restitution;

I. Disgorgement of all profits Defendants obtained as a result of their unfair

competition;

J. Pre and post-judgment interest as permitted by law;

K. Declaratory Relief;

L. A mandatory injunction requiring Defendants to permanently include in every ARM loan and disclosure statement: (i) clear and conspicuous disclosure of the actual interest rate on the Note(s) and disclosure statement(s) as required under 12 C.F.R. § 226.17 by; (ii) clear and conspicuous disclosure in the Note(s) and the disclosure statement(s) that payments on the variable interest rate loan during the initial period at the teaser rate will result in negative amortization and that the principal balance will increase as required under 12 C.F.R. § 226.19; and (iii) clear and conspicuous disclosure that the initial interest rate provided is discounted and does not reflect the actual interest that Plaintiff and Class Members would be paying on the Note(s).

M. Reasonable attorneys' fees and costs; and

N. All such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and Class Members, demands a jury trial in this action for all of the claims so triable.

DATE: January 24, 2008

ANDRUS LIBERTY & ANDERSON LLP

By: ______________________
Lori E. Andrus

Lori E. Andrus (SBN 205816)
Micha Star Liberty (SBN 215687)
Jennie Lee Anderson (SBN 203586)
1438 Market Street
San Francisco, CA 94102
Telephone: (415) 896-1000
Facsimile: (415) 896-2249
lori@libertylaw.com
micha@libertylaw.com
jennie@libertylaw.com

Jeffrey K. Berns (SBN 131351)
LAW OFFICES OF JEFFREY K. BERNS
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Telephone: (818) 961-2000
Facsimile: (818) 867-4820
jberns@jeffbernslaw.com

Paul R. Kiesel, Esq. (SBN 119854)
Patrick DeBlase, Esq. (SBN 167138)
Michael C. Eyerly, Esq. (SBN 178693)
KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211
Telephone: (310) 854-4444
Facsimile: (310) 854-0812
kiesel@kbla.com
deblase@kbla.com
eyerly@kbla.com

*Attorneys for Plaintiff and the Class*