Lori E. Andrus (SBN 205816)
Micha Star Liberty (SBN 215687)
Jennie Lee Anderson (SBN 203586)
**ANDRUS LIBERTY & ANDERSON LLP**
1438 Market Street
San Francisco, CA 94102
Telephone:  (415) 896-1000
Facsimile:  (415) 896-2249
lori@libertylaw.com
micha@libertylaw.com
jennie@libertylaw.com

David M. Arbogast (SBN 167571)
Jeffrey K. Berns (SBN 131351)
**ARBOGAST & BERNS LLP**
19510 Ventura Boulevard, Suite 200
Tarzana, CA 91356
Telephone: (818) 961-2000
Facsimile:  (310) 861-1775
darbogast@law111.com
jberns@law111.com

*Attorneys for Plaintiff and the Proposed Class*

(Additional counsel appear on signature page)

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAY RALSTON, On Behalf Of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MORTGAGE INVESTORS GROUP, INC., MORTGAGE INVESTORS GROUP, A General Partnership, AND DOES 1-10,<br><br>Defendants. | Civil Case No.: CV 08-00536 JF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: August 15, 2008<br>Time: 9:00 a.m.<br>Courtroom: 3<br>Honorable Jeremy Fogel<br><br>Complaint filed: January 24, 2008 |

**PLTF'S OPP. TO DEFS' MOTION TO DISMISS PTF'S FIRST AMENDED COMPLAINT**

1

## **TABLE OF CONTENTS**

2

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS .................................................................................... 2

III.    LEGAL STANDARD ON A MOTION TO DISMISS ....................................... 3

IV.     ARGUMENT ......................................................................................................... 4

   A.   Plaintiff Has Adequately Alleged Jurisdiction, Venue And Parties For The TILA Cause
        Of Action.......................................................................................................... 4

   B.   Plaintiff's TILA Claim Is Not Time-Barred. ................................................... 5

        1.   Improper Remedy Is Not Grounds For Dismissal. ................................... 5

        2.   The Pleadings Do Not Demonstrate That Plaintiff's Claims Are Untimely. .............. 5

        3.   The Doctrine Of Equitable Tolling Applies To Plaintiff's Claims. ............... 6

        4.   The Continuing Violation Doctrine Renders Plaintiff's Claims Timely. ............ 7

        5.   Equitable Tolling Is A Factual Inquiry That Should Not Be Resolved On A Motion
             To Dismiss. .......................................................................................... 8

   C.   Plaintiff Has Properly Pled A Valid Cause of Action Under TILA................ 8

        1.   Overview of the Truth in Lending Act..................................................... 8

        2.   Defendants Failed To Clearly Disclose A Single Annual Percentage Rate In
             Violation Of TILA. ................................................................................ 9

        3.   Defendants Failed To Properly Disclose The True Payment Schedule
             In Violation Of TILA. .......................................................................... 12

        4.   Defendants Failed To Disclose The Borrowers' Legal Obligations
             In The Payment Schedule In Violation Of TILA. .................................... 12

        5.   Defendants Failed To Disclose That Negative Amortization Was Certain
             To Occur If Consumers Followed The Payment Schedules. ...................... 13

        6.   Defendants Failed To Disclose That The Initial Rate Was Discounted
             In Violation Of TILA. .......................................................................... 15

        7.   Defendants Failed Disclose The Effect Of The Payment Cap
             In Violation Of TILA. .......................................................................... 15

   D.   TILA Does Not Preempt Plaintiff's State Law Claims................................. 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-i-

E.    Plaintiff Has Properly Pled A Fraudulent Omission Claim. ........................................ 17

    1.    Defendants Had A Duty To Disclose Material Facts. ................................................. 18

    2.    Materiality ............................................................................................................ 19

    3.    Defendants' Knowledge of the Fraudulent Omission ................................................ 20

    4.    Actual Reliance .................................................................................................... 20

    5.    Justifiable Reliance - Presumed ............................................................................. 21

    6.    Plaintiff Has Satisfied The Applicable Pleading Standards For A Fraudulent

    Omission Claim. ................................................................................................... 22

F.    Plaintiff Has Properly Pled A UCL Cause of Action ...................................................... 22

G.    Plaintiff Has Properly Plead A Breach of Contract Claim .............................................. 23

H.    Plaintiff Has Properly Pled A Claim For Tortious Breach Of The Covenant of Good

Faith And Fair Dealing. ..................................................................................................... 25

V.    CONCLUSION ............................................................................................................. 25

**PLTF'S OPP. TO DEFS' MOTION TO DISMISS PTF'S**
**FIRST AMENDED COMPLAINT**

1

### TABLE OF AUTHORITIES

2

### CASES

*Affiliated Ute Citizens v. U. S.*, 406 U.S. 128 (1972)..................................................21

3

*Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226 (1995) .......................................21

4

*Angelucci v. Century Supper Club*, 41 Cal. 4th 160 (2007) ....................................19

5

*Anunziato v. eMachines, Inc*., 402 F. Supp.2d 1133 (C.D. Cal. 2005) .......................8

*Barbera v. WMC Mortg. Corp.*, No.  C 04-3738 SBA, 2006 WL 167632 (N.D.
6 Cal., Jan. 19, 2006) ...........................................................................................7

7

*Barnes v. Fleet Nat'l Bank*, 370 F. 3d 164 (1st Cir. 2004) ........................................12

*Bell Atlantic Corp. v. Twombly*, ---U.S.---, 127 S. Ct. 1955 (2007) ....................3, 5, 23

8

*Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999*)* ..................................................21

9

*Blankenheim v. E.F. Hutton & Co*., 217 Cal. App. 3d 1463 (1990) ...........................21

10

*Buller v. Sutter Health*, 160 Cal. App. 4th 981 (2008) .............................................22

*Camacho v. Auto. Club of S. Cal.,* 142 Cal. App. 4th 1394 (2006) ...........................22

11

*Cemail v. Viking Dodge*, 982 F. Supp. 1296, 1302 (N.D.Ill. 1997)).........................12

12

*Davis v. Scherer*, 468 U.S. 183 (1984) ......................................................................4

13

*Doe v. U.S. Dept. of Justice*, 753 F.2d 1092 (D.C. Cir. 1985)...................................5

*Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951 (1997) .............................20

14

*Erickson v. Pardus*, 127 S. Ct. 2197 (2007) ...........................................................3, 4

15

*Falk v. General Motors Corp*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................22

16

*Ferrell v. McDonald*, 358 B.R. 777 (B.A.P. 9th Cir. 2006) ......................................16

*First Nat'l. Bank of Council Bluffs v. Office of Comptroller of Currency*, 956 F.2d
17 1456 (8th Cir. 1992)........................................................................................14

18

*Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857 (1998) ...............24

*Freeman & Mills, Inc. v. Belcher Oil Co*., 11 Cal.4th 85 (1995)..............................25

19

*Garcia v. Super. Ct.*, 50 Cal. 3d 728 (1990) ............................................................20

20

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir.1997) ....................................4

21

*Guz v. Bechtel Nat'l. Inc*., 24 Cal. 4th 317, 349 (2000).............................................25

*Handy v. Anchor Mortg. Corp*., 464 F.3d 760 (7th Cir. 2006) ...................................9

22

*Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) .............................................7

23

*Heliotis v. Schuman*, 181 Cal. App. 3d 646 (1986) ..................................................18

24

*Hibernia Sav. & Loan Soc. v. Lauffer*, 41 Cal. App. 2d 725 (1940)..........................25

*In re Daou Sys., Inc. Sec. Litig.,* 411 F.3d 1006 (9th Cir. 2005) ...............................4

25

*In re First Alliance Mortg. Co.*, 280 B.R. 246 (C.D. Cal. 2002) ...............................17

26

*In re Miller*, 253 B.R. 455, 459 (Bankr. N.D.Cal. 2000) ..........................................25

27

*In re Ralls*, 230 B.R. 508 (Bankr.E.D.Pa. 1999).......................................................10

*In re Vylene Enterprises, Inc.*, 90 F.3d 1472 (9th Cir.1996)......................................25

28

*In re Wright*, 256 B.R. 626 (D. Mont., 2000) ........................................................... 10

*Int'l Billing Serv., Inc. v. Emigh*, 84 Cal. App. 4th 1175 (2000) ........................... 25

*Intrieri v. Super. Ct.*, 117 Cal. App. 4th 72 (2004) ................................................. 19

*Irby-Greene v. M.O.R., Inc.*, 79 F. Supp. 2d 630 (E.D. Va. 2000) .......................... 12

*Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003) ....................................................... 4

*Jackson v. Grant*, 890 F.2d 118 (9th Cir. 1989) ........................................................ 8

*King v. State of Cal.*, 784 F.2d 910 (9th Cir. 1986) ................................................ 6, 7

*Lazar v. Super. Ct.*, 12 Cal. 4th 631 (1996) ............................................................ 17

*Lee Myles Assocs. Corp. v. Paul Rubke Enters., Inc*., Slip Copy, 07cv1651-L
 (WMC), 2008 WL 687367 (S.D. Cal., Mar. 11, 2008) ............................................ 6

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997) ............................................ 18, 19

*Lingsch v. Savage*, 213 Cal. App. 2d 729 (1963) .................................................... 18

*Lovejoy v. AT & T Corp.*, 92 Cal. App. 4th 85 (2001) ........................................ 18, 19

*Magee v. Exxon Corp.,* 135 F.3d 599 (8th Cir. 1998) ............................................. 16

*Mars v. Spartanburg Chrysler Plymouth, Inc.,* 713 F.3d 65 (4th Cir., 1983) ............. 8

*Mass. Mutual Life Ins. Co. v. Super. Ct.,* 97 Cal. App. 4th 1282 (2002) ................. 20

*Massey v. Banning Unified School Dist.*, 256 F. Supp. 2d 1090 (C.D. Cal. 2003) ...... 5

*McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100 (1989) ................. 23

*Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) ........................................................ 20

*Monaco v. Bear Stearns Residential Mortg. Corp.*, No. CV 07-05607 SJO, 2008
 WL 867727 (C.D. Cal., Jan. 28, 2008) .................................................................... 17

*Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735 (1980) .............................. 22

*Occidental Land, Inc. v. Super. Ct.,* 18 Cal. 3d 355 (1976) ..................................... 21

*Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490 (2003) ................................... 19

*Petroleum Products Antitrust Litig.*, 782 F. Supp. 487 (C.D.Cal. 1991) .................... 8

*Postow v. OBA Fed. Sav. & Loan Assoc.*, 627 F.2d 1370 (D.C. Cir. 1980) ................ 7

*Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) ................................... 21

*Reyes v. Downey Sav. & Loan Assoc.*, 541 F. Supp. 1108 (C.D.Cal. 2008) .............. 25

*Santa Maria v. Pacific Bell*, 202 F.3d 1170 (9th Cir. 2000) ....................................... 6

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) .................................................................... 4

*Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699 (9th Cir. 1986) ........... 8

*Silvas v. E*Trade Mortg. Corp.,* 514 F.3d 1001 (9th Cir. 2008) ............................... 17

*Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167 (2003) ...................................................... 17

*Smith v Chapman*, 614 F.2d 968 (5th Cir. 1980) ...................................................... 12

*Smith v. Cash Store Mgmt.*, 195 F.3d 325 (7th Cir. 1999) ....................................... 12

*Smith v. State Farm Mut. Auto. Ins. Co.,* 93 Cal. App. 4th 700 (2001) .................... 23

*Stamm Theatres, Inc. v. Hartford Cas. Ins. Co*., 93 Cal. App. 4th 531 (2001) .......... 24

-iv-

*Stevens v. Super. Ct.*, 180 Cal. App. 3d 605 (1986)...................................................18

*Supermail Cargo, Inc. v. U. S.,* 68 F.3d 1204 (9th Cir. 1995) ....................................6

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ....................................................3

*Syverson v. IBM Corp.*, 472 F.3d 1072 (9th Cir. 2007) ...............................................3

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048 (9th Cir. 2001)...........4

*U.S. v. City of Redwood*, 640 F.2d 963 (9th Cir. 1981) ...............................................4

*Vasquez v. Super. Ct.,* 4 Cal. 3d 800 (1971) ..............................................................21

*Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282 (2004)...........................19

*Volk v. D.A. Davidson & Co.*, 816 F.2d 1406 (9th Cir. 1987) ......................................8

*Washington v. Baezinger*, 673 F. Supp. 1478 (N.D. Cal. 1987) .................................22

*Wiggins v. Avco Fin. Servs.*, 62 F. Supp. 2d 90 (D.D.C. 1999) ...................................9

*Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324 (1986) ...........21

*Wilkins v. Nat'l. Broad. Co., Inc.*, 71 Cal. App. 4th 1066 (1999)..............................18

## STATUTES

12 C.F.R § 226.18(e).............................................................................................10, 11

12 C.F.R. § 226.15 ........................................................................................................8

12 C.F.R. § 226.17 .................................................................................................12, 13

12 C.F.R. § 226.17(a)...........................................................................................passim

12 C.F.R. § 226.18 .........................................................................................12, 13, 14

12 C.F.R. § 226.23 .............................................................................................5, 8, 9, 12

12 C.F.R. § 226.28(a)(1) .............................................................................................17

12 C.F.R. pt 226, Supp. I, cmt 17(a)(1)-3 .................................................................11

12 C.F.R. pt 226, Supp. I, cmt 17(c)(1)-1 .................................................................13

12 C.F.R. pt 226, Supp. I, cmt 17(c)(1)-10-iii ..........................................................16

12 C.F.R. pt 226, Supp. I, cmt 17(c)(1)-8 ...................................................................9

12 C.F.R. pt 226, Supp. I, cmt 19(b)(2)(v)-1 ............................................................15

12 C.F.R. pt 226, Supp. I, cmt 19(b)(2)(vii)-2 ..........................................................14

12 C.F.R. pt. 226, Supp. I, cmt 28(a)-3......................................................................17

12 U.S.C. § 1461, *et seq.*............................................................................................17

15 U.S.C. § 1601 .....................................................................................................12, 13

15 U.S.C. § 1601(a) .....................................................................................................12

15 U.S.C. § 1632(a) .......................................................................................................9

15 U.S.C. § 1635 ......................................................................................................5, 8

15 U.S.C. § 1638(a)(4) ...................................................................................................9

15 U.S.C. § 1638(a)(8) .................................................................................................10

15 U.S.C. § 1640(a) .......................................................................................................5

15 U.S.C. §1641(a) ........................................................................................................6

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ..................................................... 2, 22

Cal. Bus. & Prof. Code §§ 17500-17577.5 .......................................................... 22

Cal. Civ. Code § 51.6(f) ........................................................................................ 19

Cal. Civ. Code, § 1642 .......................................................................................... 24

Cal. Civ. Code, § 1654 ..................................................................................... 24, 25

Cal. Ins. Code, § 330 ............................................................................................. 19

Cal. Pub.Util.Code, § 2889.5 ............................................................................... 19

## RULES

Fed. R. Civ. P. 9(b) ............................................................................................... 22

Fed. R. Civ. P. 12(b)(6) .................................................................................. 2, 3, 5

Fed. R. Civ. P. 8(a)(2) ............................................................................................. 3

## TREATISES

W.L. Stern, Bus. & Prof. C. § 17200 Practice, ¶ 3:15 ......................................... 22

Witkin, California Procedure, Pleading, § 464 (3rd ed.1985) .............................. 23

## I. **INTRODUCTION**

Plaintiff and potentially thousands of similarly-situated homeowners ("Class Members") are in imminent threat of losing their homes as a result of the deceptive and unlawful Option Adjustable Rate Mortgages ("ARM loans") issued by Mortgage Investors Group, Inc. and Mortgage Investors Group (collectively, "Defendants" or "MIG").

Despite the overwhelming harm they have inflicted on Plaintiff and Class Members, Defendants remarkably argue that their partial, indeed, misleading disclosures should somehow shield them from liability. *See* Motion Of Defendants To Dismiss Plaintiff's First Amended Complaint ("Defendants' Motion" or "Defs' Mem.") at 6. However, the issue before this Court is not whether Defendants made partial disclosures, but whether Defendants ***clearly and conspicuously made all of the disclosures*** required of them under the Truth In Lending Act ("TILA"). As the allegations demonstrate, Defendants consistently omitted and concealed material facts regarding the true cost of loans, rendering any partial "disclosures" unclear, inconspicuous, and, thus, noncompliant with TILA. For example, when Defendants made any disclosures, they did so insufficiently by either omitting material facts or by minimizing the negative aspects of the loan through the use of words like "may" and "if," when, in fact, the interest rates on the loans were destined to radically adjust upward within the first 30 days and certain to result in negative amortization.

Defendants further misapprehend TILA's disclosure requirements by arguing that Section C of Regulation Z[1], the federal regulation by which the Federal Reserve Board implements TILA, does not apply to misrepresentations set forth in Plaintiff's and Class Members' mortgage Notes because Section C does not specifically identify the Note as a place where certain disclosures must be found. Defs' Mem. at 7. In so arguing, Defendants urge an impermissibly narrow reading of TILA that would undermine the remedial goals of the statute and allow Defendants as home mortgage lenders to evade their statutorily mandated responsibilities—responsibilities that Defendants have, to date, blatantly disregarded in both spirit and letter, as the First Amended Complaint ("FAC") demonstrates. Indeed, TILA requires that certain material disclosures be

---

[1] 12 C.F.R. § 226, *et seq.*

-1-

1  made clearly and conspicuously, and nowhere, in any loan document, did Defendants comply

2  with that obligation.

3        Plaintiff's state law claims based on fraudulent omissions, California's Unfair

4  Competition Law, Bus. & Prof. Code § 17200 *et seq.* ("UCL"), breach of contract and tortious

5  breach of the implied covenant of good faith and fair dealing are also properly plead as discussed

6  below in Sections IV.D.-H.  Indeed, Defendants' concealment of the very material fact that the

7  loans were designed to foster negative amortization is not merely a violation of TILA, but also

8  constitutes a breach of Defendants' contracts with Plaintiff and Class Members, which indicated

9  that monthly payments would be applied to interest and principal.  FAC, ¶¶ 162-173.

10       Recognizing the untenable nature of their substantive arguments, Defendants resort to

11  irrelevant, hyper-technical arguments that do not support dismissal under Federal Rule of Civil

12  Procedure ("Rule") 12(b)(6).  For example, Defendants attempt to exploit Plaintiff's inadvertent

13  omission of incorporation by reference language at the outset of the First Cause of Action to

14  incorrectly contend that the claim must be dismissed.  Defs' Mem. at 3; *see also* Section IV. A.,

15  *supra.*

16       Defendants' statute of limitations argument is also without merit and undermined by the

17  pleadings themselves.  Defs' Mem. at 3-4.  Plaintiff has undisputedly identified relief to which he

18  is entitled (in addition to damages, Plaintiff seeks rescission, the statutory period for which is

19  three years), rendering Rule 12(b)(6) dismissal inappropriate.  *See* Section IV.B., *infra.*  And, in

20  any event, Plaintiff's claims are timely pursuant to the equitable tolling doctrine.  *Id.*  Indeed,

21  Plaintiff's allegations, at minimum, present issues of fact as to timeliness and application of

22  tolling doctrines that are inappropriate for resolution at this juncture.

23       For these reasons, as well as those set forth more fully below, Defendants' Motion should

24  be denied in its entirety.

25  **II.    STATEMENT OF FACTS**

26       Plaintiff and Class Members are consumers who applied for primary residential mortgages

27  through Defendants.  *See* FAC, ¶ 2.  Defendants sold the ARM loans at issue with the promise of

28  a low, fixed interest rate.  FAC, ¶¶ 19, 21.  Defendants failed to disclose that the interest rates

-2-

1   would, in fact, increase drastically almost immediately after signing, however, and Plaintiff and

2   Class Members relied on these promises and material nondisclosures.   FAC, ¶¶ 19, 21-23, 168.

3        Further, Defendants' loan documents indicated that Defendants would apply Plaintiff's

4   and Class Members' monthly payments to both "principal and interest."  FAC, ¶¶ 29, 68, 166.

5   Defendants breached that agreement and never applied Plaintiff's or Class Members' payments to

6   principal, however.  *Id; see also* FAC, ¶¶ 168-169.  Defendants also indicated to Plaintiff and

7   Class Members that if they made payments based on the promised low interest rate, no negative

8   amortization would occur.  FAC, ¶ 19, 24, 84, 125.  This was not true, however, because Plaintiff

9   and Class Members in fact experienced negative amortization, resulting in devastating loss of

10  equity in their homes.  FAC, ¶ 38, 41, 131.  A substantial number of the Class Members could not

11  escape from their loans because of harsh exit penalties.  FAC, ¶ 28.  Plaintiff brought this civil

12  action to remedy these unlawful and deceptive acts, seeking compensatory, consequential,

13  statutory and punitive damages on behalf of himself and Class Members.

14  **III.**    **LEGAL STANDARD ON A MOTION TO DISMISS**

15       To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a

16  complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2).  *Erickson*

17  *v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (*per curiam*).  Rule 8(a)(2) requires that the complaint

18  include "a short and plain statement of the claim showing that the pleader is entitled to relief."

19  Rule 8(a)(2).  "Specific facts are not necessary; the statement need only 'give the defendant fair

20  notice of what the …claim is and the grounds on which it rests.'"  *Erickson*, 127 S. Ct. at 2200

21  (quoting *Bell Atlantic Corp. v. Twombly*, ---U.S.---, 127 S. Ct. 1955, 1964 (2007) (internal

22  quotations omitted)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  Thus, a

23  plaintiff is only required to plead "enough facts to state a claim to relief that is plausible on its

24  face."  *Twombly*, 127 S. Ct. at 1974.

25       When considering a motion to dismiss, the court should take all factual allegations in the

26  complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Syverson v. IBM*

27  *Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007).  "[T]he issue is not whether a plaintiff will ultimately

28  prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may

-3-

1    appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the

2    test." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (quoting *Scheuer v. Rhodes*, 416 U.S.

3    232, 236 (1974), *overruled on other grounds, as recognized in Davis v. Scherer*, 468 U.S. 183,

4    188 (1984)); *see also Erickson*, 127 S. Ct. at 2200 ("It was error for the Court of Appeals to

5    conclude that the allegations in question…were too conclusory to establish for pleading purposes

6    that petitioner had suffered a 'cognizable independent harm'…."). For these reasons, motions to

7    dismiss generally are viewed with disfavor and are rarely granted. *See Gilligan v. Jamco Dev.*

8    *Corp.*, 108 F.3d 246, 249 (9th Cir.1997); *U.S. v. City of Redwood*, 640 F.2d 963, 966 (9th Cir.

9    1981).

10        If this Court finds that any of Plaintiff's allegations are insufficient, however, leave to

11    amend should be readily granted unless it is clear that amendments cannot cure the complaint's

12    deficiencies. *See In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1013 (9th Cir. 2005) *cert.*

13    *denied*, 546 U.S. 1172 (2006); *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052

14    (9th Cir. 2001). To the extent this Court finds that Plaintiffs have not adequately raised any of the

15    legal theories discussed herein, Plaintiffs hereby respectfully request leave to amend to

16    supplement those allegations and claims.

17    **IV.    ARGUMENT**

18        **A.    Plaintiff Has Adequately Alleged Jurisdiction, Venue And Parties For The**
         **TILA Cause Of Action.**

19    

20        Defendants' first argument is that Plaintiff's TILA claim should be dismissed due to the

21    inadvertent deletion of the first sentence of that cause of action, which simply read: "Plaintiff

22    incorporates by reference all preceding paragraphs as though fully set forth herein." While

23    including such a preamble is common practice—Plaintiff has included such language at the outset

24    of all subsequent causes of action in the FAC—this drafting mistake is not fatal. Indeed,

25    Plaintiff's TILA claim is also the First Cause of Action. Thus, all the preceding paragraphs apply

26    to it regardless of whether an incorporating statement is recited at the outset of the claim.

27        The purpose of incorporating by reference is to facilitate concise pleading, while

28    eliminating the necessity of repeating previously pled allegations in later causes of action.

-4-

Because the Introduction, Parties and Venue paragraphs appear directly prior to the First Cause of Action, they cannot have any other purpose but to apply to that cause of action, and, thus, the FAC clearly states the basis for jurisdiction, the parties and the identification of the loans in question, as required. *See* Rule 8(a). Nevertheless, should the Court determine the pleadings are deficient in this respect, Plaintiff requests leave to amend the TILA cause of action to add the incorporation by reference language.

### B.   Plaintiff's TILA Claim Is Not Time-Barred.

Defendants next argue that Plaintiff's claim for damages under TILA must be dismissed because he did not file his suit within one year of closing his loan transaction.[2] Defendants' argument fails on multiple grounds.

### 1.   Improper Remedy Is Not Grounds For Dismissal.

Even assuming *arguendo* that the one-year statute of limitations governing civil damages under TILA ultimately limits the damages Plaintiff may seek, a demand for an improper remedy is not ground for dismissal pursuant to Rule 12(b)(6) and the claim will lie "as long as the court can ascertain from the face of the complaint that some relief can be granted." *Doe v. U.S. Dept. of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985); *Massey v. Banning Unified School Dist.*, 256 F.Supp.2d 1090, 1092 (C.D. Cal. 2003). Plaintiff's claim for rescission is undisputedly timely, and nothing more is required to resist a motion to dismiss pursuant to Rule 12(b)(6). *Twombly*, 127 S. Ct. at 1974 (plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face.").

### 2.   The Pleadings Do Not Demonstrate That Plaintiff's Claims Are Untimely.

Even if Defendants had properly raised a statute of limitations defense as grounds for dismissal, the claim should not be dismissed because the pleadings do not demonstrate that Plaintiff's claim for damages is necessarily time-barred.

First, the pleadings support (and certainly do not foreclose) application of the equitable

---

[2]  The statute of limitations under TILA is one year for civil damages, 15 U.S.C. § 1640(a), and three years for rescission. 15 U.S.C. § 1635; 12 C.F.R. § 226.23.

-5-

1    tolling doctrine and/or the continuing violation doctrine.  "A motion to dismiss based on the

2    running of the statute of limitations period may be granted only 'if the assertions of the complaint,

3    read with the required liberality, would not permit the plaintiff to prove the statute was tolled.'"

4    *See Lee Myles Assocs. Corp. v. Paul Rubke Enters., Inc*., Slip Copy, 07cv1651-L (WMC), 2008

5    WL 687367, at *2 (S.D. Cal., Mar. 11, 2008) (quoting *Supermail Cargo, Inc. v. U. S.,* 68 F.3d

6    1204, 1207 (9th Cir. 1995).

7        Furthermore, the FAC also asserts claims against as-yet-unidentified Doe defendants who

8    subsequently purchased or were assigned Plaintiff's and Class Members' loans. FAC, ¶10.  TILA

9    expressly provides Plaintiff with remedies against those subsequent owners based on their own

10   failures to make the disclosures required by TILA after their acquired Plaintiff's loan.  15 U.S.C.

11   §1641(a).  Because those subsequent holders' violations necessarily occurred after they acquired

12   Plaintiff's loan, there is no basis to conclude that TILA's one year statute of limitations has

13   expired as to those defendants.[3]

14          **3.    The Doctrine Of Equitable Tolling Applies To Plaintiff's Claims.**

15       As the Ninth Circuit has expressly recognized, TILA's statute of limitations period is

16   subject to equitable tolling.  *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986).  The

17   doctrine of equitable tolling applies where, despite due diligence, a plaintiff could not have

18   reasonably discovered the existence of his claim of within the limitations period.  *Santa Maria v.*

19   *Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).

20       Here, the FAC specifically alleges that Defendants fraudulently concealed material

21   information from Plaintiff and Class Members.  FAC, ¶¶ 27, 35, 42, 130, 132.  As alleged,

22   Defendants failed to disclose and concealed their illegal conduct, the true interest rate, and that

23   negative amortization was certain to occur.  FAC, ¶¶ 27, 34, 69, 70, 84, and 144.  Thus, it is

24   plausible that Plaintiff will prove that he was precluded from discovering facts in support of his

25   _____

26   [3]  Plaintiff will seek leave to amend the FAC to name subsequent purchasers and assignees of
     Defendants' loans once those entities are identified.  To that end, Plaintiff informed Defendants
27   that all subsequent purchasers of Plaintiff's or any Class Member's loan should be included in
     their initial disclosures and has also served Defendants with formal discovery seeking the identity
28   of all subsequent purchasers and assignees. Defendants have refused to comply, however.

**PLTF'S OPP. TO DEFS' MOTION TO DISMISS PTF'S**
**FIRST AMENDED COMPLAINT**

1    TILA claim, despite exercise of due diligence, thereby tolling the statute of limitations.[4]

2    **4.    The Continuing Violation Doctrine Renders Plaintiff's Claims Timely.**

3        As alleged, Defendants' unlawful conduct also constitutes a continuing violation. The

4    doctrine of continuing violation applies where the complaint "challenges not just one incident of

5    conduct … but an unlawful practice that continues into the limitations period." *Havens Realty*

6    *Corp. v. Coleman,* 455 U.S. 363, 380–81 (1982). Statutes of limitations are intended to keep stale

7    claims out of court. *Havens Realty,* 455 U.S. at 380. "Where the challenged violation is a

8    continuing one, the staleness concern disappears." *Id.*

9        Here, Plaintiff alleges that Defendants' unlawful policies and practices are ongoing and

10   continued into the limitations period. *See, e.g.,* FAC, ¶¶ 38, 59-63. Allegations that the loans

11   were subsequently sold or transferred, without corrective disclosures being issued, to Doe

12   defendants who acted in concert with MIG illustrates the continuing nature of Defendants'

13   violations. FAC, ¶¶ 7-12. Furthermore, Plaintiff asserts TILA claims on behalf of himself and all

14   others similarly situated, including those who closed on their loans within one year of the filing of

15   this action. FAC, ¶ 46.

16       Defendants will no doubt contend that *King*, 784 F.2d 910, precludes application of the

17   continuing violation theory to TILA claims. However, the theory rejected in *King* is readily

18   distinguishable and does not preclude relief here. In *King*, the Court held that the doctrine of

19   continuing violation does not apply to TILA claims where all of the alleged disclosures

20   undisputedly occurred outside the statutory period. 784 F.2d at 915. In so holding, the *King*

21   Court distinguished *Postow v. OBA Fed. Sav. & Loan Assoc.*, 627 F.2d 1370, 1380 (D.C. Cir.

22   1980), cited in Defs' Mem. at 4, noting that, in *Postow*, the doctrine did apply because "there was

23   a gap between commitment and settlement, with the lender disclosing the required information

24   only at settlement," which occurred within the statutory period. *King*, 784 F.2d at 914. Here,

25   _____

26   [4]  *Barbera v. WMC Mortg. Corp.*, No. C 04-3738 SBA, 2006 WL 167632, at *5 (N.D. Cal., Jan.
     19, 2006), cited in Defs' Mem. at 4, is inapposite. There, the plaintiff attempted to invoke the
27   doctrine of equitable tolling after admitting that she indeed received the disclosures in question
     and signed an acknowledgment to that effect. Here, Plaintiff alleges that the documents provided
28   were deceptive and concealed facts necessary for him to timely discover the nature of his claim.

**PLTF'S OPP. TO DEFS' MOTION TO DISMISS PTF'S
FIRST AMENDED COMPLAINT**

1    Plaintiff's complaint encompasses transactions that may very well have occurred within the

2    statutory period and, thus, there is no basis for assuming they are untimely.

3           **5.    Equitable Tolling Is A Factual Inquiry That Should Not Be Resolved
             On A Motion To Dismiss.**

4           Whether Defendants' violations are ongoing and whether equitable tolling applies, are

5    ultimately ***factual*** issues that need not, indeed, should not, be determined at this early stage.  *See*

6    *Petroleum Products Antitrust Litig.*, 782 F. Supp. 487, 489 (C.D.Cal. 1991) (citing *Volk v. D.A.*

7    *Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987)).  Instead, this Court need only find that the

8    pleadings demonstrate that application of these doctrines is plausible.  Because Defendants cannot

9    establish on the face of the pleadings that Plaintiff's claims are in fact time-barred, Defendants'

10   motion to dismiss Plaintiff's TILA claim should be denied.[5]

11   **C.    Plaintiff Has Properly Pled A Valid Cause of Action Under TILA.**

12          **1.    Overview of the Truth in Lending Act**

13          A comprehensive consumer protection statute, TILA seeks to protect consumers by

14   requiring lenders to make particular disclosures for certain types of loans.  "Congress designed

15   the law to apply to all consumers, who are inherently at a disadvantage in loan and credit

16   transactions."  *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 705 (9th Cir. 1986).

17   Thus, TILA should be interpreted liberally in favor of the consumer.  *Jackson v. Grant*, 890 F.2d

18   118, 120 (9th Cir. 1989).  "To insure that the consumer is protected ... [the TILA and

19   accompanying regulations must] be absolutely complied with and strictly enforced."  *Jackson*,

20   890 F.2d at 120 (quoting *Mars v. Spartanburg Chrysler Plymouth, Inc.,* 713 F.2d 65, 67 (4th Cir.,

21   1983)) (brackets in original).

22          In a rescindable transaction, the consumer must be given a copy of the Truth-In-Lending

23   Act Disclosure Statement ("TILDS") and all "material" information must be plainly disclosed.

24   15 U.S.C. § 1635(a); 12 C.F.R. § 226.15 (a), 226.23(a).  If any material disclosures are withheld,

---

[5] Should the Court should grant Defendants' motion on this ground, however, Plaintiff requests leave to amend to add another class representative whose loan closed within the statutory period. *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1140 (C.D. Cal. 2005) (granting leave to amend to join plaintiff whose claims were not time-barred).

-8-

the consumer has an extended right to rescind.  Indeed, even a single TILA violation extends the

rescission period to three years.  *See Wiggins v. Avco Fin. Servs.*, 62 F.Supp.2d 90, 94 (D.D.C.

1999).

The five primary categories of "material disclosures" that must be provided in closed-end

transactions are: 1) the annual percentage rate ("APR"), including the existence of a variable rate

feature; 2) the finance charge; 3) the amount financed; 4) the total of payments; and 5) the

payment schedule.  *See* 12 C.F.R. § 226.23(a)(3), n.48.  A misstatement of any of the listed

disclosures constitutes a material nondisclosure.  TILA and Regulation Z further require that all

disclosures be made clearly and conspicuously.  15 U.S.C. § 1632(a); 12 C.F.R. § 226.17(a).  This

means the disclosures must be in a reasonably understandable form, and, if a disclosure is capable

of more than one plausible interpretation, it is not "clear."  *Handy v. Anchor Mortg. Corp.*, 464

F.3d 760, 764 (7th Cir. 2006).

### 2.  Defendants Failed To Clearly Disclose A Single Annual Percentage Rate In Violation Of TILA.

Despite Defendants' argument to the contrary, Defendants violated TILA when they failed

to disclose the composite APR in a clear and concise manner and when they provided two

conflicting yearly interest rates in the loan documents.

Lenders are required to disclose the composite APR, not a yearly interest rate that is only

applicable for the first 30 days of a loan.  *See* 15 U.S.C. § 1638(a)(4).  The Federal Reserve Board

("FRB") Official Staff Commentary to Regulation Z ("Commentary") requires that the APR

"reflect a composite annual percentage rate based on the initial rate for as long as it is charged

and, for the remainder of the term, the rate that would have been applied using the index or

formula at the time of consummation":

> In a variable-rate transaction with a . . . discounted or premium rate, ***disclosures should not be based solely on the initial terms***.  In those transactions, ***the disclosed annual percentage rate should be a composite rate*** based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term.

*See* 12 C.F.R. pt 226, Supp. I, cmt 17(c)(1)-8[6] (emphasis added).

---

[6] Excerpts of the FRB Commentary cited herein are attached as Exhibit A to the Declaration of Jennie Lee Anderson In Support of Plaintiff's Opposition to Defendants' Motion to Dismiss First

1    The purpose of requiring lenders to provide a single composite APR is so that borrowers

2    will know the true cost of credit. *In re Wright*, 256 B.R. 626, 638 (D. Mont., 2000). Thus,

3    creating confusion by providing conflicting and contradicting APRs is, in and of itself, a material

4    violation TILA. *In re Ralls*, 230 B.R. 508, 516 (Bankr.E.D.Pa. 1999).

5    Section 226.17 (a)(1) further provides that each of Defendants' disclosures must not

6    obscure or render less clear any other disclosure. Rather, the Section's "clear and conspicuous"

7    standard requires that all disclosures be in a "reasonably understandable form." 12 C.F.R. §

8    226.17(a)(1). "For example, while the regulation requires no mathematical progression or format,

9    ***the disclosures must be presented in a way that does not obscure the relationship of the terms***

10    ***to each other***." *Id.* (emphasis added).[7]

11    As alleged, Defendants listed a low yearly interest rate of approximately 1% in the Note

12    and provided Plaintiff and Class Members a payment schedule based that low rate. FAC, ¶¶ 23,

13    89. However, Defendants listed a ***different*** interest rate in the TILDS, which was unrelated to

14    and not reflected in the TILDS payment schedule. FAC, ¶ 71, 91. Thus, Defendants failed to

15    clearly and conspicuously disclose the APR and, furthermore, provided conflicting and

16    contradictory information in violation of TILA by listing a low annual interest rate (the same rate

17    upon which Defendants base the written payment schedule provided to Plaintiff and Class

18    Members) that would only apply for the first 30 days of the loan. FAC, ¶ 94. .

19    In an effort to evade TILA liability, Defendants argue that the "contract rate" and the

20    "APR" are two different things and, thus, the loan documents are clear. *See* Defs' Mem. at 6.

21    This assertion is belied by the pleadings, however. For example, Defendants provided Plaintiff a

22    Note that states, "I will pay interest at a ***yearly rate*** of 1.000%." FAC, Ex.1 at ¶ 2(A) (emphasis

23    added). Using the ***identical*** "yearly rate" language to define the "APR" in the TILDS, Defendants

24    disclosed a different and significantly higher rate there. FAC, Ex. 1, p. 5. In fact, Defendants

25    charged Plaintiff an interest rate of 5.756% for 360 months, but lowered that rate to 1% for only

26    the first month of the loan. An ordinary consumer cannot be expected to decipher whether the

27    Amended Complaint.

28    [7] In addition, 15 U.S.C. § 1638(a)(8) and 12 C.F.R § 226.18(e) require lenders to provide a
detailed explanation of the APR.

-10-

1  rate on one disclosure, which Defendants defined as the "yearly rate," is different from the rate

2  identified in the Note, also defined as the "yearly rate."  Thus, the 1% "yearly rate" in the Note

3  contradicts and obscures the "APR" stated in the TILDS and is not clear and conspicuous.

4  Plaintiff has, therefore, adequately alleged that Defendants "failed to clearly, conspicuously and

5  accurately disclose the actual interest rate applied to Plaintiff's and Class members' loans" in

6  violation of TILA.  FAC, ¶¶ 62.

7       Defendants also unpersuasively argue that the so-called "ARM Loan Program Disclosure"

8  improperly submitted in support of Defendants' Motion establishes that all TILA-mandated

9  disclosures were clearly and conspicuously provided.  Defs' Mem. at 7.[8]  Even if properly before

10  this Court, however, the limited information in the ARM Loan Program Disclosure does not

11  nullify the fact that Defendants failed to clearly and conspicuously provide the composite APR by

12  providing two conflicting annual percentage rates.  Moreover, the ARM Loan Program

13  Disclosure referenced by Defendants has nothing to do with the required APR disclosure, and, in

14  fact, does not even mention or explain the term "APR."  Indeed, the ARM Loan Program

15  Disclosure on its face fails to meet TILA's clear and conspicuous standard concerning an

16  explanation of the APR charged on the loan.

17       Finally, without citing ***any*** supporting legal authority, Defendants incorrectly contend that

18  Section 226.17's "clear and conspicuous" language does not apply to misleading disclosures in

19  the Note because the Note is not explicitly identified as a location where disclosures required by

20  Subpart C must exist.[9]  Defs' Mem. at 7.  Contrary to Defendants' unsupported argument,

21  however, the FRB Commentary on §226.17(a) explicitly states that "[t]he regulation imposes no

22  specific location requirements on the segregated disclosures[,]" but requires that the disclosures

23  be made and that they be clear and concise.  12 C.F.R. pt 226, Supp. I, cmt 17(a)(1)-3.[10]  To

24  adopt Defendants' reasoning would render TILA's mandate that one disclosure must not obscure

---

25

26  [8]  *See* Declaration of Christine C. Rhea In Support of Defendants' Motion to Dismiss Plaintiff's
     First Amended Complaint ("Rhea Decl."), Exhibit D.

27  [9]  Subpart C of Regulation Z is entitled "Closed End Credit" and consists of Sections 226.17
     through 226.24.  *See* 12 C.F.R. §§ 226.17-226.24.

28  [10]  Clear and concise disclosure of the ARP is among the disclosures explicitly required by
     Subpart C.  *See* 12 C.F.R. § 226.18(e).

-11-

1   or render less clear any other disclosure meaningless.  *See* 12 C.F.R. § 226.17(a)(1). Because

2   Defendants' theory lacks legal support and seeks to impermissibly undermine the primary

3   remedial purpose of the statute, it should be rejected.

### 3.   Defendants Failed To Properly Disclose The True Payment Schedule In Violation Of TILA.

Failure to clearly and concisely disclose the payment schedule constitutes a material

nondisclosure in violation of TILA.  12 C.F.R. § 226.23.  TILA's disclosure requirement seeks to

ensure that consumers receive meaningful disclosures of terms to inform them of the true cost of

credit and avoid the uninformed use of credit. 15 U.S.C. § 1601(a); *Irby-Greene v. M.O.R., Inc.*,

79 F. Supp. 2d 630, 632 (E.D. Va. 2000).

The sufficiency of the disclosures is "to be viewed from the standpoint of an ordinary

consumer, not the perspective of a Federal Reserve Board member, federal judge, or English

professor."  *Smith v. Cash Store Mgmt.*, 195 F.3d 325, 327-328 (7th Cir. 1999) (quoting *Cemail v.

Viking Dodge*, 982 F. Supp. 1296, 1302 (N.D.Ill. 1997)).  Further, a misleading disclosure is as

much a violation of TILA as a complete failure to disclose.  *Barnes v. Fleet Nat'l Bank*, 370 F. 3d

164, 174 (1st Cir. 2004) (quoting *Smith v Chapman*, 614 F.2d 968, 977(5th Cir. 1980).

Here, Plaintiff properly alleges that Defendants violated Section § 226.17 by failing to

clearly and conspicuously disclose the interest rate upon which the payment schedule is based.

FAC, ¶ 62.  Defendants provided Plaintiff and Class Members payment schedules for

approximately the first five years of the loan contract that were based on a teaser APR of

approximately 1% stated in the Note.  Defendants failed to disclose and concealed the fact that,

following this initial period, the remaining payments under the schedule would reflect the APR

listed in the TILDS.  Indeed, nowhere did Defendants explain this material fact and the only way

Plaintiff and Class Members could uncover this deception would be by using a sophisticated

mortgage calculation not generally available to the ordinary consumer.  FAC, ¶ 23.

### 4.   Defendants Failed To Disclose The Borrowers' Legal Obligations In The Payment Schedule In Violation Of TILA.

The payment schedule provided to borrowers must clearly and concisely reflect the

parties' legal obligations.  *See* 15 U.S.C. § 1601, 12 C.F.R § 226.17 and § 226.18.  In addition,

-12-

the FRB Commentary to Section 226.17(c)(1) provides: "[t]he disclosures shall reflect the credit

terms to which the parties are **legally bound** as of the outset of the transaction [and] ... [t]he legal

obligation normally is presumed to be contained in the note or contract that evidences the

agreement." *Id.*, 12 C.F.R. pt 226, Supp. I, cmt 17(c)(1)-1 (emphasis added). Thus, listing

payment amounts that are insufficient to satisfy the borrower's actual monthly obligation

conceals the true legal obligation owed in violation of TILA. *See* 15 U.S.C. § 1601, 12 C.F.R. §

226.17, § 226.18.

Here, Defendants purposefully concealed the legal obligations by providing payment

amounts in the TILDS based upon an introductory 1% APR that were only applicable for the first

30 days of the loan, and, in that same document, listing a much higher APR that was unrelated to

the payment schedule. *See* FAC, ¶¶ 23, 86. For example, Plaintiff's Note lists a 1% APR with a

beginning principal balance of $520,000. FAC, Ex. 1, ¶¶ 1-2. The monthly amount to pay off the

loan at 1% APR is $1,672.53, and the payment schedule in the TILDS shows a monthly payment

obligation of $1,672.53 for the first year of the loan. *Id.,* p. 5. However the TILDS shows an

APR of 5.756%, which creates an undisclosed monthly **legal obligation** of $3,036.45, thereby

creating a shortfall of $1,364.03 each month. This inevitable shortfall is the negative

amortization Defendants purposefully built into Plaintiff's and Class Members' loans. FAC, ¶ 24.

In reality, the true legal obligation is the amount Defendants charge Plaintiff and Class

Members each month. If borrowers were not legally obligated to pay the higher amount,

Defendants would be not able to add the negative amortization accruing on the loans to the

principal balances each month. FAC, ¶ 90. This deception, and the fact that the Note indicates

that the payments would apply to both "principal and interest," render Defendants' disclosures,

unclear, inconspicuous and material violations of TILA.

### 5. Defendants Failed To Disclose That Negative Amortization Was Certain To Occur If Consumers Followed The Payment Schedules.

Defendants further violated TILA by failing to clearly and conspicuously disclose that the

"loan was designed in such a way as to guarantee negative amortization." FAC, ¶ 84.

Defendants' loan documents merely indicated that negative amortization was a possibility,

-13-

1  deceptively concealing the fact that negative amortization was absolutely certain to occur if

2  borrowers adhered to the payment schedule provided.  FAC, ¶¶ 69, 77-84.

3       As the FRB Commentary makes clear, "[i]f a consumer is given the option to cap monthly

4  payments, the creditor must fully disclose the rules relating to the option, including the effects of

5  exercising it (***such as negative amortization occurs and that the principal balance will increase***)

6  . . . "  *See* 12 C.F.R. pt 226, Supp. I, cmt 19(b)(2)(vii)-2 (emphasis added).[11]

7       Defendants rely on their improperly submitted ARM Loan Program Disclosure to argue

8  that they "fully disclosed" the negative amortization.  Defs' Mem. at 9.  However, even if the

9  ARM Loan Program Disclosure were properly before the Court, it fails to disclose that negative

10  amortization would in fact occur and, furthermore, reiterates the deficiencies apparent on the face

11  of the Note and TILDS.  *See* Rhea Decl. Ex. D ("[i]f you pay less than the Full Payment, then the

12  payment ***may*** not be enough to cover the interest due, and any difference will be added to your

13  principal balance.  This means the balance of your loan could increase.  This is known as

14  'negative amortization.'") (emphasis added). [12]

15       While the FRB Commentary reflects some instances where passive terms such as

16  "should" or "may" are appropriate, negative amortization must be explicitly disclosed.  For ARM

17  loans such as these, the FRB requires an explicit statement that "negative amortization occurs and

18  that the principal balance will increase."  12 C.F.R. pt 226, Supp. I. cmt 19(b)(2)(vii)-2.  Thus, "a

19  fair reading of the Commentary is that the FRB intended the disclosure …to be ***mandatory***."  *See*

20  *First Nat'l. Bank of Council Bluffs v. Office of Comptroller of Currency*, 956 F.2d 1456, 1461

21  (8th Cir. 1992) (discussing use of the terms "must" and "should" as they relates to disclosure of a

22  composite APR in the FRB Commentary to 12 C.F.R. § 226.18(f)).

23

24  [11]  The ARM loans at issue here contain a cap on monthly payment increases.  FAC, Ex. 1, ¶
    3(D).  For example, Plaintiff's loan documents state that, "[m]y monthly payment will be limited

25  to an amount that will not be more than 7.5% greater than the amount of my last monthly
    payment due before the Payment Change Date."  *Id.*

26
    [12]  Defendants also contend that Plaintiff's allegations do not address disclosures purportedly
27  made in the ARM Loan Program Disclosure.  Defs' Mem. at 9. However, Plaintiff alleges that
    "even when a separate explanation was provided, Defendants omitted the important material fact
28  that these loans and payment schedules would, in fact, guarantee negative amortization."  *See*
    FAC, ¶ 82.                                   -14-

Here, Defendants' loan documents are misleading because they state that negative amortization is merely a possibility. *See* FAC, Ex.1, 3(E); Rhea Decl., Ex. D. Nowhere do Defendants simply state - not even in the ARM Loan Program Disclosures they proffer- that negative amortization was certain to occur. In fact, the Note indicated that payments will go to principal and interest, further concealing the fact that negative amortization will occur. *See e.g.,* FAC, Ex. 1, 3(D) ("[t]his Payment Cap applies only to the Principal and Interest payment."). [13] Because Defendants failed to disclose that negative amortization was certain to occur if the payment schedule was followed, they failed to comply with the material disclosures required by TILA. Defendants further obscured the material fact that negative amortization would occur by issuing a payment schedule that suggested the loans were amortized. FAC, ¶¶ 69, 77-84.

### 6. Defendants Failed To Disclose That The Initial Rate Was Discounted In Violation Of TILA.

Contrary to Defendants' contention, Plaintiff alleges that Defendants violated TILA by failing to disclose to Plaintiff and Class Members that the interest rate for the first 30 days was discounted and not based on the interest rate and margin. *See* FAC, ¶¶ 98, 100-102. "Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members that the initial interest rate was discounted," creating the possibility of an increase even when the index did not rise. FAC, ¶ 101. Nothing more is required. *See* 12 C.F.R. pt 226, Supp. I, cmt 19(b)(2)(v)-1 ("If the initial interest rate will be a discount or a premium rate, creditors must alert the consumer to this fact."); 12 C.F.R. §226.17(a)(1) ("The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing….").

### 7. Defendants Failed Disclose The Effect Of The Payment Cap In Violation Of TILA.

As alleged, Defendants further violated TILA by failing to clearly and conspicuously disclose the effect the payment cap would have on the loan. FAC, ¶ 106.

The FRB Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a rate

---

[13] When discussing the ramifications of a late payment the Note also states that there will be a 5% late charged added to the "Principal and Interest" payment. FAC, Ex. 1, ¶ 7(A)

-15-

1    or payment cap . . *the effect of that rate or payment cap should be reflected in the disclosures*."

2    12 C.F.R. pt 226, Supp. I, cmt 17(c)(1)-10-iii (italics and bold added).

3        Defendants' "Payment Cap" limits the amount that the monthly payments can be

4    increased annually, but does not limit in any way the amount of interest Defendants charged on

5    the loans:

6        the amount of my new monthly payment effective on a Payment Change Date,
        will not increase by more than 7.5% of my prior monthly payment. This 7.5%
7        limitation is called the 'Payment Cap.'  This Payment Cap applies only to the
        Principal and Interest payment and does not apply to any escrow payments Lender
8        may require under the Security Instrument.

9    FAC, Ex. 1, ¶3(D).

10        Thus, if the loan had a monthly payment amount of $1,000 for the first year of the note,

11    the Payment Cap would limit the increase in payments to a maximum of $75 for a total monthly

12    payment of $1,075 in the second year.  *See id.*  The effect of such a limit for Plaintiff was a loss

13    of equity of $1,364.03 in the second month of his loan.  Defendants knew precisely what the

14    amount of the monthly shortfalls would be prior to the loans closings, but unlawfully failed to

15    disclose that material information to Plaintiff and Class Members.  FAC, ¶¶ 106-109.

16        Defendants apparently concede that they failed to disclose to Plaintiff and Class Members

17    the *effect* the Payment Cap would have on their loans.  Instead, Defendants argue that TILA only

18    required them to disclose the *existence* of the Payment Cap. Defs' Mem. at 13.  As noted above,

19    however, disclosure of the cap's existence is insufficient.

20        **D.    TILA Does Not Preempt Plaintiff's State Law Claims.**

21        "TILA lacks that extraordinary preemptive power necessary to convert a state-law

22    complaint 'into one stating a federal claim for purposes of the well-pleaded complaint rule.'  On

23    the contrary, the plain terms of the Act show Congress intended generally to disclaim

24    preemption."  *Magee v. Exxon Corp.,* 135 F.3d 599, 602 (8th Cir. 1998); *see also Ferrell v.*

25    *McDonald*, 358 B.R. 777, 792 (B.A.P. 9th Cir. 2006) (". . . TILA does not preempt consistent

26    state consumer protection laws regarding closed-end loan disclosures.")

27        In fact, the very argument Defendants make here—that state laws are preempted if they

28    offer additional remedies—has been consistently rejected by courts in this Circuit.  A state law is

-16-

1   only inconsistent with TILA "if it requires a creditor to make disclosures or take actions that

2   *contradict* the requirements of federal law."  *Monaco v. Bear Stearns Residential Mortg. Corp.*,

3   No. CV 07-05607 SJO, 2008 WL 867727, at *4 (C.D. Cal., Jan. 28, 2008) (quoting 12 C.F.R. §

4   226.28(a)(1)) (emphasis added).  Rejecting a TILA preemption challenge to allegations virtually

5   identical to those posed here, the *Monaco* Court noted that "[n]owhere do Plaintiffs suggest that

6   Defendants failed to make certain disclosures or take certain actions not encompassed by TILA."

7   *Id.*  Instead, "Plaintiffs invoke the UCL solely for the additional remedies offered thereunder."

8   *Id.*  Because "additional penalties are not inconsistent with TILA, but merely provide greater

9   protection to consumers," plaintiffs' UCL claims were not preempted.  *Id.* (quoting *In re First*

10  *Alliance Mortg. Co.*, 280 B.R. 246, 251 (C.D. Cal. 2002)).

11          The FRB Commentary is in accord. "Generally, State law requirements that call for the

12  disclosure of items of information not covered by the Federal law, or that require more detailed

13  disclosures, do not contradict the Federal requirements." 12 C.F.R. pt. 226, Supp. I, cmt 28(a)-3.

14          Ignoring all authority to the contrary, Defendants incorrectly cite *Silvas v. E*Trade Mortg.*

15  *Corp.*, 514 F.3d 1001 (9th Cir. 2008) to argue that Plaintiff's state law claims are preempted.

16  Defs' Mem. at 18. However, *Silva* is inapposite, because that case dealt with preemption under

17  the Home Owners' Loan Act, 12 U.S.C. § 1461, *et seq.* ("HOLA"), not TILA.  Further, *Silva* did

18  not hold that state laws are preempted merely because they offer remedies that differ from TILA.

19          **E.      Plaintiff Has Properly Pled A Fraudulent Omission Claim.**

20          To establish a claim for fraudulent omission under California law Plaintiff must allege: (1)

21  an omission of material fact; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable

22  reliance; and (5) resulting damages.  *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996); *see also*

23  *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003).  Ignoring this well-established legal

24  standard, Defendants incorrectly argue that Plaintiff has failed to state a claim for fraudulent

25  omission in light of partial and misleading "disclosures" Defendants made in their loan

26  documents.  Defs' Mem. at 15-17.  As demonstrated below, however, Plaintiff has more than

27  adequately pled all the elements required for a fraudulent omissions claim.

28

1    **1.    Defendants Had A Duty To Disclose Material Facts.**

2    To establish fraud through nondisclosure of facts, a plaintiff must show that the defendant

3    "was under a legal duty to disclose." *Lingsch v. Savage*, 213 Cal. App. 2d 729, 735 (1963). There

4    are generally four circumstances in which a duty to disclose arises: (1) when the defendant is in a

5    fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of

6    material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact

7    from the plaintiff; or (4) when the defendant makes partial representations but also suppresses

8    some material facts. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) (quoting *Heliotis v.*

9    *Schuman*, 181 Cal. App. 3d 646, 651 (1986)).  Plaintiff's allegations establish that defendants had

10   a duty to disclose under at least the second, third and fourth *Judkins* scenarios.[14]

11   In satisfaction of the second *Judkins* scenario, Plaintiff alleges that "Defendant had

12   exclusive knowledge of material facts, including but not limited to: (i) the payment amounts listed

13   in the TILDS were not based on the actual interest rate charged on the Note(s); (ii) that negative

14   amortization was absolutely certain to occur, and (iii) that the payment amounts listed in the Note

15   and TILDS are insufficient to pay both principal and interest." FAC, ¶ 131.  Plaintiff further

16   alleges that "[t]he concealed and omitted information was not known to Plaintiff and the Class

17   members ...." *Id.*, ¶ 132; *see Judkins*, 52 Cal. App. 4th at 336.

18   Pursuant to the third *Judkins* scenario, Plaintiff alleges on multiple occasions that

19   Defendants "actively conceal[ed]" material facts. FAC, ¶ 130; *see also id.*, ¶¶ 35, 30, 132.

20   "[I]ntentional concealment of a material fact is an alternative form of fraud and deceit equivalent

21   to direct affirmative misrepresentation." *Lovejoy v. AT & T Corp.*, 92 Cal. App. 4th 85, 97 (2001)

22   (quoting *Stevens v. Super. Ct.*, 180 Cal. App. 3d 605, 608-609 (1986)).

23   A duty to disclose also arises under the fourth *Judkins* factor, because Plaintiff alleges that

24   ─────────────

25   [14]  Even where there is no fiduciary relationship, the duty to disclose generally presupposes a
     relationship grounded in "some sort of transaction between the parties. Thus, a duty to disclose

26   may arise from the relationship between seller and buyer ... or parties entering into any kind of
     contractual agreement." *Judkins*, 52 Cal. App. 4th at 337 (citations omitted).  "All of these

27   relationships are created by transactions between parties from which a duty to disclose facts
     material to the transaction arises under certain circumstances." *Wilkins v. Nat'l. Broad. Co., Inc.*,

28   71 Cal. App. 4th 1066, 1082 (1999) (citing *Judkins*, 52 Cal. App. 4th at 336-337).

-18-

1  Defendants made partial representations and suppressed other material facts concerning the ARM

2  loans at issue.  *See* FAC, ¶¶ 21-24.  Under California law, "[e]ven where no duty to disclose

3  would otherwise exist, 'where one does speak he must speak the whole truth to the end that he

4  does not conceal any facts which materially qualify those stated . . . One who is asked for or

5  volunteers information must be truthful, and the telling of a half-truth calculated to deceive is

6  fraud.'" *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004) (citations

7  omitted); *Intrieri v. Super. Ct.*, 117 Cal. App. 4th 72, 86 (2004).

8         Here, while the payment amounts listed in the TILDS are, on some level, true (*e.g.*, they

9  are payments Plaintiff was required to make), Defendants failed to disclose that those payment

10  amounts were insufficient to pay both "principal and interest" or that following the payment

11  schedule would, in fact, result in negative amortization.  FAC, ¶ 127; *see also* FAC, Ex. 1, ¶¶

12  3(A) ("I will make these payments every month until I have paid all the Principal and Interest. .

13  .") *and* 3(D) ("This Payment Cap applies only to the Principal and Interest payment...").  In

14  addition, while Defendants made partial disclosures regarding negative amortization, the

15  disclosures were cleverly contrived half-truths, which failed to disclose that payments made

16  pursuant to the payment schedule would ***always*** be insufficient to pay both principal and interest.

17  FAC ¶¶ 83; *see also* Ex. 1, ¶3(C)-(E).

18         In addition to the circumstances identified in *Judkins*, a statute may also impose a duty to

19  disclose.  *See, e.g., Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1499 (2003) (Cal. Ins.

20  Code, § 330); *Lovejoy*, 119 Cal. App. 4th at 158-159 (Cal. Pub. Util. Code, § 2889.5); *see also*

21  *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 167, n.6 (2007) (Cal. Civ. Code § 51.6(f)).

22  As discussed in Section IV.C, *supra*, TILA imposes a duty on Defendants to make certain

23  disclosures to Plaintiff and Class Members.  Thus, TILA creates a separate and independent basis

24  by which Defendants owed a duty to disclose material facts regarding the loans.  *See, e.g.,* FAC, ¶

25  105.

26         **2.    Materiality**

27         In order to sufficiently plead materiality, Plaintiff must allege that "had the omitted

28  information been disclosed, [they] would have been aware of it and behaved differently." *Mirkin*

-19-

1   *v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993).  Here, Plaintiff has adequately alleged materiality

2   "in that Plaintiff and others similarly situated would not have purchased these loans but for

3   Defendants' ... fraudulent [omissions]."  FAC, ¶ 42.

### 3.     Defendants' Knowledge of the Fraudulent Omission

5       Here, Plaintiff alleges that "[f]rom the inception of the Option ARM loan scheme, until

6   present, Defendants have engaged in a purposeful and fraudulent scheme to omit material facts."

7   FAC, ¶ 133.  Plaintiff further alleges that Defendants knew from the inception of the "ARM loan

8   scheme" that (i) the payment schedules did not reflect payment amounts sufficient to pay both

9   principal and interest, (ii) an ambiguity existed in the TILDS in that the interest rate listed was not

10  used to calculate the schedule of payments, and (iii) Plaintiffs were certain to suffer negative

11  amortization if they followed the disclosed payment schedules.  FAC, ¶¶ 129-131.  Plaintiff also

12  alleges that Defendants "purposefully and intentionally devised this Option ARM loan scheme to

13  defraud and/or mislead consumers into believing . . . that if [Plaintiff and Class Members] made

14  their payments according to the payment schedule provided by Defendants that it would be

15  sufficient to pay both principal and interest."  FAC, ¶ 135.  Nothing more is required to plead the

16  requisite scienter for a fraudulent omissions claim.

### 4.     Actual Reliance

18      To assert a fraudulent omission claim Plaintiff must also plead allegations sufficient to

19  "'establish a complete causal relationship' between the alleged [fraudulent omission] and the

20  harm claimed to have resulted therefrom."  *Mirkin*, 5 Cal. 4th at 1092-93 (quoting *Garcia v.*

21  *Super. Ct.*, 50 Cal. 3d 728, 737 (1990)).  Plaintiff may establish this element by showing that

22  "had the omitted information been disclosed, [he or she] would have been aware of it and

23  behaved differently."  *Id.* at 1093.[15]

24      Indeed, Plaintiff has adequately alleged reliance here by establishing that the omitted

25  information was material.  *See Mass. Mutual Life Ins. Co. v. Super. Ct.,* 97 Cal. App. 4th 1282,

---

[15] Plaintiff need not establish that that reliance on the fraudulent misrepresentation was the sole or even the predominant or decisive factor in influencing his conduct, however. *Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951, 976-977 (1997).  "It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.'" *Id.*

-20-

1  1293 (2002); *see also Vasquez v. Super. Ct.,* 4 Cal. 3d 800, 814 (1971) ("'[w]here representations

2  have been made in regard to a material matter and action has been taken, in the absence of

3  evidence showing the contrary, it will be presumed that the representations were relied on.'");

4  *Occidental Land, Inc. v. Super. Ct.,* 18 Cal. 3d 355, 358-359, 363 (1976) (inference of reliance

5  where defendant failed to disclose substantial costs and class members' action thereafter were

6  consistent with reliance).  As *Mass. Mutual* explains, proof of reliance on a fact which has not

7  been disclosed is established by demonstrating the materiality of the omitted fact and actions in

8  consistent with reliance.

9      Here, Plaintiff has alleged that "[t]he omitted information, as alleged herein, was material

10  to Plaintiffs and each Class member in that had the information been disclosed, Plaintiffs and

11  each Class member would not have entered into the loans." FAC, ¶¶ 136, 170-171.  Thus,

12  Plaintiff has satisfied his pleading requirement.

13          **5.      Justifiable Reliance - Presumed**

14      Plaintiff has also established that reliance was justified, *i.e.,* that  "circumstances were

15  such to make it reasonable for [the] plaintiff to accept [the] defendant's statements without an

16  independent inquiry or investigation." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App.

17  3d 1324, 1332 (1986); *see* FAC, ¶¶ 171-172.  Nothing more is required at the pleading stage.

18  "'Except in the rare case where the undisputed facts leave no room for a reasonable difference of

19  opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.'"

20  *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) (citations omitted) (quoting

21  *Blankenheim v. E.F. Hutton & Co*., 217 Cal. App. 3d 1463, 1475 (1990)).

22      Moreover, where "the case can be characterized as one that primarily alleges omissions"

23  justifiable reliance may be presumed. *Poulos v. Caesars World, Inc*., 379 F.3d 654, 667 (9th Cir.

24  2004); *Binder v. Gillespie,* 184 F.3d 1059, 1064 (9th Cir. 1999*); Affiliated Ute Citizens v. U. S.*,

25  406 U.S. 128, 153-54 (1972).  This case unquestionably primarily involves Defendants' failures

26  to disclose and omissions of material fact, as the pleadings establish. *See, e.g.,* FAC, ¶¶17, 30,

27  62, 94, 116, 151.

28

-21-

1

**6.    Plaintiff Has Satisfied The Applicable Pleading Standards For A Fraudulent Omission Claim.**

Defendants incorrectly argue that Plaintiff's fraudulent omissions claim should be dismissed pursuant to Rule 9(b).  *See* Fed. R. Civ. P. 9(b).  While Rule 9 generally imposes a stricter pleading requirement for claims sounding in fraud, a fraud by omission claim is not required to meet the Rule's the specific time, place and content requirements.  *See Washington v. Baezinger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987) (noting that in fraud by omission cases, "a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act.").  Indeed, in *Falk v. General Motors Corp*, 496 F.Supp.2d 1088, 1099 (N.D. Cal. 2007), the court ruled that a  "fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim."  Thus, Plaintiff's pleadings have sufficiently stated a fraudulent omissions claim here.

**F.    Plaintiff Has Properly Pled A UCL Cause of Action.**

The UCL prohibits: (1) unlawful business practice or act; (2) unfair business practice or act; (3) fraudulent business practice or act; (4) unfair, deceptive, untrue or misleading advertising; and (5) any act prohibited by Bus. & Prof. Code §§ 17500-17577.5.  Cal. Bus. & Prof. Code § 17200, *et seq.*  Each part of the UCL's definition of unfair competition operates separately from each other part.  Thus, "unlawful" business practices (the first prong) are forbidden even if the practices are not "unfair" (the second prong) or "fraudulent" (the third prong).  Likewise, "unfair advertising" is prohibited even if it is not misleading and is not a "business practice."  W.L. Stern, Bus. & Prof. C. § 17200 Practice, ¶ 3:15.

The second prong of the UCL, the "unfair" prong, is intentionally broad, allowing courts maximum discretion to prohibit new schemes to defraud.  Stern, *supra* at ¶ 3:113 (citing *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980).  Indeed, courts have allowed UCL "unfair" business practices claims to proceed on multiple theories of liability.  *See e.g., Buller v. Sutter Health*, 160 Cal. App. 4th 981, 991 (2008) (a business practice is "unfair" for UCL purposes where the practice is "'tethered' to a legislatively declared policy or has some actual or threatened impact on competition"); *Camacho v. Auto. Club of S. Cal.,* 142 Cal. App. 4th 1394,

-22-

1    1400 (2006) (a business practice is "unfair" for the purposes of the UCL where the consumer

2    injury is substantial, not outweighed by any countervailing benefits to consumers or competition,

3    and could not have been reasonably avoided by the consumers themselves); *Smith v. State Farm*

4    *Mut. Auto. Ins. Co.,* 93 Cal. App. 4th 700, 719 (2001) ("[a]n unfair business practice occurs when

5    [it] offends an established public policy or when the practice is immoral, unethical, oppressive,

6    unscrupulous or substantially injurious to consumers.").

7            Defendants contend that Plaintiff's UCL claim fails because, according to Defendants, the

8    pleadings are "a laundry list of conclusory statements regarding the unfair practices."[16] Defs'

9    Mem. at 18. In fact, Plaintiff has alleged his UCL claim under the "unfair" prong with great

10   specificity and has even satisfied the most stringent theory of identifying a statute to which the

11   unfair practice is tethered. As alleged, Defendants' omissions and nondisclosures are "tethered"

12   to the legislative policies embodied by TILA. *See* FAC, ¶¶ 53-110.[17] Thus, Plaintiff has more

13   than adequately pleaded his UCL claim, and Defendants' Motion should be denied. *See*

14   *Twombly*, 127 S. Ct. at 1964 (plaintiff need only plead facts sufficient to "give fair notice of what

15   the …claim is and the grounds on which it rests.").

16           **G.      Plaintiff Has Properly Plead A Breach of Contract Claim.**

17           To state a breach of contract claim, a plaintiff must allege: (1) the contract; (2)

18   plaintiff's performance; (3) breach; and (4) damage. *McDonald v. John P. Scripps Newspaper*,

19   210 Cal. App. 3d 100, 104 (1989) (quoting Witkin, California Procedure, Pleading, § 464 (3rd

20   ed.1985)).

21

22   [16] Defendants also contend that Plaintiff's UCL claims fail because the underlying TILA
23   violation has not been properly pled or, alternatively, that TILA preempts UCL claims. These
     arguments are addressed in Sections IV. C.- D., *supra*.

24   [17] Additionally, Plaintiff has alleged that Defendants "deceptively devised" their ARM loans.
     FAC, ¶ 144. The deceptions include the partial disclosures through which Defendants presented
25   the loans as low, fixed payment loans with no negative amortization. FAC, ¶¶ 19, 144. These
     promises of low payments and low interest, along with the other purported features of the ARM
26   loans were stated in the loan documents. FAC, ¶¶ 27, 68, 99. However, the promise of a low
     interest rate was a mirage and in fact, these loans were guaranteed to result in negative
27   amortization. FAC, ¶ 144. In particular, Defendants failed to disclose the true nature of the
     ARM Loans, and the borrowers never received the benefits of the "teaser" rate. FAC, ¶¶ 148-
28   150. Defendants followed the same course of misrepresentations and omissions with Plaintiff and
     their other borrowers. FAC, ¶ 144-151.

-23-

1    Here, Plaintiff has properly pled the existence of the contractual ARM loans at issue.

2    FAC, ¶ 163, Ex. 1. Plaintiff has also alleged the contractual provision he contends Defendants

3    breached, FAC, ¶ 166, and performance, FAC, ¶ 170.  Plaintiff has further alleged that

4    Defendants breached the contract "by failing to apply any portion of Plaintiffs' and the Class

5    members' monthly payments towards their principal loan balances" and thereby guaranteeing that

6    negative amortization would occur.  FAC, ¶ 169.  Finally, Plaintiff has properly alleged that he

7    and Class Members have suffered damages as a result of Defendants' breach of the contract

8    provisions.  FAC, ¶ 171.

9    Despite the fact that Plaintiff has adequately alleged each element for breach of contract,

10    Defendants now argue that the contract (which on its face is replete with inconsistencies and

11    ambiguities) unambiguously indicates that Defendants would not apply any part of Plaintiff's

12    payments to the principal owed.  Defs' Mem. at 20-21.  Defendants go on to argue that equivocal

13    and confusing phrases they inserted into the Note, *e.g.,* "[m]y minimum payment could be less or

14    greater than the amount of the interest portion of the monthly payment that would be sufficient to

15    repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in

16    substantially equal payments.  For each month that . . .," FAC, Ex. 1, ¶ 3(E),  somehow trumps

17    the clear, unequivocal listing of an yearly interest rate and language indicating that payments

18    would be sufficient to apply to "principal and interest."  *Id.,* ¶¶ 2(A), 3(A), 3(D).

19    "'The fundamental goal of contractual interpretation is to give effect to the mutual

20    intention of the parties.' … 'Such intent is to be inferred, if possible, solely from the written

21    provisions of the contract.' …'If contractual language is clear and explicit, it governs.' …"

22    *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998) (citations omitted).

23    Under California law, courts are to interpret the contract as a whole, giving effect to every part of

24    the agreement, with "each clause helping to interpret the other."  *Stamm Theatres, Inc. v.*

25    *Hartford Cas. Ins. Co.*, 93 Cal. App. 4th 531, 538 (2001); Cal. Civ. Code, § 1642.

26    If the language is ambiguous or uncertain, however, courts are to interpret the contract

27    against the party who caused the uncertainty.  *See* Cal. Civ. Code, § 1654 (" . . . the language of a

28    contract should be interpreted most strongly against the party who caused the uncertainty to

-24-

1    exist."); *Int'l Billing Serv., Inc. v. Emigh*, 84 Cal. App. 4th 1175, 1184 (2000); *In re Miller*, 253

2    B.R. 455, 459 (Bankr. N.D.Cal. 2000).  Specifically in the mortgage context, "[i]f there is any

3    uncertainty as to [meaning of mortgage drawn by mortgagee,] … it must be construed most

4    strongly against [mortgagee]."  *Hibernia Sav. & Loan Soc. v. Lauffer,* 41 Cal. App. 2d 725, 731

5    (1940) (citing Cal. Civ. Code § 1654).

6        Here, Plaintiff adequately alleges that any ambiguity or uncertainty in the contract was

7    created by Defendants by, *inter alia,* stating that Plaintiff and Class Members "will pay Principal

8    and Interest" and by providing Plaintiff and Class Members a payment schedule that was

9    woefully insufficient to pay both principal and interest.  *See* FAC, ¶¶ 166-169; *id.*, Ex. 1, ¶ 3(A).

10   Thus, Defendants' motion to dismiss Plaintiff's breach of contract claim should be denied.  *See*

11   *Reyes v. Downey Sav. & Loan Assoc.*, 541 F. Supp. 1108, 1116 (C.D.Cal. 2008) (denying a

12   motion to dismiss plaintiffs' contract claims arising from facts similar to those alleged here on the

13   ground that plaintiffs "sufficiently alleged that the terms of the contract were ambiguous.").

14       **H.    Plaintiff Has Properly Pled A Claim For Tortious Breach Of The Covenant of**
         **Good Faith And Fair Dealing.**

15

16       "[U]nder California law, all contracts have an implied covenant of good faith and fair

17   dealing." *In re Vylene Enterprises, Inc.*, 90 F.3d 1472, 1477 (9th Cir.1996).  The covenant "exists

18   merely to prevent one contracting party from unfairly frustrating the other party's right to receive

19   the benefits of the agreement actually made."  *Guz v. Bechtel Nat'l. Inc.*, 24 Cal. 4th 317, 349

20   (2000).  Moreover, tort recovery for breach of contract is permissible where there is a violation of

21   "an independent duty arising from principles of tort law."  *Freeman & Mills, Inc. v. Belcher Oil*

22   *Co*., 11 Cal.4th 85, 102 (1995)

23       Accordingly, Plaintiff has alleged that Defendants unfairly frustrated Plaintiff's and Class

24   Members' right to receive the benefits of the contract by failing to disclose and fraudulently

25   concealing material facts relating to the ARM loans.  FAC, ¶¶ 180-187.  As such, Defendants'

26   breach was tortious.  *Id.*

     **V.    CONCLUSION**

27       For the reasons set forth above, Defendants' Motion should be denied in its entirety.

28
     -25-

1

2       DATE: July 25, 2008                    ANDRUS LIBERTY & ANDERSON LLP

3                                              By:___/s/ Jennie Lee Anderson_____
                                                     Jennie Lee Anderson
4
                                               Lori E. Andrus (SBN 205816)
5                                              Micha Star Liberty (SBN 215687)
                                               Jennie Lee Anderson (SBN 203586)
6                                              1438 Market Street
                                               San Francisco, CA  94102
7                                              Telephone:(415) 896-1000
                                               Facsimile: (415) 896-2249
8                                              lori@libertylaw.com
                                               micha@libertylaw.com
9                                              jennie@libertylaw.com

10                                             Jeffrey K. Berns (SBN 131351)
                                               David Arbogast (SBN 167571)
11                                             ARBOGAST & BERNS LLP
                                               19510 Ventura Boulevard, Suite 200
12                                             Tarzana, California  91356
                                               Telephone: (818) 961-2000
13                                             Facsimile: (818) 867-4820
                                               darbogast@law111.com
14                                             jberns@law111.com

15                                             Paul R. Kiesel (SBN 119854)
                                               Patrick DeBlase (SBN 167138)
16                                             Michael C. Eyerly (SBN 178693)
                                               KIESEL BOUCHER LARSON LLP
17                                             8648 Wilshire Boulevard
                                               Beverly Hills, California 90211
18                                             Telephone: (310) 854-4444
                                               Facsimile: (310) 854-0812
19                                             kiesel@kbla.com
                                               deblase@kbla.com
20                                             eyerly@kbla.com

21                                             *Attorneys for Plaintiff and the Class*

22

23

24

25

26

27

28
                                      -26-

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on July 25, 2008, I electronically filed PLAINTIFF'S OPPOSITION

3    TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT using the

4    CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the

5    attached Electronic Mail Notice List.

6        I certify under penalty of perjury under the laws of the United States of America that the

7    foregoing is true and correct.

8

9    Dated:  July 25, 2008                      _/s/ Jennie Lee Anderson_
                                     Jennie Lee Anderson

10

11                            ANDRUS LIBERTY & ANDERSON LLP
                        1438 Market Street

12                            San Francisco, CA  94102
                        Telephone:  (415) 896-1000

13                            Facsimile:  (415) 896-2249
                        jennie@libertylaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLTF'S OPP. TO DEFS' MOTION TO DISMISS PTF'S**
**FIRST AMENDED COMPLAINT**