1  ROLAND P. REYNOLDS, ESQ., (SBN 150864)
   rreynolds@pfeiferlaw.com
2  ANNABELLE DE LA MORA, ESQ. (SBN 117649)
   adelamora@pfeiferlaw.com
3  PFEIFER & REYNOLDS, LLP
4  765 The City Drive, Suite 380
   Orange, CA 92868
5  Telephone:    (310) 788-3900
   Facsimile:     (310) 388-5416
6

7  Attorneys for Defendants MORTGAGE INVESTORS
8  GROUP, INC., and MORTGAGE INVESTORS GROUP,
   A General Partnership
9

10              UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN JOSE DIVISION

13

14  JAY J. RALSTON, On Behalf Of Himself    )  Civil Case No. CV 08-00536 JF
    And All Others Similarly Situated;      )
15                                          )
                  Plaintiff,                )  **REPLY IN SUPPORT OF MOTION AND**
16        vs.                               )  **MOTION OF DEFENDANTS TO DISMISS**
                                            )  **PLAINTIFF'S FIRST AMENDED**
17  MORTGAGE INVESTORS GROUP,               )  **COMPLAINT**
18  INC., MORTGAGE INVESTORS                )
    GROUP, a general partnership, and DOES  )  Date:    August 15, 2008
19  1 -10,                                  )  Time:    9 a.m.
                  Defendants.               )  Crtrm:  3
20                                          )
                                            )  Honorable Jeremy Fogel
21                                          )
                                            )  Complaint Filed:  January 24, 2008
22                                          )
                                            )
23                                          )

24  _____

25

26

27

28
                                                           CV08-00536 JF
    DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

Page No.

I.     INTRODUCTION                                                                        1

II.    THE FAILURE TO INCORPORATE BY REFERENCE ALLEGATIONS OF               1
       PARTIES, JURISDICTION, AND VENUE IS FATAL TO PLAINTIFF'S
       TILA CLAIM

III.   PLAINTIFF'S TILA CLAIMS ARE TIME-BARRED BY THE STATUTE              2
       OF LIMITATIONS.

IV.    PLAINTIFF AGAIN MISTATES THE REQUIREMENTS OF THE                    4
       STATUTORY SCHEME OF TILA

       A.     Plaintiff's Theory That MIG Disclosed Two Conflicting APR's Is     4
              Contradicted by the Documents and TILA, Which Provides for Only
              One APR Disclosure.

       B.     The Schedule of Payments on the TIL Did Not Violate TILA.      5

       C.     The Payment Schedule Did Not Violate TILA by Failing to Disclose   6
              Borrower's "Legal Obligation."

       D.     The Loan Program Disclosure Fully Disclosed the Negative        7
              Amortization

       E.     The Disclosure of the Discounting of the Initial Rate Complied with   9
              TILA

       F.     Plaintiff Does Not State a Claim for Failure to Disclose the Composite   9
              APR

       G.     The Effect of the Payment Cap is Fully Disclosed                10

V.     PLAINTIFF'S UCL CLAIM BASED ON TILA IS PREMPTED BY TILA           10
       AND FAILS TO STATE A CLAIM BECAUSE OF THE FAILURE TO
       STATE A TILA CLAIM

VI.    THE ALLEGED FRAUDULENT OMISSIONS ARE NOT ACTIONABLE               12

i

VII.    PLAINTIFF'S FOURTH CLAIM FOR BREACH OF UCL PREDICATED     13
        ON "UNFAIR" OR "FRAUDULENT" BUSINESS PRACTICES IS ALSO
        PREEMPTED AND FAILS TO STATE A CLAIM

VIII.   PLAINTIFF'S    BREACH    OF    CONTRACT    CLAIM    DOES    NOT     14
        IDENTIFY ANY BREACHED TERMS.

IX.     PLAINTIFF CANNOT IMPLY ANY COVENANTS INTO THE LOAN     14
        AGREEMENT.

X.      PLAINTIFF IMPLICITLY CONCEDES THAT MORTGAGE INVESTORS     15
        GROUP, INC. SHOULD BE DISMISSED AS IT DID NOT MAKE THE
        LOAN IN ISSUE

ii

# TABLE OF AUTHORITIES

**CASES**                                                                                          **Page No.**

*American Bankers Ass n v. Lockyer*, 239 F. Supp. 2d 1000 (E.D. Cal 2002)                          11

*Barbera v. WMC Mortgage Corp.*, 2006 WL 167632, at *5 (N.D. Cal. Jan. 19,                         3,4
    2006)

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).                                        12,13

*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134                                  13

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374                    15
    (1992)

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999)                       13
    20 Cal.4th 163, 167

*Clegg v. Cult Awareness Network*, 18 F.3d 752                                                     1

*Fong v. United States*, 300 F.2d 400, 413 (9th Circ. 1962)                                        1

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)                                              4

*In re Ferrell*, 358 B.R. 777, 792 (9th Cir. BAP 2006)                                             11

*In re First Alliance Mortgage Co.*, 280 B.R. 246 (C.D. Cal. 2002)                                 11

*King v. State of California*, 784 F.2d 910, 914 (9th Cir. 1986)                                   3

*Knox v. Ameriquest Mortgage Co.*, 2005 WL 1910927, at *3 (N.D. Cal. Aug.10,                       2
    2005)

*Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App. 4th 115, 132-                   12
    33 n.7 (2007)

*Magee v. Exxon Corp.*, 135 F.3d 599, 602 (8th Cir. 1998)                                          11

*Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003)                              2

TABLE OF CONTENTS - TABLE OF AUTHORITIES

**CASES**                                                                                      Page No.

*Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003)                          2

*Monaco v. Bear Stearns Residential Mortgage Corp.*, 2008 WL 867727, at *3                    4,11
    (C.D. Cal. Jan. 28, 2008)

*Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 484-86 (1989)                              14

*Reyes*, 2008 WL 867722 at *6                                                                 11

*Silvas v. E*Trade Mortgage Corp.* 514 F.3d 1001 (9th Cir. Jan. 30, 2008)                    11

*Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998)                15

*South Bay Chevrolet v. General Motors AcceptanceCorp.*, 72 Cal.App.4th 861                   13
(1999)

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).                       15

*Stetler v. Greenpoint Mortgage Funding, Inc.*, No. 07-123, 2008 WL 192405, at                12
    *7 (E.D. Cal. Jan. 23, 2008)

*Stone v. R.E.F.S., Inc.*, 2005 WL 2171954, at *4 (N.D.Cal. Sept. 8, 2005)                     4

*Valley Air Conditioning & Repair, Inc.*, 2007 WL 2758018, at *2                              15

*Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003)                           14

*Wherry v. All Cal. Funding*, 2006 WL 2038495, at*2 (N.D. Cal. July 20, 2006)                  2

*Wilkins v. Nat'l Broad. Co.*, 71 Cal. App. 4th 1066, 1082 (1999)                             12

TABLE OF CONTENTS - TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

**Page No.**

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17204 ................................................................. 10

Cal. Bus. & Prof. Code § 17206 ................................................................. 10

Cal. Bus. & Prof. Code § 17207 ................................................................. 10

Cal. Bus. & Prof. Code § 17208 ................................................................. 10

**FEDERAL STATUTES**

12 C.F.R. § 226.17(a)(1) ................................................................. 5,6

12 C.F.R. § 226.17(c)(1) ................................................................. 6,7,10

12 C.F.R. § 226.19 ................................................................. 7

12 C.F.R. § 226.19(b)(2)(v) ................................................................. 9

12 C.F.R. § 226.22 ................................................................. 6

12 C.F.R. Pt. 226, Supp. I ................................................................. 5,8

12 C.F.R. § 1604(b) ................................................................. 10

15 U.S.C. § 1610(a)(1) ................................................................. 10

15 U.S.C. § 1610(d) ................................................................. 14

15 U.S.C. § 1640 ................................................................. 10

15 U.S.C. § 1640(e) ................................................................. 3,4

15 U.S.C. § 1640(f) ................................................................. 8,10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

A close examination of the Loan Documents against the specific requirements of the Truth in Lending Act ("TILA") reveals that Mortgage Investor Group, a general partnership ("MIG") did not, as a matter of law, violate TILA in making this loan. Repeatedly, Plaintiff Jay Ralston alleges TILA breaches out of obligations that are simply not created by TILA.  Further, where, as here, the loan disclosures were all given to the borrower, the one year statute of limitations applies.

Plaintiff's other claims are either attempts to expand the remedies and requirements of TILA by impermissible bootstrapping those claims onto state law causes of action or simply consist of making out of whole cloth terms which simply did exist in the loan documents and then alleging breach of those terms. This action is one that is appropriately resolved at the pleading stage.

## II.    THE FAILURE TO INCORPORATE BY REFERENCE ALLEGATIONS OF PARTIES, JURISDICTION, AND VENUE IS FATAL TO PLAINTIFF'S TILA CLAIM.

Plaintiff simply baldly asserts, without citation to authority, that all of the initial preceding paragraphs of the First Amended Complaint ("FAC"), paragraphs 1-52, apply to the Plaintiff's TILA claim, despite that the fact that the allegations of those first 52 paragraphs are not included in the TILA claim. Plaintiff simply states there is no requirement to incorporate those initial paragraphs regarding the underlying facts of the case, jurisdiction, venue and identification of the parties into the TILA claim.  Opposition, 4:19-5:6.   Plaintiff ignores *Fong v. Unites States*, 300 F.2d 400, 413 (9th Cir. 1962) which affirmed a dismissal of the fourth count of a complaint which failed to incorporate by reference earlier counts of the complaint.  Plaintiff ignores the authorities cited by Defendants that each cause of action must be separately stated. *See, Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).

Each cause of action must stand alone. The use of incorporation of by reference of preceding paragraphs does allow the pleader to have a stand-alone cause of action, without repeating all of the previously allegations of the complaint. In the instant matter, the Plaintiff simply did not incorporate

1

1  necessary allegations into his TILA cause of action. Therefore, that cause of action does not stand
2  alone, and must fail.

3  **III.    PLAINTIFF'S TILA CLAIMS ARE TIME-BARRED BY THE STATUTE OF**
        **LIMITATIONS.**
4

5          First Plaintiff argues that the TILA claim for damages cannot be time-barred because the

6  TILA claim seeks both rescission and damages, and the rescission claim is timely.   In support of this

7  position, Plaintiff only cites to cases discussing general rules of pleading a cause of action.

8  Opposition, 5:12-20.  Plaintiff provides no direct support for this argument and does not address the

9  many cases in which district courts have dismissed claims for civil damages under TILA, while

10 leaving claims for TILA rescission. *See, e.g., Knox v. Ameriquest Mortgage Co.*, 2005 WL 1910927,

11 at *3 (N.D. Cal. Aug.10, 2005) (granting motion to dismiss as to TILA damages claim but denying

12 motion to dismiss as to rescission).

13         Next Plaintiff argues that the pleadings do not demonstrate that the Plaintiff's claims are

14 untimely. It is well established that a TILA disclosure violation arises on the date of the loan closing,

15 when the disclosures are made or should have been made. *Meyer v. Ameriquest Mortgage Co.*, 342

16 F.3d 899, 902 (9th Cir. 2003) (failure to disclose occurs, if at all, at the time the loan documents are

17 signed); *Wherry v. All Cal. Funding*, 2006 WL 2038495, at *2 (N.D. Cal. July 20, 2006) (TILA

18 violation occurs when a consumer becomes contractually obligated on a credit transaction).  Plaintiff

19 does not dispute that his loan closed more than one year prior to the filing of this action. Therefore,

20 the pleadings, and documents of which the Court may take notice plainly demonstrate on their face

21 that the one year statue of limitations has passed.

22         In the face of this obvious time bar, Plaintiff merely argues that he has asserted claims against

23 Doe defendants whose claims might not be time barred.  Opposition, 6: 7-13.  Plaintiff cites no

24 authority to support this theory. If Plaintiff's theory of the Does were correct, the statute of

25 limitations could never be applied to a complaint which on its face the claim is otherwise time barred.

26         Next, Plaintiff argues that the doctrine of equitable tolling should be applied in order to toll

27 the statute of limitations which would otherwise be applicable. Opposition, 6: 15-7:1.  Equitable

28 tolling is to be applied sparingly and "[c]ourts have been generally unforgiving when a late filing is

2

1  due to claimant s failure to exercise due diligence in preserving his legal rights. *Barbera*, 2006 WL

2  167632, at *5 (dismissing TILA damages claim as time barred). Plaintiff bases his tolling argument

3  on the allegation that defendants' disclosures were not clear and conspicuous.

4    Plaintiff does not deny that he received the TIL, the Disclosure Statement and the Note when

5  his loan closed. These documents provided him with all the necessary information to discover the

6  terms of his loan. TILA is a highly detailed statutory scheme. If a disclosure were not "clear and

7  conspicuous", the lack of clearness and conspicuousness is apparent on the face of the documents.

8  Under Plaintiff's own theory of his case as pled in the FAC, there is nothing for Plaintiff to

9  "discover" later. Applying Plaintiff's theory of equitable estoppel would mean that there would

10  never be a case of a TILA claim that could be barred at the pleading stage. Indeed, in Plaintiff's

11  hands, the one year statute of limitation becomes meaningless. Plaintiff argues that there must be

12  some further sort of "factual inquiry" to determine if the one year statute of limitations can be

13  applied. Indeed, in this case, what could that factual inquiry possibly be? Plaintiff does not deny

14  having been given the loan disclosures but merely alleges that <u>on their face</u> those disclosures are

15  defective. The terms and disclosures are what they are. The terms and disclosures are all in the

16  documents. To apply equitable tolling in this case would simply mean that equitable tolling is applied

17  in every single TILA violation claim, and that is simply not the law.

18    Lastly, Plaintiff argues that the "continuing violation" renders Plaintiff's claims timely.

19  Opposition, 7:2-8:2. As Plaintiff notes, the Ninth Circuit has specifically rejected the continuing

20  violation theory. In interpreting TILA s section 1640(e), it has reject[ed] the continuing violation

21  theory as unrealistically open-ended. It exposes the lender to a prolonged and unforeseeable liability

22  that Congress did not intend. *King v. State of California*, 784 F.2d 910, 914 (9th Cir. 1986).

23  Specifically, in *King*, the Ninth Circuit held that a failure to make required disclosures at loan

24  consummation did not constitute a continuing violation such that the TILA statute of limitations

25  would not accrue until the required disclosures were actually made. *Id.* Rather, the statute of

26  limitations runs from the time the loan was consummated regardless of whether the required

27  disclosures are ever made. *Id.* at 915. There are a host of other district court cases dismissing

28

3

untimely claims for civil damages under 15 U.S.C. § 1640(e). *See Barbera v. WMC Mortgage Corp.*, 2006WL 167632, at *5 (N.D. Cal. Jan. 19, 2006); *Stone v. R.E.F.S., Inc.*, 2005 WL 2171954, at *4 (N.D.Cal. Sept. 8, 2005); *Monaco v. Bear Stearns Residential Mortgage Corp.*, 2008 WL 867727, at *3 (C.D. Cal. Jan. 28, 2008) (dismissing TILA damages claim as time barred in ARM case similar to Plaintiff's).

Plaintiff relies on an inapposite case that addresses racial steering claims under the Fair Housing Act. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). In so relying, Plaintiff offers no authority to suggest how *Havens* has any application outside of the confines of the Fair Housing Act. Nor does Plaintiff address the fact that at least one of the named plaintiffs in *Havens* had asserted a timely claim, which is not the case here.

Plaintiff tries to distinguish *King* by arguing that "Plaintiff's complaint encompasses transactions that very may very well have occurred within the statutory period, and, thus, there is no basis for assuming they were untimely." Opposition, 8:1-2. Plaintiff does not identify anywhere in the FAC that these transactions are pled, and they are not in the FAC. The Complaint itself pleads that "on or about July 20, 2005 Plaintiff refinanced his existing home loan...." FAC ¶ 2. The Note, Rider and Truth in Lending Statement ("TIL") are in conformance. (Exhs. "A", "B", and "C" to Dec. of Rhea.). There is no doubt that the one year statute of limitations is long since passed.

## IV.    PLAINTIFF AGAIN MISTATES THE REQUIREMENTS OF THE STATUTORY SCHEME OF TILA

Close examination of the actual requirements of TILA reveals that not only do the loan documents comply with the statutory scheme but there is not other manner in which MIG could have properly made the disclosures.

### A.    Plaintiff's Theory That MIG Disclosed Two Conflicting APR's Is Contradicted by the Documents and TILA, Which Provides for Only One APR Disclosure.

Plaintiff's support of its first argument for a TILA violation is meandering and confusing. It is important to note that the Plaintiff's allegation is that the defendants have violated TILA because they listed two contradictory APR's: one on the TIL and one on the Note. Plaintiff cites no authority that an APR must be included in a Note, and indeed, TILA does not so require. Plaintiff's Opposition may

4

give the impression that Plaintiff alleges that the APR on the TIL was improperly figured, but that is

not the allegation of the FAC.    Also, Plaintiff's seem to argue that the APR on the TIL is unclear

because of the interplay between the APR and the low initial Note rate.

The Official Staff Commentary to 12 C.F.R. § 226.17(c)(1), on which Plaintiff bases his claim

of failure to disclose the APR correctly states:

> Basis of disclosures in variable-rate transactions. The disclosures for a variable-
> rate transaction must be given for the full term of the transaction and must be
> based on the terms in effect at the time of consummation. Creditors should base the
> disclosures only on the initial rate and should not assume that this rate will
> increase.. . . However, in a variable-rate transaction with a. . . discounted or
> premium rate, disclosures should not be based solely on the initial terms. In those
> transactions, the disclosed annual percentage rate should be a composite rate based
> on the rate in effect during the initial period and the rate that is the basis of the
> variable-rate feature for the remainder of the term.

12 C.F.R. Pt. 226, Supp. I, at Para. 17(c)(1)(8) (emphasis added).

This rule simply requires that the APR, which appears only on the TIL, be a composite rate

rather than the one-percent initial interest rate. The TIL specifies that the APR on Plaintiffs'

mortgage is 5.756%. This amounts to a composite rate --a weighted average of the brief one-percent

initial  rate and the permanent, higher indexed rate -- based on the value of the Index at the time the

TIL was produced. Plaintiff's allegations are therefore contradicted by the Note, and they have not

stated a TILA claim on this basis.

To the extent that the Plaintiff continue to claim that the Note itself had to have the APR

disclosed in it, Plaintiff has cited no authority for such a proposition, and so such authority exits.

**B.    The Schedule of Payments on the TIL Did Not Violate TILA.**

Plaintiff alleges that defendants violated 12 C.F.R. § 226.17 by failing to clearly and

conspicuously "disclose the interest rate upon which the payments schedule is based. (Opposition

12:17-21 (citing FAC ¶ 62). TILA, though, contains no such requirement.  Plaintiff misreads the

"clear and conspicuous" requirement in § 226.17(a)(1) as if it were a stand-alone disclosure

requirement. It is not. It is a standard applied to very specific sections of Subpart C. This is why §

226.17(a)(1) states "[t]he creditor shall make the ***disclosures required by this subpart*** clearly and

5

1  conspicuously in writing." 12 C.F.R.§ 226.17(a)(1) (emphasis added).

2      Plaintiff also continues to confuse the contractual interest rate and the Annual Percentage

3  Rate ("APR"), in what appears to be a deliberate attempt to obfuscate. Regulation Z requires the

4  TIL to disclose an APR, not the contractual interest rate upon which the payment schedule is based.

5  As explained in defendant's opening brief, the APR is entirely from the interest rate, and calculation

6  of the APR is governed by 12 C.F.R. § 226.22 and 12 C.F.R.pt. 226, App. J. Moreover, the

7  calculation of the payment schedule is governed by 12 C.F.R. § 226.18(g), which requires the lender

8  to make a number of TILA-mandated assumptions in calculating the scheduled payments. *See* 12

9  C.F.R. pt. 226, Supp. I, cmts. 17(c)(1)-1, 8, & 10.

10     Pursuant to these mandated assumptions, the payment schedules set forth in the TILA

11  Disclosure Statement did include both principal and interest, sufficient to repay the entire loan over

12  the scheduled loan term. It is true that the listed payments are lower in the earlier years of the loan

13  and increase in the later years, but this is a reflection of the payment cap feature of the loan. It is not

14  true that the listed payments are insufficient to pay off all principal and accumulated interest over

15  the life of the loan. Tellingly, Plaintiff does not allege that the payment schedule was not prepared

16  in the manner specified by 12 C.F.R. § 226.18(g). As explained in Defendants' opening

17  brief, nothing in Regulation Z requires, or even allows, the TILA Disclosure Statements to explain

18  how the payment schedule was calculated. Accordingly, Plaintiff's claim that Defendants

19  should have disclosed "the interest rate upon which the payments listed in the TILDS are based" is

20  simply not actionable.

21      **C.    The Payment Schedule Did Not Violate TILA by Failing to Disclose Borrower's
       "Legal Obligation."**

22

23      Plaintiff next contends that Defendants violated 12 C.F.R. § 226.17 by failing to list payment

24  amounts in the TIL that reflected his "legal obligation."  In arguing that the payment schedules set

25  forth in their TILA Disclosure Statement was inaccurate, Plaintiff purposefully turns a blind eye to

26  the second half of the schedules. A central feature of Plaintiff's loan was the payment cap, which

27  limited how much the required Minimum Payment could increase in the early years of the loan.

28  While Plaintiff had the option of making fully-amortizing or interest-only payments, he was only

1   legally obligated to make the Minimum Payment. (Exs "A", "B", and "C" to Dec of Rhea.) The

2   payment schedules set forth on the TILA Disclosure Statements reflect this term of the parties'

3   agreements. As a result of the payment cap term, Mr. Ralston's listed payments did not increase

4   dramatically until month 61. Thereafter, pursuant to Section 3(G) of the Note, the Minimum Payment

5   is also the Full Payment due each month, which is interest and an amount of principal in substantially

6   equal amounts necessary to pay off the principal at the maturity date.

7        Plaintiff pretends that the TILA Disclosure Statements simply listed the initial, low monthly

8   payments as being in effect throughout the life of the loan, and thereby hid from him the possibility

9   of negative amortization. This is not true. The payment schedule clearly set forth dramatic increases

10  in payments a few years into the loan. In month 61, Plaintiff's listed payment jumped from $2,233.61

11  to $3,500.49. Rhea Dec. Exh. "C". Thus, the TILA Disclosure Statements highlighted the fact that, if

12  Plaintiff chose to make only the Minimum Payments, he would have dramatically increased payment

13  obligations a few years into the loan.

14       (Plaintiff's apparent belief that language in the Note can give rise to a violation of 12 C.F.R.

15  § 226.17 and 12 C.F.R. § 226.19 is similarly misguided, as these sections do not apply to Notes.)

16       **D. The Loan Program Disclosure Fully Disclosed the Negative Amortization.**

17       Plaintiff next contends that Defendants violated TILA by "concealing the fact that negative

18  amortization was certain to occur if borrowers adhered to the payment schedules provided." (Opp'n

19  14:1-2.) This theory is both factually and legally flawed. As an initial matter, § 226.17 does not

20  require any disclosures regarding negative amortization. Section 226.19 is the only provision of

21  Regulation Z that requires disclosures regarding negative amortization, which is to be made in the

22  Program Disclosure, not the TILA Disclosure Statement or the Note. 12 C.F.R. § 226.19. Plaintiff's

23  new contention that his Program Disclosure did not comply with the requirements of § 226.19 was

24  not raised in his FAC and rests upon a gross mischaracterization of § 226.19.

25       Regulation Z and the Commentary do not require a statement that negative amortization is

26  certain to occur. Rather, "[a] creditor must disclose, where applicable, the ***possibility*** of negative

27  amortization. For example, the disclosure might state, 'If any of your payments is not sufficient to

28

7

cover the interest due, the difference will be added to your loan amount.'" 12 C.F.R. pt. 226,

Supp. I, cmt. 19(b)(2)(vii)-2 (emphasis added). Mortgage Investment Group did this. The first page of

the Program Disclosure stated:

> Beginning with the 13th payment and every 12th month thereafter, we will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal balance in full by the maturity date in substantially equal payments at the interest rate in effect during the month preceding the payment change date. This payment is called the "Full Payment." Except as otherwise provided your "Limited Payment" will be the payment amount for the month preceding the payment change date increased by no more than 7.5% ("Payment Cap"). Your new "Minimum Payment" will be the lesser of the Limited Payment and the Full Payment. You also have the option to pay the Full Payment for your monthly payment. If you pay less than the Full Payment, then the payment may not be to enough cover the interest due, and any difference will be added to your principal balance. **This means the balance of your loan could increase. This is known as "negative amortization."** During the loan term, we may provide you with other monthly payment options that are greater than the Minimum Payment ("Payment Options"). Please ask about these Payment Options.

(Rhea Dec. Ex. D, emphasis added).

Because Mortgage Investors Group's Program Disclosure complied with the requirements of Regulation Z, as further elaborated by the Commentary, Mortgage Investors Group cannot be deemed to have violated TILA. 15 U.S.C.§ 1640(f) (There is no TILA liability for "any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board[.]").

Plaintiff's reliance on language in the Commentary relating to options is misplaced. Opp'n 14:3-6. Paragraph 226.19(b)(2)(vii)-2 states that "[i]f a consumer is given the option to cap monthly payments, the creditor must fully disclose the rules relating to the option, including the effects of exercising it (such as if negative amortization occurs and that the principal balance will increase)." 12 C.F.R. pt. 226, Supp. I, cmt. 19(b)(2)(vii)-2. This Paragraph does not apply to Mortgage Investor Group's loan program. By its terms, this Paragraph applies only when the borrower has the "option," as that term is traditionally understood, to cap monthly payments. Because

1  the capping of monthly payments in Plaintiff's loans is automatic, and does not require Plaintiff to

2  take affirmative steps to exercise, the cited Paragraph does not apply. In any event, the Program

3  Disclosures did fully disclose the effects of selecting the Minimum Payment option.

4        Contrary to plaintiffs' claims, Mortgage Investors Group could not have disclosed that

5  negative amortization was always certain to occur if Plaintiff selected the Minimum Payment option,

6  because it was not. Over the life of the loan, there would be many instances in which selecting the

7  Minimum Payment option would be sufficient to avoid negative amortization. For example, in the

8  61st month of year, after the mandatory 5-year reamortization event, making the Minimum Payment

9  would, by definition, be sufficient to cover both accrued principal and interest because of the

10  requirements of the Note. Rhea Dec. Exh. "A" at 3(D) and 3(G)  It thus would have violated TILA to

11  state that negative amortization was certain to occur by making the Minimum Payment.

12        **E.    The Disclosure of the Discounting of the Initial Rate Complied with TILA**

13        Plaintiff next contends that defendants violated TILA by failing to disclose that the initial rate

14  was discounted. Opp'n 15:12-20. The disclosure of the discounting of the initial interest rate is to be

15  made in the Program Disclosure, not in the Note or the TILA Disclosure Statement. 12 C.F.R. §

16  226.19(b)(2)(v). Mortgage Investors Group's Program Disclosure does contain the required

17  disclosure regarding the initially discounted interest rate. It provides: "Your initial interest rate is not

18  based on the index used to make later adjustments" and " Examples of loans with a discounted

19  interest rate (below sum of index and margin)... Initial Interest Rate....1.00%" (Exh. "D" Rhea dec.)

20  Plaintiff's allegations must yield to these statements.

21        **F.    Plaintiff Does Not State a Claim for Failure to Disclose the Composite APR.**

22        Plaintiff does not attempt to defend in his Opposition his duplicative allegation that the

23  defendants failed to "clearly and conspicuously disclose the composite annual percentage rate on

24  these loans and instead listed a different interest rate in the documents provided to consumers...."

25  FAC ¶ 94. The APR is clearly and boldly displayed on the TIL.  Plaintiff simply has not pled how

26  this disclosure of the APR stated violates TILA.

### G.    The Effect of the Payment Cap is Fully Disclosed.

Essentially repeating prior arguments, Plaintiff next contends that defendants violated Paragraph 226.17(c)(1)-10.iii of the Commentary because the disclosures did not reflect "the effect of [the] payment cap." Opp'n 15:24-16:19. As set forth above, a cursory review of the TILA Disclosure Statement demonstrates that this argument is nonsense. Plaintiff does not, and cannot, dispute that the payment schedule listed on his TILA Disclosure Statements was calculated by applying the payment cap and reamortization provisions of his Note. That is why the payments increase dramatically in month 61.

Recognizing this serious flaw in his argument, Plaintiff tries to stretch the requirements of Paragraph 226.17(c)(1)-10.iii of the Commentary by arguing that Defendants should also have provided an *explanation of the ramifications* of the payment cap—i.e., that the payment cap would result in some exact amount of negative amortization. Nothing in Regulation Z or the Commentary requires this. On the contrary, the model TILA Disclosure Statement form set forth in Appendix H of Regulation Z lacks the type of explanation Plaintiff seeks. Mortgage Investors Group's TILA Disclosure Statements followed the model form in that regard.  As such, MIG complied with Regulation Z. *See* 15 U.S.C. § 1604(b) ("A creditor or lessor shall be deemed to be in compliance with the disclosure provisions of this subchapter . . . if the creditor or lessor . . . uses any appropriate model form or clause as published by the Board[.]"); 15 U.S.C. § 1640(f).

### V.    PLAINTIFF'S UCL CLAIM BASED ON TILA IS PREMPTED BY TILA AND FAILS TO STATE A CLAIM BECAUSE OF THE FAILURE TO STATE A TILA CLAIM.

TILA preempts Plaintiff's first UCL claim because the claim seeks to dramatically alter the remedial scheme carefully set forth in TILA. *See* 15 U.S.C. § 1610(a)(1) (TILA preempts state laws to the extent that those laws are inconsistent with the provisions of TILA). The evident purpose of Plaintiff's duplicative cause of action is to increase the limitations period (from one year under TILA for civil damages, to four years under the UCL) and to increase available types of relief (from actual and statutory damages, the latter capped at $500,000 in a TILA class action, to an uncapped amount of restitution and injunctive relief under the UCL). *Compare* 15 U.S.C. § 1640 *with* Cal. Bus. & Prof. Code §§ 17204, 17206, 17206, 17207, & 17208.

1    This kind of artful pleading is barred under TILA. Indeed, the Ninth Circuit expressly

2    rejected the very practice plaintiff now attempts. In *Silvas*, the Ninth Circuit found that: An attempt

3    by [plaintiff] to go outside the congressionally enacted limitations period of TILA is an attempt to

4    enforce a state regulation in an area expressly preempted by federal law. *See Silvas*, 514 F.3d at

5    1007 (dismissing UCL claim predicated on TILA violation). That is exactly Plaintiff s objective.

6    *Silvas* is controlling for purposes of Plaintiff s UCL claim, and the inquiry ends here. Plaintiff argues

7    that *Silva* is inapposite because the case also dealt with preemption under HOLA. Defendants are not

8    arguing HOLA preemption. TILA itself preempts this cause of action. *See also Reyes*,

9    2008 WL 867722 at *6 (states may not avoid preemption by adopting federal laws and adding

10   supplemental remedies ).[1]

11   Where a state law would stand as an obstacle to the accomplishment and execution of the full

12   purposes and objectives of Congress, the federal law preempts the state law. *Silvas*, 514 F.3d at

13   1004; *see also* 15 U.S.C. § 1610(a)(1); *American Bankers Ass n*, 239 F. Supp. 2d at 1008. To allow

14   Plaintiff s bootstrapped UCL claim would permit state law to greatly expand and distort Congress's

15   closely-drawn remedial scheme under TILA, and the UCL claim based on TILA should therefore be

16   dismissed.[2]

17   ///

18

---

19   [1] To the extent that *Monaco v. Bear Stearns Residential Mortgage Corp.* holds differently, it is
20   wrongly decided and not binding on this Court. Indeed, *Monaco* came out two days before *Silvas*,
     and thus its holding would likely have been different had the Central District had the benefit of the
21   *Silvas* decision at the time. *Compare Monaco v. Bear Stearns Residential Mortgage Corp.*, 2008
     WL 867727 (C.D. Cal. Jan. 28, 2008) *with Silvas v. E*Trade Mortgage Corp.* 514 F.3d 1001 (9th
22   Cir. Jan. 30, 2008).

23   [2] Plaintiff s other authority is equally unavailing. *In re First Alliance Mortgage Co.*, 280 B.R.
     246 (C.D. Cal. 2002) is inapposite because it did not address either the additional limitations period
24   available under the UCL or the inconsistency between the UCL and TILA arising from the TILA
     statutory cap on class action damages. *Id.* at 251. *Magee v. Exxon Corp.*, 135 F.3d 599, 602 (8th
25   Cir. 1998) addressed the doctrine of complete preemption which is relevant in the context of
     removal and the well-pleaded complaint rule but irrelevant in Plaintiff s action. *See id.* at 602.
26   Finally, *In re Ferrell*, 358 B.R. 777, 792 (9th Cir. BAP 2006) failed to reach the issue of whether
27   TILA permitted a double recovery under both TILA and a state consumer protection statute and thus
     does not support Plaintiff s position.
28

11

**VI.    THE ALLEGED FRAUDULENT OMISSIONS ARE NOT ACTIONABLE.**

There can be no fraudulent omissions where the alleged material facts were not suppressed, but rather, were actually disclosed in the Loan Documents Plaintiff received. *See Stetler v. Greenpoint Mortgage Funding, Inc.*, No. 07-123, 2008 WL 192405, at *7 (E.D. Cal. Jan. 23, 2008) ("Plaintiff read and signed the documents that disclosed the issues that he now complains of. That he may not have understood the meaning of the documents, as he now seems to contend, does not render otherwise sufficient disclosures ineffective."). As set forth in the moving papers, Mortgage Investors Group's Loan Documents did set forth all of the supposedly concealed items, namely:(i) the contractual rate of interest, (2) the possibility of negative amortization (which was not certain to occur), and (3) the fact that the initial interest rate was not based on the Index, but was discounted. The fraudulent omissions claim is thus without factual foundation.

The fraudulent omissions claim also fails, as a matter of law, because there was no duty to make additional disclosures. To the extent Plaintiff suggests that a contractual relationship in and of itself is enough to trigger the duty to disclose, that is incorrect. Such a relationship is necessary, but not sufficient, to trigger the duty to disclose. *See Wilkins v. Nat'l Broad. Co.*, 71 Cal. App. 4th 1066, 1082 (1999) (active concealment, exclusive knowledge, and partial representations each "presuppose[] the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise"). Plaintiff pleads no factual predicate for his assertion that Defendants supposedly had exclusive knowledge of the facts that they "actively concealed." Instead, Plaintiff merely recites the phrase "actively concealed," "exclusive knowledge," and "facts known solely to them." These bare allegations are not enough, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"), especially where Plaintiff admits he received the Loan Documents. (FAC ¶ 2)

Plaintiff also ignores *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 132-33 n.7 (2007), which holds that if a statute does not require disclosure, there can be no corresponding duty for fraudulent concealment purposes. As discussed above, TILA does

not mandate the *additional* disclosures Plaintiff seeks, and thus will not support his fraudulent omissions claim. It must be dismissed.

## VII.  PLAINTIFF'S FOURTH CLAIM FOR BREACH OF UCL PREDICATED ON "UNFAIR" OR "FRAUDULENT" BUSINESS PRACTICES IS ALSO PREEMPTED AND FAILS TO STATE A CLAIM

Tellingly, Plaintiff's Opposition papers simply fail to address the challenges raised by Defendants to Plaintiff's fourth cause of action for breach of the UCL based on unfair or fraudulent business practices. Plaintiff does not even acknowledge that to the extent that this UCL claim purports to allege that even though MIG abided by all required TILA disclosures, the disclosures or omissions were unlawful, such a theory cannot be supported by a UCL claim. *Byars v. SCME Mortg. Bankers, Inc.* (2003) 109 Cal.App.4[th] 1134, 1148-1149.  Where MIG is in complete TILA compliance, MIG cannot ipso facto be engaging in conduct that is substantially injurious to consumers.

Likewise Plaintiff does not respond to the argument that this UCL claim is at its core an attempt to challenge the fairness of the Plaintiff's mortgage contract. It is, however, well-settled that the UCL is not to be used for that purpose. *See, e.g., South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.App.4[th] 861 (1999).

Plaintiff does reject Defendants' assertion that this UCL claim fails because the FAC is devoid of the minimal allegations necessary to state a plausible claim under the unfairness or fraud prongs of the UCL. *Bell Atlantic Corp. v. Twombley* –U.S.—127 S.Ct. 1955, 1965-65 (motion to dismiss should be granted where plaintiff's allegations are not "enough to raise a right to relief above the speculative level.")  As noted in the moving papers, Plaintiff has merely made amorphous conclusionary allegations of bad behavior. The California Supreme Court has criticized allowing such "amorphous" allegations to form the basis of a claim. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4[th] 163, 167.

In responding to this charge, Plaintiff presumably could have easily cited to specific allegations of the FAC, but Plaintiff only makes a general reference to the FAC. As noted, the FAC is

13

merely conclusionary statements. UCL claim does not meet the requirements of Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

## VIII.    PLAINTIFF'S BREACH OF CONTRACT CLAIM DOES NOT IDENTIFY ANY BREACHED TERMS.

In his opposition, as in his Complaint, Plaintiff fails to identify a specific breach of any term contained in the Note, the contract at issue. Plaintiff attempts to articulate a breach by relying on his own characterization of what he thinks the Note says and by pointing to bits and pieces of the allegations contained in the FAC. Specifically, Plaintiff appears to narrow the alleged breach to the failure to apply any of the monthly payments to principal. Opposition, 24:3-4.

Nowhere in the Note does MIG promise Plaintiff that his monthly payment obligation will be sufficient to cover both principal and interest. On the contrary, as fully laid out in MIG's opening brief, the Note makes it clear that negative amortization may occur and that, if the borrower selects the Minimum Payment option, it might not be sufficient to cover both principal and interest. Section 3(A) of the Notes specifies how payments will be applied in such an instance: "Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal." Section H of the Note lays out an interest only payment option.

In an attempt to salvage his breach of contract claim, Plaintiff infuses ambiguity where none exists. Plaintiff insists that the Note contains multiple conflicting terms [or] intentionally confusing language. But in order to make this argument, Plaintiff mischaracterizes the Note and almost never quotes directly from its terms and also tries to characterize the Note as conflicting with the TIL. However, the Note is an integrated agreement, *see, e.g., Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 484-86 (1989), and it cannot be modified by the TIL Disclosure Statement. Indeed, TILA treats disclosures as separate and distinct from the underlying agreement, providing that a violation of its provisions does not affect the contract. 15 U.S.C. § 1610(d). It would therefore be illogical to read the TIL Disclosure Statement into the Note.

## IX.    PLAINTIFF    CANNOT    IMPLY    ANY    COVENANTS    INTO    THE    LOAN AGREEMENT.

Plaintiff's Opposition simply does not address the issues raised by the motion to dismiss as to

14

1  this claim of a breach of an implied covenant. There simply is no fiduciary relationship between the

2  parties plead in the FAC, therefore there can be no breach of the tortious breach of an implied

3  covenant. Plaintiff says he is alleging a tortious breach. The cases cited by Plaintiff concern implying

4  the contractual term of good faith and fair dealing into the contract. Those cases are not applicable

5  here. Further, a party cannot state a claim for breach of the implied covenant of good faith and fair

6  dealing where the express terms of the contract permit the challenged conduct. *See Solomon v. N. Am.*

7  *Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998); *Carma Developers (Cal.), Inc. v.*

8  *Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992). As explained directly above, the terms of the

9  parties' contract permit the conduct challenged by Plaintiff.

10  **X.    PLAINTIFF IMPLICITLY CONCEDES THAT MORTGAGE INVESTORS GROUP,
         INC. SHOULD BE DISMISSED AS IT DID NOT MAKE THE LOAN IN ISSUE**

11

12         In his Opposition, Plaintiff does not even address the issue of Mortgage Investors Group,

13  Inc.'s complete lack of involvement in the loan that is the subject of this action. Mortgage Investors

14  Group, Inc. was not the lender, according to the note, the deed of trust or all of the disclosures that

15  are properly before the Court.  Those documents control in the face of contradictory allegations in the

16  FAC. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). All of the loan

17  documents before the Court reflect that only Mortgage Investors Group, a general partnership made

18  the loan, including the disclosures to Plaintiff. Since the written instruments must control over any

19  allegations of the pleading, Mortgage Investors Group, Inc. should be dismissed as having absolutely

20  no involvement in the transaction that is the subject of this action. The lack of opposition by Plaintiff

21  is also grounds to dismiss the Mortgage Investors Group, Inc. *See Valley Air Conditioning & Repair,*

22  *Inc.*, 2007 WL 2758018, at *2 (dismissing claims that plaintiff failed to contest in its opposition

23  brief).

    Dated: August 1, 2008                          PFEIFER & REYNOLDS, LLP

24

25                                      By:    /s/ Roland P. Reynolds
                                               ROLAND P. REYNOLDS, Esq.
26                                             Attorneys for Defendants MORTGAGE
                                               INVESTORS GROUP, INC. and MORTGAGE
27                                             INVESTORS GROUP

28