**E-Filed 3/16/09**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAY J. RALSTON,<br><br>  Plaintiff,<br><br>  v.<br><br>MORTGAGE INVESTORS GROUP, INC., et al.,<br><br>  Defendants. | Case Number C 08-536 JF (RS)<br><br>ORDER[1] (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND; AND (2) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND<br><br>[re: document nos. 25, 42] |

Before the Court are Defendants' motion to dismiss Plaintiff's first amended complaint ("FAC"), and Plaintiff's motion for leave to file a second amended complaint ("SAC"). The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on the motion to dismiss. Plaintiff's motion for leave to amend was taken under submission without oral argument. *See* Civ. L. R. 7-1(b). For the reasons discussed below, the motion to dismiss will be granted in part and denied in part with leave to amend, and the motion for leave to amend will be granted.

---

[1] This disposition is not designated for publication in the official reports.

## I. BACKGROUND

This action arises out of a residential mortgage transaction in which Defendants Mortgage Investors Group, Inc. and Mortgage Investors Group (collectively, "Defendants") allegedly violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., as well as state laws. Plaintiff Jay J. Ralston ("Ralston") alleges that in July 2005 he refinanced his existing home loan by entering into an option adjustable rate mortgage ("ARM") loan agreement with Defendants. FAC ¶ 2. The loan was secured by Ralston's primary residence. *Id*. Ralston alleges that Defendants represented that the loan would have a very low interest rate of 1% for the first three to five years of the loan; that in fact this low "teaser" rate applied only for the first month; and that the interest rate on the loan thereafter increased significantly. *Id*. at ¶¶ 21-23.

Defendants allegedly provided a written schedule of minimum payments that appeared to correspond to the initial annual interest rate of 1%, and represented that if Ralston made the scheduled payments, such payments would be applied to interest plus principal, and that the loan would be "a no negative amortization home loan." *Id*. ¶ 23. Ralston alleges that in fact the interest rate on the loan increased significantly after the first month, and that the monthly payments on the loan remained low only because the loan was subject to a payment cap of 7.5%; in other words, while *interest* rates could increase without restriction each month, *payments* due on the loan could increase no more than 7.5% a year. *Id*. ¶ 104.

Because the terms of the loan provided for interest rates to rise while the minimum monthly payment remained flat, after the first month the minimum monthly payments were insufficient to cover even the interest on the loan, and were not applied to principal at all. *Id*. ¶ 26. The unpaid interest was added to the principal loan balance and itself began earning interest; Ralston alleges that Defendants did not disclose that hundreds or thousands of dollars would be added to his principal loan balance each month if he followed the minimum payment schedule given to him by Defendants. *Id*. ¶¶ 31, 106. Moreover, Defendants allegedly did not disclose that when the principal balance on the loan increased to a certain level, the payment cap no longer would apply, and Ralston no longer would have the option of making a low fixed monthly payment. *Id*. ¶ 32. Because his loan agreement had a stiff pre-payment penalty, Ralston alleges

1 that he had no viable way to extricate himself from the loan. *Id*. ¶ 28.

2     Ralston filed this putative class action on January 24, 2008, asserting claims under TILA and state law on behalf of himself and all others similarly situated. He filed the operative FAC on May 8, 2008, alleging claims for: (1) violations of TILA; (2) violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq*.; (3) fraudulent omissions; (4) violations of California's UCL, Bus. & Prof. Code § 17200 *et seq*.; (5) breach of contract; and (6) tortious breach of the implied covenant of good faith and fair dealing.

    Defendants move to dismiss all claims of the FAC. Following oral argument and submission of Defendants' motion, Ralston filed a motion for leave to file a proposed SAC. Ralston asserts that after he filed the operative FAC, Defendants produced documents identifying Countrywide Home Loans, Inc. as a subsequent purchaser of his loan, and the Bank of New York as a subsequent investor or assignee of his loan. Ralston seeks leave to add these entities as defendants. He also seeks leave to correct a drafting error in the FAC, which caused him to fail to incorporate into his first claim the prior fifty-two paragraphs of the FAC.

    Defendants oppose Ralston's motion, pointing out that if Ralston is permitted to file a SAC, such pleading would supersede the FAC and moot Defendants' pending motion to dismiss. Moreover, Defendants argue that the proposed SAC submitted with Ralston's motion does not cure the defects in the FAC that are raised by Defendants' motion to dismiss.

    In reply, Ralston acknowledges the detailed order that this Court issued in a substantially similar case, *Amparan v. Plaza Home Mortg., Inc.*, 2008 WL 5245497 (N.D. Cal. Dec. 17, 2008). Ralston states that in order to "streamline" the litigation in the instant case, he has submitted a revised proposed SAC that is consistent with the *Amparan* order. Ralston requests that the Court permit him to file his revised proposed SAC, vacate as moot Defendants' pending motion to dismiss, and move on with the litigation.

    Although Ralston's suggestion has some appeal, the Court declines to follow it. While the loan documents in this case are quite similar to those in *Amparan*, they are not identical. Moreover, Defendants in the instant case raise arguments that were not raised by the defendants in *Amparan*. Finally, because the Court concludes that the FAC is subject to dismissal with leave

to amend, it appears that the most appropriate course is to grant Ralston leave to amend without comment on the viability of his proposed revised SAC. With respect to the addition of party defendants, the Court will grant Ralston's motion for leave to amend and leave it to those parties to raise any appropriate challenge to their addition to the case.

## II. MOTION TO DISMISS

**A.     Legal Standard**

A complaint may be dismissed for failure to state a claim upon which relief may be granted for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). A complaint should not be dismissed "unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg*, 18 F.3d at 754. In addition, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995). Conversely, dismissal may be ordered with prejudice when amendment would be futile. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

**B.     Documents Considered By The Court**

In connection with the loan transaction at issue, Ralston executed an Adjustable Rate Note and Prepayment Penalty Addendum (collectively, "Note"), Adjustable Rate Rider ("Rider"), Deed of Trust, Truth In Lending Disclosure Statement ("Statement"), and Adjustable Rate Loan Program Disclosure ("Disclosure"). Only the Note and Statement are attached to the FAC. Defendants provide the Rider and Disclosure in connection with their motion to dismiss. The Court properly may consider all of these documents, which make up the complete set of documents comprising the loan transaction and which are referenced extensively in the FAC. *See In re Stac Elcs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (noting that complete copies of documents whose contents are alleged in the complaint may be considered in

connection with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)).

**C.     TILA Claims**

    **1.     Failure To Incorporate Paragraphs 1-52**

Defendants argue that because claim 1, the TILA claim, begins at paragraph 53 but fails to incorporate paragraphs 1-52, it fails to allege sufficient facts to state a claim for violation of TILA. Obviously, this drafting error can be corrected; the Court presumes that Ralston will correct the error when he amends to address the substantive defects in the FAC discussed below.

    **2.     Statute of limitations**

Defendants argue that Ralston's claims for damages under TILA are barred by the applicable one-year limitations period, which begins to run when the transaction underlying the alleged violation is "consummated." *See King v. California*, 784 F.2d 910, 915 (9th Cir.1986). Ralston seeks both money damages, for which the limitations period is one year, *see* 15 U.S.C. § 1640(e), and rescission, for which the limitations period is three years, *see* 15 U.S.C. § 1635(f). His claims arose at the latest when his mortgage transaction closed on July 20, 2005. FAC ¶ 2, Ex.1. He did not file the instant action until January 24, 2008, by which time the one-year (but not the three-year) limitations period had expired.

"[T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King*, 784 F.2d at 915. A motion to dismiss on statute of limitations grounds should be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Plascencia v. Lending 1st Mortgage* ("*Plascencia II*"), 583 F. Supp. 2d 1090, 1097 (N.D. Cal. 2008) (quoting *Durning v. First Boston Corp.*, 815 F.2d 1265, 1278 (9th Cir. 1987)). The thrust of Ralston's claims is that the loan documents were so confusing as to obfuscate the true terms of the loan, and that because he did not understand the true terms of the loan at the time of the transaction, he did not realize until later that Defendants had failed to disclose certain aspects of the loan in a clear and conspicuous manner as required by TILA. *See, e.g.,* 12 C.F.R. § 226.17(a)(1) (requiring that disclosures be made "clearly and conspicuously").

As is discussed in greater detail below, Ralston alleges that the loan documents were misleading and did not clearly disclose that the "teaser" interest rate would increase after only thirty days, FAC ¶ 30, or that negative amortization was certain to occur if he followed the minimum payment schedule provided by Defendants, FAC ¶ 31.  Because a reasonable person in Ralston's position might not have understood the true terms of the loan based upon the documents provided, and might not have understood at the time of the transaction that Defendants had failed to make required disclosures "clearly and conspicuously," equitable tolling may be warranted.  Accordingly, the Court will deny the motion on statute of limitations grounds.  This ruling is without prejudice to Defendants' assertion of the statute of limitations at a later date in the litigation if appropriate, for example, in the context of a motion for summary judgment.

### 3. Violations of 12 C.F.R. § 226.19

Ralston claims that Defendants violated § 226.19 by failing clearly and conspicuously to disclose (1) the actual cost of the loan, expressed as an annual percentage rate, (2) that the initial interest rate offered on the loan was a discounted rate, and (3) that if he followed the payment schedule provided by Defendants, negative amortization was certain to occur.  Defendants argue that the requirements of § 226.19 apply exclusively to the Disclosure, and not to the Note, Statement, or any other document provided in connection with the loan transaction.  While Defendants' construction is a reasonable one given the language of the regulations, *see* 12 C.F.R. § 226.19(b)(2) (requiring a "loan program disclosure" containing specified information), several courts – including this one – have held that § 226.19 applies when the alleged TILA violation arises from statements in multiple documents.  *See, e.g.*, *Amparan*, 2008 WL 5245497, at *5 (discussing cases and denying motion to dismiss § 226.19 claim based upon multiple loan documents); *Plascencia v. Lending 1st Mortgage* ("*Plascencia I*"), 2008 WL 1902698, at *4-6 (N.D. Cal. April 28, 2008) (same); *Pham v. T.J. Fin., Inc.*, 2008 WL 3485589, at *2 (C.D. Cal. Aug. 11, 2008) (same).  The Court will deny Defendants' motion on this ground.

#### a. Failure to disclose the actual interest rate

Ralston claims that Defendants violated § 226.19(b) by failing to disclose the true rate of his loan.  Section 226.19(b) requires lenders to disclose "any rules relating to changes in the

index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carry-over." 12 C.F.R. § 226.19(b)(2)(vii). Section 1638(a)(4) requires lenders to disclose the cost of a loan to the borrower "as an 'annual percentage rate' using that term." 15 U.S.C. § 1638(a)(4). TILA defines the term "APR" as the "cost of your credit as a yearly rate." 12 C.F.R. § 226.18(e). Where, as here, a loan's initial interest rate subsequently is adjusted, the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation." Commentary, 12 C.F.R. Pt. 226.(17)(C)-6. Section 1638(a)(8) requires lenders to provide a brief "descriptive explanation[]" of the APR. *See also* 12 C.F.R. § 226.18(e). The disclosure and explanation of the cost of the loan as an annual percentage rate must be clear and conspicuous. Commentary, 12 C.F.R. Pt. 226.17(a)(1)-1.

In the Statement, Defendants represented that the APR was 5.756%, describing this figure as the "[t]he cost of your credit as a *yearly rate*." (emphasis added). However, the Note itself states: "I will pay interest at a *yearly rate* of 1.000%." Note ¶ 2(A) (emphasis added). Ralston claims that this inconsistency renders the disclosure of the actual APR unclear and violates § 226.19. Several courts have permitted similar claims. *See, e.g, Amparan*, 2008 WL 5245497, at *6; *Plascencia I*, 2008 WL 1902698, at *4; *Pham*, 2008 WL 3485589, at *4. Consistent with those holdings, this Court concludes that Ralston has stated a claim for failure clearly and conspicuously to disclose the true cost of the loan.

        **b.**    **Failure to disclose that the initial interest rate was discounted**

Ralston claims that Defendants violated § 226.19(b)(2)(v) by failing to disclose that the initial interest rate offered on the loan was a discounted rate. A "discounted" rate is one "that is not determined by the index or formula used to make later interest rate adjustments." 12 C.F.R. Pt. 226, Supp. I, ¶ 19(b)(2)(v)-1. "If the initial interest rate will be a discount or a premium rate, creditors must alert the consumer to this fact." *Id*. Such a disclosure must be "clear[] and conspicuous[]." 12 C.F.R. § 266.17(a)(1).

Plaintiff may be able to prove that Defendants' disclosures, taken as a whole, obscured

7

the nature of the discount. Paragraph 2(A) of the Note states: "I will pay interest at a yearly rate of 1.000%. The interest rate I will pay *may* change." Note ¶ 2(A) (emphasis added). Paragraph 2(B) then states that "[t]he interest rate I will pay *may* change on the 1st day of September, 2005, and on that day every month thereafter." *Id*. ¶ 2(B) (emphasis added). That section goes on to state that "[e]ach date on which my interest rate *could* change is called an "Interest Rate Change Date." *Id*. Then the following paragraph, ¶ 2(C), states that "[b]eginning with the first Interest Rate Change Date, my Adjustable interest rate will be based on an Index. *Id*. ¶ 2(C). Finally, yet another paragraph, ¶ 2(D), states that "[b]efore each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 075/1000 percentage point(s) 3.075% ("Margin") to the Current Index." *Id*. ¶ 2(D).

Because the language of ¶ 2(A) states that the *yearly* interest rate will be 1%, the average consumer might well take this to mean that the 1% rate actually would apply for a year or term of years. The language of ¶ 2(B) reinforces this notion, stating that the 1% yearly rate "may" or "could" change after a month. Only if one carefully parses the language of ¶ 2 does one realize that Defendants are calling the first day of each month an "Interest Rate Change Date," and that on the *first* "Interest Rate Change Date" – i.e., after the 1% rate has been in place for only one month – the rate *will* increase to an "Index" plus "Margin" of 3.075%. Nowhere does the Note, the Disclosure or any of the other loan documents state clearly that "I will pay interest at a yearly rate of 1.000%" actually means "I will pay interest at a *discounted* yearly rate of 1.000% *for one month and after that will pay interest at a significantly higher rate.*" Accordingly, the Court concludes that Ralston may be able to prove that he was not informed in clear and conspicuous terms that the initial 1.000% interest rate disclosed in the Note was a discounted rate. Defendants' motion will be denied with respect to this claim.

        **c.**     **Failure to disclose that negative amortization was certain to occur**

Ralston alleges that Defendants violated § 226.19(b)(2)(vii) by failing to disclose that negative amortization was certain to occur if he made only the minimum payments shown in the payment schedule contained in the Statement. As already noted, § 226.19 requires that a lender disclose "[a]ny rules relating to changes in the index, interest rate, payment limitations, negative

amortization, and interest rate carryover." 12 C.F.R. § 226.19(b)(2)(vii). In addition, with respect to variable-rate loans with payment caps, such as Ralston's loan, the Commentary states that "[i]f a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor *must* fully disclose the rules relating to the option, including the effects of exercising the option (*such as negative amortization will occur and the principal loan balance will increase*)." 12 C.F.R. Pt. 226, Supp. I. ¶ 19(b)(2)(vii)-2 (emphasis added).

With respect to negative amortization, the Note states that "[i]f the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur." Note ¶ 3(C). The Note also states that "my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe." Note ¶ 3(E). The core of Ralston's argument is that the minimum payment *necessarily* was insufficient to pay the monthly interest on the loan, making negative amortization a *certainty* if he made only the minimum payment.

A number of courts have recognized the viability of claims for failure clearly and conspicuously to disclose the certainty of negative amortization. *See, e.g.*, *Amparan*, 2008 WL 5245497, at *8-9; *Mincey v. World Savings Bank*, __ F. Supp. 2d __, 2008 WL 3845438, at *23-24 (D.S.C. Aug. 15, 2008); *Plascencia I*, 2008 WL 1902698, at *5-6. This Court concludes that Ralston has stated such a claim here.

**4.    Violations of 12 C.F.R. §§ 226.17 & 226.18**

**a.    Failure to disclose the interest rate underlying the payment schedule**

Ralston claims that the amounts listed in the payment schedule were based not on the disclosed composite APR listed on the Statement but on the 1% interest rate listed in the Note that applied for only thirty days. Section 226.17, which governs the form and content of disclosures, states that "[t]he disclosures shall reflect the terms of the legal obligation between the parties," 12 C.F.R. § 226.17(c)(1), meaning "the credit terms to which the parties are legally bound as of the outset of the transaction," Commentary, 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)-1. "The legal obligation normally is presumed to be contained in the note or contract that evidences the agreement." 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)-2 . More specifically, "[t]he Payment

9

Case No. C 08-536 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ETC.
(JFLC2)

Schedule should reflect all components of the finance charge," *id.* ¶ 18(g)-1, and "in a variable rate transaction with . . . a discounted or premium rate, *disclosure should not be based solely on the initial terms*," *id.* ¶ 17(c)(1)-8 (emphasis added). Ralston adequately has alleged that the Statement contains a payment schedule basing several years of payments on the initial low interest rate, and thus does not reflect clearly the legal obligation evidenced by the Note. Accordingly, the Court declines to dismiss this claim.

### b.     Failure to disclose the effect of the payment cap

Ralston alleges that Defendants failed clearly and conspicuously to disclose that the payment cap included in the Note "would cause hundreds, if not thousands[,] of dollars, each month, to be secretly added to principal." FAC ¶ 106. The Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures." 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)-10(iii). ¶ 19(b)(2)(vii)-2. The Court concludes that Ralston has failed to state a claim on the basis of incomplete disclosure of the effect of the payment cap. As in *Pham*, the Statement

> sets out the Payment Schedule, beginning with [the monthly payment] for the first year, and then four annual increases of the 7.5% payment cap. Once the principal reaches 115% of the original loan, the payment jumps to [$3,759.72]. The total finance charge ($[778,980]) and the total amount of payments ($[1,241,458.28]) are disclosed on the Statement, and, as the court in *Plascencia* held, this adequately discloses 'the effect of the payment cap on the true cost of the loan, in that [the Statement] accurately state[s] the cost of the loan based on the Payment Schedule listed.' To the extent Plaintiff bases this claim on her allegations that Defendant failed to disclose that negative amortization was certain to occur, it is duplicative and unnecessary.

*Pham*, 2008 WL 3485589, at *3. For the same reasons, the Court will dismiss this claim.

### c.     Failure to disclose the composite APR

Ralston claims that Defendants violated § 226.17(c) by failing to disclose the composite rate applicable to his loan in the Note. He bases this claim on the Commentary to § 226.17(c)(1), which, as discussed previously, requires that the APR "reflect the terms of the legal obligation between the parties." The Commentary states that "in a variable-rate transaction with a . . .

10

discounted or premium rate, disclosures should not be based solely on the initial terms.  In those transactions, the disclosed annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term." 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)(8) (emphasis added).

As the *Plascencia I* court held in rejecting a claim identical to that asserted by Plaintiff in the instant case, the rule "simply requires that the APR, which appears only on the [Statement], be a composite rate rather than the . . . initial interest rate." *Plascencia I*, 2008 WL 1902698, at *7. As in *Plascencia I,* the APR listed on Plaintiff's Statement is a composite rate – "a weighted average of the brief . . . 'teaser' rate and the permanent, higher indexed rate – based on the value of the Index at the time the statement was produced." *Id*. Finally, "to the extent that Plaintiff[] assert[s] that the composite rate should have been disclosed in the Note in addition to the [Statement], [Plaintiff has] provided no provision imposing such a requirement.  Further, such a claim is essentially identical to [the] claim . . . that the Note failed to disclose the true interest rate." *Id*. n.8.  For these reasons, this claim will be dismissed.

**D.     UCL Claims**

California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200, prohibits any "unlawful, unfair or fraudulent business practices." *See also Cel-Tech Commc'ns, Inc. v Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).  Ralston alleges violations of each prong of the UCL.

Defendants argues that Ralston's UCL claims are preempted to the extent that they are based on TILA, and that even if not preempted the UCL claims fail along with Ralston's TILA claims.  The Court agrees with Defendants that to the extent Ralston may assert UCL claims based upon alleged TILA violations, such claims are viable only to the extent that the TILA claims are viable.

With respect to preemption, TILA provides as follows:

Except as provided in subsection (e) of this section, this part and parts B and C of

> this subchapter do not annul, alter, or affect the laws of any State *relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency.*

15 U.S.C. § 1610(a)(1) (emphasis added). This Court previously has construed this language to mean that TILA is not a field preemptive statute but rather preempts only those state laws that actually conflict with it. *See Amparan*, 2008 WL 5245497, at *11-12 (TILA does not preempt UCL claims based upon alleged violations of TILA); *see also Plascencia II*, 583 F. Supp. 2d at 1099 (same). Because it concludes that Ralston's claims based upon violations of TILA do not conflict with TILA, the Court will deny Defendants' motion to dismiss based upon TILA preemption.

**E.    Fraudulent Concealment**

To state a claim for fraudulent concealment, a plaintiff must allege (1) concealment or suppression of a material fact; (2) a duty to disclose; (3) intentional concealment with the intent to defraud; (4) actual, justifiable reliance; and (5) resulting damages. *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (2008) (citing *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-13 (1992)). In the instant case, Ralston's concealment claim is premised on the same allegedly inadequate disclosures that form the basis of his TILA claims. Defendants argue that they cannot be held liable for fraudulent concealment because they disclosed all relevant facts in the loan documents Ralston received.

"Concealment is a term of art." *Lovejoy v. AT&T Corp.*, 119 Cal. App. 4th 151, 158 (2004). When a statute "defines the duty of disclosure, its requirements inform [the] analysis of whether there was concealment or suppression of a material fact." *Id*. at 159. Thus, as with the disclosure provision at issue in *Lovejoy*, "[t]he issue is not . . . simply whether there was a disclosure. Rather, the issue is whether there was a disclosure consistent with the duty to disclose." *Id*. As in *Lovejoy*, the gravamen of Ralston's allegations in the instant case is that Defendants failed to disclose relevant information in the *manner* required by TILA, rendering the disclosures that were made incomplete or deceptive. At least in the context of a motion to dismiss, Ralston's allegations are sufficient to state a claim for fraudulent concealment.

Case No. C 08-536 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ETC.
(JFLC2)

### C. Contract Claims

#### 1. Breach of contract

Ralston asserts that Defendants breached the Note by failing to apply his monthly payments to principal as well as interest, and by failing to give him a payment schedule that would result in payments that cover both principal and interest. However, Ralston has failed to identify any provisions of the Note setting forth the obligations he claims were breached. In fact, when examined closely, the Note actually provides the opposite of such obligations, as it discloses that after one month the interest rate will be based upon an index, and that monthly payments will be applied to interest before principal. *See* Note ¶¶ 2(C), 2(D). As is discussed above, the Court has concluded that Defendants' disclosures regarding Ralston's obligations under the Note may have been less than clear, and thus may give rise to claims under TILA. However, the obligations under the note are what they are, and none of them appear to support Ralston's contract claim. The Court has reservations whether Ralston could amend his pleading to allege a breach of the Note, but will afford him one opportunity to do so before dismissing his contract claim with prejudice.

#### 2. Tortious breach of the covenant of good faith and fair dealing

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999) (*quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371 (1992)). That duty, known as the covenant of good faith and fair dealing, requires "that neither party . . . do anything which will injure the right of the other to receive the benefits of the agreement." *Andrews v. Mobile Aire Estates*, 125 Cal. App. 4th 578, 589 (2005) (citation omitted). However, the covenant "is available only in limited circumstances, generally involving a special relationship between the contracting parties, such as the relationship between an insured and its insurer." *Bionghi v. Metro. Water Dist.*, 70 Cal. App. 4th 1358, 1370 (1999). Courts have "reject[ed] [the] argument that [the covenant] . . . should encompass normal commercial banking transactions." *Mitsui Mfrs. Bank v. Super. Ct.*, 212 Cal. App. 3d 726, 729 (1989). Moreover, "the implied covenant is a supplement to an existing contract, and thus it does not require parties

13

1  to negotiate in good faith *prior* to any agreement." *McClain v. Octagon Plaza, LLC*, 159 Cal.
2  App. 4th 784, 799 (2008) (emphasis added).

3  Ralston has not identified any special relationship that would support a claim for breach
4  of the implied covenant. Accordingly, this claim will be dismissed. As with the contract claim,
5  the Court has doubts that Ralston ever will be able to state a viable claim for breach of the
6  implied covenant on the facts of this case. However, the Court will afford him one opportunity
7  to do so before dismissing the claim with prejudice.

8  **D.    Mortgage Investors Group, Inc.**

9  Defendants assert that because the loan documents reflect that only Mortgage Investors
10 Group made the loan, the Court should dismiss Mortgage Investors Group, Inc. from the action.
11 The relationship between Mortgage Investors Group and Mortgage Investors Group, Inc. is
12 unclear from the record currently before the Court. Accordingly, the Court declines to dismiss
13 Mortgage Investors Group, Inc. at this time.

14 **E.    Leave To Amend**

15 The Court has reservations whether Ralston could cure any of the defects noted herein,
16 with the exception of the drafting error addressed in section II.C.1., above. However, because
17 this is the first order addressing the merits of Ralston's pleadings, and because Ralston has
18 sought leave to amend for other reasons, the Court will afford Ralston one opportunity to cure the
19 pleading deficiencies identified herein before dismissing any claims without leave to amend.

20                    **III. MOTION FOR LEAVE TO AMEND**

21 Ralston's motion for leave to amend is largely mooted by the Court's disposition of
22 Defendants' motion to dismiss. With respect to Ralston's motion for leave to add assignees or
23 investors as new party defendants, that motion is granted. This ruling is without prejudice to any
24 appropriate argument that the newly added defendants wish to make in response to the amended
25 pleading. Moreover, the ruling is not intended as a comment on the sufficiency of Ralston's
26 proposed SAC or proposed revised SAC. Ralston may choose to file one of those pleadings in
27 response to this order, or may choose to further amend and file a further revised SAC.
28 Defendants then may respond to that pleading as provided in the Federal Rules of Civil

1  Procedure.

2  **IV. ORDER**

3  (1) Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART
4       WITH LEAVE TO AMEND;

5  (2) Ralston's motion for leave to amend is GRANTED; and

6  (3) Any amended pleading shall be filed and served within thirty days after issuance
7       of this order.

12  DATED: 3/16/09

            _____
            JEREMY FOGEL
            United States District Judge

Copies of Order served on:

David M. Arbogast    darbogast@law111.com, jkerr@law111.com

Gerson Harry Smoger    gerson@texasinjurylaw.com, kelly@texasinjurylaw.com, markballer@gmail.com

Jeffrey K Berns    jberns@law111.com, staff@jeffbernslaw.com

Jennie Lee Anderson    jennie@andrusanderson.com, nicole@andrusanderson.com

Lori Erin Andrus    lori@andrusanderson.com, nicole@andrusanderson.com

Roland Paul Reynolds    rreynolds@pldlawyers.com, aramos@pldlawyers.com

Steven Michael Bronson    steven.bronson@gmail.com

Case No. C 08-536 JF (RS)
ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ETC.
(JFLC2)