Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery St, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
Facsimile: 415-986-1474

David M. Arbogast (SBN 167571)
Jeffrey K. Berns (SBN 131351)
**ARBOGAST & BERNS LLP**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Telephone: (818) 961-2000
Facsimile: (310) 861-1775
darbogast@law111.com
jberns@law111.com

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAY RALSTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MORTGAGE INVESTORS GROUP, INC., MORTGAGE INVESTORS GROUP, a general partnership, AND DOES 1-10,<br><br>Defendants. | Case No.: CV-08-00536-JF (RS)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**<br><br>Magistrate: Richard Seeborg<br>Date: April 22, 2009<br>Time: 9:30 a.m.<br>Courtroom: 4 |

## I. INTRODUCTION

Plaintiff brought this class action on behalf of himself and all others similarly situated ("Class Members") to challenge the legality of certain Option Adjustable Rate Mortgages ("ARM") loans sold by Defendants Mortgage Investors Group, Inc. and Mortgage Investors Group, a general partnership, ("MIG" or "Defendants") to Plaintiff and Class Members.  Specifically, Plaintiff alleges that Defendants failed to clearly and conspicuously disclose: (i) the actual interest rate on the loans; (ii) that following the payment schedule provided will result in negative amortization such that the principal balance will automatically increase; and (iii) that the initial interest rate provided did not reflect the actual interest that Plaintiff and Class members would be paying on the loans, in violation of the Truth In Lending Act ("TILA"), 15 U.S.C. §§1601, *et seq.*, the California Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*, and common law.[1]

Defendants did not service the loans it sold, but instead sold them off to larger investors or "subsequent purchasers" almost immediately.  These subsequent purchasers are liable for all TILA violations.  *See* 15 U.S.C. §1641(d)(1).  Further, discovery in this case has confirmed that the subsequent purchasers were not merely bystanders, but were actively involved in the fraudulent concealment and nondisclosure of material facts.  In fact, the subsequent purchasers dictated which disclosures were included (or excluded) from the loan documents that Defendants provided to Plaintiff and Class Members from the beginning.[2]

With this Motion to Compel Further Discovery Responses ("Motion") Plaintiff seeks two categories of information— each of which is directly relevant to the claims asserted and reasonably calculated to lead to the discovery of admissible information:  (1) the identity of subsequent purchasers who directed MIG to use, and perhaps authored, the loan documents at issue here; and (2) loan level information to demonstrate that Plaintiff's claims are typical of those Class Members' claims.

---

[1] *See* First Amended Class Action Complaint ("FAC"), ¶¶1, 26-45 (Docket No. 17).
[2] *See* Declaration of Jennie Lee Anderson In Support Of Plaintiff's Motion to Compel Further Discovery Reponses ("Anderson Decl."), Ex. A.

-1-

1  II.     RELEVANT PROCEDURAL HISTORY AND STATEMENT OF FACTS

2          On January 27, 2008, Plaintiff filed his Complaint against Defendants pursuant to the Truth
3  in Lending Act ("TILA"), 15 U.S.C. §§1601, *et seq.,* California's Unfair Competition Law ("UCL"),
4  Bus. & Prof. Code §§ 17200, *et seq.,* and other statutory and common law.  On May 8, 2008,
5  Plaintiff filed his FAC.  (Docket No. 17.)

6          On May 21, 2008, Defendants filed a Motion to Dismiss Plaintiff's First Amended
7  Complaint ("Motion to Dismiss").  A hearing on the Motion to Dismiss was held on August 15,
8  2008.  (Docket No. 25.)

9          On August 21, 2008, Plaintiff served his Requests for Documents to Defendants, Set One
10 ("Requests") and Plaintiff's Special Interrogatories, Set One ("Interrogatories").  Anderson Decl.,
11 ¶3.  Defendants responded to Plaintiff's Requests on September 22, 2008, but failed to produce any
12 responsive documents.  Anderson Decl., Ex. B.  Defendants also refused to fully respond to
13 Interrogatories.  Anderson Decl., Ex. C.

14         On October 3, 2008, the parties met and conferred regarding Defendants' objections and
15 deficient responses to Plaintiff's discovery.  On October 6, 2008, Plaintiff also requested that the
16 parties agree upon a stipulated protective order to govern the production of potentially confidential
17 information in the case.  Anderson Decl., ¶6.

18         On October 9, 2008, Plaintiff proposed to Defendants a Stipulated Protective Order which,
19 among other things, specifically addressed the production of private consumer information.
20 Anderson Decl., Ex. D.

21         The parties met and conferred further on October 31, 2008.  Defendants agreed to
22 supplement their prior responses and produce responsive documents by November 3, 2008.
23 Anderson Decl., ¶8.

24         Defendants did not supplement their responses until December 4, 2008, however, and did not
25 produce any documents until December 15, 2008.  Anderson Decl., Exs. E, F; ¶10.  In response to
26 Document Request No. 4, Defendants produced a copy of each loan version, but much of the loan-
27 specific information, such as the initial interest rate in the Notes, was redacted.  *Id.*, ¶10.  The loan
28 versions did not include any payments schedules or Truth In Lending Disclosure Statements

1  (öTILDSö) provided to Class Members.  In response to Document Request No. 3 (seeking five (5)
2  randomly selected loan files for each subsequent purchaser), Defendants produced a handful of loan
3  files sold to Countrywide, the purchaser of the named Plaintifføs loan, but refused to produce sample
4  loan files sold to any other investor, arguing that such discovery was premature.  *Id*., ¶10, Ex. F.
5  These loan files included TILDS and the Notes.  However, all loan-specific and borrower specific
6  information was redacted from the documents, including all interest rates and payment schedules.
7  Anderson Decl., ¶ 10, Ex. J.  Defendants did not produce documents in response to Document
8  Request No. 1 (seeking documents sufficient to identify each subsequent purchaser or assignee of
9  the loans sold to Plaintiff and Class Members) and Document Request No. 5 (seeking all reports that
10 summarize MIGøs subsequent sale or assignment of the subject loans).  *Id.*  Defendants also refused
11 to supplement their responses to Interrogatory No. 4 (requesting the identity the subsequent
12 purchaser for each subject loan).  Anderson Decl., Ex. E.

13        On December 17, 2009, Plaintiff filed a Motion for Leave to File Second Amended
14 Compliant, seeking leave to add subsequent purchasers of or investors on Plaintiff Ralstonøs loan.
15 (Docket No. 42)

16        On December 30, 2008, Plaintiff again requested that Defendants provide comments to or
17 approve the [Proposed] Stipulated Protective Order.  On January 7, 2009, Plaintiff provided
18 Defendants with another copy of the proposed order.  Anderson Decl., Ex. G.

19        On January 8, 2009, Plaintiff sent a letter to Defendants regarding several deficiencies and
20 improper redactions in the documents produced.  Specifically, Plaintiff stated that Defendantsø
21 responses to Document Requests Nos. 1 and 3 were deficient in that Defendants failed to produce
22 responsive sample loan files.  Plaintiff pointed out that Defendants admittedly sold the loans to Class
23 Members, regardless of which entity subsequently purchased them, rendering them directly relevant.
24 Moreover, Plaintiff noted that Defendants have acknowledged that the subsequent purchasers
25 dictated the terms and form of the loans in question, rending their identity and information regarding
26 which loans are attributable to them relevant and likely to lead to the discovery of admissible
27 evidence.  Additionally, Plaintiff challenged the improper redactions plaguing Defendantsø
28 Responses to Requests Nos. 3 and 4, explaining the plain relevance of the redacted information to

-3-

Plaintiff's claims and, again, requesting that Defendants agree to, or provide feedback on, the proposed Stipulated Protective Order. In a subsequent telephone conversation, Defendants stated that they were under no obligation to enter into a stipulated protective order and again refused to meet and confer regarding Plaintiff's proposed order. Anderson Decl., ¶12.

On January 16, 2009, Plaintiff served Special Interrogatories, Set Two, in which Plaintiff sought, among other information, the identity of the nonparty investors or subsequent purchasers associated with each loan version Defendants produced in response to Plaintiff's discovery. Defendants responded on February 18, 2009, but refused to provide information regarding the source of each loan version, on the ground that "neither plaintiff nor the putative class has a viable legal claim against assignees" and it prematurely seeks information regarding putative class members and others in advance of class certification." Anderson Decl., Ex. H.

On February 23, 2009, counsel for Plaintiff took the deposition of Christine Rhea, President of Mortgage Investors Group, pursuant to Fed.R.Civ.P. 30(b)(6). Among the topics identified in the deposition notice was the source of the different loan versions Defendants used during the liability period, copies of which Defendants had produced in response to Plaintiff's Requests. Anderson Decl., Ex. I. Ms. Rhea was unable or unwilling to testify to many of the topics listed in the deposition notice. *Id.* Further, counsel for Defendants improperly instructed the witness not to answer questions regarding the source of the loan documents to the degree such questions called for disclosure of any subsequent purchaser or investor on Class Members' loans. Counsel was unable to identify any legitimate foundation for instructing the witness not to answer. *Id.*, Ex. A.

On March 16, 2009, Judge Jeremy Fogel entered an Order (1) Granting In Part And Denying In Part Defendants' Motion to Dismiss With Leave To Amend; And (2) Granting Plaintiff's Motion For Leave To Amend. (Docket No. 66.)

### III. LEGAL STANDARD ON A MOTION TO COMPEL

Rule 26(b)(1) provides for discovery of any information that is "relevant to the subject matter involved in the action," or "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The permissible scope of discovery therefore includes information that might reasonably assist a party in evaluating the case, preparing for trial or

-4-

facilitating settlement. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Campo v. Am.Corrective Counseling Servs.*, No. C 01-21151 JW (PVT), 2008 WL 3154754, at *2 (N.D. Cal., Aug. 1, 2008)(citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Comcast of LA, Inc. v. Top End Int'l Inc.*, No. CV-03-2213-JFW(RCX), 2003 WL 22251149, at *2 (C.D. Cal. July 2, 2003) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)); *see also Nestle Food Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (same). Regardless, the requested documents must be produced if relevancy and need outweigh the harm of disclosure. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002); *see also Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D.Cal. 1998) (need for the information may outweigh whatever privacy rights another party may have). Applying these standards here, Plaintiff's Motion should be granted.

## IV. ARGUMENT

Through the use of narrowly tailored requests, Plaintiff properly seeks documents sufficient to identify subsequent purchasers or assignees of the subject ARM loans and certain loan-level information including interest rates and payment schedules from sample loan files. Plaintiff is entitled to "discovery regarding any nonprivileged matter that is relevant to the subject matter of the litigation" including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1). The discovery sought is directly relevant, indeed core, to the subject matter of this litigation and should be produced.

### A. Information Regarding Liable Subsequent Purchasers Who Dictated The Terms Of The Loans Is Relevant.

Defendants incorrectly contend that Plaintiff is not entitled to discover the identities of the subsequent purchasers with whom MIG collaborated because no class has yet been certified. Anderson Decl., ¶12. Defendants' argument misapprehends discovery under the Federal Rules, however, and seeks to impose an unduly narrow interpretation of the allegations.

-5-

As at least one other court has recognized, Plaintiff is entitled to discovery regarding the identities of subsequent purchasers and/or assignees of the loans prior to class certification because the information is both necessary to the development of Plaintiff's claims and likely to lead to the discovery of admissible evidence. *See Pence v. Union Fidelity Mortg., Inc.* 2008 WL 5102242 at *2 No. 08-CV-0089-WQH (JMA) (S.D.Cal., Dec. 2, 2008) (granting plaintiff's application to subpoena non-party Mortgage Electronic Registration System, Inc. ("MERS") for information regarding the subsequent purchasers of plaintiff's and putative class members' loans). "Plaintiff and the putative class will not be able to move forward with this case on a class basis unless they are permitted to ascertain the identities of other persons or entities which may have potential liability for Plaintiff's individual and class claims." *Id.* Plaintiff is further entitled to such discovery because the subsequent purchasers of the loans are likely to have information concerning the creation and location of documents that are relevant to the claims. *Id.*

As in *Pence,* the identity of subsequent purchasers of Class Members' loans is relevant, not only because such entities are liable to borrowers for TILA violations,[3] but also because the ***subsequent purchasers controlled the form and content of the loans*** MIG sold to borrowers with understanding that the loan would later be sold to the subsequent purchaser. Defendants also admit that they provided borrowers with whatever documents the subsequent purchaser required, with little or no thought as to whether such documents complied with the law. *Id.*, Ex. A. The various loan versions produced demonstrate that the subsequent purchasers used similar language and the same document preparation services to create the loan documents provided to MIG, who then sold the loans to unsuspecting borrowers. *Id.*, Exs. A, K.

Thus, subsequent purchasers, each of them, directly influenced Defendants' unfair and illegal business practices as they relate to the transactions at issue in this litigation. Indeed, the subsequent purchasers and assignees are identified in the FAC as co-conspirators and potentially liable parties. FAC, ¶8. Additionally, because the subsequent purchasers are in possession of information and

---

[3] *See* 15 U.S.C. § 1641(d)(1)

documents regarding the specific business practices which are the subject of this litigation, their identities are also very likely to lead to the discovery of relevant and admissible evidence regarding Plaintiff's claims. Fed.R.Civ.P. 26(b)(1). It is difficult to imagine more relevant area for discovery.

Indeed, Defendants themselves have acknowledged the plain relevancy of the loan versions by producing a complete copy of each version of the loan documents used during the defined liability period. Anderson Decl., ¶10. Plaintiff is entitled to know the source of these admittedly relevant documents.

### 1. Disclosing Information Relating to Approximately Six Subsequent Purchasers Is Not Unduly Burdensome.

Discovery under the Federal Rules is broad, and the staged discovery Defendants suggest would only be appropriate upon a showing of undue burden that clearly outweighs the probative value of the evidence sought. Here, while entitled to seek much broader discovery, Plaintiff has served a set of narrowly-crafted requests and interrogatories seeking information necessary to prevail at class certification and identify all liable parties and coconspirators. Anderson Decl., Exs. B-C. Specifically, in Document Request No. 1, Plaintiff seeks only documents "sufficient to identify" the subsequent purchasers of the loans. *Id.* Ex., B. In Document Request No. 3, Plaintiff requested only *five* sample loan files for each subsequent purchaser. Anderson Decl. Ex. B. Moreover, Defendants admit that there *are only five, or at the most, six* subsequent purchasers with whom they conspired, and that that information is readily available. *Id.*, Ex. A. As far as Plaintiff's Interrogatories are concerned, Plaintiff seeks basic loan-level information associated with the loan. *Id.*, Ex. C, E. Defendants concede that they are able to easily run reports in their database to collect this data, along with information relating to the specific loan type. *Id.,* Ex. A.

Thus, Defendants have not articulated or otherwise shown *any* undue burden other than simply stating that the information is premature and not relevant at this "stage of the litigation." [4]

---

[4] In support of their efforts to resist producing this plainly relevant material, Defendants will likely point to an order in *Jordan v. Paul Financial LLC*, CV07-04496-SI (N.D.Cal), where the court denied discovery because plaintiff did not demonstrate why the information sought was relevant to class certification. *Id.,* Order Re Discovery (N.D.Cal., June 2, 2008) (Docket No. 58). That case is readily distinguishable for a number of reasons, however. First, the parties in *Jordan* **agreed** to limit

-7-

Anderson Decl., ¶ 12. Because Defendants readily admit that disclosing which subsequent purchasers are the sources of the various loan versions is not unduly burdensome, Plaintiff's motion should be granted.

### B. The Sample Loans and Loan-Level Information Requested Are Relevant and Necessary To The Plaintiff's Allegations.

With the exception of loan documents specifically related to the named Plaintiff, virtually all of the documents produced by Defendant are replete with improper redactions. Defendant has redacted not only borrowers' personal information, but also information directly relevant and necessary to Plaintiff's claims, including, but not limited to, all interest rates and the payment schedules provided to Class Members in the TILDS. *See e.g.,* Anderson Decl., Ex. G.

The redacted information is relevant to the claims asserted in this case and will also substantiate Plaintiff's class allegations that Class Members were all subjected to the same deceptive, incomplete and misleading information in their loan documents. Equally justified is Plaintiff's request for a sampling of loan files for each subsequent purchaser, as Plaintiff seeks to demonstrate that the documents, teaser rates and payment schedules were commonly deceptive and unlawful, regardless of what investor may have subsequently purchased the loans.[5]

#### 1. Privacy Concerns Are Adequately Addressed By The Proposed Stipulated Protective Order.

The right to privacy protects the individual's ***reasonable*** expectation of privacy against a ***serious*** invasion. *Tomassi v. City of Los Angeles,* CV 08-1851 DSF (SSx), 2008 WL 4722393, at *4

---

initial discovery to issues directly relevant to class certification in their joint Rule 26(f) report, thus limiting the court's inquiry as to whether discovery regarding subsequent purchasers of the plaintiff's loans bore directly on class certification. *Id.* Here, the parties have not agreed to bifurcated discovery, nor has it been ordered by this Court. Second, Plaintiff in this case has demonstrated that the subsequent purchasers were directly involved in crafting the loan terms passed on to Class Members. Anderson Decl. Ex. A, ¶ 12. Third, Plaintiff has demonstrated why the sample loans sold to each subsequent purchaser are relevant to class certification here– because sample loan files contain the interest rates and TILDS payment schedules that will demonstrate that all of the loans were essentially the same, regardless of the subsequent purchaser.

[5] While Defendants have produced the blank copies of the loan document versions used by different investors who subsequently purchased the loans, only the sample loan files contain the TILDS and information regarding the interest rate and payment schedules provided. Anderson Decl., ¶ 10; Ex. J.

-8-

1  (Oct. 24, 2008, C.D.Cal.) (citing *Pioneer Elecs., Inc. v. Superior Court*, 40 Cal.4th 360
2  (2007))(emphasis in original).  However, the right to privacy is not absolute, and if the need for the
3  information outweighs the risk of harm, the information must be produced. *See, e.g., Oakes.*, 179
4  F.R.D. at 284.  "[T]he court must balance the asserted right to privacy against the relevance and
5  necessity of the information sought by the plaintiff." *Tomassi*, 2008 WL 4722393, at *3 (citing
6  Johnson v. Thompson, 971 F.2d 1487, 1497 (10th Cir.1992); *Ragge v. MCA/Universal*, 165 F.R.D.
7  601, 604-05 (C.D.Cal.1995)).

8  Thus, Courts first apply a three-part test to determine whether there is a reasonable
9  expectation of privacy and whether the invasion is serious.  First, there must be a "legally protected
10 privacy interest." *See, e.g., Puerto v. Superior Court*, 158 Cal.App. 4th 1242, 1251-1251 (2008)
11 (citations omitted).   Second, there must be a reasonable expectation of privacy under the particular
12 circumstances. *Id.*  Third, the invasion of privacy must be serious in nature, scope, and actual or
13 potential impact. *Id.*  Only then will the court "balance the privacy interest at stake against other
14 competing or countervailing interests, which include the interest of the requesting party, fairness to
15 the litigants in conducting the litigation, and the consequences of granting or restricting access to the
16 information." *Id*.

17 Plaintiff acknowledges that Class Members' financial information is entitled to protection.
18 As Plaintiff has explained, the redacted data includes interest rates and payment schedules necessary
19 to establish that the loans were all similarly deceptive and automatically led to negative
20 amortization.  Interest rates and payment schedules on their own do not constituted private
21 information.  Moreover, documents containing private information should be produced pursuant to
22 the [Proposed] Stipulated Protective Order, which, among other things, explicitly protects and limits
23 the use of "Private Consumer Information" to address applicable state and federal law. Anderson
24 Decl. Ex. G.[6]

---

[6] Specifically, paragraphs 2.4, 5.2, 7.5 and 10.2 of the [Proposed] Stipulated Protective Order
specifically define and address the use of "Private Consumer Information."

-9-

In short, MIG has not made any showing as to why the requested discovery should not be allowed. Due to the highly relevant nature of this information, entry the Protective Order offered by Plaintiff is the appropriate means to address any privacy concerns. *See e.g., Tomassi,* 2008 WL 4722393, at *4 ("Defendant's concern for the privacy rights of potential class members can be addressed through a protective order"); *Tierno v. Rite-Aid Corp.*, Case No. C 05-02520, 2008 WL 3287035 (N.D.Cal., July 31, 2008) (protective order sufficiently addresses *Pioneer Electronics* by ensuring private information is not misused); *Alch v. Super. Ct.*, 165 Cal.App.4th 1412, 1434-35 (2008) (same); *Marks v. Global Mortgage Group, Inc.*, 218 F.R.D. 492, 497 (S.D.W.Va. 2003) (privacy provisions of Gramm-Leach-Bliley Act do not preclude financial institution from disclosing non-public personal financial information of its customers where the protective order prevents improper disclosure).

## V.  CONCLUSION

For the reasons stated herein, this Court should Plaintiff's Motion in its entirety.

Dated:  March 18, 2009                          */s/  Jennie Lee Anderson*

Lori Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery St., Suite 900
San Francisco, CA  94104
Telephone: 415-986-1440
Facsimile:  415-986-1474
lori@andrusanderson.com
jennie@andrusanderson.com

David M. Arbogast (SBN 167571)
Jeffrey K. Berns (SBN 131351)
**ARBOGAST & BERNS LLP**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Telephone: (818) 961-2000
Facsimile:  (310) 861-1775
darbogast@law111.com
jberns@law111.com

|   |   |
|---|---|
| 1 | |
| 2 | Gerson Harry Smoger |
| 3 | **SMOGER & ASSOCIATES, P.C.**<br>3175 Monterey Boulevard |
| 4 | Oakland, CA  94602 |
| 5 | Telephone:  510-531-4529<br>Facsimile:  510-531-4377 |
| 6 | gerson@texasinjurylaw.com |
| 7 | *Attorneys for Plaintiff and the Proposed Class* |

-11-

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  March 18, 2009                          */s/ Jennie Lee Anderson*
                                                                Jennie Lee Anderson

ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA  94104
Telephone:  (415) 986-1400
Facsimile:  (415) 986-1474
jennie@andrusanderson.com