1

2                                                              **E-Filed 8/12/2010**

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                              **SAN JOSE DIVISION**

11

12   JAY J. RALSTON,                       Case Number C 08-536 JF (PVT)

13                      Plaintiff,          ORDER[1] DENYING MOTIONS TO
                                            DISMISS
14          v.
                                            [re:  document nos. 139, 140]
15   MORTGAGE INVESTORS GROUP, INC., et al.,

16                      Defendants.

17

18

19

20          Defendant Countrywide Home Loans, Inc. ("Countrywide") and Defendants Mortgage

21   Investors Group, Inc. and Mortgage Investors Group (collectively, "MIG") move to dismiss the

22   third amended complaint ("TAC") of Plaintiff Jay J. Ralston ("Ralston") for failure to state a

23   claim upon which relief may be granted.  The Court has considered the moving and responding

24   papers and the oral argument presented at the hearing on July 30, 2010.  For the reasons

25   discussed below, the motions will be denied.

26

27

28
            _____

              [1] This disposition is not designated for publication in the official reports.

# I. BACKGROUND

On January 24, 2008, Ralston filed this putative class action alleging that his mortgage originator, MIG, failed to disclose important information about his residential mortgage in the clear and conspicuous manner required by law. Ralston asserted that MIG violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. and state laws. On May 8, 2008, Ralston filed an amended complaint, again asserting TILA and state law claims against MIG, and MIG moved to dismiss. The motion was granted in part and denied in part. The Court also granted Ralston's motion for leave to amend to add additional defendants. On April 15, 2009, Ralston filed a second amended complaint re-asserting his TILA and state law claims against MIG and alleging new claims against new Defendants Countrywide, Bank of New York, and Bank of America Corporation. Following dismissal of the SAC with leave to amend, Ralston filed the operative TAC, which omits the earlier TILA claims and asserts only two state law claims – one for fraudulent omission and the other for violation of California's unfair competition law ("UCL"). The TAC also omits Bank of New York and Bank of America Corporation as defendants, asserting the fraudulent omission and UCL claims only as to MIG and Countrywide.

Ralston alleges that Countrywide "concocted and implemented" a fraudulent scheme under which MIG and other mortgage originators marketed Option Adjustable Rate Mortgage ("Option ARM") loans using deceptive loan documents. TAC ¶ 1. These loan documents allegedly:

> failed to clearly, unambiguously and conspicuously disclose to Plaintiff and Class Members the following: (I) the low interest rate set forth in the Option ARM mortgage notes ("Notes") was only available for thirty days, if at all; (ii) the monthly payment amounts for the first three to five years provided to Plaintiff and Class Members on a Truth-In-Lending Disclosure Statement ("TILDS") were insufficient to pay both accrued interest and principal; (iii) negative amortization was absolutely certain to occur if Plaintiff and Class Members made payments according to the schedule of monthly payments provided in the TILDS; and that (iv) loss of equity and/or loss of Plaintiff's and Class Members' residences was certain to occur if Plaintiff and Class Members made payments according to the payment schedule.

TAC ¶ 3. The ability of MIG and other loan originators to issue Option ARM loans was wholly dependent on Countrywide purchasing the loans shortly after origination. TAC ¶ 4. Moreover, MIG and other loan originators did not use their own assets to fund Option ARM loans, but

2

1  borrowed money from warehouse lenders, often affiliates of Countrywide. *Id*. Countrywide

2  created the loan documents, and was fully aware of the material omissions therein (as alleged

3  above). TAC ¶ 20. Countrywide required that MIG and other loan originators use the

4  misleading documents. TAC ¶ 4.

5  Ralston's loan was offered at a low "teaser" interest rate of 1%. TAC ¶ 21. That rate

6  lasted only thirty days, after which the rate was calculated by combining an index and a margin

7  of 3.075%. TAC ¶¶ 21, 24. Even if the index went down to zero, the combined total of the

8  index and the margin always would be significantly higher than the teaser rate. TAC ¶ 24.

9  However, the monthly payment schedule was calculated at the 1% rate. TAC ¶ 22. Under the

10  applicable payment cap, the monthly payment could be increased only by 7.5% each year. TAC ¶

11  26. Thus Ralston's loan was certain to cause – indeed, it was *designed* to cause – negative

12  amortization. *Id*. Ralston was "locked in" to the loan by "a draconian prepayment penalty

13  consisting of a prepayment charge equal to six months of interest." TAC ¶ 25. Once the

14  principal reaches 115% of the original loan amount, the monthly payment cap is eliminated and

15  the monthly payments immediately are recast to fully amortizing payments of principal and

16  interest. TAC ¶ 27. "To the extent that this built-in 'payment shock' is more than many Class

17  Members can afford, they need to refinance 115% of the amount they initially borrowed (despite

18  having made all of the required payments) or risk losing their homes to foreclosure." TAC ¶ 27.

19  Despite the certainty of negative amortization, the Notes suggest that negative

20  amortization is only a mere possibility. TAC ¶ 28. Had Ralston and the Class Members known

21  that negative amortization was a certainty, they would not have purchased the subject Option

22  ARM loans. TAC ¶ 29.

23  Countrywide pushed these misleading loans by, *inter alia*, offering MIG a volume

24  incentive: if MIG funded with Countrywide $25,000,000 of loans per month, Countrywide

25  would pay MIG a volume incentive of .35% on all three-year "Hard Pre-Pay Loans, and 20% on

26  all 1 year Hard Prepay loans." TAC ¶ 16.

27  ## II. LEGAL STANDARD

28  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed

3

1    against a defendant for failure to state a claim upon which relief may be granted against that

2    defendant.  Dismissal may be based on either the lack of a cognizable legal theory or the absence

3    of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*,

4    901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.,* 530, 533-34 (9th

5    Cir. 1984).  For purposes of evaluating a motion to dismiss, the court "must presume all factual

6    allegations of the complaint to be true and draw all reasonable inferences in favor of the

7    nonmoving party."  *Usher v. City of Los Angeles*,  828 F.2d 556, 561 (9th Cir. 1987).  Any

8    existing ambiguities must be resolved in favor of the pleading.  *Walling v. Beverly Enters.,* 476

9    F.2d 393, 396 (9th Cir. 1973).

10         However, mere conclusions couched in factual allegations are not sufficient to state a

11    claim.  *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem. Co.,* 845

12    F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief

13    that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A claim is

14    plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

15    reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,*

16    — U.S. —, 129 S.Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss,

17    the non-conclusory 'factual content,' and reasonable inferences from that content, must be

18    plausibly suggestive of a claim entitling the plaintiff to relief. "  *Moss v. U.S. Secret Serv.,* 572

19    F.3d 962, 969 (9th Cir. 2009).  Courts may dismiss a case without leave to amend if the plaintiff

20    is unable to cure the defect by amendment.  *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir. 2000).

21    **III. DISCUSSION**

22    **A.**     **Subject Matter Jurisdiction**

23         In a footnote, MIG asserts that because Ralston has withdrawn his federal TILA claims,

24    this Court now lacks subject matter jurisdiction over the remaining state law claims.  The TAC

25    alleges that the Court has subject matter jurisdiction under the Class Action Fairness Act

26    ("CAFA"), 28 U.S.C. § 1332(d) (2005).  TAC ¶ 15.  The Court concludes that Ralston has pled

27    facts sufficient to establish subject matter jurisdiction under CAFA:  he alleges that there are

28    more than 100 members of the proposed class, that the amount in controversy exceeds

4

1  $5,000,000, and that at least one member of the class is a citizen of a state different from any

2  defendant.  TAC ¶ 15.

3  **B.     Preemption**

4          Defendants also argue that Ralston's fraudulent omission and UCL claims are preempted

5  by TILA.  This Court has held repeatedly that TILA does not preempt state law claims that do not

6  conflict with TILA's substantive requirements.  *See, e.g.*, *Brooks v. ComUnity Lending*, No. C

7  07-4501 JF (PVT), 2010 WL 2680265, at *3-5 (N.D. Cal. July 6, 2010).  Moreover, state law

8  claims based upon TILA permissibly may "supplement" TILA by providing a more generous

9  limitations period and additional remedies.  *Id*.  Although Ralston no longer asserts a TILA

10 claim, his fraudulent omission claim is based in part upon Defendants' alleged failure to satisfy

11 applicable statutory disclosure obligations under TILA.  Ralston's UCL claim also is based in

12 part upon Defendants' alleged breach of such obligations.  These claims are grounded in TILA

13 and do not impose any requirements that conflict with TILA.  Accordingly, they are not

14 preempted.  *See id.*

15 **C.     Fraudulent Omission**

16         Under California law, the elements of a common-law claim for fraudulent omission are:

17 (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to

18 disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact

19 with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted

20 differently if she had known of the concealed or suppressed fact; and (5) the plaintiff sustained

21 damage as a result of the concealment or suppression.  *See Hahn v. Mirda*, 147 Cal. App. 4th

22 740, 748 (2007).  Allegations of fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).

23 Defendants argue that Ralston's fraudulent omission claim must be dismissed because they did

24 not have a duty of disclosure, the disclosures made in the loan documents complied with TILA,

25 and Ralston has failed to plead justifiable reliance.  Countrywide argues additionally that it

26 cannot be held liable for any omissions of MIG, that Ralston could not have justifiably relied on

27 Countrywide to make disclosures, and that Ralston has failed to allege a plausible claim that

28 Countrywide aided and abetting MIG's alleged misconduct.

5

1   **Concealment/Suppression Of A Material Fact – Element (1)**

2       Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be "stated with

3   particularity."  A plaintiff must include a description of the "time, place, and specific content of

4   the false representations as well as the identities of the parties to the misrepresentations." *Swartz*

5   *v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  However, in the context of a fraudulent

6   omission claim, a plaintiff cannot plead a specific time or place of a failure to act. *Washington v.*

7   *Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987).  In that instance, a plaintiff may plead

8   fraud by alternative means. *Id.*

9       The purpose of Rule 9(b) is to require a plaintiff to be "specific enough to give

10  defendants notice of the particular misconduct which is alleged to constitute the fraud charged so

11  that they can defend against the charge and not just deny that they have done anything wrong."

12  *Swartz*, 476 F.3d at 764 (internal quotation marks and citation omitted).  "In the context of a

13  fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each

14  defendant in the alleged fraudulent scheme." *Id.* at 765 (internal quotation marks and citation

15  omitted).

16      As discussed in part I, above, Ralston alleges that even though they knew that negative

17  amortization was a *certainty*, MIG and Countrywide suppressed that fact by representing that

18  negative amortization was only a mere *possibility*.  For example, Ralston alleges that

19  "Countrywide designed and approved, and MIG and other originators issued, marketed and sold,

20  the Notes, which set forth a teaser rate that was only in effect for 30 days and approved the

21  TILDS which set forth payments based upon those teaser rates for the first three to five years of

22  the loan." TAC ¶ 72.  Ralston alleges further that "[a]t all relevant times, Countrywide and MIG

23  knew, but did not disclose in the Loan Documents, that these listed low payments in the TILDS

24  were predicated on an interest rate which would not exist after the first thirty days of the loan."

25  *Id*.  "Countrywide and MIG knew, but did not disclose in the Loan Documents, that negative

26  amortization was *guaranteed* if borrowers made these listed low payments." *Id.* "Countrywide

27  and MIG further knew, but did not disclose in the Loan Documents, that the listed payments set

28  forth in the TILDS were calculated such that, if the payments were made, borrowers actually

6

1    would be paying off 115% of the original principal balance." *Id*.

2    **Duty To Disclose – Element (2)**

3        A claim of fraudulent omission lies only if Defendants had a duty to disclose the omitted

4    facts to Ralston.  Defendants argue that they had no such duty.

5        TILA requires that a "creditor" – defined as the "person to whom the debt arising from

6    the consumer credit transaction is initially payable on the face of the evidence of indebtedness" –

7    disclose certain information.  15 U.S.C. §§ 1602(f), 1631(a).  For example, a creditor must

8    disclose "[a]ny rules relating to changes in the index, interest rate, payment limitations, negative

9    amortization, and interest rate carryover."  12 C.F.R. § 226.19(b)(2)(vii).  In addition, with

10   respect to variable-rate loans with payment caps, such as Ralston's loan, "[i]f a consumer is

11   given the option to cap monthly payments that may result in negative amortization, the creditor

12   must fully disclose the rules relating to the option, including the effects of exercising the option

13   (*such as [the fact that] negative amortization will occur and the principal loan balance will*

14   *increase* )."  12 C.F.R. Pt. 226, Supp. I. ¶ 19(b)(2)(vii)-2 (emphasis added).

15       Because MIG clearly qualifies as a creditor under TILA, it was subject to these statutory

16   disclosure obligations.  The thrust of Ralston's fraudulent omission claim is that MIG concealed

17   or suppressed the material fact that negative amortization was *certain* to occur by stating that

18   negative amortization *may* occur, as stating that something *may* occur implies that it may *not*

19   occur.

20       Countrywide, as the subsequent purchaser of Ralston's loan, does not qualify as a creditor

21   under TILA.  However, Countrywide may be liable as an aider and abettor.  "California has

22   adopted the common law rule that liability may be imposed on one who aids and abets the

23   commission of an intentional tort if the person knows the other's conduct constitutes a breach of

24   a duty and gives substantial assistance or encouragement to the other to so act." *In re First*

25   *Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (internal quotation marks and citation

26   omitted).  Aiding and abetting requires "actual knowledge of the primary violation". *Neilson v.*

27   *Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003).  It also requires

28   "substantial assistance" with the violation. *In re First Alliance Mortg. Co.*, 471 F.3d at 993.

7

1   Ralston alleges that Countrywide "concocted and implemented" the scheme to market the

2   misleading loans, TAC ¶ 1, and that it "devised, designed and approved" the subject loan

3   documents, TAC ¶ 73.  Ralston also alleges that Countrywide provided MIG and other loan

4   originators with substantial assistance in pushing the fraudulent loans by providing lines of credit

5   and guarantees that Countrywide would purchase the Option ARM loans when made.  TAC ¶¶

6   73-74.  These allegations are sufficient to state a claim against Countrywide under an aiding and

7   abetting theory.

8       **Intent – Element (3)**

9       Ralston alleges clearly that Defendants concealed or suppressed the certainty of negative

10   amortization deliberately, with intent to defraud Ralston and other consumers of the Optional

11   ARM loans.  TAC ¶¶ 1-5.

12      **Reliance And Damage – Elements (4) and (5)**

13      To plead and prove reliance, a plaintiff must demonstrate that "had the omitted

14   information been disclosed, [he] would have been aware of it and behaved differently."  *Mirkin v.*

15   *Wasserman*, 5 Cal.4th 1082, 1093 (1993).  "It is not necessary that [a plaintiff's] reliance upon

16   the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive

17   factor in influencing his conduct. . . .  It is enough that the representation has played a substantial

18   part, and so has been a substantial factor in influencing his decision."  *Engalla v. Permanente*

19   *Med. Group.*  15 Cal.4th 951, 976-77 (1997) (internal quotation marks and citation omitted).

20      Ralston alleges that had the material information regarding the negative amortization

21   been disclosed, he and the other class members would not have purchased the subject loans.

22   TAC ¶ 78.  Ralston alleges further that as a result of Defendants' concealment he and the other

23   class members have lost equity in their homes.  TAC ¶ 79.

24      Defendants argue that the true interest rate and all other information required to be

25   disclosed under TILA in fact was disclosed.  Defendants assert that under these circumstances,

26   Ralston's fraudulent concealment claim is precluded by *Hauk v. JP Morgan Chase*, 552 F.3d

27   114, 1121 (9th Cir. 2009).  *Hauk* holds that a disclosure cannot be rendered misleading by the

28   existence of other information that was neither disclosed nor required by TILA to be disclosed.

8

1    Defendants are correct in asserting that, viewed in isolation, many of the disclosures made in the

2    loan documents were accurate.  However, the core of Ralston's argument is that Defendants

3    concealed or suppressed the fact that the minimum payment *necessarily* was insufficient to pay

4    the monthly interest on the loan, making negative amortization a certainty, by stating that

5    negative amortization was only a possibility.  This Court and others have held that when such

6    facts are alleged, *Hauk* does not bar state law fraud claims.  *See Brooks*, 2010 WL 2680265, at

7    *7-8 (collecting cases).[2]

8         Accordingly, Defendants' motions will be denied with respect to Ralston's fraudulent

9    omission claim.

10   **D.    UCL**

11        The UCL prohibits any "unlawful, unfair or fraudulent business practices."  *Cel-Tech*

12   *Commc'ns, Inc. v Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Because the

13   statute is written in the disjunctive, it applies separately to business practices that are (1)

14   unlawful, (2) unfair, or (3) fraudulent.  *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490,

15   1496 (2003).  Ralston claims that Defendants' conduct violated all three prongs.  Defendants

16   argue that, to the extent that the UCL claim is based on fraudulent conduct, it fails for the same

17   reasons as Ralston's fraudulent omission claim.  However, Ralston has stated a claim for

18   fraudulent omission, as discussed above.

19        Countrywide argues that it cannot be liable under the UCL because it did not participate

20   personally in the conduct at issue and that the claim is pled with insufficient particularity.  "[A]n

21   unfair practices claim under [the UCL] cannot be predicated on vicarious liability. . . .  A

22   defendant's liability must be based on his personal participation in the unlawful practices and

23   unbridled control over the practices that are found to violate [the UCL]."  *Perfect 10, Inc. v. Visa*

24

25        [2] At the hearing, defense counsel asserted that the instant case breaks "new ground,"

26   distinguishing the instant case from other mortgage cases on the basis that those cases asserted
     both TILA and state law claims while the instant case asserts only state law claims.  Counsel are

27   mistaken.  This Court's July 2010 decision in *Brooks*, 2010 WL 2680265, addressed an amended
     complaint that, like the complaint in the instant action, contained only state law claims for

28   fraudulent omission and violation of California's UCL.

9

1  *Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007).   As discussed above, Ralston has alleged

2  that Countrywide aided and abetted MIG's fraudulent conduct.

3        This Court previously has held that UCL claims based upon similar facts are sufficient at

4  the pleading stage.  *See Brooks*, 2010 WL 2680265, at 12-13.  Accordingly, Defendants' motions

5  will be denied with respect to Ralston's UCL claim.

6                                    **IV. ORDER**

7        Defendants' motions to dismiss are DENIED.  Defendants shall file answers within thirty

8  (30) days of the date this order is filed.

15  Dated:  August 12, 2010

17  JEREMY FOGEL
    United States District Judge

Case No. C 08-536 JF (PVT)
ORDER DENYING MOTIONS TO DISMISS
(JFLC2)