Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery St, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
Facsimile: 415-986-1474

David M. Arbogast (SBN 167571)
Jeffrey K. Berns (SBN 131351)
**ARBOGAST & BERNS LLP**
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
Phone: (818) 961-2000
Fax:       (818) 936-0232
darbogast@law111.com

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAY RALSTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MORTGAGE INVESTORS GROUP, INC., MORTGAGE INVESTORS GROUP, a general partnership, COUNTRYWIDE HOME LOANS, INC. AND DOES 3-10,<br><br>Defendants. | Case No.: CV-08-00536-JF (PVT)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY RESPONSES FROM DEFENDANT COUNTRYWIDE HOME LOANS, INC.**<br><br>Magistrate:    Patricia V. Trumbull<br>Date:             December 21, 2010<br>Time:             10:00 a.m.<br>Courtroom:     5 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

NOTICE OF MOTION AND MOTION TO COMPEL ................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

I.     INTRODUCTION ............................................................................................... 2

II.    RELEVANT PROCEDURAL HISTORY ........................................................ 3

III.   SUMMARY OF RELEVANT ALLEGATIONS ............................................. 6

IV.   LEGAL STANDARD ON A MOTION TO COMPEL ................................... 7

V.    ARGUMENT ...................................................................................................... 8

     A.   Core Loan Documents Should Be Produced (Request No. 6, Set One and Two). ... 8

          1.   The Loan Documents Are Relevant. ............................................... 9

          2.   The Scope Of Discovery Is Supported By The Allegations. ....................... 10

          3.   CHL Has Not Articulated Any Undue Burden. ......................................... 11

     B.   Relevant Loan Level Data Should Be Produced (Request No. 5, Sets 1 and 2). .... 12

     C.   Documents Relating to Loan Purchase Agreements Should Be Produced (Request No. 1 (Set Two)). ................................................................................. 14

     D.   Documents Summarizing CHL's Loan Purchases Should Be Produced (Request No. 15 (Set One)). ............................................................................... 15

     E.   Additional Discovery Where CHL Improperly Limits Its Production to Documents Related to MIG. ........................................................................... 16

          1.   Interrogatories 1 and 2 Regarding The Number of Option ARM Loans ... 16

          2.   CHL Instructions, Guidelines, Criteria For Correspondent Lenders (Request No. 2 (Set Two)) ......................................................... 17

          3.   Documents Regarding Option ARM Policies (Request No. 3 (Set Two)) ... 18

          4.   Materials CHL Provided To Loan Originators (Request No. 8 (Set Two)) 18

NOTICE OF MOTION AND MOTION TO COMPEL; MPA ISO OF MOTION
CASE NO. CV 08-00536 JF PVT

      5.     **Lines Of Credit CHL Gave To Its Originators (Request No. 9 (Set Two)** . 19

      6.     **Correspondent Lender Contact Persons (Request No. 13 (Set Two))** ........ 19

      7.     **CHL Policies and Practice Regarding Correspondent Lenders (Request No. 14 (Set Two)** ....................................................................................... 20

  F.    **Discovery Pertaining to Loan Document Preparation Services Should Be Produced (Requests Nos. 7-8 (Set One))** ............................................... 20

  G.    **CHL's Option ARM Rate Sheets Should Be Produced (Request No. 7 (Set Two))** ............................................................................................... 21

  H.    **Organizational Charts Should Be Produced (Request No. 9 (Set One))** ............... 22

  I.    **Document Retention Policies Are Discoverable (Request No. 23 (Set One))** ......... 23

**VI.**    **CONCLUSION** ........................................................................................ 23

**CERTIFICATE OF SERVICE** ................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Lockheed Martin Corp.*, CV-08-6292, 2010 U.S. DIST. LEXIS 62971 (D.N.J. 2010)............ 10

*Bible v. Rio Properties, Inc.* No. CV 07-0366, 2007 WL 3071647 (C.D. Cal. Sep. 21, 2007)............ 12

*Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975) ........................................... 8, 11

*Caliper Tech Corp. v. Molecular Devices Corp.,* 213, F.R.D. 555 (N.D. Cal. 2003) ........................ 12

*Campo v. Am. Corrective Counseling Servs.*, No. C 01-21151 JW (PVT), 2008 WL 3154754 (N.D.
   Cal. Aug. 1, 2008)................................................................................... 8

*DIRECT TV, Inc. v. Trone*, 209 F.R.D. 455 (C.D. Cal. 2002) ............................................. 8

*Hickman v. Taylor*, 329 U.S. 495 (1947) ............................................................... 8

*In Re Aspartame Antitrust Litig.*, CV-1732-LDD, 2008 WL 2275531 (E.D.Pa. 2008)...................... 10

*Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281 (C.D. Cal. 1998) ...................................... 8

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .............................................. 8

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002) .................... 8

*Soto v. City of Concord,* 162 F.R.D. 603 (N.D.Cal. 1995)............................................... 8

**Other Authorities**

Adv. Comm. Note to 2006 Amendment to Fed. R. Civ. P. 26(b)(2)(B) ............................................. 12

**Rules**

Fed. R. Civ. P. 26(b)(1)................................................................................ 8, 10

Fed. R. Civ. P. 26(b)(2)(c)................................................................................. 11

Fed. R. Civ. P. 34(b)(2)(B)-(C) ............................................................................ 8

**Treatises**

William W. Schwarzer, *et al.,* CIVIL PROCEDURE BEFORE TRIAL (Rutter Group 2008)............ 12

# NOTICE OF MOTION AND MOTION TO COMPEL

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 21, 2010 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5 before the Honorable Magistrate Judge Patricia V. Trumbull, of the above-entitled Court located at 280 South 1st Street, San Jose, California 95113, Plaintiff Jay Ralston ("Plaintiff") will, and hereby does, move pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order compelling Defendant Countrywide Home Loans, Inc. ("CHL") to produce discovery directly relevant to Plaintiff's claims for fraudulent omissions and for "unlawful," "unfair" and "fraudulent" acts and practices under California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.* Pursuant to Local Rule 37-1(a), Plaintiff has made numerous good faith attempts to resolve the discovery matters at issue in this motion, amicably, without need for Court intervention. However, the parties have reached an impasse on multiple issues, rendering this Motion to Compel Further Discovery Responses From Defendant Countrywide Home Loans, Inc. ("Motion to Compel").

This Motion to Compel is based upon this Notice of Motion, the accompanying Memorandum in Support of Plaintiff's Motion to Compel, the Statement of Relief Sought, the Declaration of Jennie Lee Anderson In Support of Plaintiff's Motion to Compel Further Discovery Responses from Defendant Countrywide Home Loans, Inc. ("Anderson Decl."), the pleadings on file in this action, and upon such other matters, evidence, and arguments as may be presented to the Court before or at the hearing on the Motion to Compel.

# STATEMENT OF RELIEF SOUGHT

Plaintiff seeks an order compelling production of documents and information in response to the Request Nos. 5, 6, 7, 8, 9, 15, 23 of Plaintiff's First Set of Document Requests To Defendant Countrywide Home Loans, Inc. ("Requests, Set One"), Request Nos. 1, 2, 3, 5, 6, 7, 8, 9, 13, 14 of Plaintiff's Second Set of Document Requests to Defendant Countrywide Home Loans, Inc. ("Requests, Set Two"), and Interrogatories 1 and 2 of Plaintiff's First Set of Interrogatories to Defendant Countrywide Home Loans, Inc. ("Interrogatories") as set forth in greater specificity below as required by Civil Local Rule 37-2.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This consumer fraud class action concerns a scheme to defraud orchestrated by Defendant Countrywide Home Loans, Inc. ("CHL") whereby CHL engaged loan originators, including, but not limited to, Mortgage Investors Group ("MIG"), to sell Pay Option Adjustable Rate Mortgages ("POA" or "Option ARM" loans) to Plaintiff and similarly-situated borrowers (the "Class") without disclosing important material facts to them before the loans were consummated. These undisclosed material facts include, but are not limited to, the fact that these Option ARM loans were negative amortization loans and that borrowers were guaranteed to suffer negative amortization on their loans simply by making payments according to the only payment schedule provided to them in the loan documents.

The loans that are the subject of Plaintiff's Third Amended Class Action Complaint ("TAC"), which has been upheld in its entirety by this Court after vigorous motion practice, include *all* Option ARM loans sold to consumers by loan originators and purchased by CHL pursuant to its correspondent lender program and its pre-existing arrangements with the correspondent lenders. In addition to the common nondisclosures, these loans all share the following common characteristics: (i) the monthly payment amount in the Note is based upon a "teaser" interest rate which ranges from 1% to 3%; (ii) the payment schedule listed in the at the time of closing and set forth in the Truth-in-Lending Disclosure Statement ("TILDS"), for the first 3-5 years of the loan, is based upon a fully amortizing payment at the teaser interest rate; (iii) the interest rate adjusts after only one month to a rate which is the sum of the "index" and a "margin"; and (iv) after the first 3-5 years of the loan, the amount of the monthly payments drastically increases. TAC ¶ 18.

By this Motion to Compel Further Discovery Responses From Defendant Countrywide Home Loans, Inc. ("Motion to Compel"), Plaintiff Ralston ("Plaintiff") seeks core information relevant to class certification and the merits, including, but not limited to, discovery regarding the number of Option ARM Loans at issue, the common terms and characteristics of the Option ARM loans, the common loan documents (e.g., Note, TILDS, Program Disclosure and Prepayment Penalty

2

Rider) provided to Class members, and the common policies, practices and procedures applicable to all of the CHL's correspondent lenders.  This discovery is directly relevant to the claims and defenses in the case, and critical to class certification, where Plaintiff will be required to demonstrate that Plaintiff and Class members received common nondisclosures of material fact and were subjected to common nondisclosures and common deceptive business practices.

By contrast, CHL's objections to the discovery sought are unfounded.  First, ignoring the well-pled allegations in the TAC, which encompass all of the Option ARM loans CHL purchased from its many correspondent lenders, CHL attempts to unilaterally limit the scope of discovery to loans originated only one correspondent lender, MIG.  CHL incorrectly argues that discovery regarding the other correspondent lenders is overly broad and unduly burdensome based upon its own assertion that Plaintiff does not have standing to represent class members who, just like him, purchased Option ARM loans from one of CHL's correspondent lenders, pursuant to CHL's underwriting guidelines, and using CHL-approved disclosures.  CHL's argument fails.  Indeed, this Court has already held that Plaintiff *can* proceed with his claims against CHL directly.  *See* Dkt. #152**.**  Moreover, whether Plaintiff and Class members are similarly situated is a factual issue for this Court to determine at class certification.  CHL cannot be permitted to deny Plaintiff the very evidence he needs to prevail on class certification and ultimately at trial on Plaintiff's class claims.

CHL's other objections are similarly deficient, as CHL has failed to substantiate its objections with any specificity, much less legal support for its refusal to produce, instead relying on an allegedly vague "overly burdensome" argument to avoid producing even the most critical and core evidence in this case.  For these reasons and those set forth more fully below, Plaintiff's Motion to Compel should be granted in its entirety. [1]

## II.    RELEVANT PROCEDURAL HISTORY

On January 24, 2008, Plaintiff filed his original complaint against MIG.  (Dkt. #1).  Discovery revealed that, while Plaintiff's loan was originated by MIG, it was a CHL loan for all practical purposes, meeting all of the CHL underwriting guidelines, using CHL approved documents

---

[1] Plaintiff expressly reserves his right to move to compel further discovery responses to other requests not discussed herein.

and being predestined to be sold to CHL pursuant to CHL's correspondent lending program. *See, e.g,* Anderson Decl., Exh. U, pp. 20-27; 35-40; 52-62.  On April 15, 2009, Plaintiff filed the Second Amended Complaint ("SAC"), adding CHL, Bank of America and Bank of New York as defendants. (Dkt. #78).  On May 29, 2009, defendants filed motions to dismiss the SAC.  (Dkts. #93-99).  On September 2, 2009, Plaintiff served CHL with his Document Requests, Set One, and Interrogatories. Anderson Decl., Exhs. A and B.

On October 16, 2009, CHL responded to discovery with objections and did not produce any documents pursuant to Requests, Set One.  Anderson Decl., Exhs. C and D.  On the same day, CHL filed a motion to stay discovery pending a decision on its motion to dismiss.  (Dkt. #111).

On March 22, 2010, this Court granted CHL's motion to stay discovery.  (Dkt. #119).  On the same day, the Court granted CHL's motion to dismiss the SAC.  (Dkt. #119).

On June 3, 2010, Plaintiff filed a TAC against MIG and CHL, including robust allegations regarding CHL's role in the fraudulent scheme alleged and effectuated through its many correspondent lenders, including MIG.  (Dkt. #142); *see* Anderson Exh. E.

On June 1, 2010, CHL filed a motion to dismiss the TAC.  In the motion, CHL challenged the viability of Plaintiff's UCL and fraudulent omissions claims, which rested on Plaintiff's allegations of CHL's deceptive activities with respect to *all* originators of CHL's Option ARM loans.  (Dkt. #139).

On August 12, 2010, this Court denied CHL's motion to dismiss the TAC in its entirety. (Dkt. #152).  The Court formed the basis of its decision to deny CHL's motion to dismiss on many of Plaintiff's allegations pertaining to the third party originators, noting that Plaintiffs allege that CHL "provided MIG **and other loan originators** with substantial assistance in pushing the fraudulent loans by providing lines of credit and guarantees that Countrywide would purchase the Option ARM loans when made.  These allegations are sufficient to state a claim against Countrywide under an aiding and abetting theory."  (Dkt. #152, at 8) (emphasis added).[2]

---

[2] *See also* Dkt. #152, at 6:16-22 ("Ralston alleges that 'Countrywide designed and approved, and MIG **and other originators** issued, marketed and sold, the Notes, which set forth a teaser rate that was only in effect for 30 days and approved the TILDS which set forth payments based upon those

4

On August 13, 2010, the parties appeared before Judge Fogel for a Case Management Conference, during which the Court ordered that Plaintiff should move for class certification on or before January 14, 2011. (Dkt. #153; *see also* Anderson Decl. ¶ 5). Judge Fogel rejected CHL's request that discovery be bifurcated in this same Conference. Anderson Decl. ¶ 5.

On August 20, 2010, the parties met and conferred telephonically. CHL's asserted that discovery in the case should be arbitrarily limited to communications with MIG and Option ARM loans originated by MIG. Anderson Decl. ¶ 6 and Exh. G. Plaintiff explained his position that the TAC upheld by the Court includes allegations about CHL's practices relating to ***all originators*** from whom it purchased the Option ARM Loans, not just MIG. *Id.* Plaintiff further explained how the discovery sought goes to the heart of his allegations. *Id.* Notably, the proposed class definition of the CHL Class set forth in the TAC is not limited to MIG loans and includes:

> All individuals who, from January 24, 2004 through the date that notice is mailed to the Class, have or had an Option ARM loan ***originated by a lender other than Countrywide Home Loans, Inc. and subsequently assigned or sold to Countrywide Home Loans, Inc.*** on their home located in the State of California or for which the loan documents were approved in or emanated from California or from a California Defendant, with the following characteristics:
>
> (i)      the monthly payment amount in the Note is based upon an interest rate which ranges from 1% to 3%;
>
> (ii)      the payment schedule in the TILDS, for the first year or more of the Note, is based upon a fully amortizing payment at the teaser interest rate;
>
> (iii)      the interest rate adjusts after only one month to a rate which is the sum of the "index" and the "margin"; and
>
> (iv)      after the first three to five years of the loan, the monthly payment amount increases to a fully amortizing payment based upon the remaining principal balance at that time.

---

teaser rates for the first three to five years of the loan."); 2:16-18 ("Ralston alleges that Countrywide -concocted and implemented" a fraudulent scheme under which MIG ***and other mortgage originators*** marketed Option Adjustable Rate Mortgage (-Option ARM") loans using deceptive loan documents."); 2:26-27 ("The ability of MIG ***and other loan originators*** to issue Option ARM loans was wholly dependent on Countrywide purchasing the loans shortly after origination."); 2:27-33 ("Moreover, MIG ***and other loan originators*** did not use their own assets to fund Option ARM loans, but borrowed money from warehouse lenders, often affiliates of Countrywide.") (emphasis added).

5

(TAC ¶ 57.) (emphasis added). During the same meet and confer, Plaintiff offered to defer Request Nos. 10, 11, 13, 14, 16 and 17 and Interrogatory Nos. 10-11 to reduce the burden on CHL and focus discovery on class certification issues. Anderson Decl., Exh. G.

On August 27, 2010, Plaintiff served CHL with his Documents Requests, Set Two. Anderson Decl., Exh. F. Plaintiff's Requests, Set Two, focus on the newly upheld allegations in the TAC, CHL's correspondent lending program and the additional originators. On September 30, 2010, CHL responded to Requests, Set Two, with mainly objections and produced no documents. *Id.* Exh. I.

On October 26, 2010, CHL served its Supplemental Objections and Responses to Plaintiff's First Set of Requests for Production of Documents and Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories ("Supplemental Responses"). Anderson Decl., Exhs. P and Q. The Supplemental Responses were insufficient, and CHL has yet to produce any documents.

The parties met and conferred on numerous occasions from August 2010 through the beginning of November 2010 in an attempt to resolve their contentions related to both sets of discovery requests and objections. *See* Anderson Decl. ¶¶ 6, 8, 9, 11, 13, 14, 15, 16, 20-24 and Exhs. G, H, J, K, L, M, R, S, T, V. Among other things, CHL has consistently refused to produce any documents beyond those relating to loans originated by MIG. Because the parties are unable to agree on the proper scope of discovery, Plaintiff had no choice but to bring this Motion to Compel.

## III.  SUMMARY OF RELEVANT ALLEGATIONS

Plaintiff and the CHL Class members obtained Option ARM loans from loan originators which were predestined to be transferred to CHL almost immediately after closing, pursuant to CHL's correspondent lending program. (TAC, ¶¶ 5, 30, 57, 60, 86). The CHL Option ARM loans at issue were all originated pursuant to CHL's uniform guidelines and requirements via its Correspondent Lending Division ("CLD"), regardless of the originator. (*Id.* ¶ 39, 44-47). In line with its CLD program and agreements, CHL provided originators with a warehouse line of credit to fund the loans and subsequently purchased the loans from the originators. (*Id.* ¶¶ 4, 35, 38, 74, 89, 104). However, CHL only agreed to fund and purchase the Option ARM loans from the originators if the loan documents complied with CHL's Seller's Guide and the Loan Purchasing Agreement.

6

(*Id.* ¶¶ 40-41).  All of the loans were similarly fraudulent and deceptive, using virtually identical disclosures and documents, which did not disclose to borrowers that negative amortization was certain to occur if they followed the payment schedule provided.[3]  (*Id.* ¶¶ 3, 22, 23, 24, 25, 26, 28, 29).  MIG is one of CHL's many correspondent lenders who originated the Option ARM loans on CHL's behalf and sold them to CHL Class members.

Plaintiff filed the operative TAC on June 3, 2010, alleging that CHL forged an agreement with "third party originators, such as MIG," to sell loans on CHL's behalf.  (Dkt. #142; TAC ¶¶ 35, 48-52, 56).  CHL knew that the loans were designed to result in negative amortization and did not disclose this material information in the loan documents.  (TAC ¶ 48-49).  While Plaintiff's loan documents mention negative amortization as a mere possibility, CHL knew and failed to disclose that negative amortization was certain to occur pursuant to the only payment schedule included in the contract.  (*Id.* ¶ 51-56).  As a result of these deceptive activities, CHL reaped hundreds of millions of dollars in profits.  (*Id.* ¶¶ 1, 32, 34, 75).

Based on these allegations, Plaintiff brings claims for violations of the UCL claim and for common law fraudulent omissions against CHL and MIG.  (TAC ¶¶ 66-109).  Because Plaintiff is a victim of MIG as the originator, he alleges a one class of consumers who purchased loans directly from MIG.  Because Plaintiff is also a victim of CHL's fraudulent business practices effectuated though its correspondent lending program and the common loans sold through originators pursuant to CHL's guidelines, Plaintiff alleges a second class of consumers who are similarly situated and injured by CHL.  The proposed class definition of the CHL class is not limited to MIG loans and clearly includes all consumers who have or had an Option ARM loan "*originated by a lender other than Countrywide Home Loans, Inc. and subsequently assigned or sold to Countrywide Home Loans, Inc.*" (TAC ¶ 57) (emphasis added).

## IV.  LEGAL STANDARD ON A MOTION TO COMPEL

Federal Rule of Civil Procedures 26(b)(1) provides for discovery of any information that is "relevant to the subject matter involved in the action" or "appears reasonably calculated to lead to

---

[3] Negative amortization occurs when a loan's principal balance increases even while a borrower makes payments because the payments are too low to cover the interest accruing on the loan.

the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  The permissible scope of discovery is broad and shall include any information that might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement.  *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Campo v. Am. Corrective Counseling Servs.*, No. C 01-21151 JW (PVT), 2008 WL 3154754, at *2 (N.D. Cal. 2008) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Thus, "the question of relevancy should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case."  *Soto v. City of Concord,* 162 F.R.D. 603, 610 (N.D.Cal. 1995).

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *DIRECT TV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).  Regardless, the requested discovery must be produced if relevancy and need outweigh the harm of disclosure.  *See Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002); *see also Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D. Cal. 1998).  In responding to requests for production, the responding party must state whether production will occur, or specifically state the party's objection to the production.  Fed. R. Civ. P. 34(b)(2)(B)-(C).  If responses have been served but contain objections or evasive or incomplete answers, the proper procedure is a motion to compel under 37(a).  Applying these standards here, Plaintiff's Motion to Compel should be granted.

## V.  ARGUMENT

### A.  Core Loan Documents Should Be Produced (Request No. 6, Set One and Two).

Request No. 6 (Set Two) seeks "A complete copy of each version of the Option ARM Loan Documents that You required Correspondent Lenders to use when originating Option ARM Loans pursuant to Your guidelines during the Liability Period, including, but not limited to, a complete

///
///
///
///

8

copy of each version of the Option ARM Loan contracts or notes, TILDS, riders and disclosure statements, that were designed to be provided to borrowers before or at the time of closing."[4]

CHL objected these Requests as vague and ambiguous, overbroad, unduly burdensome and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, improper, premature, lacking specificity and particularity and improper, and to the degree it seeks confidential or privileged information. *See* Anderson Decl., Exh. C, pp. 16-18; Exh. I, pp. 17-18; and Exh. P, pp. 15-16.[5]

### 1. The Loan Documents Are Relevant.

These Requests seek one copy of each version of the loan documents CHL used or approved for use by its originators during the relevant time period. This information is relevant and, indeed, necessary to demonstrate that the disclosure documents CHL used were materially the same, insufficient, and deceptive. As alleged, CHL provided its loan originators with CHL-approved loan documents, either directly or through third parties. *See* TAC ¶¶ 5, 30, 35, 38, 57, 60, 74, 86, 89, 104. The evidence demonstrates that these pre-approved documents include the very documents that Plaintiff alleges contained the uniform, deceptive language, including the Note, the TILDS, the Program Disclosures and the Prepayment Penalty Riders. *See* Anderson Decl., Ex. U, pp. 20-27; 35-40; 52-62. Thus, these documents go to the very core of Plaintiff's claims and are directly relevant to both class certification and the merits of the case. Plaintiff does not seek complete loan files for every loan, nor does he seek privileged information. Because Plaintiff's Requests seek relevant

---

[4] <u>Request No. 6 (Set One)</u> is wholly encompassed by Request No. 6 (Set Two), seeking "A complete copy of each version of Option ARM Loan documents provided to borrowers during the Liability Period, whether directly by you or through MIG as the originator, including, but not limited to, a complete copy of each version of the Option ARM Loan contracts or notes, TILDS, riders, disclosure statements, and any other standardized forms, denominated by a different name, that reflect or refer to the Option ARM Loan documents provided to borrowers before or at the time of closing during the Liability Period."

[5] After meeting and conferring for months, CHL would only agree to produce a 5% sampling of only the MIG loans documents to be chosen by Plaintiff. *See* Anderson Exhs. S and T. Because Plaintiff must demonstrate that the CHL Option ARM loans originated by the correspondent lenders share common characteristics across the board and that the deficiencies in the disclosures were materially the same, such a production is entirely insufficient. *See* Anderson Exh. V.

materials, is narrowly tailored, and does not seek privileged information, the documents should be produced.

### 2. The Scope Of Discovery Is Supported By The Allegations.

Plaintiff's discovery relating to Option ARM loan documents provided to third-party originators is not overbroad, as these are the very loans alleged in the TAC. It is well-established that the allegations of the operative complaint dictate the scope of the claims and the materials that are relevant thereto. *See, e.g, Bell v. Lockheed Martin Corp.*, CV-08-6292, 2010 U.S. DIST. LEXIS 62971, at *15 (D.N.J. 2010) (referencing allegations in the operative complaint to determine the relevancy of discovery sought); *see also In Re Aspartame Antitrust Litig.*, CV-1732-LDD, 2008 WL 2275531, at *2 (E.D.Pa. 2008) ("The relevancy of a discovery request is determined by analyzing the allegations contained in the complaint and the substantive law applicable to those allegations."); *see also* Fed. R. Civ. P. 26(b)(1).

Here, the loan documents used by third party CHL originators are directly relevant to the allegations in the TAC, which set forth a scheme involving the sale of common Option ARM loans that were created and later purchased by CHL pursuant to common terms from *all* of its originators, not just MIG. TAC ¶¶ 1, 4, 7, 18, 34, 35-42, 48, 56-57, 72, 74, 86, 88, 89, 96, 104. Indeed, the allegations regarding the definition of the relevant loans, description of CHL's actions in furtherance of the fraudulent "scheme," and articulated harm suffered by Plaintiff and Class members all explicitly include "third party originators."[6] As noted above, Plaintiff's allegations as they relate to third party originators, CHL's correspondent lending program and CHL's role in the fraud have been upheld by this Court in their entirety. *See* Dkt. #152, pp. 2, 6-8. Whether the loan documents and

---

[6] *See* TAC ¶ 18 ("The loans that are the subject of this Complaint are the Option Arm loans purchased by Countrywide from MIG and *other originators*…"); TAC ¶ 35 ("In order to increase the number of loans it could securitize, Countrywide devised a plan to have *third party originators*, such as MIG, sell loans that it would then purchase. Countrywide, MIG, *and other originators* agreed that the originators would sell Option ARM loans to homeowners… Countrywide engaged in a systematic scheme, using MIG *and other loan originators*, to steer borrowers into Option ARM loans…"); TAC ¶ 86 ("Plaintiff and Class Members include consumers who obtained Option ARM mortgage loans that were designed by Countrywide and *made available to the originators* to use for loan originations and/or applied for mortgage loans through MIG.") (emphasis added).

10

disclosures are materially the same is directly relevant to class certification. As such, discovery of the core loan documents sought is necessary and proper.[7]

### 3. CHL Has Not Articulated Any Undue Burden.

Because the information Plaintiff seeks is relevant and not withheld on privilege grounds, the only remaining consideration for the Court is whether producing the information sought is overly burdensome. Fed. R. Civ. Proc. 26(b)(2)(c).

CHL argues that the Request is unduly burdensome in that it will require it to look at every page of every loan document. But Plaintiff does not seek every loan document. Instead, Plaintiff seeks only *one* copy of each version of the form loan documents. As such, the Request is narrowly tailored and reasonable on its face. Moreover, in an effort to even further narrow its original request, Plaintiff offered to begin with the production of only certain types of loan documents. Specifically, Plaintiff is willing to initially limit the loan documents to be produced to all versions of the required loan terms and all version of the following form documents: Notes, TILDS, Program Disclosure, Prepayment Penalty Rider Notes and other disclosures regarding negative amortization that were approved by CHL and/or provided to originators directly or indirectly during the relevant time period.[8] *See, e.g.,* Anderson Decl., Exhs. S and V; *see also* TAC ¶ 46; Exh. U, pp. 22-26, 34-37, 42-44. Thus, CHL will not, as it has complained, have to review the entire loan file for every loan.

As the producing party, CHL bears a heavy burden of articulating its objections with specificity. *Blankenship,* 519 F.2d 418 at 429. At a minimum, a defendant claiming burden must "identify, by category or type, the sources containing potentially responsive information" that it claims are not "reasonably accessible." William W. Schwarzer, *et al.,* CIVIL PROCEDURE

---

[7] Additionally, CHL's thirty-eighth affirmative defense states that CHL also "specifically denies that any class should be certified and that it engaged in ÷conduct that encouraged and permitted MIG¢ and other originators to originate payment option adjustable rate loans (÷POA loans¢) that purportedly ÷failed to clearly, unambiguously and conspicuously disclose¢ the subject loan terms." (Dkt. #155, ¶ 29). CHL put the ARM loans originated by these third parties at issue in this denial. (*Id.*) Thus, it cannot now deny Plaintiff the ability to counter this defense.

[8] Once these loan documents and the loan level data responsive to Request No. 5 are produced, the Plaintiff can assess whether a sampling of documents from the actual loan files is sufficient, and, if so, what that sampling should look like.

BEFORE TRIAL, [11:1854.5] (Rutter Group 2008) (citing Adv. Comm. Note to 2006 Amendment to Fed. R. Civ. P. 26(b)(2)(B)). "Enough detail should be provided to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources." *Id.* Conclusory objections that the requests are burdensome are insufficient. *See Bible v. Rio Prop., Inc.* No. CV 07-0366, 2007 WL 3071647, at *4 (C.D. Cal. 2007); *see also Caliper Tech Corp. v. Molecular Devices Corp.,* 213, F.R.D. 555, 562 (N.D. Cal. 2003).

CHL has wholly failed to provide Plaintiff with information to substantiate its undue burdensome objection; its contentions are conclusory and without factual support. *See* Anderson Decl., Exhs. C and I. CHL has refused to agree to Plaintiff's proposal and argues, without substantiation, that Plaintiff's discovery should be arbitrarily limited to MIG loans. Because the common documents used to originate these loans goes to the core Plaintiff's allegations, the documents requested should be produced.

### B. Relevant Loan Level Data Should Be Produced (Request No. 5, Sets 1 and 2).

Request No. 5 (Set Two) seeks "Documents sufficient to identify each Option ARM Loan You purchased from Correspondent Lenders during the Liability Period, including but not limited to the loan number, the Loan Program type, the property location, rates and pricing that apply to the loan and the Correspondent Lender who originated the loan."

CHL objected the Request was vague and ambiguous, overbroad, unduly burdensome and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, improper, premature, lacking specificity and particularity and improper, and to the degree it seeks confidential or privileged information. Anderson Decl., Exh. I, pp. 14-16.

Request No. 5 (Set One) related to MIG documents, seeking "All documents regarding Option ARM Loans originated by MIG on which Countrywide was an investor."

CHL objected the Request was vague and ambiguous, overbroad, unduly burdensome and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, improper, premature, lacking specificity and particularity and improper, and to the degree it seeks confidential or privileged information, and that the term "Option ARM Loans does not accurately describe the

adjustable rate mortgage loans originated by MIG that are the subject of this action or the disclosures made by MIG in connection with such loans." Anderson Decl., Exh. C, pp. 14-16 and Exh. P, pp.13-14.

Document Requests No. 5 seek relevant loan level data necessary to demonstrate that the Class members' loans shared common terms alleged in the TAC.[9] *See* TAC ¶¶ 21, 38, 39, 40, 42, 44-46, 103. Contrary to CHL's assertions, loan level data related to loans sold by third party originators is relevant to Plaintiff's Requests for reasons set forth in Section V.A.2, *supra.*

Moreover, the discovery sought is not unduly burdensome to produce. Discovery to date demonstrates that the vast majority of the information sought is maintained and readily available in CHL's "Sapphire" database. *See* Anderson Decl., Exhs. M and O. CHL acknowledges that it can create reports containing the loan data responsive to these Requests.[10] *See* Anderson Decl., Exh. T. In fact, by producing a report containing very limited data fields for the MIG loans (LoanNum, PropState, Purchase Date and Original Principal Amount), CHL has demonstrated that database reports can be conducted with relative ease. *See* Anderson Decl., Exhs. O, M, and N. Thus, producing all relevant data for all of the Option ARM loans alleged in the TAC would not be unduly burdensome. Accordingly, CHL should immediately produce complete data from the Sapphire database.

Plaintiff also requested that CHL disclose all fields of the database and identify fields in its other databases (e.g., its loan servicing database) that may contain additional responsive information.

///

---

[9] For example, "Option ARM Loan(s)" as defined in both Document Requests, Set One and Set Two, means the "Adjustable Rate" mortgages CHL purchased or sold during the liability that have the following characteristics: (a) there is an initial low interest rate or "teaser" rate offered, typically 1%-3%; (b) Borrowers are provided a payment schedule in the TILDS based on this low interest rate; and (c) when the payment schedule is followed negative amortization occurs." Anderson Decl., Exh. A, p. 3 and Exh. F, p. 3.

[10] CHL has stated that it will consider producing the Sapphire data for the MIG loans, but only if Plaintiff agrees to limit its production of MIG loan documents to a 5% sampling. Production of MIG loans and data alone is insufficient and will deny Plaintiff with the basic information relevant to class certification. As such, Plaintiff cannot agree. *See* Anderson Decl., Exh. V.

13

Extracting information from these electronic databases may significantly reduce CHL's burden and CHL has not offered any legitimate reason why this information should not be produced.[11]

### C. Documents Relating to Loan Purchase Agreements Should Be Produced (Request No. 1 (Set Two)).

Request No. 1 (Set Two) seeks "All Documents, Communications or Correspondence between You and [] any Correspondent Lenders Regarding the sale and/or purchase of Option ARM Loans during the Liability Period, including, but not limited to, Documents Constituting or Referring To any agreements, draft agreements, promotional offers, training materials, and/or contracts regarding the terms of the loans the originated and sold by the Correspondent Lenders." Anderson Decl., Exh. F.

CHL objected that the Request is "improper, premature, untimely, vague, ambiguous, overly broad, unduly burdensome, and/or not relevant" and to the degree the Request seeks privileged information. *See* Anderson Decl., Exh. I, pp. 7-9. CHL has refused to produce any documents, contending that the Protective Order in place is insufficient. It did indicate that once a protective order it agrees to is entered, it would produce non-privileged "portions of the Loan Purchase Agreement(s)" between MIG and CHL "to the extent such Agreement(s) concern POA loans." *See* Anderson Decl., Exhs. I and S.

CHL's efforts to limit discovery to agreements with MIG is unavailing, as agreements between CHL and other originators is relevant to class certification and to the allegations in the TAC regarding Option ARM loans purchased by CHL from *all* originators, not just MIG. *See* Section V.A.2, *supra.* The terms and conditions CHL imposed on other originators through its Loan Purchase Agreements are relevant to demonstrate that the terms and guidelines are as alleged in the TAC and that the terms were materially uniform from originator to originator and loan to loan. Thus, failing to compel these documents will deny Plaintiff the evidence he needs to demonstrate at

---

[11] Plaintiff believes that producing complete data in the Sapphire and other relevant databases in response to Request No. 5 may also satisfy the information Plaintiff seeks in Interrogatory Nos. 3, 4, 5, 6 and 7. Anderson Decl., Exh. A. Plaintiff expressly reserves his right to move to compel further discovery responses to these discovery requests in the event that he determines that any information produced is deficient and/or not responsive to the Requests.

14

class certification, among other things, that the agreements shared common characteristics and affected class members in a common manner.

Additionally, CHL has wholly failed to substantiate its undue burden objection; its contentions are conclusory and without factual support. *See* Section V.A. 3, *supra*, Anderson Decl., Exhs. I and T. Because the agreements and related documents are limited and maintained by CHL in the regular course of business, the burden of producing these documents is minimal, and CHL has not articulated otherwise. The documents are directly relevant, not unduly burdensome to produce, and should be produced.

**D.      Documents Summarizing CHL's Loan Purchases Should Be Produced (Request No. 15 (Set One)).**

<u>Request No. 15 (Set One)</u> seeks "A complete copy of all documents that summarize your purchase and subsequent securitization of the ARM Loans you purchased during the Liability Period." Anderson Decl., Exh. A.

In its original objection, CHL has refused to produce any documents in response to this discovery, contending, without substantiation, that the Request is "improper, premature, untimely, vague, ambiguous, overly broad, unduly burdensome, and/or not relevant" and to the degree the Request seeks privileged information. *See* Anderson Decl., Exh. C, pp. 32-34 and Exh. P, pp. 27-28. In response, Plaintiff narrowed this request to documents that summarize CHL's purchase of the Option ARM loans, deferring issues of securitization altogether. *See* Anderson Decl., Exh. S. As the parties discussed, this Request would encompass information regarding purchases in the Sapphire database, as well as any regularly or periodically created reports regarding the Option ARM loans CHL purchased. *Id.* However, CHL has refused to produce any responsive documents and objects to the degree the Request calls for documents relating to third-party originators. *Id.; see also* Exh. M.

Plaintiff is entitled to these summaries as they relate to ***both*** MIG and other originators for the same reasons discussed above in Section V.A. 2, *supra*. Such summaries and reports will demonstrate the common characteristics of Class members' loans across originators. Given CHL's argument that details regarding CHL's relationships with third party originators may provide them with some affirmative defense to class certification, all documents relating to these relationships are

15

relevant.  (*See* Dkt. #155, ¶ 29).  Seeking only summaries, including information in the Sapphire database and regular and periodic reports, is reasonable and fair.

### E. Additional Discovery Where CHL Improperly Limits Its Production to Documents Related to MIG.

As discussed in Sections V.A.1 - V.A.3, *supra*, CHL seeks to improperly limit its production to documents related to MIG, the well-pled allegations notwithstanding.  *See* Anderson Decl. ¶ 6. Each of the categories of documents set forth below is relevant to the claims and defenses, relevant to class certification, and not unduly burdensome to produce.  Indeed, CHL has agreed to produce responsive documents relating to MIG, but arbitrarily refuses to produce documents related to third party correspondent lenders for the same unfounded reasons set forth in Section V.A. 2, *supra*.

### 1. Interrogatories 1 and 2 Regarding The Number of Option ARM Loans

Interrogatory No. 1 requests that CHL "state the total number of Option ARM Loans You purchased or sold during the Liability Period in connection with real property located in the State of California." Anderson Decl., Exh. B.  CHL objected that the Request was vague and ambiguous, overbroad, unduly burdensome and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, improper, premature, lacking specificity and particularity and improper, and to the degree it seeks confidential or privileged information.  Anderson Decl., Exh. D, pp. 7-8 and Exh. Q, pp. 7-8.

Interrogatory No. 2 requests that CHL "state the total number of Option ARM Loans you purchased or sold in connection with real property located outside the State of California (but within the United States) during the Liability Period." Anderson Decl., Exh. B. CHL objected that the Request was vague and ambiguous, overbroad, unduly burdensome and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, improper, premature, lacking specificity and particularity and improper, and to the degree it seeks confidential or privileged information. Anderson Decl., Exh. D, pp. 8-9 and Exh. Q, pp. 8-9.

CHL has agreed to provide this information for MIG loans only. However, the same information pertaining to third party correspondent lenders is directly relevant to class certification

///

16

and damages.  Because this information is demonstrated to be readily available from CHL's Sapphire database, it should be produced.

### 2.     CHL Instructions, Guidelines, Criteria For Correspondent Lenders (Request No. 2 (Set Two))

Request No. 2 (Set Two) seeks "All Documents Constituting or Relating To instructions, guidelines, and/or criteria Your Correspondent Lending Division developed for use by Correspondent Lenders in connection with Option ARM Loans, including, but not limited to, all relevant versions of Your Correspondent Lending Division Seller's Guide and all information provided to Correspondent Lenders secure or unsecure websites."  Anderson Decl., Exh. F.

CHL objects that the Request is improper, premature, vague, ambiguous, overly broad, unduly burdensome, and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, improper, premature, lacking specificity and particularity and improper, and to the degree it seeks confidential or privileged information.  *See* Anderson Decl., Exh. I, pp. 10-11.

CHL has stated that it will produce documents responsive to this request, including, *inter alia,* materials from the Seller's Guide and its Platinum website relating to CLD's general correspondent lending policies and procedures relating to the purchase of Option ARM loans from MIG during the subject time period.  *See* Anderson Decl., Exhs. T and V.  CHL has also agreed to produce the complete table of contents for the Sellers Guide.  CHL has stated, however, that is will limit it production of documents to those "relating to the purchase of POA loans form MIG." Anderson Decl., Exh. I, p. 11 and Exh. S.

Pursuant to reasons discussed above in Section V.A. 1 - V.A. 3, *supra*, these documents relating to third party originators are relevant to Plaintiff's claims and CHL's defenses because they will provide transparency into the lending relationship between CHL and these third party correspondent lenders and the common terms that applied to all Class members' loans.   Thus, CHL should either confirm that all responsive documents apply to all of its correspondent lender originators or produce any additional responsive policies and procedures.

///

///

17

**3.  Documents Regarding Option ARM Policies (Request No. 3 (Set Two))**

Request No. 3 (Set Two) seeks õAll Documents that Refer, reflect or Relate to Your policies, procedures, and practices, including any changes to such policies, procedures and practices, Concerning Option ARM Loans originated and/or sold by Your Correspondent Lenders.ö *See* Anderson Decl., Exh. F.

CHL objects to this request as improper, premature, vague, ambiguous, overly broad, unduly burdensome, and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, improper, premature, lacking specificity and particularity and improper, and to the degree it seeks confidential or privileged information.  *See* Anderson Decl., Exh. I, pp. 11-13.  CHL indicated that it will produce only õdocuments sufficient to evidence the CLDøs general policies and procedures relating to the purchase of POA loans form MIG,ö Anderson Decl., Exh. I, pp. 11-13 and Exh. S.  CHL also confirmed that all versions of these polices and procedures will be included in its production.  *See* Anderson Decl., Exh. V.

Documents reflecting CHLøs Option ARM loan policies and procedures as applied to all correspondent lenders are all relevant, and CHL has not substantiated its objections with the required specificity.  *See* Sections V.A. 1 - V.A. 3, *supra.*  In fact, CHL has indicated that many policies apply equally to all correspondent lenders.  Thus, CHL should either confirm that all responsive documents apply to all of its correspondent lenders or produce any additional responsive policies and procedures.

**4.  Materials CHL Provided To Loan Originators (Request No. 8 (Set Two))**

Request No. 8 (Set Two) seeks õAll Documents sufficient to show all means by which Your underwriting guidelines, õRate Sheetsö or other materials or criteria regarding the sale of Option ARM Loans were made available to Correspondent Lenders, including, but not limited to, Documents regarding Correspondent Lending Divisionøs websites, instructions, manuals, third-party Documents services, and/or training materials.ö  Anderson Decl., Exh. F.

CHL objects that this Request is improper, premature, vague, ambiguous, overly broad, unduly burdensome, and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, improper, premature, lacking specificity and particularity, and to the degree it

18

seeks confidential or privileged information. CHL agreed to produce responsive documents, but only for MIG. *See* Anderson Decl., Exh. I, pp. 19-21 and Exh. T.

These materials are relevant and will demonstrate at class certification that the documents and guidelines used by the CHL correspondent lenders were the same. *See* Section V.A. 1 - V.A. 3.

### 5. Lines Of Credit CHL Gave To Its Originators (Request No. 9 (Set Two)

Request No. 9 (Set Two) seeks õA complete copy of all Documents which reflect, refer or relate to the terms of any line of credit which You provided to Correspondent Lenders during the Liability Period.ö Anderson Decl., Exh. F.

CHL objects that the Request is improper, premature, vague, ambiguous, overly broad, unduly burdensome, and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, improper, premature, lacking specificity and particularity and improper, and to the degree it seeks confidential or privileged information. CHL agreed to produce responsive documents, but only relating to MIG. *See* Anderson Decl., Exh. I, pp. 21-22 and Exh. T.

This information is relevant to allegations that CHL was funding the loans written by its originators, therefore, enabling them to sell the Option ARM loans. *See* TAC ¶¶ 4, 35, 36, 44, 45; *see also* Section V.A. 1 - V.A. 3.

### 6. Correspondent Lender Contact Persons (Request No. 13 (Set Two))

Request No. 13 (Set Two) seeks õDocuments sufficient to identify (including name, address and telephone number) contact Persons at each of Your Correspondent Lenders that sold the subject Option ARM Loans during the Liability Period.ö Anderson Decl., Exh. F.

CHL objects that the Request is improper, premature, vague, ambiguous, overly broad, unduly burdensome, and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and to the degree it seeks confidential or privileged information. CHL has agreed to produce information relating to MIG only. Anderson Decl., Exh. I, pp. 26-27 and Exh. T.

Information regarding contact persons for its third-party lenders is likely to lead to the discovery of admissible evidence, as these individuals will have knowledge of the CHLøs policies and that the policies were substantially the same for all originators. *See also* Section V.A. 1 - V.A. 3.

///

19

### 7.     CHL Policies and Practice Regarding Correspondent Lenders (Request No. 14 (Set Two)

<u>Request No. 14 (Set Two)</u> seeks õDocuments sufficient to describe Your policies, practices and procedures for the origination, sale and purchase of the subject Option ARM Loans originated or sold through Your Correspondent Lenders during the Liability Period.ö  Anderson Decl., Exh. F.

CHL objects that this Request is improper, premature, vague, ambiguous, unintelligible, contradictory, overly broad, unduly burdensome, and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and to the degree it seeks confidential or privileged information.  CHL has agreed to produce responsive documents relating only to MIG.  Anderson Decl., Exh. I, pp. 28-29 and Exh. T.

Information regarding CHLøs Option ARM policies-is relevant to demonstrate at class certification that the documents and policies communicated by CHL to correspondent lenders contained the same terms and were applied in a uniform manner.  *See* Section V.A. 1 - V.A. 3, *supra.*  CHL has not articulated its burden with specificity.

### F.     Discovery Pertaining to Loan Document Preparation Services Should Be Produced (Requests Nos. 7-8 (Set One)).

<u>Request No. 7 (Set One)</u> seeks õAll documents constituting or referring to communications, correspondence or agreements between you and any loan document preparation service, including but not limited to DocMagic, regarding any Option ARM loan documents provided or made available to MIG.ö  Anderson Decl., Exh. A.

CHL objects that this Request is improper, premature, vague, ambiguous, overly broad, unduly burdensome, and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and to the degree it seeks confidential or privileged information.  Moreover, CHL objects that the term õOption ARM Loansö does not accurately describe the adjustable rate mortgage loans originated by MIG or the disclosures by MIG in connection with these loans. Anderson Decl., Exh. C, pp.18-20 and Exh. P, pp. 17-18.

<u>Request No. 8 (Set One)</u> seeks õA complete copy of all Option ARM loan documents provided to any loan document preparation service, including but not limited to Doc Magic, during

///

20

the Liability Period, including but not limited to any and all instructions, limitations or guidelines for the completion of such documents. Anderson Decl., Exh. A.

CHL objects that this Request is improper, premature, vague, ambiguous, overly broad, unduly burdensome, and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and to the degree it seeks confidential or privileged information. Moreover, CHL objects that the term "Option ARM Loans" does not accurately describe the adjustable rate mortgage loans originated by MIG or the disclosures by MIG in connection with these loans. Anderson Decl., Exh. C, pp. 20-22 and Exh. P, pp. 18-19.

In its Supplemental Responses, CHL indicated that it would produce general policies relating to the purchase of Option ARM loans for MIG. *See* Anderson Decl., Exh. P. These Supplemental Responses are non-responsive. *See* Anderson Decl., Exh. S. The documents sought are relevant, as discovery in the case to date establishes that CHL-approved documents (in some cases marked with a "cw" in the footer) were made available to correspondent lenders through these documents preparation services, including, but not limited to vendor DocMagic. *See* Anderson Decl., Exh. U, pp. 22-27, 35-36, 39-41. CHL has not substantiated its objections and offered no explanation for its refusal to produce responsive documents. To the degree CHL had agreements with these vendors and/or provided these vendors with Note versions and other pre-approved language or loan documents to be given to CHL originators, those documents are relevant. CHL has not articulated why production of these documents would be unduly burdensome.

### G. CHL's Option ARM Rate Sheets Should Be Produced (Request No. 7 (Set Two)).

Request No. 7 (Set Two) seeks "A complete historical copy of the "Rate Sheets" You provided or made available to Correspondent Lenders during the Liability Period for the subject Option ARM Loans." Anderson Decl., Exh. F.

CHL objected to Request No. 7, claiming that the term "historical copy of [] ÷Rate Sheets" is vague and ambiguous. *See Id.*, Exh. I, p. 18. CHL also objects to this Document Request because it is based upon at least one inaccurate factual predicate concerning CHL's purported "provision" of "Rate Sheets," as CHL understands that term to MIG (and other correspondent lenders) during the

subject time period." *Id.* Additionally, CHL objects that this Request is improper, premature, vague, ambiguous, overly broad, unduly burdensome, and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and to the degree it seeks confidential or privileged information. *Id.* at 18-19.

As defined in the Requests, a "Rate Sheet" refers to the rates and loan pricing prepared by CHL and distributed to correspondent lenders. *See id.*, Exh. F. Plaintiff further clarified that "Rate Sheets" generally are tables of interest rates and points (i.e. "pricing") prepared by a CHL and that these reflect the prices CHL was willing to accept at the time the sheet is distributed and before the loan was originated. *See id.* Exh. S. The "Rate Sheets" are relevant to demonstrate that all material terms of the POA loans were dictated to correspondent lenders by CHL in a uniform manner. See TAC ¶ 46. These Rate Sheets will demonstrate CHL's control over loan rates and pricing. Plaintiff is informed that correspondent lenders merely republished the CHL Rate Sheets as their own when selling CHL Option ARM loans. Moreover, Plaintiff does not seek all Rate Sheets, but only those provided or made available to the correspondent lenders. *Id.*, Exh. V. Plaintiff asked that CHL substantiate its claim of undue, but CHL merely stated that it may have to produce more than one Rate Sheet a day, without explaining why this is unduly burdensome. In fact, the Rate Sheets were largely made available by electronic means via CHL's own website and, therefore, are relevant and not unduly burdensome to produce.

**H.    Organizational Charts Should Be Produced (Request No. 9 (Set One)).**

Request No. 9 (Set One) seeks "Documents sufficient to identify the organization and corporate structure of Countrywide including the identity of its officers, directors, affiliates, subsidiaries, parents, and other related entities." Anderson Decl., Exh. A.

CHL objects that this Request is improper, premature, vague, ambiguous, overly broad, unduly burdensome, and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and to the degree it seeks confidential or privileged information. Anderson Decl., Exh. C, pp. 22-23 and Exh. P, pp.19-20. CHL's supplemental response indicated that it is willing to produce organizational charts for the Correspondent Lending Division ("CLD"). *See Id.* Exh. P. Plaintiff clarified that such organizational charts must also the chain of reporting from

CLD to the top of CHL and Countrywide Financial Corporation ("CFC").  *See Id.* Exh. S.  As alleged, knowledge of the fraudulent scheme reached to the highest levels of CHL and CFC.  TAC ¶¶ 46, 53-56.  Plaintiff is entitled to discover the identity of individuals bridging the CLD and upper management.  Because CHL has failed to articulate any burden associated with its production, the documents should be produced.

## I.    Document Retention Policies Are Discoverable (Request No. 23 (Set One)).

Request No. 23 (Set One) seeks "A complete copy of your document retention policy (including document destruction, document organization, and document archiving policies and/or procedures), in place and effect during the Liability Period, including a true copy of each such policy and/or procedure, if written. This request includes, but is specifically not limited to, all documents that refer, reflect or relate to document retention, destruction, and archiving in the context of litigation concerning the subject Option ARM loans that are at issue in this litigation."  Anderson Decl., Exh. A.

CHL objects that this Request is improper, premature, vague, ambiguous, overly broad, unduly burdensome, and/or neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and to the degree it seeks confidential or privileged information.  Anderson Decl., Exh. C, pp. 45-47 and Exh. P, pp. 38-39.  Retention policies are relevant to the discovery process, will alert the parties of whether certain documents have been destroyed such that discovery by other means (e.g., deposition testimony or subpoena) is appropriate, and are, therefore, likely to lead to the discovery of admissible evidence and should be produced.  CHL has not explained why producing these policies would be unduly burdensome or otherwise substantiated its objections.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel should be granted in its entirety.

Dated: November 16, 2010                               Respectfully submitted,


                                              /s/Jennie Lee Anderson
                                              Jennie Lee Anderson

Lori Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery St., Suite 900
San Francisco, CA 94104
Telephone: 415-986-1440
Facsimile: 415-986-1474
lori@andrusanderson.com
jennie@andrusanderson.com

Gerson Harry Smoger
**SMOGER & ASSOCIATES, P.C.**
3175 Monterey Boulevard
Oakland, CA 94602
Telephone: 510-531-4529
Facsimile: 510-531-4377
gerson@texasinjurylaw.com

David M. Arbogast
**ARBOGAST & BERNS LLP**
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
Phone: (818) 961-2000
Fax:      (818) 936-0232
darbogast@law111.com

Michael A. Bowse (No. 189659)
**BROWNE WOODS GEORGE LLP**
2121 Avenue of the Stars, 24th Floor
Los Angeles, California 90067
Tel: 310.274.7100
Fax 310.275.5697
mbowse@bwgfirm.com

Lee A. Weiss (Admitted *Pro Hac Vice*)
**BROWNE WOODS GEORGE LLP**
49 West 37th Street, 15th Floor
New York, New York 10018
Phone: (212) 354-4901
Fax:      (212) 354-4904
lweiss@bwgfirm.com

*Attorneys for Plaintiff*

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF SERVICE

I hereby certify that on, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 16, 2010                 Respectfully submitted,


                                     _/s/ Jennie Lee Anderson_
                                     Jennie Lee Anderson

                                     **ANDRUS ANDERSON LLP**
                                     155 Montgomery Street, Suite 900
                                     San Francisco, CA 94104
                                     Telephone: (415) 986-1400
                                     Facsimile: (415) 986-1474
                                     jennie@andrusanderson.com