1  **ANDRUS ANDERSON LLP**
   Jennie Lee Anderson (SBN 203586)
2  jennie@andrusanderson.com
   155 Montgomery St, Suite 900
3  San Francisco, CA 94104
   Tel: (415) 986-1400
4  Fax: (415) 986-1474

5  **ARBOGAST & BERNS LLP**
6  David M. Arbogast (SBN 167571)
   darbogast@law111.com
7  Jeffrey K. Berns (SBN 131351)
   jberns@law111.com
8  6303 Owensmouth Ave., 10th Floor
9  Woodland Hills, CA 91367-2263
   Tel: (818) 961-2000
10 Fax: (818) 936-0232

11 *Attorneys for Plaintiff and the Proposed Classes*

12

13                 UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15                      SAN JOSE DIVISION

16 JAY RALSTON, individually and on behalf of      Case No.: CV-08-00536-JF (PVT)
   all others similarly situated,
17                                                 **REPLY IN SUPPORT OF PLAINTIFF'S**
                    Plaintiff,                      **MOTION TO COMPEL FURTHER**
18                                                 **DISCOVERY RESPONSES FROM**
   v.                                              **DEFENDANT COUNTRYWIDE HOME**
19                                                 **LOANS, INC.**
   MORTGAGE INVESTORS GROUP, INC.,
20 MORTGAGE INVESTORS GROUP, a                     Magistrate:   Patricia V. Trumbull
   general partnership, COUNTRYWIDE               Date:         December 21, 2010
21 HOME LOANS, INC. AND DOES 3-10,                Time:         10:00 a.m.
                                                   Courtroom:    5
22                  Defendants.

23

24

25

26            <u>REDACTED PUBLICALLY FILED VERSION</u>

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iii

I.     INTRODUCTION ....................................................................................................... 1

II.    ARGUMENT ............................................................................................................... 2

       A.     CHL's Arguments Do Not Undermine The Relevancy Of The Discovery Sought. ......... 2

            1.     CHL's Motion To Strike Is A Misguided Stunt That Does Not Justify Denying Plaintiff Discovery Needed To Prevail On Class Certification. ......................... 2

            2.     CHL's "Standing" Argument Fails And, If Anything, Bolsters The Relevancy Of The Information Plaintiff Seeks. ..................................................... 4

            3.     That Fact That Discovery May Be Relevant To Class Certification *And* The Merits Does Not Bar Its Production. ....................................................... 6

       B.     CHL Has Failed To Articulate Any Undue Burden. ...................................................... 7

       C.     The Discovery Requests Seek Relevant Information That Is Not Unduly Burdensome To Produce. ................................................................................................... 8

            1.     Loan Documents Used By Correspondent Lenders Should Be Produced (Request For Production of Documents ("RFPD") No. 6). ................................. 8

            2.     The Requested Loan Data Should Be Produced (RFPD Nos. 5 and 15). .......... 10

            3.     Agreements With Correspondent Lenders, Including Agreements For Lines of Credit Provided, Should be Produced (RFPD Nos. 1 and 9). ............................ 11

            4.     Information Regarding Correspondent Lender Contact Persons Should Be Produced (RFPD No. 13). ............................................................................. 12

            5.     CHL's Policies, Procedures, and Guidelines Regarding Correspondent Lending Practices Should Be Produced (RFPD Nos. 2, 3, 8, and 14). ............................ 13

            6.     The Requested Rate Sheets Should Be Produced (RFPD No. 7 (Set Two)). .... 14

            7.     CHL's Document Retention Policy Should Be Produced (RFPD No. 23 (Set One)). ........................................................................................................ 14

            8.     Interrogatory Nos. 1 & 2 and RFPD Nos. 7 And 8 Are Not "Moot" As CHL Claims. ....................................................................................................... 15

i

III.    CONCLUSION.................................................................................................................. 15

ii

1

**TABLE OF AUTHORITIES**

2

3

Cases

4

*Ashcroft v. Iqbal,*

5

    129 S.Ct. 1937 (2009)..................................................................... 6

6

*Baas v. Dollar Tree Stores, Inc.,*

7

    No. C 07-03108, 2007 WL 2462150 (N.D. Cal. Aug. 29, 2007)........................ 3

8

*Beauperthuy v. 24 Hour Fitness USA, Inc.,*

9

    No. 06-0715 SC, 2006 WL 3422198 (N.D. Cal. Nov. 28, 2006) ..................... 3

10

*Bell Atlantic Corp. v. Twombly,*

11

    550 U.S. 544 (2007)..................................................................... 6

12

*Bickley v. Schneider Nat'l, Inc.,*

13

    No. C 08-05806 JSW, 2009 WL 5841196 (N.D. Cal. Feb. 11, 2009).................. 3

14

*Brodsky v. Humana, Inc.,*

15

    No. 08 C 50188, 2009 WL 1956450 (N.D. Ill. Jul. 8, 2009) ........................ 14

16

*Cartwright v. Viking Indus., Inc.,*

17

    2:07 CV-02159-FCD-EFB, 2009 WL 2982887 ( E.D. Cal. Sept. 14, 2009).......... 4

18

*Casson Const. Co., Inc. v. Armco Steel Corp.,*

19

    91 F.R.D. 376 (D.C.Kan., 1980).......................................................... 12

20

*Caudle v. District of Columbia,*

21

    263 F.R.D. 29 (D.D.C. 2009)........................................................... 14

22

*Davis v. Fendler,*

23

    650 F.2d 1154 (C.A. Ariz. 1981)........................................................ 7

24

*Doninger v. Pac. Nw. Bell, Inc.,*

25

    564 F.2d 1304 (9th Cir. 1977) .......................................................... 7

26

*Dorn-Kerri v. South West Cancer Care,*

27

    No. 06cv1754-NLS, 2008 WL 3914458 (S.D. Cal. Aug. 18, 2008) .................. 11

28

*Eisen v. Carlisle & Jacqueline,*

iii

417 U.S. 156 (1974)..............................................................................3

*General Tel. Co. of Southwest v. Falcon,*

457 U.S. 147 (1982)..............................................................................3

*Gray v. First Winthrop Corp.,*

133 F.R.D. 39 (N.D. Cal. 1990).............................................................7

*Ho v. Ernst & Young, LLP,*

No. C05-04867 JF (HRL), 2007 WL 1394007 (N.D. Cal. May 9, 2007)............................................. 7

*In re First Alliance Mortgage Co.,*

471 F.3d 977 (9th Cir. 2006) ................................................................. 8

*In re General Motors Corp Dex-Cool Product Liability Litig.,*

241 F.R.D. 305 (S.D. Ill. 2007) ............................................................. 4

*In re Initial Pub. Offerings Sec. Litig.,*

471 F.3d 24 (2nd Cir. 2006)................................................................... 7

*In re Tobacco II Cases,*

46 Cal. 4th 298 (2009) ......................................................................... 4

*In re Zurn Pex Plumbing Products Liab. Litig.,*

MDL No. 08-1958, 2009 WL 1606653 (D. Minn. Jun. 5, 2009) ........................................ 11

*Kamm v. Cal. City Dev. Co.,*

509 F. 2d 205 (9th Cir. 1975)..............................................................4

*Kazemi v. Payless Shoesource, Inc.,*

No. C 09-5142 MHP, 2010 WL 963225 (N.D. Cal. March 16, 2010) ................................ 3

*Kozlowski v. Sears, Roebuck & Co.,*

73 F.R.D. 73 (D. Mass. 1976)................................................................ 9

*Laker Airways Ltd. v. Pan Am. World Airways,*

103 F.R.D. 42 (D.D.C. 1984)............................................................... 13

*Mantolete v. Bolger,*

F.2d 1416 (9th Cir. 1985)..................................................................3

*Mikron Indus., Inc.  v. Hurd Windows & Doors, Inc.,*

iv

No. C07-532RSL, 2008 WL 1805727 (W.D. Wash. Apr. 21, 2008) ................................................ 11

*Mintel Learning Technology, Inc. v. Beijing Kaidi Educ.,*

No. C 06-7541, 2007 WL 2288329 (N.D. Cal. Aug. 9, 2007)............................................................. 4

*Minter v. Wells Fargo Bank, N.A., et al.,*

675 F. Supp. 2d 591 (D. Md. 2009) .................................................................................................. 9

*Multiven, Inc. v. Cisco Systems, Inc.,*

No. 5:08-cv-05391 JW, 2010 WL 2813618 (N.D.Cal. Jul. 9, 2010)................................................... 7

*Plascencia v. Lending 1st Mortgage,*

No. C 07-04485 CW (N. D. Cal. Nov. 16, 2010) .............................................................................. 9

*Shein v. Canon U.S.A., Inc.,*

No. CV 08-07323 CAS (Ex), 2009 WL 3109721 (C.D. Cal. Sept. 22, 2009)...................................... 3

*Temple v. Synthes Corp. Ltd.,*

498 U.S. 5 (1990)............................................................................................................................ 4

*Thornton v. State Farm Mut. Auto Ins. Co.,*

No. 1:06-cv-00018, 2006 WL 3359482......................................................................................4

*Yingling v. eBay,*

No. C 09-01733 JW (PVT), 2010 WL 373868 (N.D. Cal. Jan. 29, 2010)..................................... 7, 12

**Rules**

Fed. R. Civ. P. 12.......................................................................................................................... 2

Fed. R. Civ. P. 19 Advisory Comm. Notes....................................................................................... 5

Fed. R. Civ. P. 23 .......................................................................................................................2, 3

Fed. R. Civ. P. 26..............................................................................................................6, 8, 11, 12

Fed R. Civ. P. 30............................................................................................................................ 7

**Treatises**

James Wm. Moore et al., Moore's Federal Practice (3d ed. 2010) .......................................................... 10

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2nd West 1990)....................................................................................................................................3

Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2002 & Supp. 2006) ............4

I.      **INTRODUCTION**

        Plaintiff's Motion to Compel Further Discovery from Defendant Countrywide Home Loans, Inc. ("Motion" or "Plt.'s Mem.") properly seeks discovery that is directly relevant to both class certification and to the merits.  Specifically, the discovery sought will establish that Countrywide Home Loans, Inc. ("CHL") perpetuated a fraudulent scheme through its correspondent lending program, in which originators, including, but not limited to, Mortgage Investors Group ("MIG")[1], sold the subject Option ARM loans to Plaintiff and similarly-situated borrowers (the "Class") using uniform terms, documents and underwriting guidelines, all of which were dictated by CHL as a condition of its immediate purchase of those loans.

        In the many months since this discovery was served, CHL has failed to articulate any undue burden it would suffer by producing this highly relevant and probative information.  The discovery sought is also amply supported by the allegations of the Third Amended Complaint ("TAC"), which this Court has upheld in its entirety.  Despite this, CHL seeks to unilaterally limit discovery to documents relating to loans originated by MIG.  Unable to muster any legitimate explanation as to why the discovery should not be produced, CHL filed, in conjunction with its opposition to Plaintiff's Motion, an eleventh hour and untimely Motion to Strike Certain of Plaintiff's Allegations Pursuant to Fed. R. Civ. P. 12(b)(1) and 23(c) & (d) ("Motion to Strike").  In its Motion to Strike, CHL incorrectly asserts that Plaintiff "lacks standing" to bring claims on behalf of a Class of purchasers directly harmed by CHL, not because Plaintiff lacks standing to sue CHL directly, but because, according to CHL, he is not similarly situated to Class members who, like Plaintiff, purchased a CHL loan but did not purchase their CHL loan through MIG.  Of course, any such challenge should be raised, if at all, in opposition to Plaintiff's motion for class certification, due January 14, 2010, and decided on a complete evidentiary record.  CHL's efforts to circumvent the class certification schedule endorsed by this Court and to deny Plaintiff the very discovery he needs to establish commonality and predominance at class certification are improper and, in any event, only bolster the relevancy of the information Plaintiff seeks.

1

1    For these reasons, as well as those set forth below, Plaintiff's Motion should be granted.

2  **II.    ARGUMENT**

3        A. **CHL's Arguments Do Not Undermine The Relevancy Of The Discovery Sought.**

4            1. **CHL's Motion To Strike Is A Misguided Stunt That Does Not Justify
               Denying Plaintiff Discovery Needed To Prevail On Class Certification.**

6    CHL's first argument in opposition to Plaintiff's Motion is that the Court should deny

7  Plaintiff discovery until such time that Judge Fogel rules on CHL's Motion to Strike. *See*

8  Countrywide Home Loans, Inc.'s Opposition to Plaintiff's Motion to Compel Further Discovery

9  Reponses ("Opp."), pp. 4-6.  However, CHL's Motion to Strike is improper and only highlights the

10 relevancy of Plaintiff's discovery.

11   As an initial matter, to the extent CHL argues in its Motion to Strike that Plaintiff's

12 allegations fail as a matter of law, its Motion to Strike is nothing more than an untimely Rule 12

13 motion.  Any challenges to the pleadings were due within 21 days of the filing of the TAC, which

14 has been upheld by this Court in its entirety after extensive litigation. *See* Fed. R. Civ. P. 12(a) (b)

15 and (f); Dkt. #152; *see also* Dkts. #139, 140, 143, 147.[1]  This deadline has long passed, as the TAC

16 was filed on June 3, 2010. *See* Dkt. #142.

17   Implicitly acknowledging the untimely nature of its motion, CHL unconvincingly attempts to

18 recast its Motion to Strike as one brought pursuant to Rule 23(c) or (d)(4).  This argument also fails

19 and offers no justification for denying or postponing the discovery Plaintiff seeks here.  Indeed, this

20 Court ordered on August 13, 2010 that discovery, and particularly discovery on all class certification

21 issues, should commence immediately to allow the parties to file Rule 23 motions by January 14,

22 2010. *See* Declaration of Jennie Lee in Support of Plaintiff's Reply In Support of Plaintiff's Motion

23 to Compel Further Discovery Responses from Defendant Countrywide Home Loans, Inc.

24 ("Anderson Reply Decl."), Exhs. A and B.  Common sense dictates that CHL should not be allowed

25 to invoke Rule 23 as the grounds to deny Plaintiff and this Court the very discovery necessary to

26

27 [1] Although CHL relies on Rule 12(b)(1), that rule does not authorize motions to "strike" allegations.
   Rather, it provides for dismissal of a claim for lack of subject matter jurisdiction. *See* Fed. R. Civ. P.
28 12(b)(1).

2

1   determine class certification. For these reasons, as this Court has correctly recognized, CHL's

2   Motion to Strike is nothing more than "an improper attempt to argue against class certification

3   before [a] motion for class certification has been made and while discovery regarding class

4   certification is not yet complete." *Beauperthuy v. 24 Hour Fitness USA, Inc.*, Case No. 06-0715 SC,

5   2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006); *Baas v. Dollar Tree Stores, Inc.*, Case No. C

6   07-03108, 2007 WL 2462150, at *3 n.2 (N.D. Cal. Aug. 29, 2007) ("An examination under Rule

7   23(c) whether to certify a class is "procedurally inseparable" from a determination under [Rule

8   23(d)(1)(D)] whether the Court, on the basis of that examination, should require an amendment of

9   the pleadings.'").[2] *See also* Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d §

10  1795; *Shein v. Canon U.S.A., Inc.*, Case No. CV 08-07323 CAS (Ex), 2009 WL 3109721, at *10

11  (C.D. Cal. Sept. 22, 2009) (holding that the scope of class allegations "are more properly decided on

12  a motion for class certification, after the parties have had an opportunity to conduct class discovery

13  and develop a record"). Indeed, it is for this reason that motions to strike class allegations "are

14  disfavored." *Kazemi v. Payless Shoesource, Inc.*, Case No. C 09-5142 MHP, 2010 WL 963225, at

15  *2 (N.D. Cal. March 16, 2010); *Bickley v. Schneider Nat'l, Inc.*, Case No. C 08-05806 JSW, 2009

16  WL 5841196, at *1 (N.D. Cal. Feb. 11, 2009) (articulating that motions to strike class allegations are

17  disfavored because "they are often used as delaying tactics").

18       Thus, CHL's argument that Rule 23(c) or (d)(4) somehow entitles it to bar Plaintiff from

19  moving for class certification on a complete record is unsupported and does not bar discovery of the

20  information Plaintiff properly seeks here.[3]

21

22  [2] CHL's reliance on Rule 23(c) is also misplaced. *See* Motion to Strike, pp. 5-6. Rule 23(c)

23  provides for class certification motions, notice, and ancillary matters such as subclass certification. *See* Fed. R. Civ. P. 23(c). Rule 23(c) does not authorize motions to strike class allegations.

24  [3] The cases upon which Countrywide relies, *see* Opp., p. 5, are inapposite. CHL cites to a footnote of the dissent in *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 184, n.6 (1974) to support its

25  assertion that under Rule 23(d)(4), the district court "may in some instances require that pleadings be

26  amended to eliminated class allegations," *see* Opp. 5. This statement is not in any way binding on this Court – nor is *Eisen* a case whose discussion or holding even involves examining the propriety

27  of Rule 23(d)(4). CHL's citations to *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982) and *Mantolete v. Bolger*, 767 F.2d 1416, 1420, 1424-25. (9th Cir. 1985), are similarly

28  inapposite. *Mantolete* is distinguishable, as that case involved the propriety discovery for

3

1    ### 2.  CHL's "Standing" Argument Fails And, If Anything, Bolsters The Relevancy Of The Information Plaintiff Seeks.

2    CHL does not contend that Plaintiff lacks standing to assert claims against CHL—indeed, the

3    Court has already determined that the allegations support such claims. *See* Anderson Reply Decl.,

4    Exh. B. Instead, CHL incorrectly argues that Plaintiff somehow "lacks standing" to represent absent

5    Class members who Plaintiff alleges were injured by CHL's conduct, but whose CHL loans were

6    purchased from an originator other than MIG. *See* Opp., pp. 1, 4-5. CHL's argument not only

7    misapprehends federal jurisprudence governing standing, but also does nothing to demonstrate why

8    discovery should be denied or deferred. Indeed, "standing is generally assessed solely with respect

9    to class representatives, not unnamed members of the class." *Cartwright v. Viking Indus., Inc.*, 2:07

10   CV-02159-FCD-EFB, 2009 WL 2982887, at *9, n 9 ( E.D. Cal. Sept. 14, 2009) (internal quotations

11   omitted); *see also* 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 2:7 (4th ed.

12   2002 & Supp.2006) ("[T]he standing issue focuses on whether the plaintiff is properly before the

13   court, not whether ... absent class members are properly before the court."); *In re General Motors*

14   *Corp Dex-Cool Product Liability Litig.*, 241 F.R.D. 305, 310 (S.D. Ill. 2007) (same); *In re Tobacco*

15   *II Cases*, 46 Cal. 4th 298, 320 (2009)(same).[4] At most, CHL's argument raises issues about whether

16

17   ---

18   nationwide class where the district court determined that such discovery would not substantiate class

     treatment of claims brought by applicant suffering from epilepsy who claimed she was improperly

19   denied employment because of her handicap.  747 F.2d at 1425.  In *General Tel.*, the Court struck

     class allegations because the district court failed to engage in an evidentiary hearing before

20   certifying the class, and it was subsequently found that the class representative was inadequate. The

     decision to strike class allegations in *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 207, 210-11 (9th

21   Cir. 1975) and *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-00018, 2006 WL 3359482, at

22   *2-4 (N.D. Ohio Nov. 17, 2006) (determining that class action was not an appropriate or sufficiently

     "superior" method of adjudication after state action had already been commenced by state authorities

23   with respect to the same controversy and sufficient relief had been obtained), are completely

     inapplicable because no similar state action or superiority determinations have been made here.

24

25   [4] CHL also incorrectly argues that discovery relating to other originators is irrelevant because those

     originators are not named in the TAC. However, "[i]t has long been the rule that it is *not necessary*

26   *for all joint tortfeasors to be named as defendants* in a single lawsuit." *Temple v. Synthes Corp.*

     *Ltd.*, 498 U.S. 5, 7 (1990) (emphasis added). "Because liability of joint tortfeasors is both joint and

27   several, a plaintiff can sue one without suing the others, and the court can afford plaintiff complete

     relief in the absence of all the joint tortfeasors in the same lawsuit." *Mintel Learning Technology,*

28   *Inc. v. Beijing Kaidi Educ.*, Case No. C 06-7541, 2007 WL 2288329, at *13 (N.D. Cal. Aug. 9,

1   Plaintiff's claims against CHL are typical or present common issues of fact and law that

2   predominate—issues undeniably relevant to class certification to be determined on a complete

3.  record.

4          Next, in an attempt to circumvent its obligations to produce relevant materials, CHL seeks to

5   recast Plaintiff's allegations as being limited to MIG's activities and allegations that CHL aided and

6   abetted MIG only. *See* Opp., pp. 1, 3, 7, 9, 11, 17. This is not the case. As Plaintiff established in

7   his opening brief, the TAC upheld by this Court casts CHL as a primary player—selling its loan

8   products through originator agents, including, but not limited to MIG, using its correspondent

9   lending program. *See* Plt.'s Mem., pp. 6-7. Plaintiff alleges that CHL, *not* the originators, created

10  and dictated the terms and lack of disclosures of the Option ARM products that injured borrowers,

11  and has alleged a Class of individuals who purchased CHL loans. *See* TAC ¶¶ 38, 39, 44, 46, 47, 57.

12  Plaintiff is entitled to discovery to demonstrate that these common issues of fact and law exist and

13  predominate.

14         CHL's argument that Judge Fogel has not yet had an opportunity to consider CHL's

15  argument regarding standing is belied by the record. *See* Dkts. #112, 119, 152; *see also* Dkt. #147,

16  Defendant's Reply In Support of Motion to Dismiss Third Amended Complaint, pp. 8-15 (arguing

17  that "CHL had no duty to disclose to Plaintiff information about a loan made by another entity

18  (MIG)"). Indeed, in its Order upholding the TAC, the Court spent considerable time explaining how

19  the TAC pleads a fraudulent omission cause of action against CHL directly.[5]  *See* Anderson Reply

20  Decl., Exh. B, pp. 5-9. The upheld TAC also plainly alleges Class claims against CHL independent

21  of claims against MIG. *See* TAC ¶57 (defining "Class One" or "the CHL Class"); *see also* Anderson

22

23  2007); *see also* Fed. R. Civ. P. 19(a), Advisory Comm. Notes ("[A] tortfeasor with the usual 'joint-
24  and-several' liability is merely a permissive party to an action against another with the like
    liability."). Further, Plaintiff alleges that CHL owes him a duty directly, as an aider and abettor, as
25  an assignee of his loan, *and* because the originator acted as CHL's agent. *See* TAC ¶¶ 73-74.
    [5] CHL's assertion that Judge Fogel ruled that the "thrust" of *all* of Plaintiff's claims is that "MIG
26  concealed or suppressed" from him "the material fact that negative amortization was *certain* to occur
    by stating that negative amortization *may* occur," Motion to Strike, p.1 and Opp., pp. 1-2, is
27  misleading, at best, as the quoted excerpt stems from a paragraph discussing Plaintiff's claims
    against MIG only, not its claims against CHL. *See* Anderson Reply Decl., Exh. B, p. 7.
28
                                                 5

1   Reply Decl., Exh. B, pp. 2, 6-8. Having survived the rigorous analysis required by Rule 12(b)(6), it

2   is beyond dispute that Plaintiff is entitled to discovery in support of those upheld allegations. *See*

3   Anderson Reply Decl., Exh B, Order Denying Motions to Dismiss, p. 4 [citing *Bell Atlantic Corp. v.*

4   *Twombly*, 550 U.S. 544, 570 (2007) (finding that the complaint must plead "enough facts to state a

5   claim for relief that is plausible on its face") and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

6   (finding that a claim is plausible on its face "when the plaintiff pleads factual content that allows the

7   court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")]. [6]

8       **3.   That Fact That Discovery May Be Relevant To Class Certification *And***

9       **The Merits Does Not Bar Its Production.**

10      CHL argues that Plaintiff "makes no showing that the discovery he seeks to compel is

11  necessary for his class certification motion," Opp., p. 7, and further complains that the disputed

12  discovery "amounts to an attempt to investigate the merits of the claim with respect to 1,200

13  relationships before a class is even certified." *See* Opp., p. 16. These arguments are unavailing.

14  First, no such "necessary" showing is required; *relevancy* is the touchstone of discoverability. *See*

15  Fed. R. Civ. P. 26(b)(1). Second, while this Court already rejected CHL's request that discovery be

16  bifurcated between class certification and the merits, the discovery sought here is, in fact, directly

17  relevant to issues of class certification concerning commonality and predominance. *See* Plt.'s Mem.,

18  pp. 1-2, 8-10; *see also* Anderson Reply Decl., Exh. A. Plaintiff must be afforded the "opportunity to

19  present evidence as to whether a class action was maintainable. And, the necessary antecedent to the

20  presentation of evidence is, in most cases, enough discovery to obtain the material, especially when

21

22

23  [6] CHL attempts to support its standing arguments by referencing "other complaints" that "Plaintiff's

24  counsel" have filed. *See* Motion to Strike, p. 4. These citations to other mortgage lending cases

25  have no bearing on the case at hand, which must be assessed on the allegations of the TAC and its

    merits alone. This Court has acknowledged that while the loan documents in this case are quite

26  similar to those in other mortgage lending cases cited by CHL, they are not identical. *See* Dkt. #66,

    p. 3. This Court has further recognized these cases as separate and distinct, highlighting the fact that

27  Defendants in this case raise different arguments from the defendants identified in other mortgage

    lending cases. *Id.* The fact that counsel for Plaintiff Ralston represent other victims of lender fraud

28  in other cases is completely irrelevant.

6

1    the information is within the sole possession of the defendant." *Doninger v. Pac. Nw. Bell, Inc.*, 564

2    F.2d 1304, 1312-13 (9th Cir. 1977).[7]

3    The fact that discovery sought may *also* relate to the merits of the action is immaterial.

4    "[D]iscovery can certainly be relevant both to class certification issues and to the merits." *Ho v.*

5    *Ernst & Young, LLP*, Case No. C05-04867 JF (HRL), 2007 WL 1394007 (N.D. Cal. May 9, 2007);

6    *see also Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 41 (N.D. Cal. 1990) ("Discovery relating to

7    class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully

8    developed without inquiry into basic issues of the litigation.").[8]

9        **B.   CHL Has Failed To Articulate Any Undue Burden.**

10    When responding to discovery, all grounds for objection must be stated with specificity. *See*

11    *e.g., Davis v. Fendler*, 650 F.2d 1154, 1160 (C.A. Ariz. 1981). Exhibiting extreme indifference to

12    its discovery obligations throughout the meet and confer process, CHL refused to elaborate on its

13

14    [7] CHL uses *Doninger*, 564 F.2d at 1312-13, to support its assertion that "before certification of a

15    class action, discovery is usually limited to certification issues denied class action certification."
       Opp., p. 6. However, the *Doninger* court declined to allow discovery because circumstances of the

16    case showed that, regardless of discovery which might have been undertaken, numerosity and
       impracticable joinder requirements of class action rule could never have been met. Here, no such

17    assertions or findings have been made and Judge Fogel has declined to bifurcate discovery. Because

18    the cases are factually dissimilar, CHL may not draw the analogy to the case at hand. Countrywide
       also cites *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2nd Cir. 2006) for the proposition

19    that "district courts retain 'ample discretion' to limit discovery so that a 'class certification motion

20    does not become a pretext for a partial trial on the merits.'" This case is neither binding nor
       remotely relevant.   The   discovery   sought   here   bears   directly   on   class   certification.

21

22    [8] Nor should Plaintiff's Motion to Compel be denied because CHL offered to provide a Rule
       30(b)(6) witness to testify about CLH's general correspondent lending policies and procedures, *see*

23    Opp., p. 7. *See Yingling v. eBay*, Case. No. C 09-01733 JW (PVT), 2010 WL 373868, *3-4 (N.D.

24    Cal. Jan. 29, 2010) (compelling production of requested discovery even though defendant had agreed
       to produce a Rule 30(b)(6) witness to testify about the information requested); *see also Multiven,*

25    *Inc. v. Cisco Systems, Inc.*, Case No. 5:08-cv-05391 JW, 2010 WL 2813618, *2 (N.D.Cal. Jul. 9,
       2010) (finding request for production of documents proper despite the fact that a 30(b)(6) deponent's

26    subpoena requested substantially the same documents). Plaintiff has noticed depositions pursuant to
       Rule 30(b)(6) on these issues; doing so does not render the documentary evidence any less relevant.

27    As the Court no doubt knows, documents are frequently the most valuable source of discovery about
       a party's true practices and actions, in part because they are less subject to litigation counsel's

28    obfuscation and/or coaching.

7

1    litany of boilerplate objections to Plaintiff's discovery requests, continually relying instead on its

2    position that the information requested was "not relevant" because Plaintiff "lacked standing" to

3    request documents related to third party correspondent lenders.  *See* Declaration of Jennie Lee

4    Anderson In Support of Motion to Compel ("Anderson Decl."), Exhs. C, D, I, K, P, Q, and T.  Only

5    now, in its Opposition to Plaintiff's Motion, does CHL proffer any explanation of the method and

6    number of hours upon which it bases its objection that Plaintiff's Requests are "unduly

7    burdensome."  *See* Opp. Exhs. 2 and 3.  While Plaintiff maintains that CHL's proffer should be

8    disregarded as an untimely abuse of the discovery process, even if proper, as explained further

9    below, CHL's excuses to avoid producing the highly relevant and probative information do not

10   establish any undue burden that would justify excusing CHL from producing the critical evidence

11   Plaintiff seeks by this Motion.

12         **C.  The Discovery Requests Seek Relevant Information That Is Not Unduly
             Burdensome To Produce.**

13

14            **1.  Loan Documents Used By Correspondent Lenders Should Be Produced
                  (Request For Production of Documents ("RFPD") No. 6).**

15        Plaintiff is entitled to discovery regarding the loan versions used by originators participating

16   in CHL's correspondent lending program in order to demonstrate that CHL imposed uniform terms

17   on the correspondent lenders as part of its orchestration of a common deceptive lending scheme.  *See*

18   TAC ¶39; *see also In re First Alliance Mortgage Co.*, 471 F.3d 977, 991 (9th Cir. 2006) (requiring

19   plaintiffs to offer evidence that a lender employed a "centrally-orchestrated scheme" and acted in a

20   uniform way toward all class members before certifying a class on the basis of a common law fraud

21   claim); *see also* Anderson Reply Decl., Exh. C ("Motion to Dismiss Second Amended Complaint

22   Hearing"), p. 12 (indicating that Plaintiff will be required to show that the particular format of the

23   loans was foisted on the correspondent lenders to get CHL financial backing).[9]

24

25   ―――――――――――

     [9] By "specifically den[ying]" that it required lenders to use any particular form or adhere to specific

26   terms, *see* Opp., p. 8, CHL admits that the is a material fact at issue, and Plaintiff is entitled to
     discovery regarding this defense.  *See* FRCP 26(b)(1) ("[E]ach party has a right to discover non-

27   privileged information "relevant to any party's claim *or defense*—including the existence,
     description, nature, custody, condition, and location of any documents or other tangible things and

28   identity and location of persons who know any discoverable matter.").

                                               8

1   CHL's protestations that these pre-approval loan documents are "irrelevant" to certification

2 of the CHL Class" defies logic and is further belied by an order on class certification in a similar

3 case, in which Judge Claudia Wilken indicated that plaintiff *should* be given the opportunity to

4 proffer the very information Plaintiff seeks here, including evidence that nonparty lenders "used

5 uniform loan documents in connection with the [loans] sold to EMC", that "the sample documents

6 included in the Seller Guide were used by all the EPP participants", and that the nonparty lenders

7 "used a uniform set of loan documents." *See* Anderson Reply Decl., Exh. D, *Plascencia v. Lending*

8 *1st Mortgage*, Case No. C 07-04485 CW, Dkt. #243, (N. D. Cal. Nov. 16, 2010), at pp. 4-6.

9   Moreover, Plaintiff has narrowly tailored his request to seek only one copy of each version of

10 the loan documents CHL used, provided to, or approved for use by its originators during the relevant

11 time period. *See* Plt.'s Mem., p. 9.Thus, Plaintiff's request does not require CHL to perform a file-

12 by-file review or produce 1,600,000,000 documents as CHL alleges. *See* Opp., pp. 8-9. [10]

13 Moreover, CHL fails to cite any authority to support its assertions that "[this production], by

14 definition, is unduly burdensome" or that it is "patently overbroad and burdensome." *Id.*, pp. 9-10.

15 In fact, the loan documents that CHL has produced relating to MIG Option ARM loans to date total

16 approximately 112 pages, and CHL has indicated, while refusing to amend its verified responses,

17 that CHL provided many of the same loan versions to multiple correspondent lenders, consistent

18 with Plaintiff's TAC allegations. *Id.*, p. 8; *see also* TAC ¶¶ 39-46. Because the information sought

19 is of extreme relevance here, CHL's unsupported burden showing is simply insufficient. *See*

20 *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) (finding that an objection that

21

22 [10] CHL makes much of the fact that it has offered to produce a 5% sampling of the MIG loans only.

23 *See* Opp., p. 11. In addition to the fact that a 5% sampling is too small, as CHL concedes, MIG is

24 only one of more than a thousand correspondent lenders. Thus, if Plaintiff were to agree to the

25 sampling CHL suggests, CHL would no doubt argue at class certification that Plaintiff has not proffered sufficient evidence to show that the loan documents, terms and disclosure documents were materially the same across the Class. Even assuming any undue burden is established, any sampling

26 must be fair and concededly adequate to foreclose such arguments. *See, e.g., Minter v. Wells Fargo*

27 *Bank, N.A., et al.*, 675 F. Supp. 2d 591, 598 (D. Md. 2009) (finding defendant's limitation of production of loan files to which only it had access "fundamentally unfair" because the parties

28 should be afforded equal opportunity to support their positions on the basis of the sample of data).

1  a request is "costly or time-consuming" is insufficient to qualify as an "undue burden" where the

2  requested material is relevant and necessary to the discovery of evidence); *see also* 7 Moore's

3  Federal Practice, ¶ 34.14[3], at 34-87 (3d ed. 2010)( The "fact that production of documents would

4  be burdensome and...would hamper the party's business operations may not be a reason for refusing

5  to order production of relevant documents[.]"). Additionally, CHL's argument that it will need to

6  expend an enormous amount of time and energy redacting sensitive information is undermined by

7  the fact that the Protective Order will protect any allegedly sensitive information. *See* Dkt. #100.

8  ## 2.   The Requested Loan Data Should Be Produced (RFPD Nos. 5 and 15).

9  The requested loan level data is relevant to show that Class members purchased substantially

10  the same Option ARM loan as Plaintiff, containing substantially similar loan terms, *e.g.,* the low

11  teaser rate that only applied for the first 30 days resulting in negative amortization.  Moreover, CHL

12  concedes that the data can be readily produced and has failed to specify what undue burden it will

13  suffer by producing the all of the responsive data and data fields. *See* Opp., pp. 10-11.[11]  CHL's

14  efforts to unilaterally narrow the list of fields it should produce are unavailing.  *Id.,* p. 11; *see also*

15  Anderson Decl., Exh. T, p. 5, n.2 (contending without support that certain fields are "not

16  responsive").  Many of the fields CHL seeks to unilaterally exclude are relevant on their face,

17  including fields containing information such as amortization schedules.  Indeed, all information

18  relating to the subject Option ARM loan terms is relevant and should be produced.

19

20  [11] CHL previously provided for MIG loans only the LoanNum, PropState, Purchase Date and
Original Principal Amount fields for the MIG loans.  *See* Plt.'s Mem., p. 13 and Anderson Decl.,
21  Exh. M.  However, many more fields are available and should be produced, including Interest
Only/Term, Special Loan Program, PayOption Int Rate, Prepay Option Int Rate, Prepay Term (# of
22  Months), PrePay Penalty, PrePay Description, Waivability, PrePay Penalty Application, Prepay
Penalty Disclosure Date, Is there an Original Prepayment Addendum in the file or is it contained in
23  the Note?, 1st Rate Change Date, Rate Change Freq (Mos), Index Category, Index Desc, Look Back
Period, Margin, Max 1st Chg Rate, Min 1st Chg Rate, per Chg Rate, Per Chg Max/Min, Life Cap,
24  Floor, Ceiling, Pay Option Initial Fully Indexed Rate, Neg Am ARM Loan, Max % Neg Neg Am,
Payment Adj Date, Payment Chg Freq, Required Full Payment Term, Neg Am Pmt Cap, and Subseq
25  Neg Am Recast Term (mos), Min Pmt Factor, Calc Min Pmt Rate, Min Pmt Rate, Interest Only
Period End Dt, Amort Period From Dt, Amort Period Thru Dt. Annual Int Rate Limit, Convertible
26  ARM Loan/Conversion Rate, Dual Amort, Dual Amort Maturity (mos), Dual Amort Initial (mos),
and Dual Amort Subseq (mos).  CHL's partial production demonstrates that production of complete
27  data for all relevant loans by all originators would not be unduly burdensome in the least.

28

10

1    On motion to compel discovery of electronically-stored information, the party from whom

2    discovery is sought must show that the information is not reasonably accessible because of undue

3    burden or cost.  *See* FRCP 26(b)(2)(B); *see also Dorn-Kerri v. South West Cancer Care*, Case No.

4    06cv1754-NLS, 2008 WL 3914458, at *5 (S.D. Cal. Aug. 18, 2008); *Mikron Indus., Inc.  v. Hurd*

5    *Windows & Doors, Inc.*, Case No. C07-532RSL, 2008 WL 1805727, *1 (W.D. Wash. Apr. 21, 2008)

6    (holding that a party seeking to invoke the protections of Rule 26(b)(2)(B) bears the burden of

7    persuasion); *In re Zurn Pex Plumbing Products Liab. Litig.*, MDL No. 08-1958, 2009 WL 1606653,

8    *2 (D. Minn. Jun. 5, 2009) (holding that defendants had not made a compelling showing of undue

9    burden for purposes of Rule 26(b)(2)(B) by relying on the affidavit of an attorney who was not an

10   expert on document search and retrieval).  CHL admits that the loan level data Plaintiff seeks is

11   reasonably accessible and yet fails to adequately specify any undue burden associated with further

12   production.  The data should be produced in full.

### 3.  Agreements With Correspondent Lenders, Including Agreements For Lines of Credit Provided, Should be Produced (RFPD Nos. 1 and 9).

CHL incorrectly argues that the information in these Requests is not related to Plaintiff's

omissions based claims.[12]  On the contrary, the information sought is relevant and discoverable.

Among other things, agreements that limit originators' ability to make changes to loan documents

are relevant.  Similarly, information contained in the Loan Purchase Agreements ("LPAs") requested

demonstrate that third party correspondent lenders agreed to originate and sell Option ARM loans to

CHL pursuant to the uniform terms dictated by CHL, resulting in Plaintiff and Class members

purchasing loans with materially similar, deceptive terms.  Agreements relating to lines of credit are

also directly relevant to class certification and the merits, as they will demonstrate that CHL

provided substantial assistance to and, in fact, *obligated* the correspondent lenders to push the

fraudulent CHL loan products by providing the lenders with lines of credit and guarantees that CHL

---

[12] CHL argues that "neither the loan purchase agreement documents nor the line of credit agreement documents would, for example, show what terms were included in (or omitted from) the loan documents and/or other disclosures correspondent lenders provided to Plaintiffs and other borrowers." Opp., p. 12.

11

1    would purchase the conforming Option ARM loans.  *See* TAC ¶¶ 73-74; *see also* Anderson Reply

2    Decl., Exh. C, p. 12.

3             CHL has failed to establish that producing this information is unduly burdensome.  While

4    CHL offers Ms. Earlbeck's declaration in support of its Opposition, claiming that "identifying and

5    producing all responsive documents [regarding the 1,200 loan purchase agreements and line of credit

6    agreements] would take at least 400 hours," *see* Opp., p. 13 and Exh. 2, Ms. Earlbeck neglects to

7    identify the minimal burden of producing the LPAs, uniform agreements and credit agreements

8    themselves, or to delineate whether it is possible for CHL (now Bank of America) to formulate

9    search queries to search its proprietary systems, thus narrowing the scope of responsive documents

10   or better allowing it to locate them.  *See* Fed. R. Civ. P. 26(b)(2)(B) ("On motion to compel

11   discovery…, the party from whom discovery is sought must show that the information is not

12   reasonably accessible because of undue burden or cost"); *see also, Yingling,* 2010 WL 373868 at *5

13   (finding that defendant failed to meet its burden when declaration to defendant's opposition to a

14   motion to compel did not contain information about other potential methods and capabilities to

15   locate responsive documents).  Accordingly, the statements in Ms. Earlbeck's Declaration do not

16   satisfy the requirements for an objection of "undue burden," and the relevant agreements.  Because

17   Plaintiff has established that these agreements with third party correspondent lenders are highly

18   relevant and CHL has not substantiated any "undue burden" associated with producing these

19   agreements, it must produce documents responsive to this request.

    **4.   Information Regarding Correspondent Lender Contact Persons Should Be Produced (RFPD No. 13).**

20

21           Contact information for correspondent lender contact persons is relevant.  *See Casson Const.*

22   *Co., Inc. v. Armco Steel Corp.,* 91 F.R.D. 376, 381-382 (D.C.Kan., 1980) ("[Identification of the

23   relevant officer or agent of a corporation] are classic first-wave discovery.")  This discovery does not

24   require CHL to interview or communicate with "potentially tens of thousands of loan

25   correspondents" as CHL asserts.  *See* Opp., pp. 13-14.  CHL's production of the MIG LPAs

26   demonstrate that the information sought is contained within the LPAs, which are accessible and not

27   unduly burdensome to produce for the same reasons set forth in Section II.C.3, *supra.*

28

                                              12

### 5. CHL's Policies, Procedures, and Guidelines Regarding Correspondent Lending Practices Should Be Produced (RFPD Nos. 2, 3, 8, and 14).

CHL claims that these Requests are satisfied by its production of portions of the Seller's Guide because the Seller's Guide "includes a set of general policies, practices and guidelines distributed to MIG and lenders." Opp., p. 14. While its belated production of the Seller's Guide is responsive, *see* Anderson Reply Decl., Exh. G, the production is incomplete[13] and excludes many other sources of policies, procedures and guidelines, such as the documents referenced on the CLOUT and Platinum websites. *See* TAC ¶¶ 44–45. Moreover, CHL has consistently stated in its verified responses that its production is limited (unilaterally, by CHL) to documents that relate to MIG. *See* Anderson Decl., Exhs. K, M, T. Thus, CHL should produce all relevant policies, procedures and guidelines, and serve amended verified responses stating that no other policies, procedures or guidelines governing correspondent lenders exist. *See* Anderson Reply Decl., Exh.; *see also Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 42, 46 (D.D.C. 1984) (finding that the responding party must serve proper formal responses that no such documents exist).

Instead of properly responding to discovery, CHL suggests that other policies and guidelines exist but takes the untenable position that Plaintiff somehow is required to specifically identify these documents without discovery.[14] *See* Opp., pp. 14–15. CHL wholly mischaracterizes its obligations; it is CHL's obligation to identify the responsive documents because Plaintiff necessarily lacks access and, thus, cannot be expected to identify specific titles of these documents without further

---

[13] CHL produced only seven chapters of the Seller's Guide. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ *See* Anderson Reply Decl., Exh. E.

[14] In its Opposition, CHL requests clarification regarding the definition of what (other than the Seller's Guide) constitutes a policy, procedure, or guideline and whether Plaintiff's Request sweeps in underwriting standards or individual communications with a particular correspondent lender. *See* Opp., p. 14. However, CHL ignores the fact that Plaintiff has already specifically identified and defined the policies, procedures, and guidelines at issue in the TAC. *See* TAC ¶¶ 39-56.

13

1  discovery.[15]  CHL's production remains materially deficient, despite the fact that most responsive

2  documents apply to all originators equally and are not unduly burdensome to produce in the least.

3          **6.   The Requested Rate Sheets Should Be Produced (RFPD No. 7 (Set Two)).**

4          Contrary to CHL's assertions, CHL's rate sheets are relevant and necessary to show that the

5  required terms of the loans were common and dictated by CHL.  As alleged, the rates and terms used

6  by originators to originate Plaintiff's and Class members' loans were CHL's rates and terms.  *See*

7  TAC, ¶¶ 38, 39, 44, 46, 47.    Evidence of this is relevant to whether Plaintiff and Class members

8  were subject to common terms, regardless of the originator.  Thus, this Court should compel CHL to

9  produce these rate sheets because CHL has failed to articulate any undue burden affiliated with

10 producing these relevant documents.[16]

11         **7.   CHL's Document Retention Policy Should Be Produced (RFPD No. 23**
           **(Set One)).**
12

13         CHL's document retention policy is not unduly burdensome to produce and is relevant and

14 necessary to learn how CHL stores its documents and whether certain documentary evidence is still

15 available.  Plaintiff is not required to allege that CHL destroyed any relevant documents, as CHL

16 suggests. *See Brodsky v. Humana, Inc.*, Case No. 08 C 50188, 2009 WL 1956450, at *4 (N.D. Ill.

17 Jul. 8, 2009) (granting Plaintiff's motion to compel defendant's document retention policy because

18 the relevancy of the request outweighed the minimal burden on Defendant to produce this

19 information).[17]  Understanding this policy will guide Plaintiff in his search for information which is

20 likely to lead to information that is admissible.  Additionally, knowledge about CHL's document

21 retention policy will streamline discovery and allow Plaintiff to narrow his requests for discovery,

22 thereby easing the burdens on this Court and the parties.

23

24

---

25 [16] CHL cites to the Deposition of Christina Rhea, claiming that it is "not clear that MIG and other
   lenders used CHL-prepared rate sheets in making loans to borrowers." Opp., p. 17. This is
26 irrelevant and, if anything, demonstrates the need for discovery on the issue.
   [17] Any assertion by CHL that this policy is sensitive does not bar production. *See Caudle v. District*
27 *of Columbia*, 263 F.R.D. 29, 37 (D.D.C. 2009) (compelling information regarding defendant's
   document retention policy and requiring defendants to provide a privilege log for documents for
28 which it claims privileged).

                                          14

8.   Interrogatory Nos. 1 & 2 and RFPD Nos. 7 And 8 Are Not "Moot" As
CHL Claims.

CHL produced organizational charts pursuant to Plaintiff's Request No. 9 (Set One) and,
thus, Plaintiff refrains from moving to compel these items.  However CHL's production and
responses regarding Interrogatory Nos. 1 and 2 (number of loans sold in and out of California) as
well as RFPD Nos. 7 and 8 (Loan Preparation Service Providers) are not "moot" as CHL claims, *see*
Opp., pp. 15-16, because CHL's responses to these discovery requests remain deficient.  The
statements in the Declaration of Rebecca E. Sandidge CHL attached to its Opposition fail to
distinguish between the number of loans sold in and outside of California as the Interrogatories
require.  *See* Opp., Exh. 3, ¶¶ 3-4; *see also,* Anderson Decl. Exh. B.  While CHL produced its
Seller's Guide on December 8, 2010, *see* Anderson Reply Decl., Exh. G, it only did so *after* Plaintiff
moved to compel, and this production is materially incomplete.  Moreover, CHL readily admits that
different guidelines for lenders other than MIG might exist, *see* Opp., p. 14, and Plaintiff maintains
that production of these other outstanding relevant materials is entirely proper and not unduly
burdensome.

**III.   CONCLUSION**

For the foregoing reasons, Plaintiff's Motion should be granted in its entirety.

Dated: December 14, 2010                              Respectfully submitted,


*/s/Jennie Lee Anderson*

Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery St., Suite 900
San Francisco, CA  94104
Telephone: 415-986-1440
Facsimile:  415-986-1474
jennie@andrusanderson.com

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gerson Harry Smoger
**SMOGER & ASSOCIATES, P.C.**
3175 Monterey Boulevard
Oakland, CA  94602
Telephone:  510-531-4529
Facsimile:  510-531-4377
gerson@texasinjurylaw.com

David M. Arbogast
Jeffrey K. Berns
**ARBOGAST & BERNS LLP**
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
Phone: (818) 961-2000
Fax:      (818) 936-0232
darbogast@law111.com
jberns@law111.com

Michael A. Bowse (No. 189659)
**BROWNE WOODS GEORGE LLP**
2121 Avenue of the Stars, 24th Floor
Los Angeles, California  90067
Tel: 310.274.7100
Fax 310.275.5697
mbowse@bwgfirm.com

Lee A. Weiss (Admitted *Pro Hac Vice*)
**BROWNE WOODS GEORGE LLP**
49 West 37th Street, 15th Floor
New York, New York 10018
Phone: (212) 354-4901
Fax:      (212) 354-4904
lweiss@bwgfirm.com

*Attorneys for Plaintiff and the Proposed Classes*

16

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on, I electronically filed the foregoing document with the Clerk of the

3   Court using the CM/ECF system which will send notification of such filing to the e-mail addresses

4   denoted on the attached Electronic Mail Notice List.

5       I certify under penalty of perjury under the laws of the United States of America that the

6   foregoing is true and correct.

7   Dated: December 14, 2010                              Respectfully submitted,

8

9                                               _/s/ Jennie Lee Anderson_
                                                Jennie Lee Anderson
10

11                                              **ANDRUS ANDERSON LLP**
                                                155 Montgomery Street, Suite 900
12                                              San Francisco, CA 94104
                                                Telephone: (415) 986-1400
13                                              Facsimile: (415) 986-1474
                                                jennie@andrusanderson.com
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17