# EXHIBIT V

MIN: 1001095-0001044120-9                           Loan Number: 1044120

# ADJUSTABLE RATE NOTE

### (MTA-Twelve Month Average Index - Payment Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT
THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE
PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT
ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT
STATED IN THIS NOTE.

JULY 20, 2005                IRVINE                    CALIFORNIA
   [Date]                     [City]                      [State]

731 COLUMBIA AVENUE, SALINAS, CALIFORNIA 93901
                      [Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $520,000.00      (this amount is
called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under
the terms of this Note but will never exceed (ONE HUNDRED FIFTEEN PERCENT      ) of the
Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is MORTGAGE
INVESTORS GROUP, A GENERAL PARTNERSHIP
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

**(A)  Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay
interest at a yearly rate of   1.000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described
in Section 7(B) of this Note.

**(B)  Interest Rate Change Dates**

The interest rate I will pay may change on the   1st      day of SEPTEMBER, 2005 , and on that
day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change
Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may
change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C)  Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index.
The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury
Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal
Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month
Average is determined by adding together the Monthly Yields for the most recently available twelve months and
dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change
Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding
THREE AND 075/1000      percentage point(s)   3.075 % ("Margin") to the Current Index. The
Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point
(0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My
interest will never be greater than   9.950  %. Beginning with the first Interest Rate Change Date, my interest
rate will never be lower than the Margin.

### 3.  PAYMENTS

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the   1st      day of each month beginning on SEPTEMBER 1,
2005           . I will make these payments every month until I have paid all the Principal and Interest
and any other charges described below that I may owe under this Note. Each monthly payment will be applied as
of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 1, 2035      , I
still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity
Date."

I will make my monthly payments at 16257 LAGUNA CANYON                 , IRVINE,
CALIFORNIA 92618
or at a different place if required by the Note Holder.

Borrower Initials: _____
PayOption ARM Note - MTA Index
FE-5312 (0412)                              Page 1 of 4                                    10/04

CERTIFIED TO BE A TRUE
AND COMPLETE COPY OF THE ORIGINAL DOCUMENT.
BY _____
TICOR TITLE COMPANY

CHL000271

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $1,672.53 unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of SEPTEMBER, 2006, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to 115.000 percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) Interest Only Payment: the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Fully Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

Borrower Initials: _JR_

PayOption ARM Note - MTA Index
FE-5312 (0412)                                    Page 2 of 4

CERTIFIED TO BE A TRUE, CORRECT AND COMPLETE COPY OF THE ORIGINAL DOCUMENT.
TICOR TITLE COMPANY

CHL000272



4.   NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.   BORROWER'S RIGHT TO PREPAY  ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

CERTIFIED TO BE A TRUE AND COMPLETE COPY OF THE ORIGINAL DOCUMENT.
TICOR TITLE COMPANY

Borrower Initials: _JR_

PayOption ARM Note - MTA Index
FE-5312 (0412)                                    Page 3 of 4                                              10/04

CHL000273

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JAY J. RALSTON                          -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

CERTIFIED TO BE A TRUE, CORRECT AND COMPLETE COPY OF THE ORIGINAL DOCUMENT.
P TITLE COMPANY

PayOption ARM Note - MTA Index
FE-5312 (0412)                    Page 4 of 4                    10/04





CHL000275

MIN: 1001095-0001044120-9                     Loan Number: 1044120
Doc ID#:

## ADJUSTABLE RATE RIDER
### (MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this     20th       day of JULY
2005            , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
MORTGAGE INVESTORS GROUP, A GENERAL PARTNERSHIP
("Lender") of the same date and covering the property described in the Security Instrument and
located at:

             731 COLUMBIA AVENUE, SALINAS, CALIFORNIA 93901
                          [Property Address]


THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT
THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.


ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

2.   INTEREST
    (A)  Interest Rate
    Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I
will pay interest at a yearly rate of     1.000 %. The interest rate I will pay may change.
    The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 7(B) of the Note.

    (B)  Interest Rate Change Dates
    The interest rate I will pay may change on the     1st       day of SEPTEMBER
    2005          , and on that day every month thereafter. Each date on which my interest
rate could change is called an "Interest Rate Change Date." The new rate of interest will become
effective on each Interest Rate Change Date. The interest rate may change monthly but the
monthly payment is recalculated in accordance with Section 3.

Borrower Initials: _J.R._  _____  _____  _____

PayOption MTA ARM Rider
FE-5315 (0505)                     Page 1 of 5

**(C)  Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 075/1000    percentage point(s)    3.075 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than   9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the    1st        day of each month beginning on SEPTEMBER 1, 2005    .  I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 1, 2035    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 16257 LAGUNA CANYON ROAD #100, IRVINE, CALIFORNIA 92618
or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 1,672.53        unless adjusted under Section 3 (F).

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the    1st day of SEPTEMBER, 2006 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

Borrower Initials: _____
PayOption MTA ARM Rider
FE-5315 (0505)                              Page 2 of 5

CERTIFIED TO BE A TRUE AND COMPLETE COPY OF DOCUMENT. TICOR TITLE COMPANY

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

(D)  Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

(E)  Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

(F)  Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN AND 000/1000 percent ( 115.000 %)of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G)  Required Full Payment

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

Borrower Initials: _____

PayOption MTA ARM Rider
FE-5315 (0505)                                                     Page 3 of 5

CERTIFIED CORRECT AND COMPLETE COPY OF THE ORIGINAL DOCUMENT. TICOR TITLE COMPANY

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i)    Interest Only Payment:  the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   Fully Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii)  15 Year Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Borrower Initials: _JR_

PayOption MTA ARM Rider
FE-5315 (0505)                              Page 4 of 5

CERTIFIED TO BE A TRUE, CORRECT AND COMPLETE COPY OF THE ORIGINAL
TICOR TITLE COMPANY
BY _____ TICOR TITLE COMPANY

Us53154.em

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____  -Borrower
JAY J. RALSTON

_____  -Borrower

_____  -Borrower

_____  -Borrower

PayOption MTA ARM Rider
FE-5315 (0505)                          Page 5 of 5

CERTIFIED TO BE A TRUE, CORRECT AND COMPLETE COPY OF THE ORIGINAL DOCUMENT.

TICOR TITLE COMPANY

CHL000057



**MORTGAGE INVESTORS GROUP**

Borrower's Name and Address:

Loan No.
Eff. Date of Transfer
Date of Disclosure
Payment Amount:
Servicer: ☐ New ☐ Present

## NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from Mortgage Investors Group to Countrywide Home Loans, Inc., ISAAA/TIMA Effective: 7-22-05

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you the notice at least 15 days before the effective date of transfer, or the new servicer must also send you this notice no later than 15 days after this effective date or at closing. In this case, all necessary information is contained in this one notice.

Your present servicer is Mortgage Investors Group. If you have any questions relating to the transfer of servicing from your present servicer, call Servicing between 8:30 am and 6:30 pm Monday thru Friday. The toll-free number is 1-800-489-8910.

Your new servicer will be Countrywide Home Loans, Inc., ISAAA/TIMA. The business address for your new servicer is Attn: Insurance Department, MS 8V22, P.O. Box 10212, Van Nuys, CA 91410-0212. The toll-free telephone number of your new servicer is 1-800-669-6607. If you have any questions relating to the transfer of servicing to your new servicer, call Customer Service at 1-800-669-6607 between 8 am and 5 pm, Monday thru Friday.

The date that your present servicer will stop accepting payments from you is 9-1-05. Send all payments due on or after that date to your new servicer. The date that your new servicer will start accepting payments from you is 9-1-05.

☐ The transfer of servicing rights may affect the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance in the following manner:

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. Section 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than a notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number and your reasons for the request. (If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to Countrywide Home Loans, Inc., ISAAA/TIMA, MS 8V22, P.O. Box 10212, Van Nuys, CA 91410 . Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency, concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.



# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 1044120
Creditor:   MORTGAGE INVESTORS GROUP
Address: 16257 LAGUNA CANYON ROAD #100, IRVINE, CALIFORNIA 92618

Date: JULY 20, 2005

Borrower(s):   JAY J. RALSTON

Address:   731 COLUMBIA AVENUE, SALINAS, CALIFORNIA 93901

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price<br>The total cost of your purchase on credit including your down payment of $ |
|---|---|---|---|---|
| 5.756 % | $ 649,165.76 | $ 517,557.27 | $ 1,166,723.03 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning |
|---|---|---|---|---|---|---|---|---|
| 1 | 1,672.53 | 09/01/05 | | | | | | |
| 11 | 1,672.53 | 10/01/05 | | | | | | |
| 12 | 1,797.97 | 09/01/06 | | | | | | |
| 12 | 1,932.82 | 09/01/07 | | | | | | |
| 12 | 2,077.78 | 09/01/08 | | | | | | |
| 12 | 2,233.61 | 09/01/09 | | | | | | |
| 299 | 3,500.49 | 09/01/10 | | | | | | |
| 1 | 3,500.00 | 08/01/35 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

  X  VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability   X  Property Insurance _____ Flood Insurance _____ Private Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY: You are giving a security interest in: 731 COLUMBIA AVENUE, SALINAS, CALIFORNIA 93901
_____ The goods or property being purchased   X  Real property you already own.
FILING FEES: $
LATE CHARGE: If payment is more than _____ 15 _____ days late, you will be charged _____ 5.000 % of the payment.
PREPAYMENT: If you pay off early, you                * or $5.00 (whichever is greater)
 X  may   _____ will not   have to pay a penalty.
_____ may    X  will not   be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
_____ may   _____ may, subject to conditions   X  may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
 X  "e" means an estimate   _____ all dates and numerical disclosures except the late payment disclosures are estimates.
Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

_____   7-22-05
Applicant  JAY J. RALSTON                      Date

_____   _____        _____   _____
Applicant                          Date           Applicant                          Date

_____   _____        _____   _____
Applicant                          Date           Applicant                          Date

_____   _____        _____   _____
Applicant                          Date           Applicant                          Date

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

DocMagic eForms  800-649-1362

CHL000259

 

DATE: JULY 20, 2005
BORROWER: JAY J. RALSTON
CASE #:
LOAN #: 1044120
PROPERTY ADDRESS: 731 COLUMBIA AVENUE, SALINAS, CALIFORNIA 93901

### ADJUSTABLE RATE MORTGAGE LOAN PROGRAM DISCLOSURE
### MONTHLY TREASURY AVERAGE INDEX - PAYMENT CAPS
### ALL STATES EXCEPT NEW YORK

This disclosure describes the features of an Adjustable Rate Mortgage (ARM) program you are considering. Information about our other ARM programs will be provided upon request.

| HOW YOUR INTEREST RATE AND PAYMENT ARE DETERMINED | | |
|---|---|---|
| • Your interest rate will be based on an index rate plus a margin. Please ask us for our current interest rate and margin. | | |
| • The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. | | |
| • Your initial interest rate is not based on the index used to make later adjustments. Please ask us for the amounts of our current interest rate discounts. | | |
| • For the first year of your loan, your payment will be based on the initial interest rate, loan amount and loan term. After the first year, your payment will be calculated as described below. | | |

|  | MTA ARM (initial rate change at 1 month) | MTA ARM (initial rate change at 3 months) |
|---|---|---|
| Your interest rate can change: | On your first payment date and monthly thereafter | On your 3rd payment date and monthly thereafter |
| Each time your interest rate changes, the new interest rate will equal the sum of the index plus the margin, subject to the following limits: | • Your interest rate will be rounded to the nearest 1/8%.  • Your interest rate will never exceed the maximum set forth in your loan documents. The maximum rate in effect as of the first business day of January 2005 is 9.95%. Please ask us for our current maximum rate. | |

| How Your Payment Can Change | | |
|---|---|---|
| Your payment can change: | • Every year and can increase or decrease substantially based on changes in the interest rate.  • At every 5th scheduled payment adjustment, you will need to pay the Full Payment until the next payment adjustment date. | |
|  | You will be notified in writing at least 25, but no more than 120 days, before the due date of a payment at a new level. This notice will contain information about the index, your interest rates, payment amount and loan balance. | |
| Your payment will be calculated as follows: | Beginning with the 13th payment and every 12 months thereafter, we will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal balance in full by the maturity date in substantially equal payments at the interest rate in effect during the month preceding the payment change date. This payment is called the "Full Payment." Except as otherwise provided, your "Limited Payment" will be the payment amount for the month preceding the payment change date increased by no more than 7.5% ("Payment Cap"). Your new "Minimum Payment" will be the lesser of the Limited Payment and the Full Payment. You also have the option to pay the Full Payment for your monthly payment. If you pay less than the Full Payment, then the payment may not be enough to cover the interest due, and any difference will be added to your principal balance. This means the balance of your loan could increase. This is known as "negative amortization." During the loan term, we may provide you with other monthly payment options that are greater than the Minimum Payment ("Payment Options"). Please ask us about these Payment Options. | |
| The unpaid principal of your loan: | Can never exceed 115% (110% in New York) of the original amount borrowed. This means that your monthly payment may change more frequently than annually and the payment change will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to pay off the unpaid principal balance over the remaining life of the loan at the current interest rate. | |
|  | The examples below illustrate interest rate and payment changes based on a $10,000, 30-year loan. These examples use an initial interest rate in effect on the first business day of January 2005; and assume the maximum periodic increases in rates and payments. | |

| Examples of loans with a discounted interest rate (below sum of index and margin) | | |
|---|---|---|
| Initial Interest Rate | 1.00% | 1.75% |
| Maximum Interest Rate | 9.95% | 9.95% |
| First Year Payment | $32.16 | $35.72 |
| Maximum payment | $101.46 in the 3rd year | $102.14 in the 3rd year |

CONV
• ARM MTA PayOption Disclosure
FS4273 (0805)

Page 1 of 2

D0231.cr


CHL000229

|  | Examples of loans with a premium interest rate (above sum of index and margin) | |
|---|---|---|
| Initial Interest Rate | N/A | N/A |
| Maximum Interest Rate | N/A | N/A |
| First Year Payment | N/A | N/A |
| Maximum payment | N/A | N/A |

NOTE: To see what your payment would be, divide your mortgage amount by $10,000, then multiply the monthly payment by that amount. (For example, the monthly payment for a $60,000 MTA ARM Index - Payment Cap loan with a discounted interest rate would be: $60,000 / $10,000 = 6; 6 x $32.16 =$192.96 per month)

_____ 7-22-05
Applicant JAY D RALSTON          Date

_____
Applicant                        Date

_____
Applicant                        Date

_____
Applicant                        Date

CHL000230

DATE:   JULY 20, 2005
BORROWER:    JAY J. RALSTON

LOAN #:   1044120
PROPERTY ADDRESS:    731 COLUMBIA AVENUE
 SALINAS, CALIFORNIA 93901

## PREPAYMENT PENALTY OPTION DISCLOSURE

Original Principal Balance:

| | Loan Program Without Prepayment Penalty Option | Loan Program With Prepayment Penalty Option | Savings |
|---|---|---|---|
| Interest Rate | % | % | % |
| Monthly Payment | $ | $ | $ |
| Points | % | % | % |

I understand that my loan has a prepayment penalty for the first   36 MONTHS   of the loan. I also understand that I have the option of choosing a different loan program without a prepayment penalty.

I have chosen a loan with a prepayment penalty, and understand the terms and conditions of the loan I have chosen and that there is a rate and/or points savings to me for taking the loan with a prepayment penalty.

If I prepay my loan, I will pay a prepayment penalty in accordance with ther terms of the Note, including any addendum to the Note.

_____          7-22-05
Applicant    JAY J. RALSTON                          _____
                                                          Date

_____          _____
Applicant                                              Date

_____          _____
Applicant                                              Date

_____          _____
Applicant                                              Date

Prepayment Penalty Option Disclosure (H-PPP)
FE-5205 (0412)

Udi305.cor

CHL000231