\*\*E-Filed 9/12/2011\*\*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| JAY J. RALSTON,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>MORTGAGE INVESTORS GROUP, INC., et al.,<br><br>　　　　　　　Defendants. | Case Number 5:08-cv-00536-JF (PSG)<br><br>ORDER[1] DENYING MOTION TO STRIKE CERTAIN CLASS ALLEGATIONS<br><br>[re:  dkt entry 163] |

　　　　Defendant Countrywide Home Loans, Inc. ("Countrywide") moves to strike certain class allegations in the operative third amended complaint ("TAC").  It contends that Plaintiff Jay Ralston ("Ralston") lacks standing to assert claims on behalf of putative class members who obtained loans from originators other than Defendant Mortgage Investment Group ("MIG"), and it asks that the Court strike allegations related to such loans.  The Court has considered the moving and responding papers as well as the oral argument presented at the hearing on March 11, 2011.  For the reasons discussed below, the motion will be denied.

---

　　[1] This disposition is not designated for publication in the official reports.

Case No. 5:08-cv-00536-JF (PSG)
ORDER DENYING MOTION TO STRIKE CERTAIN CLASS ALLEGATIONS
(JFLC2)

## I. BACKGROUND

Ralston filed this putative class action on January 24, 2008, alleging that Countrywide "concocted and implemented" a fraudulent scheme under which MIG and other mortgage originators marketed Option Adjustable Rate Mortgage ("Option ARM") loans using deceptive loan documents. TAC ¶ 1. These loan documents allegedly:

> failed to clearly, unambiguously and conspicuously disclose to Plaintiff and Class Members the following: (I) the low interest rate set forth in the Option ARM mortgage notes ("Notes") was only available for thirty days, if at all; (ii) the monthly payment amounts for the first three to five years provided to Plaintiff and Class Members on a Truth-In-Lending Disclosure Statement ("TILDS") were insufficient to pay both accrued interest and principal; (iii) negative amortization was absolutely certain to occur if Plaintiff and Class Members made payments according to the schedule of monthly payments provided in the TILDS; and that (iv) loss of equity and/or loss of Plaintiff's and Class Members' residences was certain to occur if Plaintiff and Class Members made payments according to the payment schedule.

TAC ¶ 3.

Ralston alleges the following: the ability of MIG and other loan originators to issue Option ARM loans was wholly dependent on Countrywide purchasing the loans shortly after origination. TAC ¶ 4. Moreover, MIG and other loan originators did not use their own assets to fund Option ARM loans, but borrowed money from warehouse lenders, often affiliates of Countrywide. *Id*. Countrywide created the loan documents, and was fully aware of the material omissions therein. TAC ¶ 20. Countrywide required that MIG and other loan originators use the misleading documents. TAC ¶ 4.

Ralston's loan was offered at a low "teaser" interest rate of 1%. TAC ¶ 21. That rate lasted only thirty days, after which the rate was calculated by combining an index and a margin of 3.075%. TAC ¶¶ 21, 24. Even if the index went down to zero, the combined total of the index and the margin always would be significantly higher than the teaser rate. TAC ¶ 24. However, the monthly payment schedule was calculated at the 1% rate. TAC ¶ 22. Under the applicable payment cap, the monthly payment could be increased only by 7.5% each year. TAC ¶ 26. Thus Ralston's loan was certain to cause – indeed, it was *designed* to cause – negative amortization. *Id*. Ralston was "locked in" to the loan by "a draconian prepayment penalty consisting of a prepayment charge equal to six months of interest." TAC ¶ 25. Once the

principal reaches 115% of the original loan amount, the monthly payment cap is eliminated and the monthly payments immediately are recast to fully amortizing payments of principal and interest. TAC ¶ 27. "To the extent that this built-in 'payment shock' is more than many Class Members can afford, they need to refinance 115% of the amount they initially borrowed (despite having made all of the required payments) or risk losing their homes to foreclosure." TAC ¶ 27.

Despite the certainty of negative amortization, the Notes suggest that negative amortization is only a mere possibility. TAC ¶ 28. Had Ralston and the class members known that negative amortization was a certainty, they would not have purchased the subject Option ARM loans. TAC ¶ 29.

Countrywide encouraged use of these misleading loans by, *inter alia*, offering MIG a volume incentive: if MIG funded with Countrywide $25,000,000 of loans per month, Countrywide would pay MIG a volume incentive of .35% on all three-year "Hard Pre-Pay Loans, and 20% on all 1 year Hard Prepay loans." TAC ¶ 47.

Based upon these and other allegations, Ralston alleges claims for fraudulent omissions and violation of California's unfair competition laws on behalf of two classes of individuals. Class One is defined as follows:

> All individuals who, from January 24, 2004 through the date that notice is mailed to the Class, have or had an Option ARM loan originated by a lender other than Countrywide Home Loans, Inc. and subsequently assigned or sold to Countrywide Home Loans, Inc. on their home located in the State of California or for which the loan documents were approved in or emanated from California or from a California Defendant, with the following characteristics:
>
> (I) the monthly payment amount in the Note is based upon an interest rate which ranges from 1% to 3%;
> (ii) the payment schedule in the TILDS, for the first year or more of the Note, is based upon a fully amortizing payment at the teaser interest rate;
> (iii) the interest rate adjusts after only one month to a rate which is the sum of the "index" and the "margin"; and
> (iv) after the first three to five years of the loan, the monthly payment amount increases to a fully amortizing payment based upon the remaining principal balance at that time.

TAC ¶ 57.

Class Two is defined as follows:

> All individuals who, from January 24, 2004 through the date that notice is mailed

3

Case No. 5:08-cv-00536-JF (PSG)
ORDER DENYING MOTION TO STRIKE CERTAIN CLASS ALLEGATIONS
(JFLC2)

        to the Class, have or had an Option ARM loan originated by Mortgage Investors Group on their home located in the State of California or for which the loan documents were approved in or emanated from California or from a California Defendant, with the following characteristics:

    (I)     the monthly payment amount in the Note is based upon an interest rate which ranges from 1% to 3%;
    (ii)    the payment schedule in the TILDS, for the first year or more of the Note, is based upon a fully amortizing payment at the teaser interest rate;
    (iii)   the interest rate adjusts after only one month to a rate which is the sum of the "index" and the "margin"; and
    (iv)   after the first three to five years of the loan, the monthly payment amount increases to a fully amortizing payment based upon the remaining principal balance at that time.

TAC ¶ 57.

## II. DISCUSSION

Countrywide argues that Ralston lacks Article III standing to assert claims on behalf of Class One, that is, on behalf of individuals who obtained their loans from originators other than MIG. Ralston raises a number of procedural objections to the motion to strike, some of which are well-taken. However, the Court in the exercise of its discretion elects to address Countrywide's motion on the merits.

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court held that in order to satisfy Article III's standing requirements a plaintiff must show that: (1) he has suffered an injury in fact (an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical); (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id*. at 560-561. As discussed above, Ralston alleges that Countrywide "concocted and implemented" a fraudulent scheme under which MIG and other mortgage originators marketed Option Adjustable Rate Mortgage ("Option ARM") loans using deceptive loan documents. TAC ¶ 1. Ralston alleges in detail how, as a result of this scheme, he was deceived into obtaining an Option ARM loan that was certain to result in negative amortization. TAC ¶¶ 21-29. Ralston's injury would be redressed by a favorable decision on his claims. Ralston thus has Article III standing to bring the instant lawsuit.

"Representative parties who have a direct and substantial interest have standing; the

question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." 7AA Wright, et al., *Federal Practice and Procedure* (3d 2005) § 1785.1. Thus, "[w]hile a potential class representative must demonstrate individual standing vis-a-vis defendant, once standing has been established, whether he will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23." *Id*. n.12. At that point there is no additional constitutional standing requirement related to his ability to represent the putative class. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998) ("once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong").

Countrywide relies upon securities fraud cases holding that lead plaintiffs lacked standing to challenge offerings through which no lead plaintiff actually purchased a security. *See, e.g., In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 964 (2010). Those cases are distinguishable. Ralston and all putative class members suffered injuries traceable to the alleged Countrywide scheme. The fact that some class members purchased their loans from originators other than MIG does not deprive Ralston of standing to assert claims on their behalf; under the authorities cited above, that fact instead goes to questions of typicality and adequacy of representation.

Accordingly, Countrywide's motion to strike will be denied without prejudice to renewal of Countrywide's arguments in the context of Ralston's motion for class certification.

### III. ORDER

Countrywide's motion to strike certain class allegations is DENIED.

Dated:  September 12, 2011

_____
JEREMY FOGEL
United States District Judge