1  BROOKS R. BROWN (SBN 250724)
   *bbrown@goodwinprocter.com*
2  STEVEN A. ELLIS (SBN 171742)
   *sellis@goodwinprocter.com*
3  **GOODWIN PROCTER LLP**
   601 S. Figueroa Street, 41st Floor
4  Los Angeles, California  90017
   Tel.: 213.426.2500
5  Fax: 213.623.1673

6  THOMAS M. HEFFERON (pro hac vice)
   *thefferon@goodwinprocter.com*
7  SABRINA ROSE-SMITH (pro hac vice)
   *SRoseSmith@goodwinprocter.com*
8  **GOODWIN PROCTER LLP**
   Washington, DC  20001
9  Tel.: 202.346.4000
   Fax: 202.346.4444
10
   ROBERT B. BADER (SBN 233165)
11 *rbader@goodwinprocter.com*
   **GOODWIN PROCTER LLP**
12 Three Embarcadero Center, 24th Floor
   San Francisco, California  94111
13 Tel.: 415.733.6000
   Fax: 415.677.9041
14
   Attorneys for Defendant:
15 *Countrywide Home Loans, Inc.*

16                 **UNITED STATES DISTRICT COURT**

17                **NORTHERN DISTRICT OF CALIFORNIA**

18                        **SAN JOSE DIVISION**

19

20 JAY RALSTON, individually and on behalf of     Case No. 5:08-CV-00536-JF (PSGx)
   all others similarly situated,
21                                                 **COUNTRYWIDE'S OPPOSITION TO**
                                                   **PLAINTIFF'S MOTION TO EXCLUDE**
                Plaintiff,                         **EXPERT TESTIMONY OF MICHAEL**
22                                                 **D'ALONZO**
           v.
23                                                 Date:        November 15, 2011
   MORTGAGE INVESTORS GROUP, INC.;                 Time:        10:00 a.m.
24 MORTGAGE INVESTORS GROUP, a                     Courtroom:   4 – 5th Floor
   general partnership; COUNTRYWIDE HOME           Judge:       Hon. Paul Singh Grewal
25 LOANS, INC.; and DOES 3-10,

26                Defendants.

27

28

---

**Countrywide's Opposition to Plaintiff's Motion to**
**Exclude Expert Testimony of Mr. Michael D'Alonzo     Case No. 5:08-CV-00536-JF (PSGx)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 5

    I.     PLAINTIFF MISSTATES THE APPLICABLE LEGAL STANDARD. .................................. 5

    II.    D'ALONZO IS QUALIFIED TO TESTIFY ABOUT BROKER PRACTICES BASED ON HIS EXTENSIVE EXPERIENCE IN THE FIELD FOR TWENTY-FIVE YEARS. ................. 6

    III.    D'ALONZO'S EXPERIENCE QUALIFIES HIM TO TESTIFY ABOUT PAYMENT OPTION LOANS. ..................................................................................... 10

    IV.    D'ALONZO'S DISAGREEMENT WITH PROFESSOR WHITE IS NOT GROUNDS FOR EXCLUSION. ...................................................................................... 11

CONCLUSION ................................................................................................................. 12

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3  **C**ASES                                                                                            <u>**Page**</u>

4  *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC,*
      555 F.3d 1331 (11th Cir. 2009) .............................................................................. 7

5

6  *Berry v. City of Detroit,*
      25 F.3d 1342 (6th Cir. 1994) ............................................................................ 5, 6

7  *Esteem v. City of Pasadena,*
      2007 WL 4270360 (C.D. Cal. Sept. 11, 2007) ................................................... 6

8

9  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,*
      618 F.3d 1025 (9th Cir. 2010) .............................................................................. 7

10

11  *Gipson v. Wells Fargo Bank, N.A.,*
      460 F. Supp. 2d 9 (D.D.C. 2006) ....................................................................... 10

12  *Hangarter v. Provident Life and Accident Ins. Co.,*
      373 F.3d 998 (9th Cir. 2004) .............................................................................. 10

13

14  *Jinro Am., Inc. v. Secure Invest., Inc.,*
      266 F.3d 993 (9th Cir. 2001) ................................................................................ 8

15

16  *Kumho Tire Co. v. Carmichael,*
      526 U.S. 137 (1999) .............................................................................................. 5

17  *Living Design, Inc. v. E.I. DuPont de Nemours & Co.,*
      431 F.3d 353 (9th Cir. 2005) ................................................................................ 5

18

19  *Ollier v. Sweetwater Union High Sch. Dist.,*
      267 F.R.D. 339 (S.D. Cal. 2010) .......................................................................... 8

20  *Trevino v. Gates,*
      99 F.3d 911 (9th Cir. 1996) .................................................................................. 8

21

22  **R**ULES

23  Fed. R. Evid. 702 ..................................................................................................... 1, 3

24

25

26

27

28

1        Defendant Countrywide Home Loans, Inc. ("CHL" or "Defendant") submits this

2   Opposition to Plaintiff Jay Ralston's Motion to Exclude the Testimony of Michael D'Alonzo

3   ("Motion") (Dkt. No. 313). As demonstrated below, the Motion must be denied because Plaintiff

4   proffers no legitimate basis to strike Mr. D'Alonzo's report and testimony under Rule 702. His

5   opinions are both reliable and relevant to class certification.[1]   That is the end of the inquiry.

6   **INTRODUCTION**

7        At its core, the Motion should be denied because it is based on Plaintiff's misstatement of

8   both the applicable case law and the actual opinions offered.   Defendant has offered the expert

9   opinions of Mr. D'Alonzo ("D'Alonzo") as a rebuttal to certain theoretical broker-related opinions

10  proffered by Plaintiff through a law professor, Alan White, who has never worked in the mortgage

11  broker industry.   D'Alonzo, by contrast, is the current President of the National Association of

12  Mortgage Brokers ("NAMB"), the largest association of mortgage brokers in the United States,

13  and has twenty-five years of experience working as a mortgage broker, employing and supervising

14  other brokers and interacting with other brokers about their practices, including loan disclosure.

15  D'Alonzo is thus well-qualified to provide expert opinion testimony on the practices of mortgage

16  brokers and their economic interests in providing disclosures about loan terms and features to their

17  clients.   His testimony is also relevant on class certification because it rebuts Professor White's

18  theoretical opinion that brokers have an economic interest to disclose only the minimum amount

19  of information necessary to get the loan closed.   D'Alonzo explains, based upon his extensive,

20  hands-on experience as a broker, that this is wrong and that brokers often provide extensive

21  information about loan products, both orally and in writing, that goes far beyond the written

22  disclosures provided by lenders and have economic incentives to do so.

23       In attacking D'Alonzo's opinions, Plaintiff first improperly applies the scientific *Daubert*

24  standard to his experience-based opinions, and then resorts to distorting both D'Alonzo's

25  experience and his opinions as an expedient to characterizing them as unreliable.   Neither effort is

26  ---

27  [1] By Order dated October 12, 2011 (Dkt. No. 305), this Court (Fogel, J.) referred the parties'
respective *Daubert* motions directed at class certification experts to Magistrate Judge Grewal.   As
such, CHL files this Opposition according to the special briefing and hearing schedule set by

28  Magistrate Judge Grewal by Order dated October 17, 2011 (Dkt. No. 312).

1   successful.   D'Alonzo is a classic experience-based expert, providing proper expert opinion

2   testimony on how brokers operate based on his 25-plus years working in the industry.   And,

3   Plaintiff's contrary assertions otherwise are belied by their use of and reliance upon Professor

4   White as a purported "broker" expert under circumstances where, by his own admission, he has

5   never worked in the mortgage industry, let alone as a broker, has never witnessed or participated

6   in a brokered loan transaction, has not conducted any study or surveys regarding borrower-broker

7   interactions, and has only spoken to fewer than 10 brokers in his lifetime.

8                                   **BACKGROUND**

9        Plaintiff and many other class members in this case obtained their loans with the assistance

10   of an independent mortgage broker.  *See D'Alonzo Dep.* at 137:17-20 (60 percent of all residential

11   mortgage loans in the United States were originated by brokers during the time period at issue);

12   *Baker Decl.* ¶ 18; *Fontaine Decl.* ¶ 4; *Hensling Decl.* ¶¶ 6-7; *Nicolau Decl.* ¶¶ 6, 9 (demonstrating

13   that CHL purchased loans from brokers).[2]   For these loans, it was the independent broker – and

14   not the originating lender or CHL – who handled most or all of the communication with Plaintiff

15   and the other members of the putative class regarding the selection of the loan, the features of the

16   loan, and other matters relating to the loan prior to closing.  *Baker Decl.* ¶ 9; *Nicolau Decl.* ¶¶ 6, 7;

17   *see also Hensling Decl.* ¶¶ 8-9.

18        Recognizing that an understanding of the broker-borrower relationship is critically

19   important to his class certification motion, Plaintiff offers expert testimony on this subject from

20   Professor White.  *Expert Report of Alan M. White*, Dkt. No. 314-5 ("White Report").   Professor

21   White is a law professor who has no experience as a mortgage broker, has never studied mortgage

22   brokers and has only spoken to a handful of them.  *White Dep.* at 20:15-21.  Despite his lack of

23   relevant experience, Professor White opines that, because it would be against the "economic

24

_____

25        [2] For ease of presentation in this Brief, declarations, expert reports, and deposition materials
     will be cited simply by using the person's last name.   All cited portions of the D'Alonzo
26   Deposition and the White Deposition are attached to the contemporaneously filed attorney
     Declaration of Robert Bader in Opposition to Plaintiff's Motion to Exclude Expert Testimony of
27   Mr. Michael D'Alonzo.  Unless otherwise noted, all cited declarations were filed in support of
     CHL's Opposition to Plaintiff's Corrected Motion for Class Certification, Oct. 30, 2011, Dkt. No.
28   271.

**Countrywide's Opposition to Plaintiff's Motion to
Exclude Expert Testimony of Mr. Michael D'Alonzo        Case No. 5:08-CV-00536-JF (PSGx)**

1   interest" of brokers to disclose information about payment option ARM loans ("POA loans"), "it

2   is highly unlikely that brokers voluntarily provided this information to borrowers." *Id.* ¶ 11.[3]

3        In rebuttal, CHL offered the expert testimony of D'Alonzo.  He is a quintessential

4   experience-based expert who is well-qualified to provide expert opinion testimony on the practices

5   of mortgage brokers based on his knowledge and experience.  It is undisputed that D'Alonzo has

6   been a residential mortgage broker for more twenty-five years and, for the past fifteen years, has

7   been the owner of Creative Mortgage Group, Inc., a full service and licensed mortgage brokerage

8   with an employee base of eight originators, four processors, and average annual origination

9   volume of approximately $48 million.  *Expert Rebuttal Report of Michael D'Alonzo*, Dkt. #314-2,

10  Exh. B, at Exh. A ("D'Alonzo Rebuttal Report").  He currently serves as President of the NAMB,

11  and has served the national and state association in a variety of positions during the past decade,

12  including state association president, national and state board member, national treasurer, national

13  education chair, national finance vice-chair, and state legislative chair.  *Id.*  He is a Certified

14  Mortgage Consultant (a certification provided by the NAMB) and is a certified instructor on both

15  a state and national level.  *Id.*  He has taught continuing legal education courses to mortgage

16  brokers and professionals.  *Id.*  Based upon this lifetime of actual experience in the mortgage

17  broker field, D'Alonzo formed his expert opinions in this matter using his own personal

18  experience as a mortgage broker for more than twenty-five years, his experience supervising other

19  originators at his company, and extensive formal and informal discussions that he has had since

20  1986 with literally hundreds if not thousands of mortgage brokers at NAMB conferences,

21  continuing legal education courses, and more informal settings about the nature of the business,

22  lessons based upon experience, and broker practices.  *Id.* ¶¶ 9-16; *D'Alonzo Dep.* at 72:10-73:12;

23  52:7-8.

24       D'Alonzo's testimony is directly relevant to this Court's class certification inquiry.  For

25  example, in rebuttal to Professor White, he opines that brokers generally provide substantial

26

27       [3] CHL has not sought to preclude this Court from considering Professor White's opinion under
    Rule 702.  Instead, CHL maintains that Professor White's lack of experience, foundation and
28  study goes to the weight of his opinions.

3

information about loans to borrowers that goes beyond legally mandated disclosures provided by lenders and that brokers have the economic incentive to do so. *D'Alonzo Rebuttal* ¶¶ 9, 13. As to the POA loan product at issue in this lawsuit, he opines that brokers provide information "about, among other things, the interest rate, negative amortization and minimum payment features of [such] loans." *Id.* ¶ 16. He further explains that it is in a broker's economic interest to provide borrowers with this information, because the primary sources of business for mortgage brokers are repeat customers and referrals. *Id.* ¶ 13.

D'Alonzo has the relevant experience to provide these opinions. For example, D'Alonzo testified at his deposition that it was his practice, and the practice of other originators at his brokerage, to provide additional written disclosures to borrowers considering POA loans beyond those provided by lenders. *D'Alonzo Dep.* at 28:12-29:9; *see also* 39:3-15 (he required other originators to make similar disclosures). The written disclosure was a sample monthly statement that showed the four payment options that borrowers could choose from each month. *Id.* at 30:4-19. Likewise, he testified that additional information regarding payment options, interest rate, and negative amortization was provided orally. *D'Alonzo Dep.* at 39:3-9; 40:16-41:2; 93:11-18; 106:3-6 (stating how he would explain negative amortization); *see also id.* at 102:19-103:1. Moreover, at his deposition, D'Alonzo also recounted specific examples of borrowers who received POA loans and considered them to be very beneficial. *Id.* at 128:9-130:8. One was a self-employed person who was a wholesaler of Christmas items and earned most of his money in the fall and winter; this borrower liked the POA loan because he was able to make minimum payments in spring and summer, when he had little income. *Id.* at 128:10-129:14. Another was a medical resident who "qualified at a lower rate, knowing that in the next year his contract with the University of Pennsylvania was going to be much greater, he was going to earn much more income, so he liked that product that he could then go into and then catch up on his deferred interest." *Id.* at 129:15-130:3.

To be clear, just like Professor White, D'Alonzo does not presume to testify that any particular practice was universal among mortgage brokers or as to what Plaintiff or any other particular class members experienced. In contrast to Professor White, however, D'Alonzo is

4

1  providing experience-based testimony about the actual (and not hypothetical or imagined)

2  practices of mortgage brokers in the United States.

3  **ARGUMENT**

4  **I.    PLAINTIFF MISSTATES THE APPLICABLE LEGAL STANDARD.**

5        Although the Motion quotes *Daubert* by rote and repeatedly emphasizes the requirements

6  for "scientifically valid" testimony (Mot. at 2-3), it entirely fails to address the Supreme Court's

7  more pertinent decision in *Kumho Tire* on assessing the admissibility of non-scientific testimony

8  such as D'Alonzo's.  On this issue, Plaintiff misses the distinction between scientific and non-

9  scientific expert testimony and the proper admissibility standard for the latter.  *See* Mot. at 2

10 (repeatedly emphasizing standard for "scientific validity").    The *Daubert* scientific-oriented

11 considerations cannot be rigidly applied to non-scientific, experience based expert testimony.

12 *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999).  Instead, as *Kumho* clarified, the

13 district court "must have considerable leeway in deciding in a particular case how to go about

14 determining whether particular expert testimony is reliable." *Id.* at 152.

15       Following *Kumho Tire*, the Ninth Circuit has explained that not all expert testimony will

16 be provided by academics or supported by data-driven scientific research; alternatively, experts

17 may testify from their first-hand personal and professional experiences.  *Living Design, Inc. v. E.I.*

18 *DuPont de Nemours & Co.*, 431 F.3d 353, 369 (9th Cir. 2005).  Thus, where an expert is providing

19 an opinion based on what that expert has experienced in the past, the sufficiency of the expert's

20 experience is what is relevant to the reliability of the opinion – not the *Daubert* factors for

21 scientific testimony.  *Id.*

22       The Sixth Circuit has perhaps best explained the scientific versus non-scientific distinction

23 by hypothetically comparing the scientific opinions of an aeronautical engineer on bumblebee

24 flight with the non-scientific, but equally admissible, opinions of a simple beekeeper.  *Berry v.*

25 *City of Detroit*, 25 F.3d 1342, 1349-50 (6th Cir. 1994).

26          [I]f one wanted to prove that bumblebees always take off into the
             wind, a beekeeper with no scientific training at all would be an
27           acceptable expert witness if a proper foundation were laid for his
             conclusions.   The foundation would not relate to his formal
28           training, but to his firsthand observations.  In other words, the

5

1  beekeeper does not know anymore than the jurors, but he has seen
   a lot more bumblebees than they have.

2

3  *Id.*[4]

4      Applying this framework, D'Alonzo has more than sufficient experience for his opinions.

5  As set forth in his Report and explained at deposition, D'Alonzo has personally brokered loans for

6  twenty-five years, has run a business in which he or others supervised by him have originated an

7  average of $48 million in loans per year, and has interacted with hundreds if not thousands of

8  other brokers regarding their practices in the course of his various positions with the NAMB and

9  its state affiliate and providing continuing education.  *D'Alonzo Rebuttal Report* ¶¶ 1, 3., Exh. A.

10 It is this experience that provides the proper foundation for his opinions and makes them both

11 reliable and relevant to assist this Court in assessing Professor White's purely theoretical opinions

12 regarding the practices of brokers.  In fact, D'Alonzo provides precisely what is missing from

13 Professor White's abstract opinions: real world experience.  Plaintiff's objections based on a

14 "scientific validity" standard are thus without merit.

15 **II.    D'ALONZO IS QUALIFIED TO TESTIFY ABOUT BROKER PRACTICES BASED ON HIS
        EXTENSIVE EXPERIENCE IN THE FIELD FOR TWENTY-FIVE YEARS.**

16     The Motion primarily attacks the basis for D'Alonzo's testimony regarding the practices of

17 other mortgage brokers.  Rather simplistically, Plaintiff argues that, because D'Alonzo has not

18 been in the actual room with a sufficient number of other brokers when they interacted with

19 borrowers, he is not qualified to testify to their practices.  Mot. at 3.  But this argument confuses

20 the standard for percipient witness and expert witness testimony, and fails (again) to take into

21 account D'Alonzo's substantial and extensive personal experience in the mortgage broker

22 industry.

23     As set forth in his Rebuttal Report, D'Alonzo first identifies the role brokers are typically

24 meant to provide in a residential mortgage transaction (¶ 9), and second offers opinions as to how

25 brokers generally fulfill this role through disclosures and discussions with borrowers (*e.g.* ¶ 12).

26

27     [4] *See also Esteem v. City of Pasadena*, 2007 WL 4270360 (C.D. Cal. Sept. 11, 2007) ("You
   don't need a weatherman to know which way the wind blows.") (quoting Bob Dylan,

28 Subterranean Homesick Blues (1965)).

6

As to the first opinion, Plaintiff cannot reasonably contend that a broker with twenty-five years of experience, who is currently the President of the NAMB (and has served in numerous other positions at this and other similar organizations), does not have the professional expertise to opine on the typical role of brokers in a residential mortgage transactions. *D'Alonzo Rebuttal Report* ¶¶ 1-3. Whatever Professor White or Plaintiff may personally believe about mortgage brokers, there is no basis in the Motion or otherwise not to allow a qualified professional to opine on the nature of his profession (and the industry he has been working in for the last twenty-five years of his life). *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010) (expert's forty years of experience qualified him to testify on industry practices); *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (same). Indeed, although the Motion attempts to lump this testimony together with other sections, it makes no real effort to identify a grounds for discrediting this industry-level testimony.

Instead, the Motion's main focus is on D'Alonzo's related opinions regarding his knowledge of how mortgage brokers generally interact with customers in real-world settings. At the outset, it is not surprising that Plaintiff would seek to exclude this testimony, as it undercuts his core theory – belied by common sense – that a class can be certified here because brokers purportedly <u>never</u> discuss negative amortization or adjustable interest rates with their clients. But, even setting aside Plaintiff's attempt to secure class certification based upon a theory divorced from actual reality about how residential mortgage loan transactions occur, his arguments to exclude D'Alonzo's testimony all depend upon this Court overlooking the extensive experience D'Alonzo has in the mortgage broker industry.

D'Alonzo has the relevant experience to provide admissible (and persuasive) expert testimony on that industry. As the current president of the NAMB, as well as someone who has worked in the industry for twenty-five years, has owned his own company for twenty years, has taught continuing legal education courses to brokers, and has served in a variety of capacities with the NAMB and its state affiliate for more than a decade, D'Alonzo has a unique understanding of the relationship between mortgage brokers and borrowers. *D'Alonzo Rebuttal Report* ¶ 2. His qualifications to explain the steps mortgage brokers take when originating a loan are based not

1    only his own personal experience in originating loans throughout his career, but also on his

2    hundreds or even thousands of conversations with other brokers about their practices, experiences,

3    and methods.  *D'Alonzo Rebuttal* ¶ 9, 13.   This includes his teaching work, his individual

4    conversations with brokers, his group discussions with brokers, and his work supervising

5    originators at his own brokerage.  *D'Alonzo Dep.* at 69:15-70:6, 88:21-89:10, 90.[5]  D'Alonzo's

6    decades of experience discussing brokering with other brokers and interacting with brokers in

7    educational settings necessarily gives him a basis for providing an expert opinion as to how other

8    brokers interact with their customers.

9         The substantial experience supporting D'Alonzo's opinions also forecloses each of

10   Plaintiff's sub-arguments attacking him.  First, contrary to Plaintiff's position, there is no need for

11   an experienced-based expert such as D'Alonzo to review documents or to conduct academic

12   studies for his opinion.  Mot. at 3.  Nor is it required that he have detailed records of all of his

13   broker conversations and experiences over the past three decades.  *Id.* at 3-4.[6]  It is thus not

14   surprising that Plaintiff's legal basis for striking D'Alonzo based on these alleged deficiencies is

15   premised exclusively on three cases dealing with proposed experts who entirely lacked relevant

16   experience or knowledge on the topic at issue.  Mot. at 4, citing *Trevino v. Gates*, 99 F.3d 911,

17   922 (9th Cir. 1996); *Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 339, 341-42 (S.D.

18   Cal. 2010); *Jinro Am., Inc. v. Secure Invest., Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001).[7]

19       [5] Indeed, NAMB focuses on education for its members, *id.* at 23:10-13, and as the President,
20   D'Alonzo is required to know the best practices for mortgage brokers and "make[] sure that the
     members['] voices are heard."  *Id.* at 24:15-16.

21       [6] While D'Alonzo did not document his thousands of conversations, the Declaration of Al
     Hensling filed in this case supports D'Alonzo's claim that brokers had a practice of explaining the
22   terms of the loan products and disclosures to borrowers.  *Hensling Decl.* ¶¶ 8, 14, 17.

23       [7] In *Jinro Am., Inc.*, the court excluded testimony from a man attempting to testify on Korean
     business culture, practices and law because he had no legal, business, or financial background.  He
24   attempted to comment on cultural practice without any background in cultural studies, claiming he
     was qualified because he studied Korean business practice as a "hobby" and was married to a
25   Korean woman.  266 F.3d at 1006.  Plaintiff's citation to *Ollier* is similarly misplaced.  There, the
     court excluded testimony on the quality of specific athletic facilities because the supposed expert
26   did not study the facilities and attempted to base his examination on his experience as a public
     school educator.  267 F.R.D. 339.  Finally, *Trevino* is completely irrelevant as it involved experts
27   who lacked foundation to testify as to the value of a victim's lifetime employment because neither
     the experts nor the plaintiff's attorney offered evidence that the victim even had a job.  99 F.3d at
28   922-923 ("The only foundation laid for this assumption was testimony that (1) Bahena left in the
     morning and returned in the evening; (2) he gave Trevino's mother money at fairly regular

8

1    Plaintiff next attacks D'Alonzo's opinions concerning the economic incentive of brokers to

2  satisfy customers to earn repeat business.  Mot. at 4.  This attack is similarly unfounded.  Given

3  his position in the industry and the owner of his own mortgage brokerage for more than 25 years,

4  D'Alonzo certainly has the experience to testify as to his economic motivations, and the

5  motivations of other brokers, concerning, among other things, generating new and repeat business.

6    Equally unavailing is Plaintiff's fleeting attempt to argue that, because Plaintiff's broker

7  agreement with Mortgage Investor's Group (an entity with which D'Alonzo did not work) did not

8  specifically require all of the interactions referenced by D'Alonzo, his opinions must be wrong.

9  Mot. at 4-5.  This argument entirely overlooks the substance of D'Alonzo's opinions: that a

10  broker-borrower relationship involves far more than the narrow confines of the minimum written

11  terms of the contractual agreement.  Instead, it is an interactive relationship in which the broker

12  serves the borrower and assists him or her in completing a loan transaction that fits his or her

13  needs.  More fundamentally, Ralston's argument does not withstand reason.  It is illogical to

14  suggest that the only borrower-broker interactions that ever took place were those specifically

15  identified in a broker agreement Plaintiff has not shown was universal across the industry.  The

16  single agreement referenced by Plaintiff does not even, by its terms, require the broker to meet

17  with or communicate with the borrower, but obviously brokers do this along with numerous other

18  tasks not prescribed by the agreement.  These are exactly the kinds of activities that are the subject

19  of D'Alonzo's report and that are relevant to this Court in considering Plaintiff's class certification

20  theory. *See, e.g.*, *D'Alonzo Dep.* at 87:10-15 ("It is not going to be written anywhere that people

21  attend closing, but I know hundreds of mortgage brokers that will attend their closings.  That is

22  just a rule of thumb.").  In any event, at best, this argument goes only to the weight that should be

23  given to D'Alonzo's opinions, not their admissibility.

24    Plaintiff's arguments are particularly baseless because, if accepted, they would essentially

25  prevent any expert from applying his professional experiences to the industry as a whole.  Yet, the

26  _____

27  intervals and (3) he was observed on a few occasions working on cars. There were no pay stubs,
no W-2s, no tax returns, no cancelled checks, and no employer testimony offered as foundational
evidence.  Given the state of the record, it was not manifestly erroneous for the district court to

28  exclude the expert testimony for lack of foundation.").

9

1   case law is clear that this type of expert testimony is entirely appropriate.  *See Hangarter v.*

2   *Provident Life and Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004) (knowledge and

3   experience in the insurance industry qualified the expert to testify about the norms of insurance

4   companies).  Here, D'Alonzo is doing nothing more than "applying his experience to known facts

5   to arrive at a conclusion about those facts. That is, after all, what human beings do to arrive at

6   conclusions based on their experience[.]"  *Gipson v. Wells Fargo Bank, N.A.*, 460 F. Supp. 2d 9,

7   11 (D.D.C. 2006) (permitting an expert to testify about typical mortgage industry practices).

8   **III.  D'ALONZO'S EXPERIENCE QUALIFIES HIM TO TESTIFY ABOUT PAYMENT OPTION LOANS.**

9        Plaintiff also mischaracterizes D'Alonzo's experience and testimony in relation to POA

10  loans.  D'Alonzo makes two basic points: (a) in his role as a broker, he regularly explained

11  features like negative amortization and variable interest rates to customers interested in POA

12  loans, and (b) based on his experience in the industry and interactions with other brokers, it is his

13  opinion other mortgage brokers did so as well.  *D'Alonzo Rebuttal* ¶¶ 15-16.  As to the first

14  opinion, Plaintiff provides no basis for attacking an opinion based upon D'Alonzo's personal

15  experiences and practices in informing borrowers about POA loan features and terms.  Nor could

16  he, and so this opinion must stand.  Recognizing this, Plaintiff complains that D'Alonzo did not

17  personally prepare loan documents or produce business records from 2004-2008.  Mot. at 6.  But

18  these complaints are unsubstantiated because they have nothing to do with whether D'Alonzo

19  informed his customers of POA loan terms and features.  Mot. at 6.  Moreover, the record is clear

20  that D'Alonzo did originate POA loans (Plaintiff's only complaint is as to the number, Mot. at 6)[8]

21  and that he had many conversations with brokers on the subject.  In fact, in his deposition, he

22  explained that POA loans were "talked about a lot.  I can't give you a number of how many

23  brokers I talked to about it.  But it was talked about a lot because it was important to make sure

24  that consumers understood their options."  *D'Alonzo Dep.* at 115:10-13.

25        As to his second opinion, D'Alonzo has properly combined his personal experiences and

26

27  _____
    [8]  Despite Plaintiff's POA loan volume complaints, 80% of loans during the relevant time
    period were fixed rate loans, making it entirely understandable that a qualified mortgage broker
28  would not focus exclusively on POA loans.  *D'Alonzo Dep.* at 108:20-21.

**Countrywide's Opposition to Plaintiff's Motion to Exclude Expert Testimony of Mr. Michael D'Alonzo          Case No. 5:08-CV-00536-JF (PSGx)**

his interactions with other mortgage brokers to offer this Court an expert opinion on the general practices of mortgage brokers. It is immaterial whether D'Alonzo brokered the loans of specific class members because he is not speaking as a percipient witness with regard to the disclosures provided as to any specific loans. Instead, he is providing an opinion as to general industry practices based on his experience in the industry. This is exactly the kind of expert rebuttal testimony that is both relevant and helpful to the Court in assessing Professor White's purely theoretical opinions. *Supra* at 7.

## IV.    D'ALONZO'S DISAGREEMENT WITH PROFESSOR WHITE IS NOT GROUNDS FOR EXCLUSION.

Plaintiff's final argument — that D'Alonzo must be excluded because his Report purportedly does not accurately state Professor White's opinions — merits little attention. As an initial matter, the premise of Plaintiff's argument is false. Plaintiff complains that D'Alonzo mischaracterizes Professor White's opinion, but Professor White unequivocally provides an opinion regarding the disclosures that brokers make to borrowers, stating that "it is highly unlikely that brokers voluntarily provided this information [about POA loans] to borrowers." *White Report* ¶ 11. If anyone is mischaracterizing Professor White's report, it is Plaintiff, not D'Alonzo.

In any event, even if Plaintiff could show that D'Alonzo misunderstood Professor White's expert report, that is hardly a basis to exclude the substantive opinion testimony of D'Alonzo regarding the communications that occur between mortgage brokers and borrowers. Again, any dispute about what Professor White said (or meant to say) goes to the weight of the testimony, not its admissibility. Not surprisingly, Plaintiff cites no authority for his argument that D'Alonzo's expert opinion testimony should be excluded because of a disagreement with (or even an alleged misreading of) the testimony of the other side's expert. This is simply not an appropriate basis for seeking to strike an expert opinion and should be denied by this Court.

///

///

///

///

11

1

## <u>CONCLUSION</u>

2        For the reasons stated herein, Defendant requests that this Court deny the Plaintiff's

3    Motion to Exclude the Testimony of Michael D'Alonzo.

4

5                                        Respectfully submitted

6

7    Dated: November 1, 2011            By:   s/   Robert B. Bader
                                              BROOKS R. BROWN
8                                             *bbrown@goodwinprocter.com*
                                              STEVEN A. ELLIS
9                                             *sellis@goodwinprocter.com*
                                              **GOODWIN PROCTER** LLP
10                                            601 S. Figueroa Street, 41st Floor
                                              Los Angeles, California  90017
11                                            Tel.:  213.426.2500
                                              Fax:  213.623.1673
12
                                              THOMAS M. HEFFERON (pro hac vice)
13                                            *thefferon@goodwinprocter.com*
                                              **GOODWIN PROCTER** LLP
14                                            Washington, DC  20001
                                              Tel.:  202.346.4000
15                                            Fax:  202.346.4444

16                                            ROBERT B. BADER
                                              *rbader@goodwinprocter.com*
17                                            **GOODWIN PROCTER** LLP
                                              Three Embarcadero Center, 24th Floor
18                                            San Francisco, California  94111
                                              Tel.:  415.733.6000
19                                            Fax:  415.677.9041

20                                            Attorneys for Defendant:
                                              *Countrywide Home Loans, Inc.*

21

22

23

24

25

26

27

28

12

**Countrywide's Opposition to Plaintiff's Motion to
Exclude Expert Testimony of Mr. Michael D'Alonzo          Case No. 5:08-CV-00536-JF (PSGx)**

1

## <u>PROOF OF SERVICE</u>

2

3    I further certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non registered participants on
November 1, 2011.

4

5

6                                          s/ Robert B. Bader
                                          Robert B. Bader
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Countrywide's Opposition to Plaintiff's Motion to
Exclude Expert Testimony of Mr. Michael D'Alonzo          Case No. 5:08-CV-00536-JF (PSGx)**