**United States District Court**
For the Northern District of California

1

2                                                    **E-Filed 2/27/2012**

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   JAY J. RALSTON,                        Case No. 5:08-cv-00536-JF (PSG)

13              Plaintiff,                   ORDER[1] DENYING DEFENDANTS'
                                             MOTION TO STRIKE PORTIONS OF
14        v.                                 JESSICA MOY'S DECLARATION;
                                             OVERRULING PLAINTIFF'S EVIDENTIARY
15   MORTGAGE INVESTORS GROUP, INC., et      OBJECTIONS; DENYING MOTION FOR
     al.,                                    RELIEF FROM NONDISPOSITIVE
16                                           PRETRIAL ORDER OF MAGISTRATE
              Defendants.                    JUDGE; GRANTING MOTION FOR LEAVE
17                                           TO FILE STATEMENT OF RECENT
                                             DECISIONS; AND REQUESTING FURTHER
18                                           BRIEFING RE PLAINTIFF'S MOTION FOR
                                             CLASS CERTIFICATION
19
                                             [re: dkt. entries 268, 274, 280, 346, 352]
20

21        Plaintiff Jay Ralston ("Ralston") moves for class certification pursuant to Fed. R. Civ. P. 23.

22   Defendant Countrywide Home Loans, Inc. ("Countrywide") and Defendants Mortgage Investors

23   Group, Inc. and Mortgage Investors Group, a general partnership (collectively, "MIG"), oppose the

24   motion and move to strike portions of a declaration submitted by Ralston's counsel, Jessica Moy.

25   Ralston in turn objects to certain evidence submitted by Defendants in support of their opposition to

26   his motion for class certification.  The Court has considered the briefing, the admissible evidence in

27   the record, and the oral argument presented at the hearing on December 9, 2011.  For the reasons

28
     _____
     [1] This disposition is not designated for publication in the official reports.

United States District Court
For the Northern District of California

1  discussed below, the motion to strike will be denied, the objections will be overruled, and the Court

2  will request further briefing with respect to the motion for class certification.

3      Additionally, Countrywide seeks relief from Magistrate Judge Grewal's order of November

4  30, 2011, and leave to file statements of recent decision.  The motion for relief from Judge Grewal's

5  order will be denied, and the motion for leave to file statements of recent decision will be granted.

6                                    **I. BACKGROUND**

7      On January 24, 2008, Ralston filed this putative class action alleging that his mortgage

8  originator, MIG, failed to disclose material information about his residential mortgage in the clear

9  and conspicuous manner required by law.  Ralston initially asserted that MIG violated the Truth in

10  Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and state laws.  However, the operative third

11  amended complaint ("TAC") contains only state law claims – one for fraudulent omissions and the

12  other for violation of California's unfair competition law ("UCL").  These claims are asserted

13  against both MIG and Countrywide.

14      Ralston claims that Countrywide "concocted and implemented" a fraudulent scheme under

15  which MIG and other mortgage originators marketed Option Adjustable Rate Mortgage loans ("Pay

16  Option ARM loans") using deceptive loan documents.  TAC ¶ 1.  These loan documents allegedly:

17      failed to clearly, unambiguously and conspicuously disclose to Plaintiff and Class
        Members the following:  (i) the low interest rate set forth in the Option ARM
18      mortgage notes ("Notes") was only available for thirty days, if at all; (ii) the monthly
        payment amounts for the first three to five years provided to Plaintiff and Class
19      Members on a Truth-In-Lending Disclosure Statement ("TILDS") were insufficient
        to pay both accrued interest and principal; (iii) negative amortization was absolutely
20      certain to occur if Plaintiff and Class Members made payments according to the
        schedule of monthly payments provided in the TILDS; and that (iv) loss of equity
21      and/or loss of Plaintiff's and Class Members' residences was certain to occur if
        Plaintiff and Class Members made payments according to the payment schedule.
22

23  TAC ¶ 3.

24      Ralston alleges the following in support of these claims:  the ability of MIG and other loan

25  originators to issue Pay Option ARM loans was wholly dependent on Countrywide purchasing the

26  loans shortly after origination.  TAC ¶ 4. MIG and other loan originators did not use their own

27  assets to fund Pay Option ARM loans, but borrowed money from warehouse lenders, often affiliates

28  of Countrywide.  *Id.*  Countrywide created the loan documents, and was fully aware of the material

omissions therein.   TAC ¶ 20.  Countrywide required that MIG and other loan originators use the misleading documents.  TAC ¶ 4.

Ralston's loan was offered at a low "teaser" interest rate of 1%.  TAC ¶ 21.  That rate lasted only thirty days, after which the rate was calculated by combining an index and a margin of 3.075%.  TAC ¶¶ 21, 24.  Even if the index went down to zero, the combined total of the index and the margin always would be significantly higher than the teaser rate.  TAC ¶ 24.  However, the monthly payment schedule was calculated at the 1% rate.  TAC ¶ 22.  Under the applicable payment cap, the monthly payment could be increased only by 7.5% each year.  TAC ¶ 26.  Thus Ralston's loan was certain to cause – indeed, it was designed to cause – negative amortization. *Id*.  Ralston was "locked in" to the loan by "a draconian prepayment penalty consisting of a prepayment charge equal to six months of interest."  TAC ¶ 25.  Once the principal reaches 115% of the original loan amount, the monthly payment cap is eliminated and the monthly payments immediately are recast to fully amortizing payments of principal and interest.  TAC ¶ 27.  "To the extent that this built-in 'payment shock' is more than many Class Members can afford, they need to refinance 115% of the amount they initially borrowed (despite having made all of the required payments) or risk losing their homes to foreclosure."  TAC ¶ 27.

Despite the certainty of negative amortization, the Notes suggest that negative amortization is only a mere possibility.  TAC ¶ 28.  Had Ralston and the class members known that negative amortization was a certainty, they would not have purchased the subject Pay Option ARM loans.  TAC ¶ 29.  Countrywide encouraged use of these misleading loans by, *inter alia*, offering MIG a volume incentive:  if MIG funded $25,000,000 of loans per month with Countrywide, Countrywide would pay MIG a volume incentive of 35% on all three-year "Hard Pre-Pay Loans, and 20% on all 1 year Hard Prepay loans."  TAC ¶ 47.

Ralston seeks certification of the following Class:

All individuals who, from January 24, 2004 through the date that notice is mailed to the Class, purchased a Pay Option ARM Loan on their primary residence from a Countrywide Correspondent Lender that was subsequently sold to Countrywide and has the following characteristics:

(i) The "Interest Rate" paragraph of the Note (¶ 2 (A)) states both (1) a "yearly" interest rate that is less than the index plus the margin; and (2) that the interest rate "may" rather than "will" change;

3

(ii) The "Interest Rate Change Date" paragraph of the Note (¶ 2 (B)) states that the rate "may" rather than "will" change on the date listed;

(iii) The "Initial Monthly Payment" listed in the Note is based upon the "Interest Rate" listed in paragraph (¶ 2 (A)); and

(iv) The Note does not contain any statement that after the first interest rate change date, paying the amount listed as the "initial monthly payment" "will" result in negative amortization or deferred interest.

He also seeks to certify a Sub Class[2] consisting of:

All Class members who purchased their Pay Option ARM Loans from Defendants Mortgage Investors Group, a general partnership, and Mortgage Investors Group, Inc. ("MIG").

## II. LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (internal quotation marks and citation omitted). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. (internal quotation marks and citation omitted).

Under Rule 23(a), four prerequisites must be satisfied for class certification:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A plaintiff also must satisfy one or more of the separate prerequisites set forth in Rule 23(b): (1) there is a risk of substantial prejudice from separate actions; (2) declaratory or injunctive relief benefiting the class as a whole would be appropriate; or (3) common questions of law or fact

---

[2] Excluded from the Class and Sub Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives.

1    predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ.

2    P. 23(b).

3          "Rule 23 does not set forth a mere pleading standard. A party seeking class certification

4    must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove

5    that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*,

6    131 S.Ct. at 2551. Analysis of these factors "generally involves considerations that are enmeshed in

7    the factual and legal issues comprising the plaintiff's cause of action." *Id*. at 2552 (internal

8    quotation marks and citation omitted). "Nor is there anything unusual about that consequence: The

9    necessity of touching aspects of the merits in order to resolve preliminary matters, e.g., jurisdiction

10   and venue, is a familiar feature of litigation." *Id*.

11                                 **III. DISCUSSION**

12   **A.      Defendants' Motion to Strike Moy's Declaration**

13         Defendants move to strike paragraphs 11, 15, 16, 20, 32, and 33 of Moy's declaration in

14   support of class certification. Paragraphs 11, 15, and 20 identify several specific versions of

15   Countrywide's multi-state form notes, adjustable rate riders, and program disclosures relating to Pay

16   Option ARM loans. The paragraphs also describe the identified forms in basic terms, stating for

17   example that certain forms contain "identical" or "nearly identical" language. Copies of the forms

18   are attached as exhibits to the declaration. Paragraph 16 states that "a review of the Loan Purchase

19   Agreements that Countrywide produced reveals that all of the LPA versions contractually required

20   the Correspondent Lenders to adhere to and fully comply with the requirements in the Seller's

21   Guide when originating loans." A sampling of LPA versions from 1994 through 2011 is attached to

22   the declaration. Paragraph 32 describes Moy's review of the "Sapphire Database," in which

23   Countrywide's lending division stored data relevant to the loans at issue. Based upon this review,

24   Moy declares that at least 1,200 approved correspondent lenders sold Pay Option ARM loans to

25   Countrywide during the class period, and approximately 99% of those loans utilized the

26   Countrywide form notes discussed above. Paragraph 33 describes Moy's review of the non-

27   Countrywide Pay Option ARM notes utilized in Sapphire transactions, and states that those notes

28   are virtually identical to the Countrywide notes.

United States District Court
For the Northern District of California

1     Countrywide asserts that it is improper for Moy, who is one of Ralston's attorneys of record,

2     to offer "expert" opinion regarding the language of the documents in question.  Countrywide also

3     argues that Moy lacks personal knowledge regarding those documents.  "Personal knowledge,

4     however, is not strictly limited to activities in which the declarant has personally participated."

5     *Washington Cent. R. Co., Inc. v. Nat'l Mediation*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993).

6     "Based on personal knowledge of the files and records, a declarant may testify to acts that she or he

7     did not personally observe but which are described in the record, including requests or statements by

8     third persons made to someone other than the declarant."  *Id.*; *see also Londrigan v. FBI*, 670 F.2d

9     1164, 1174-75 (D.C. Cir. 1981) (FBI agent who reviewed file had personal knowledge sufficient to

10    support statements about the conduct of an investigation in which he had not participated).  The

11    cases relied upon by Countrywide are distinguishable or do not support Countrywide's position.  For

12    example, in *Advance America Servicing v. McGinnis*, 526 F.3d 1170, 1174 (8th Cir. 2008), the court

13    declined to consider an attorney's conclusory declaration statement as to the amount in controversy.

14    In *Transcap Assoc., Inc. v. Euler Hermes American Credit Indem. Co.*, No. 08-C-723, 2009 WL

15    3260014, at *2 (N.D. Ill. Oct. 9, 2009), the court agreed that certain statements in an attorneys'

16    declaration constituted legal argument, but it declined to strike the declaration on that basis.  Instead

17    the court simply did not consider the legal argument as evidence in the case.  In *Pan v. State Farm*

18    *Mut. Auto. Ins. Co.*, No. C-05-05208 RMW, 2007 WL 1674448, at *8 n.9 (N.D. Cal. June 8, 2007),

19    the court struck portions of an attorney's declaration that purported to offer expert opinion as to the

20    standard of care for a claims adjuster.  Those cases did not involve an attorney's review of

21    documents central to the case and in the possession of all parties.

22    The Court agrees with Defendants that as a general rule it is not good practice for an attorney

23    of record to act as a witness.  However, in the present context Ralston easily could offer another

24    witness to testify with respect to the contents of the paragraphs in question, and the Court concludes

25    that Moy's declaration is both admissible and sufficient for purposes of a class certification motion.

26    *See Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) ("evidence presented

27    in support of class certification need not be admissible at trial").  Accordingly, the motion to strike

28    will be denied.

6

**United States District Court**
For the Northern District of California

**B.      Evidentiary Objections**

Ralston objects to twelve declarations of fact witnesses submitted by Countrywide on the basis that the witnesses were not timely disclosed.  Having reviewed the relevant chronology, the Court concludes that disclosure of the witnesses in fact was timely under the circumstances. Countrywide served its Fed. R. Civ. P. 26(a) disclosures, in which it identified likely witnesses regarding Ralston's individual claims, in September 2010.  Anderson Decl., Exh. Q.  Countrywide stated expressly in its disclosures that it would be premature to disclose witnesses regarding class certification.  *Id*.  Ralston filed his motion for class certification in May 2011.  However, the parties agreed to stay discovery pending an August 2011 mediation.  When the mediation was unsuccessful, Countrywide turned to preparing its opposition to the class certification motion.  Countrywide asserts that it was only then that it determined that the twelve fact witnesses would be used to oppose class certification.  Countrywide supplemented its initial disclosures and its responses to relevant discovery requests within a matter of weeks, identifying each of the declarants.  *See* Anderson Decl., Exhs. W, X, Y.  Given this record, the Court concludes that Countrywide did not improperly "withhold" the identity of its witnesses as asserted by Ralston.

Ralston also objects to portions of the declarations as irrelevant, vague, lacking foundation, and speculative.  However, these objections are presented in broad strokes without detailed discussion as to why specified paragraphs of the declarations are inadmissible.  Given the relaxed evidentiary standard applicable to motions for class certification, *see Dominguez*, 270 F.R.D. at 483, the objections will be overruled.  For the same reason, Ralston's objections based upon hearsay and the best evidence rule will be overruled as well.

**C.      Motion For Relief From Judge Grewal's Order**

On November 30, 2011, Magistrate Judge Grewal issued an order granting in part Ralston's motion to exclude the testimony of Countrywide's industry expert, Michael D'Alonzo, and granting in part Defendants' motion to exclude the testimony of Ralston's damages expert, Leonard Lyons. Countrywide asserts that Judge Grewal erred in excluding D'Alonzo's testimony with respect to industry practices concerning payment option loan disclosures.  Judge Grewal discussed extensively D'Alonzo's professional experience as a licensed residential mortgage broker who has worked in

the industry for more than twenty-five years, and concluded that this experience qualifies D'Alonzo to offer opinions regarding the general practice of mortgage brokers.  It is undisputed, however, that only a small percentage of D'Alonzo's work has involved Pay Option ARM loans.  Judge Grewal concluded that this experience does not qualify D'Alonzo to opine as to the "typical" practices of other brokers in offering and explaining Pay Option ARM loans.  Based upon the record evidence, the Court concludes that this determination is neither clearly erroneous nor contrary to law.  *See* Fed. R. Civ. P. 72(a).

Countrywide also asserts that Judge Grewal erred in refusing to exclude Lyons' testimony in its entirety.  Judge Grewal ruled that Lyons may not opine as to damages based upon a benefit-of-the-bargain theory of recovery, because that theory of recovery is precluded in fraud actions under California law.  However, Judge Grewal accepted Lyons' representation that his damages model is flexible enough to account for out-of-pocket damages and restitution.  Judge Grewal determined that the fact that certain variables (e.g., whether some borrowers avoided negative amortization) are not known at this stage of the litigation does not render Lyons' report unreliable.  This Court agrees. While it will require additional specificity as to Ralston's restitution calculation (see section E.5.b., below), the Court concludes that Judge Grewal's decision not to exclude Lyons' testimony altogether is neither clearly erroneous nor contrary to law.  This ruling is without prejudice to future objections to particular aspects of Lyons' opinions.

Accordingly, the motion for relief from Judge Grewal's order will be denied.

**D.      Motion For Leave To File Statements Of Recent Decision**

Countrywide's motion for leave to file statements of recent decision will be granted.

**E.      Class Certification**

**1.      Numerosity**

Ralston presents evidence that the Class consists of more than 160,000 borrowers.  *See* Moy Decl. ¶ 32.  Defendants do not argue that Ralston has failed to satisfy the numerosity requirement.

**2.      Commonality**

Class members' claims must depend upon a common contention that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will

8

resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551. "What matters to class certification . . . is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. (internal quotation marks and citation omitted).

Ralston's fraudulent omissions and UCL claims turn upon the theory that Countrywide "concocted and implemented" a fraudulent scheme under which MIG and other mortgage originators marketed Pay Option ARM loans using deceptive loan documents. TAC ¶ 1. These claims raise questions of law and fact that will be common to all class members, including: whether the class members' loan documents contained identical or nearly identical terms; whether those terms failed to disclose that borrowers were certain to incur negative amortization by making the payment amounts specified in the Note and TILDS; whether Defendants knew that the loan documents were false and misleading; and whether the loan documents were likely to deceive members of the public. Other district courts in California have concluded that the commonality requirement is met in cases factually similar to this one. *See Schramm v. JPMorgan Chase Bank*, No. LA CV09-09442 JAK (FFMx), 2011 WL 5034663, at *4-5 (C.D. Cal. Oct. 19, 2011); *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 444 (N.D. Cal. Aug. 21, 2009), as clarified by *Plascencia v. Lending 1st Mortg.*, No. C 07-4485 CW, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011). Defendants' arguments to the contrary essentially boil down to a contention that individual questions will predominate. The Court agrees that Defendants present substantial evidence in support of this contention, but it concludes that this argument more properly is addressed in the context of Rule 23(b), discussed below.

### 3.  Typicality

The Court must determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "[T]he

commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Dukes*, 131 S.Ct. at 2551 n.5.  A proposed class representative is not typical if his or her claims are subject to time-consuming specific defenses that would not apply to absent class members.  *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) ("A named plaintiff's motion for certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.") (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Because all proposed class members' claims are based upon a uniform set of loan documents, Ralston's claims are reasonably co-extensive with those of absent class members.  Defendants assert that they have strong individualized defenses against Ralston, citing to his testimony that he did not read or rely upon the loan documents at issue.  Ralston Dep. 36:4-8, 89:12-24; Ralston Dep. II 59:15-17.[3]  At least one court has found that the typicality requirement was not met when the proposed class representative did not read or rely upon the subject loan documents.  *See, e.g., Quezada v. Loan Center of Calif., Inc.*, No. CIV. 2:08-00177 WBS KJM, 2009 WL 5113506, at *6 (E.D. Cal. Dec. 18, 2009).  Ralston counters with other testimony in which he stated that he in fact did read and rely upon the loan documents.  Ralston Dep. II 94:25-95:5, 96:17-19, 98:9-11.  Because the evidence is in conflict, the Court cannot conclude with any certainty that Defendants will prevail upon this defense.  The conflict ultimately may need to be resolved; however, there is no evidence that litigation of the defense would preoccupy Ralston at the expense of the class.  *See Schramm*, 2011 WL 5034663, at *6.

Defendants contend that Ralston does not have the same interest in vigorously pursuing this case as do absent class members, because he has refinanced his loan and no longer is subject to negative amortization.  Defendants do not present any evidence that Ralston has lost interest in this action since refinancing; to the contrary, he has litigated it quite vigorously.

---

[3] Ralston was deposed twice in this action.  The first deposition is cited as "Ralston Dep." and the second deposition is cited as "Ralston Dep. II."

**United States District Court**
For the Northern District of California

1    Finally, Defendants assert that Ralston's claims are not typical of those of borrowers who

2    obtained their loans from originators other than MIG.  As the claims are framed by the TAC, it does

3    not matter which Correspondent Lender originated Ralston's loan; his theory is that the loan

4    documents obtained from all of the Correspondent Lenders omitted the same material information.

5    There may be individualized questions with respect to the particular practices and conduct of each

6    Correspondent Lender, but those questions also more properly are addressed in the context of Rule

7    23(b), discussed below.  Accordingly, the Court concludes that the typicality requirement is met.

8        **4.    Adequacy**

9    Ralston must demonstrate that "the representative parties will fairly and adequately protect

10   the interests of the class."  Fed. R. Civ. P. 23(a)(4).  When considering the adequacy of a class

11   representative, courts generally consider only two questions:  "(1) [d]o the representative plaintiffs

12   and their counsel have any conflicts of interest with other class members, and (2) will the

13   representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

14   *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  There is no evidence of any conflict of

15   interest, and as noted, Ralston has been zealous in prosecuting the action.

16       **5.    Predominance of Common Questions and Superior Method of Adjudication**

17   In addition to demonstrating that this case meets the four requirements of Rule 23(a),

18   Ralston must demonstrate that it meets one of the requirements of Rule 23(b).  He asserts that

19   common questions of law or fact predominate and the class action is superior to other available

20   methods of adjudication pursuant to Rule 23(b)(3).  Under the Rule 23(b)(3) predominance

21   requirement, the Court must go beyond asking whether any common questions exist and ask

22   whether these common questions "predominate over any questions affecting only individual

23   members" of the putative class.  Fed. R. Civ. P. 23(b)(3).  This analysis focuses on "the relationship

24   between the common and individual issues. When common questions present a significant aspect of

25   the case and they can be resolved for all members of the class in a single adjudication, there is clear

26   justification for handling the dispute on a representative rather than on an individual basis."

27   *Hanlon*, 150 F.3d at 1022 (internal quotation marks and citation omitted).  The Rule 23(b)(3)

28   inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Id.* (citation omitted). If common questions do predominate, the plaintiff must demonstrate that the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b). Ralston's motion turns upon application of these standards.[4]

### a. Fraud Claim

Defendants contend that with respect to the fraud claim, each borrower will have to demonstrate reliance upon the alleged misstatements in light of the particular circumstances of his or her case, and that litigation of these individualized questions will render class treatment impracticable. Defendants assert that resolution of these issues cannot be accomplished on a classwide basis because information concerning interest rates, payments, and negative amortization was disclosed orally and in other documents that varied from borrower to borrower.

Relying primarily upon *Plascencia*, Ralston argues that the Court may presume reliance and causation in a case of material fraudulent omission.. In concluding that reliance may be presumed in a Pay Option ARM case, the *Plascencia* court summarized the law as follows:

> As the Supreme Court has held, in cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Rather, "[a]ll that is necessary is that the facts withheld be material," in the sense that a reasonable person "might have considered them important" in making his or her decision. *Id.* at 153-54, 92 S.Ct. 1456. Similarly, the California Supreme Court has held that class certification is appropriate even where there may be individual issues of reliance because "it is not necessary to show reliance upon false representations by direct evidence." *Vasquez v. Superior Court*, 4 Cal.3d 800, 814, 94 Cal. Rptr. 796, 484 P.2d 964 (1971). Rather, "reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect." *Id.* (internal quotation marks omitted).

*Plascencia*, 259 F.R.D. at 447. Defendants contend that *Plascencia* was decided incorrectly, relying on the Ninth Circuit's decision in *Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004). In

---

[4] At the hearing, the Court raised the question of whether the UCL claim alternatively might be appropriate for certification under Rule 23(b)(2), which applies if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." However, as Defendants pointed out, Ralston has not sought certification under Rule 23(b)(2) and the standards applicable under that provision have not been briefed. Moreover, Ralston seeks more than injunctive and declaratory relief with respect to his UCL claim; he expressly seeks "restitution" and "restitutionary disgorgement of all profits accruing to Defendants because of their unfair, unlawful and deceptive acts and/or practices." TAC ¶ 109. Accordingly, the Court limits its discussion to application of Rule 23(b)(3).

United States District Court
For the Northern District of California

*Poulos*, the plaintiffs sued manufacturers of casino style video poker and slot machines, and the operators of such machines, alleging a scheme to defraud patrons in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The plaintiffs alleged that people were induced to play these machines based upon a false belief concerning how the machines operate and the extent to which there actually is an opportunity to win on any given play. The court held that despite the alleged common misrepresentations giving rise to this belief, the plaintiffs were not entitled to a presumption of reliance. *Id*. at 667. Rejecting the plaintiff's characterization of their fraud claim as a claim that the defendants "omit" material information as to how the machines work, the court concluded that, at best, the plaintiffs had presented a mixed claim based upon both affirmative misrepresentations and omissions. *Id*. The court held that "the *Affiliated Ute* presumption should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions." *Id*. (quoting *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). Because the plaintiffs' claims could not be characterized primarily as claims of omission, the plaintiffs were not entitled to a presumption of reliance. *Id*.

Ralston characterizes his fraud claim as a claim of omission, suggesting that a borrower would enter into one of the Pay Option ARM loans only if he or she were misled about the terms by reason of Defendants' omission of the true interest rate. However, as Defendants point out, the claim at best is a mixed one. Ralston's confusion allegedly stemmed from the fact that he believed that the loan documents represented that his interest rate would be 1% *and* that they failed to disclose that the 1% rate would be in effect for only one month. Accordingly, in light of *Poulos*, the presumption of reliance does not appear applicable here. Defendants also point to a statement of Ralston's own expert that Pay Option ARM loans may have been suitable for some borrowers who would have purchased them based upon a full understanding of their terms. White Dep. at 79. White went on to concede that it was "sort of an unknowable" how things would have been different with adequate disclosure. *Id*. The California Supreme Court recently noted that:

> Of course, the mere fact that borrowers took out Option ARMs does not necessarily prove they were misled by disclosures. Borrowers who understood the terms of the loan may still have agreed to the loan because it enabled them to buy now and pay later. Some borrowers may have speculated that real estate prices would continue to climb, enabling them to refinance after the initial low payment period ended. Others may have speculated that they would have more income in a few years and that they

United States District Court
For the Northern District of California

1  needed to buy a home before they were "priced out" of the market.  And still others

2  may have utilized Option ARMs to facilitate non-housing related consumer spending
   or to finance small businesses.

3  *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 251 n.11 (2011).

4       The Court concludes that because Ralston has alleged fraud based upon both

5  misrepresentations and omissions under *Poulos* he is not entitled to a presumption of reliance.  As

6  the California Supreme Court observed, many factors can go into a decision to purchase a Pay

7  Option ARM loan.  It is not clear what each borrower in this case was told by his or her agent or

8  lender.  Based upon this record, it appears that individualized questions would predominate.  *See In*

9  *re Countrywide Financial Corp. Mortg. Marketing and Sales Practices Litig.*, --- F.R.D. ---, 2011

10  WL 4809846, at *13 (S.D. Cal. Oct. 11, 2011) (holding that individualized questions predominated

11  in suit alleging that Countrywide marketed loans through 30,000 independent brokers who did not

12  use a common script).

13       **b.**    **UCL Claim**

14       With respect to Ralston's UCL claim, the primary inquiry is whether Defendants' conduct

15  was likely to deceive the public.  *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir.

16  2011).  In *Stearns*, the plaintiffs brought a class action against Ticketmaster, asserting that when

17  they purchased tickets online, they were invited to click on a button offering a $25.00 cash back

18  reward on their next Ticketmaster purchase.  Once customers clicked the button, they were taken to

19  another page to enter their email addresses.  They ended up enrolled in an entertainment rewards

20  program that charged their credit or debit cards (obtained from the Ticketmaster site) on a monthly

21  basis.  The district court denied class certification with respect to the plaintiffs' UCL claim after

22  determining that individualized proof of reliance and causation would predominate.  The appellate

23  court reversed, citing *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) for the proposition that "[t]o

24  state a claim under either the UCL or the false advertising law, based on false advertising or

25  promotional practices, it is necessary only to show that members of the public are likely to be

26  deceived."  *Stearns*, 655 F.3d at 1020 (quoting *In re Tobacco*, 46 Cal. 4th at 312).  The *Stearns*

27  court noted "the California rule 'that relief under the UCL is available without individualized proof

28  of deception, reliance and injury.'"  *Id.*  (quoting *In re Tobacco*, 46 Cal. 4th at 320).  The court did

1    note, "[w]e do not, of course, suggest that predominance would be shown in every California UCL

2    case.  For example, it might well be that there was no cohesion among the members because they

3    were exposed to quite disparate information from various representatives of the defendant."  *Id.*

4         Defendants focus on the latter statement, asserting that each class member was exposed to

5    different information from brokers and other sources.  However, because Ralston alleges that the

6    loan documents in question were virtually identical and were likely to deceive the public, the Court

7    concludes tentatively that class treatment of the UCL claim may be appropriate under *Stearns*.  The

8    Court's hesitation stems from its concern with respect to Ralston's ability to demonstrate a

9    classwide entitlement to restitution.  As noted above, Ralston requests both "restitution" and

10   "restitutionary disgorgement of all profits accruing to Defendants because of their unfair, unlawful

11   and deceptive acts and/or practices."  TAC ¶ 109.

12        The California Supreme Court recently clarified that a class action under California's UCL

13   may seek both injunctive relief *and* restitution of "any money or property, real or personal, which

14   may have been acquired" by means of the unfair practice.  *In re Tobacco II Cases*, 46 Cal. 4th at

15   320.  The court held that absent class members did not have to show that they lost money or

16   property on an individualized basis.  *Id.*  Similarly, the Ninth Circuit has held that under Hawaii's

17   Deceptive Practices Act, which is similar although not identical to California's UCL, the potential

18   existence of individualized damages assessments did not render the case unsuitable for class action

19   treatment. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010).  This Court

20   nonetheless has difficulty envisioning how Ralston will prove classwide entitlement to restitution

21   without resorting to individualized proof regarding the amount of extra interest each class member

22   paid as a result of the alleged unfair practices.  Ralston's damages expert, Mr. Lyons, represented

23   that his damages model was flexible enough to address this issue, and Judge Grewal accepted this

24   representation.  As is discussed above, the Court has concluded that Judge Grewal's decision was

25   neither clearly erroneous nor contrary to law.  However, before  making a final determination as to

26   whether class treatment is appropriate for Ralston's UCL claim, the Court will require Ralston to

27   provide further specificity as to how he intends to prove and quantify a classwide entitlement to

28   restitution.

As a separate matter, Defendants assert that the Court will have to conduct a choice of law analysis to determine whether California's UCL may be applied to consumers who reside in other states, and that individualized questions will predominate in this respect as well. Ralston asserts his UCL claim only under California law, and there is no question of applying any other state's law. However, Defendants do raise an interesting question as to whether residents of other states may recover damages under California's UCL. The Court will request supplemental briefing on this issue as well.[5]

## IV. ORDER

Good cause therefor appearing:

(1) Defendants' motion to strike portions of Moy's declaration is DENIED;

(2) Ralston's evidentiary objections are OVERRULED;

(3) Defendants' motion for relief from Judge Grewal's ruling is DENIED;

(4) Countrywide's motion for leave to file a statement of recent decisions is GRANTED; and

(5) The Court requests further briefing with respect to the motion for class certification as set forth above. Ralston shall file a supplemental brief, not to exceed ten pages in length, on or before March 5, 2012, addressing his ability to prove classwide entitlement to restitution under the CL claim and the propriety of permitting residents of other states to recover under California's UCL. Defendants shall file a supplemental response brief, not to exceed   ten pages in length, on or before March 12, 2012. No reply brief shall be filed. The Court will advise counsel if it desires supplemental oral argument.

DATED:  February 27, 2012

_____
JEREMY FOGEL
United States District Judge

United States District Court
For the Northern District of California

---

[5] Defendants also argue that many putative class members lack Article III standing. The Ninth Circuit recently clarified the relevant standard in *Stearns*:  "In a class action, standing is satisfied if at least one named plaintiff meets the requirements . . . .  Thus, we consider only whether at least one named plaintiff satisfies the standing requirements." *Stearns*, 655 F.3d 1013, 1021 (9th Cir. 2011) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  Finally, Defendants assert that each correspondent lender must be joined as an indispensable party, which would render trial unmanageable.  The Court is not persuaded that the correspondent lenders are indispensable parties within the meaning of Fed. R. Civ. P. 19.