**E-Filed 3/30/2012**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| JAY J. RALSTON,<br><br>        Plaintiff,<br><br>    v.<br><br>MORTGAGE INVESTORS GROUP, INC., et al.,<br><br>        Defendants. | Case No. 5:08-cv-00536-JF (PSG)<br><br>ORDER[1] GRANTING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br>[re: dkt. entries 268, 364, 366] |

Plaintiff Jay Ralston ("Ralston") moves for class certification pursuant to Fed. R. Civ. P. 23. Defendant Countrywide Home Loans, Inc. ("Countrywide") and Defendants Mortgage Investors Group, Inc. and Mortgage Investors Group, a general partnership (collectively, "MIG"), oppose the motion. The Court has considered the briefing, the admissible evidence in the record, and the oral argument presented at the hearings on December 9, 2011 and March 19, 2012. For the reasons discussed below, the motion will be granted in part.[2]

---

[1] This disposition is not designated for publication in the official reports.

[2] In connection with the supplemental briefing requested by the Court prior to the March 19 hearing, both Ralston and Countrywide sought leave to file statements of recent decision. The Court has considered this additional authority.

Case No. 5:08-cv-00536-JF (PSG)
ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## I. DISCUSSION

The parties are familiar with the factual and procedural background of this case, which need not be discussed in detail here. Ralston's operative third amended complaint ("TAC") asserts two claims against MIG and Countrywide: (1) fraudulent omissions under California law; and (2) violation of California's unfair competition law ("UCL"). In brief, Ralston claims that Countrywide "concocted and implemented" a fraudulent scheme under which MIG and other mortgage originators marketed Option Adjustable Rate Mortgage loans ("Pay Option ARM loans") using deceptive loan documents. TAC ¶ 1. The loans offered low "teaser" interest rates that applied for only thirty days. *Id*. ¶ 3. After that initial period, the terms of the loans changed significantly, such that a borrower who followed the payment schedule provided in the Truth-In-Lending Disclosure Statement ("TILDS") was certain to suffer negative amortization. *Id*. The loan documents were misleading, as they indicated that negative amortization was only a possibility and not a certainty. *Id*. ¶ 28. Had class members understood that negative amortization was a certainty, they would not have acquired the loans. *Id*. ¶ 29.

Ralston seeks certification of the following Class[3]:

> All individuals who, from January 24, 2004 through the date that notice is mailed to the Class, purchased a Pay Option ARM Loan on their primary residence from a Countrywide Correspondent Lender that was subsequently sold to Countrywide and has the following characteristics:
>
> (i) The "Interest Rate" paragraph of the Note (¶ 2 (A)) states both (1) a "yearly" interest rate that is less than the index plus the margin; and (2) that the interest rate "may" rather than "will" change;
>
> (ii) The "Interest Rate Change Date" paragraph of the Note (¶ 2 (B)) states that the rate "may" rather than "will" change on the date listed;
>
> (iii) The "Initial Monthly Payment" listed in the Note is based upon the "Interest Rate" listed in paragraph (¶ 2 (A)); and
>
> (iv) The Note does not contain any statement that after the first interest rate change date, paying the amount listed as the "initial monthly payment" "will" result in negative amortization or deferred interest.

---

[3] Excluded from the Class and Sub-Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives.

He also seeks to certify a Sub-Class consisting of:

> All Class members who purchased their Pay Option ARM Loans from Defendants Mortgage Investors Group, a general partnership, and Mortgage Investors Group, Inc. ("MIG").

On December 9, 2011, the Court heard oral argument on the motion for class certification. On February 27, 2012, the Court issued an order articulating its tentative view that class certification is not appropriate with respect to Ralston's fraud claim but might be appropriate with respect to his UCL claim. The reasoning and analysis in that order is incorporated herein by reference. The Court requested supplemental briefing with respect to two issues: Ralston's ability to prove classwide entitlement to restitution under the UCL, and the propriety of permitting residents of other states to recover under the California UCL. The Court heard additional oral argument on March 19, 2012.

The motion for class certification with respect to the fraud claim will be denied for the reasons set forth in the February 27 Order.

The motion for class certification will be granted in part with respect to the UCL claim. As is discussed in the February 27 Order, this claim appropriately may be certified for class treatment under the rationale of *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011). The Court's concern as to whether Ralston will be able to show a classwide entitlement to restitution has been addressed by the supplemental briefing. Ralston's expert, Leonard Lyons, declares that it would be a fairly straightforward task to calculate the relevant negative amortization amount of each loan and the interest that was paid on that amount ("interest on interest"). Lyons Supp. Decl. ¶ 4. According to Lyons, Countrywide utilizes a mortgage servicing software system that contains the necessary data for all potential class members' mortgage loans, and that Countrywide could access this data readily. *Id*. ¶¶ 4-5. Lyons concedes that Countrywide did not service "a relatively small amount of Class members' POA loans," but he believes that the necessary data would be maintained by those members' mortgage servicers. *Id*. ¶ 6. Lyons asserts that if Countrywide and/or other servicers were required to produce only data concerning borrowers' loan terms and payment information, there would be two relatively simple ways he could calculate the amount of negative amortization and interest on interest. *Id*. ¶¶ 7-8. He also states that Countrywide and other servicers keep records concerning prepayment penalties, which could be an additional measure of restitution. *Id*. ¶ 10. Finally, Lyons suggests that yet another

possible measure of restitution is the difference in the loan costs between the POA loans and other ARM loans. *Id.* ¶ 11. He discusses how that amount could be calculated and notes that he has developed a model for such calculation for use in *Plascencia v. Lending First*, Case No. C 07-4485 CW, a case that raises issues similar to those present here. *Id.* ¶¶ 12-14.

      Countrywide contends that Lyons' proposed calculations do not comport with the law on restitution and fail to account for certain variables. Because this case still is at the class certification stage, the Court has not made any determinations as to what theories of restitution might be permitted at trial, nor does it do so now. However, based upon Lyon's declaration and Ralston's briefing, the Court is persuaded that Lyons' methodologies are flexible enough to be tailored to whatever rulings ultimately are made at trial or in the context of a settlement. For purposes of class certification, calculation of restitution on a classwide basis appears to be workable.

      The Court still must determine the appropriate scope of the class. In light of the Ninth Circuit's recent decision in *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012), the Court concludes that the class must be limited to California residents. In *Mazza*, the Ninth Circuit reversed the district court's certification of a nationwide class that asserted claims under the UCL and under California's Consumer Legal Remedies Act. The plaintiffs had alleged that Honda concealed material information in connection with its marketing and sales of Acura vehicles equipped with a particular braking system. The circuit court concluded that "the district court abused its discretion in certifying a class under California law that contained class members who purchased or leased their car in different jurisdictions with materially different consumer protection laws." *Mazza,* 666 F.3d at 590. *Mazza* is controlling here.

      Ralston argues that *Mazza* is distinguishable because all of the loan documents in this case were identical and originated from Countrywide in California. However, it is undisputed that the class members obtained their loans locally – that is, in their states of residence. Approximately 60,000 of the loans at issue relate to properties in states other than California. Sandidge Decl. ¶ 6. According to Countrywide, this figure represents roughly forty-five percent of all of the subject loans. Countrywide's Supp. Br. at 8 n.9. Ralston does not contest this assertion; instead, he argues that *Mazza* requires Defendants to present a detailed analysis of the differences between California's

4

UCL and the unfair competition laws of every other state, and that Defendants have failed to satisfy this purported burden. He asserts that while Countrywide's briefing does point out some of the differences, its showing is inadequate because it addresses the laws of only twenty other states and does not examine those laws in sufficient depth. However, while Countrywide's analysis concededly could be more robust, there clearly is a wide disparity between the rights afforded to California residents under this state's consumer protection laws and the rights afforded to residents of other states.

One need look no further than Judge Carney's thorough discussion of this point in *Gianino v. Alacer Corp.*, --- F. Supp. 2d ----, Case No. SACV 09-01247-CJC(RNBx), 2012 WL 724322, at *2 (C.D. Cal. Feb. 27, 2012). Judge Carney notes, for example, that "at least nine states require some degree of scienter for a consumer protection claim, including Colorado, Kansas, Mississippi, Nevada, South Dakota, Utah, Virginia, Wisconsin, and Wyoming." *Id*. "[A]t least seven states require a plaintiff to send a pre-filing notice to the defendant in order to file a claim, including Alabama, Georgia, Indiana, Massachusetts, Texas, and Wyoming." *Id*. "[S]tatutes of limitations for consumer protection laws vary significantly from one to ten years among the states: one year (Arizona and Louisiana); two years (Arkansas, Idaho, Indiana, Kentucky, Ohio, Texas, and Virginia); three years (California (CLRA and FAL), Connecticut, Colorado, District of Columbia, Delaware, Illinois, Kansas, Maryland, New Hampshire, New York, and Wisconsin); four years (California (UCL), Florida, Georgia, Hawaii, Massachusetts); five years (Arkansas and Missouri); six years (Maryland, Minnesota, New Jersey, North Dakota, Pennsylvania, Vermont); ten years (Rhode Island)." *Id*. "[S]ome states do not permit class actions under their consumer protection laws, including Alabama, Louisiana, Mississippi, Montana, South Carolina, Tennessee, and Virginia." *Id*. "While some states permit recovery of damages, including Arizona, Alaska, Hawaii, Illinois, Indiana, Massachusetts, New Hampshire, Rhode Island, South Dakota, and Texas[,] other states limit the available remedies to equitable or restitutionary relief, including California (UCL and FAL), Georgia, and Utah[,] and at least eight states do not permit punitive damages, including California (UCL and FAL), Louisiana, Maine, Missouri, New Jersey, South Carolina, South Dakota, and Tennessee." *Id*.

5

This Court need not determine whether a nationwide class is precluded as a matter of law in *all* cases arising under California's UCL.  But it concludes that such a class is precluded in *this* case, in which the loans at issue were consummated locally and nearly half of the borrowers reside in other states.  *Bruno v. Quten Research Inst., LLC*, --- F.R.D. ----, Case No. SACV 11-00173 DOC(Ex), 2011 WL 5592880 (C.D. Cal. Nov. 14, 2011) (reconsideration denied March 6, 2012), and the other supplemental authorities cited by Ralston do not alter this conclusion.  Accordingly, the Court will limit the class to California borrowers who assert claims under California's UCL.

## II. ORDER

Good cause therefor appearing:

The motion for class certification is GRANTED IN PART as discussed above.  The parties shall appear for a case management conference on Friday, May 25, 2012, at 1:30 p.m., to discuss the course of future proceedings in this case.

DATED: March 30, 2012

_____
JEREMY FOGEL
United States District Judge