**ANDRUS ANDERSON LLP**
Jennie Lee Anderson (SBN 203586)
jennie@andrusanderson.com
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone:  (415) 986-1400
Facsimile:  (415) 986-1474

**BERNS WEISS LLP**
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
20700 Ventura Blvd., Suite 140
Woodland Hills, CA 91364
Telephone: (818) 961-2000
Facsimile: (818) 999-1500

**BERNS WEISS LLP**
Lee A. Weiss (admitted *pro hac vice*)
lweiss@law111.com
585 Stewart Avenue, Suite L-20
Garden City, NY 11530
Telephone: (516) 222-2900
Facsimile: (818) 999-1500

*Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA—SAN JOSE DIVISION

| | |
|---|---|
| JAY J. RALSTON, On Behalf Of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MORTGAGE INVESTORS GROUP, INC., MORTGAGE INVESTORS GROUP, a general partnership, COUNTRYWIDE HOME LOANS, INC. AND DOES 3-10,<br><br>Defendants. | CASE NO.: CV-08-00536-JF (PSG)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: August 26, 2013<br>Time: 10:00 a.m.<br>Judge: Hon. Jeremy Fogel<br>Courtroom: 3 – 5th Floor<br><br>**<u>CLASS ACTION</u>** |

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION .................................................................................................................. 1

II.  PROCEDURAL HISTORY SINCE PRELIMINARY APPROVAL .................................... 2

III.  THE SETTLEMENT WARRANTS FINAL APPROVAL .................................................. 4

   A.  The Proposed Settlement Is Presumed To Be Fair. ............................................................ 5

   B.  All Relevant Criteria Support Final Approval of the Settlement. ....................................... 5

      1.  The Settlement Offers Substantial Benefits, While Continued Litigation Poses Considerable Risks. ..................................................................................................... 6

      2.  The Amount Offered In Settlement ............................................................................. 8

      3.  Extent Of Discovery And The State Of The Proceedings ........................................... 9

      4.  The Experience And Views Of Counsel .................................................................... 10

      5.  The Presence Of A Government Participant ............................................................. 10

      6.  Reaction From The Class ........................................................................................... 11

   C.  Notice Has Been Highly Effective and Constitutes The Best Notice Practicable. ........... 12

   D.  Plaintiff's Motion for Attorneys' Fees And Costs And Service Award Is Reasonable And Well-Supported. ..................................................................................... 12

   E.  The Two Objections Are Without Merit And Should Be Overruled. ............................... 13

      1.  The Objection By John Hutton Should Be Overruled. .............................................. 13

      2.  The Objections By Rizwan Begg Should Be Overruled. .......................................... 14

IV.  CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page No.**

**FEDERAL CASES**

*Barcia v. Contain–A–Way, Inc.*
  No. 07cv938–IEG–JMA, 2009 WL 587844 (S.D. Cal. Mar. 6, 2009) .................................. 11

*Boyd v. Bechtel Corp.*
  485 F. Supp. 610 (N.D. Cal. 1979) .................................................................................... 9

*Churchill Village, LLC v. Gen. Elec.*
  361 F.3d 566 (9th Cir. 2004) ............................................................................................. 12

*Comcast Corp. v. Behrend*
  --- U.S. ---, 133 S. Ct. 1426 (March 27, 2013) .................................................................. 7

*Create–A–Card, Inc. v. Intuit, Inc.*
  No. C 07–06452 WHA, 2009 WL 3073920 (N.D. Cal. Sept. 22, 2009) .............................. 11

*Ellis v. Naval Air Rework Facility*
  87 F.R.D. 15 (N.D. Cal 1980) ............................................................................................ 10

*Fulford v. Logitech, Inc.*
  No. C-08-2041-MMC, 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ................. 8

*Garner v. State Farm Mut. Auto. Ins. Co.*
  No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. April 22, 2010) .. 4, 5, 6, 8, 9, 11

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ..................................................................................... 4, 5, 9

*In re Wireless Facilities, Inc. Sec. Litig. II*
  253 F.R.D. 607 (S.D. Cal. 2008) ........................................................................................ 5

*Jaffe v. Morgan Stanley & Co., Inc.*
  No. C 06–3903 TEH, 2008 WL 346417 (N.D. Cal. Feb.7, 2008) .................................... 9, 10

*Knight v. Red Door Salons, Inc.*
  No. C-08-1520-SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ......................................... 5

*Linney v. Cellular Alaska P'ship*
  151 F.3d 1234 (9th Cir. 1998) ............................................................................................ 14

*Officers for Justice v. Civil Serv. Comm'n*
  688 F.2d 615 (9th Cir. 1982) ....................................................................................... 4, 6, 15

*Rodriguez v. West Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) ...................................................................................... 4, 6, 8, 10

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ......................................................................................... 4, 6

*Vasquez v. Coast Valley Roofing, Inc.*
  266 F.R.D. 482 (E.D. Cal. 2010) .......................................................................................... 6

**STATE CASES**

*Boschma v. Home Loan Center, Inc.*
  198 Cal. App. 4th 230 (2011) ........................................................................................ 7, 14

*Medrazo v. Honda of N. Hollywood*
  205 Cal. App. 4th 1 (2012) .................................................................................................. 7

**STATUTES**

28 U.S.C. § 1715 ...................................................................................................................... 10

Bus & Prof. Code § 17200, *et seq.* ........................................................................................... 1

**TREATISES**

*Manual for Complex Litigation,* Fourth, § 21.61, *et seq.* (2010) ........................................ 4, 9

## I. INTRODUCTION

Following the Court's preliminary approval of the Settlement Agreement, a comprehensive notice program was implemented, in which more than 97 percent of the Class members received direct notice via U.S. Mail. This remarkably effective direct notice campaign was also augmented by publication notice. In response, only two of the 75,661 Class members have objections pending and only 84 have chosen to opt out of the Settlement. The pending objections do not challenge the overall reasonableness of the Settlement, but instead generally complain that the objectors' individual distributions are insufficient.

In short, nothing has happened since preliminary approval to indicate that final approval of the Settlement is inappropriate. The substantial benefits the Settlement confers on the Class are undeniable. Countrywide Home Loans, Inc. ("CHL"), Mortgage Investors Group, Inc. and Mortgage Investors Group, a general partnership (together, "MIG") (collectively "Defendants") have agreed to pay **$100,150,000.00** for Class member distributions, attorneys' fees and costs, administrative costs and the Representative Plaintiff's service award. If the Settlement is approved, Class members will receive checks ranging from approximately $257.00 to $2,790.00, depending on the original loan balance and the amount of time that the Class member made regular payments on account of the loan.

This excellent result did not come easily or without significant risk. Over the course of more than five and a half years of fiercely contentious litigation, the case required resolution of multiple complex, and often novel, legal issues. Only after two early mediation sessions had failed, and this Court certified a California Unfair Competition Law, Bus & Prof. Code § 17200, *et seq.* ("UCL") Class, did the parties reinitiate settlement negations in earnest last fall. After three additional full-day mediation sessions and numerous intervening months of tedious negotiations under the supervision of mediator Professor Eric Green, a settlement in principal was reached. Even thereafter, it took nearly two months of additional negotiations for the parties to agree on the final terms of the Settlement Agreement. The result is a Settlement

1 Agreement that is fair, adequate and reasonable, was negotiated at arm's length, and readily
2 meets all criteria courts in this Circuit consider when determining whether final approval is
3 appropriate.

4     For these reasons, as well as those set forth in greater detail below, the Court should
5 issue an order granting final approval of the settlement.

6 **II.**    **PROCEDURAL HISTORY SINCE PRELIMINARY APPROVAL**

7     The Court preliminarily approved the Settlement and forms of Class notice on June 19,
8 2013. *See* Dkt No. 388, Order Preliminarily Approving Settlement, And With Respect To
9 Class Notice, Court Approval Hearing And Administration ("Preliminary Approval Order").
10 The Court also directed that Class notice be disseminated and that any opt-outs or objections to
11 the Settlement be filed or mailed on or before July 31, 2013. *Id.* at 2. On June 21, 2013,
12 Plaintiff caused 75,661 Class notices to be sent by the U.S. Mail. *See* Declaration of Cameron
13 R. Azari, Esq. On Implementation and Adequacy of Settlement Notice Program ("Azari
14 Decl."), ¶ 11.

15     Prior to the initial notice mailing, Class member addresses were confirmed against the
16 National Change of Address ("NCOA") database maintained by the United States Postal
17 Service ("USPS"), which contains records of all reported permanent moves for the past four
18 years. *Id.*, ¶10. Any addresses that were returned by NCOA as invalid were updated through a
19 third-party address search service prior to mailing. In addition, the addresses were certified via
20 the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and
21 verified through the Delivery Point Validation ("DPV") to verify the accuracy of the addresses.
22 *Id.* Returned notices were resent if corrected addresses were obtainable through either the
23 USPS or via a third-party address search service. *Id.*, ¶12. As a result of these efforts, only
24 2,112 of the Class notice mailings remain undeliverable. In other words, approximately 97
25 percent of the Class successfully received direct notice via U.S. Mail. *Id.*, ¶14. Nonetheless, to
26 augment the direct notice campaign, publication notice was placed two times in *USA Today*, a

newspaper with a national daily circulation of 1,615,142. *Id.*, ¶15. Additionally, a comprehensive website, www.OptionARMSettlement.com, went live on June 21, 2013, which made available copies of the Class Notice, Publication Notice, Settlement Agreement, Third Amended Complaint, and the Preliminary Approval Order. *Id.*, ¶16.

On July 17, 2013, Plaintiff filed his Motion for Attorneys' Fees and Costs and Service Award. Dkt. No. 394. Documents related to the Plaintiffs' Motion for Attorneys' Fees and Costs and Service Awards were made available on www.OptionARMSettlement.com after they were filed with the Court. Azari Decl., ¶16.

As of August 19, 2013, only 84 individuals had excluded themselves from the Class and four Class members had submitted timely objections.[1] *Id.*, ¶20; *see also See* Declaration of Jeffrey Berns In Support of Final Approval of Class Action Settlement and in Further Support of Plaintiff's Motion for Attorneys' Fees and Costs and Service Award ("Berns Final App. Decl."), Ex. A. Of the four timely filed objections, the objection submitted by David W. Mansker indicated his desire to pursue his own lawsuit and the objection submitted by Mary T. Roche was preceded by a request to be excluded from the Class, which was reiterated in the objection. *See* Dkt. Nos. 401, 402, 405. Class Counsel communicated with these Class members through their independent counsel of record regarding their options. *See* Berns Final App. Decl., ¶3. After consultation with their respective clients, independent counsel for Mr. Mansker and Ms. Roche separately advised Class Counsel that Mr. Mansker and Ms. Roche each intended first and foremost to opt out of the Settlement and are seeking to withdraw their objections accordingly, pending this Court's approval. *Id.* As a result, on August 12, 2013 and August 14, 2013, Plaintiff filed motions seeking Court approval of withdrawal of Ms. Roche's and Mr. Mansker's objections, respectively. *See* Dkt. Nos. 408, 409. Defendants have agreed to treat Mr. Mansker's and Ms. Roche's submissions as timely opt-outs. Berns Final App. Decl., ¶3.

---

[1] Class member Rizwan Begg filed two identical objections for two different properties, *see* Dkt. Nos. 399-400. These are treated and referred to as one objection herein.

Class Counsel received a fifth objection from Susan House on August 7, 2013. *Id.*, ¶4. Plaintiff believes the objection was untimely, and it is unclear whether the document has yet been filed with the Court. Nonetheless, Class Counsel consulted with Ms. House's independent counsel regarding the Settlement, and Ms. House has decided not to pursue her objection. *Id.* On August 14, 2013, Ms. House filed a Notice of Withdrawal of Objections to Proposed Settlement. *See* Dkt. No. 410.

### III. THE SETTLEMENT WARRANTS FINAL APPROVAL

When faced with a motion for final approval of a class action settlement under Rule 23 of the Federal Rules of Civil Procedure, a court's inquiry is whether the settlement is "fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). A settlement merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation,* Fourth*,* ("MCL 4th") § 21.61, at 480 (2010).

Although the Court possesses "broad discretion" in issuing a final determination that a proposed class action settlement is fair, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Ninth Circuit has "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). "[I]n evaluating whether the settlement is fair and adequate, the Court's function is not to second-guess the settlement's terms." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *8 (N.D. Cal. April 22, 2010). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be

prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998).

### A. The Proposed Settlement Is Presumed To Be Fair.

The Court should begin its analysis with a presumption that the proposed Settlement is fair and should be approved. "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citations omitted); *see also Garner*, 2010 WL 1687832 at *13 ("Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable."); *Knight v. Red Door Salons, Inc.*, No. C-08-1520-SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (same).

Here, settlement negotiations were at all times contentious, hard fought and conducted at arms' length. Prior to class certification, Plaintiff and counsel for MIG participated in a court-sponsored mediation on March 24, 2008 and, on August 2, 2011, all parties conducted a mediation session with Hon. Edward Infante (Ret.); neither resulted in a settlement. It was only after the Class was certified that the parties returned to the negotiation table in earnest. Over the course of three months, the parties participated in three full-day sessions and multiple telephone conferences with the assistance of mediator Professor Eric Green of Resolutions LLC. *See* Declaration of Jeffrey K. Berns In Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Points and Authorities In Support Thereof (Dkt. No. 386-1) ("Berns Prelim. App. Decl."), ¶12. Even after a settlement in principal was reached, the parties continued to engage in negotiations for a period of nearly two months until the Settlement now before the Court was ultimately finalized.

### B. All Relevant Criteria Support Final Approval of the Settlement.

In deciding whether to grant final approval to a class action settlement, courts consider several factors, including:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

*Rodriguez*, 563 F.3d at 963. The list of factors is not exhaustive and should be tailored to each case. *Staton,* 327 F.3d at 959. The relevant criteria support final approval of the proposed Settlement here.

### 1. The Settlement Offers Substantial Benefits, While Continued Litigation Poses Considerable Risks.

The first three factors concerning the benefits of settlement versus plaintiffs' chances of success are frequently evaluated together. *See, e.g.*, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) ("An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.") (internal quotation marks omitted). At this stage, the Court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Garner*, 2010 WL 1687832, at *8 (quoting *Officers for Justice*, 688 F.2d at 625). "Instead, the Court may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Id. at *9.* (citing *Rodriguez*, 563 F.3d at 965).

While Plaintiff has developed the factual and legal basis to support the Class claims at trial, one cannot ignore significant risks in continuing the litigation had settlement not occurred. These risks are perhaps best illustrated by the unsettled state of the law with respect to restitution available under the UCL, the only cause of action certified for class treatment in the case. Plaintiff has maintained that class-wide restitution under the UCL should be calculated based upon the amount of negative amortization (and/or interest charged on those amounts), but

Defendants have vigorously contended that negative amortization is not a proper measure of restitution because (a) restitution should be limited to money or property taken from Class members and given directly to the Defendants, and (b) it would not take into account any benefits the Class members may have received by making the minimum monthly payments. *See, e.g.,* Dkt. Nos. 358 and 362. This dispute, which would likely be dispositive of the core issue of whether the Class is entitled to any monetary relief, is largely one of first impression on which federal and California courts have provided very little concrete guidance. *Compare, e.g., Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 14 (2012) (where a plaintiff's UCL claim is based upon the defendant's concealment of costs entailed in a transaction, the amount of the concealed costs can be an appropriate measure of restitution) *with Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 251 (2011) (questioning whether negative amortization could be the measure of UCL restitution and noting in *dicta*, in a similar case based upon nondisclosures in Option ARM loan documents, that "[i]n exchange for gradually declining equity, plaintiffs retained liquid cash that they otherwise would have paid). Thus, continued litigation in this matter presented the potentially devastating risk that, even if Plaintiff prevailed on liability at trial, no restitution would be ordered.

Another factor courts consider when determining whether final approval is warranted is the risk of whether the claims can be maintained as a class through trial. Plaintiff believes the Class was properly certified and would withstand any challenges going forward, but Defendants have steadfastly stated they would seek decertification based upon, *inter alia*, the United States Supreme Court's recent decision in *Comcast Corp. v. Behrend*, --- U.S. ---, 133 S. Ct. 1426 (March 27, 2013). Thus, there was a substantial risk that the Court could have decertified the Class based upon this new case law. This would effectively wipe out any recovery for more than 75,000 Class members who stand to receive significant cash compensation under the Settlement Agreement, leaving only the named Plaintiff to pursue his individual claims.

1 In sum, the Settlement Agreement offers significant benefits and avoids the substantial risks associated with continued litigation. "In this case, the negotiated amount is fair and reasonable no matter how you slice it. There is no evidence of fraud, overreaching, or collusion." *Rodriguez*, 563 F.3d at 965. "[T]his Settlement … guarantees a recovery that is not only substantial, but also certain and immediate, eliminating the risk that Class members would be left without any recovery … at all." *Fulford v. Logitech, Inc.*, No. C-08-2041-MMC, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

### 2. **The Amount Offered In Settlement**

The fourth fairness factor, the amount of recovery offered, also strongly favors final approval of the Settlement. The amount offered in settlement here is substantial by any standard. Under the terms of the Settlement, Defendants will pay a total of ***$100,150,000.00*** ($99,650,000 from CHL and $500,000 from MIG) for (a) payments to Class members who do not opt out and whose address can be confirmed through reasonable means; (b) the Representative Plaintiff's service award, if any; (c) an award of attorneys' fees and costs, if any; and (d) administrative costs. *See* Berns Prelim. App. Decl., Ex. A (Settlement Agreement), § 1.34. And, importantly, this amount was agreed upon only "after protracted arms-length and adversarial negotiation, during which time an experienced impartial mediator helped the Parties arrive at a compromise amount that both Parties find satisfactory." *Garner*, 2010 WL 1687832, at *11.

To ensure that Settlement payments are related to the amount of negative amortization (the primary source of restitution sought) incurred by Class members, the Payment Schedule set forth in the Settlement Agreement is based upon the original principal amount of the loan and the time period for which the Class member made regular monthly payments on account of the loan. Taking into account successful opt-outs and Class members who could not be located despite reasonable efforts, the estimated cash payments to Class members at the time of the Settlement Agreement, which ranged from at least $250 to $2,707, will be increased by

approximately another 3%, assuming the administrative costs require the entire capped amount of $225,000 and that the Court awards the full amount of attorneys' fees and expenses sought by Class Counsel and the requested service payment to the Representative Plaintiff. Settlement Agreement, § 3.01.

While, as discussed below, less than a handful of objectors have generically argued that the settlement amount could have been greater, "it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial." *Jaffe v. Morgan Stanley & Co., Inc.*, No. C 06–3903 TEH, 2008 WL 346417, at *9 (N.D. Cal. Feb.7, 2008)); *see also Hanlon*, 150 F.3d at 1027 (holding that the possibility "that the settlement could have been better ... does not mean the settlement presented was not fair, reasonable or adequate"). "Indeed, courts have recognized that even where—unlike here—'the total settlement fund is small,' it may not be 'unreasonable in light of the perils plaintiffs face in obtaining a meaningful recovery on their claims.'" *Garner*, 2010 WL 1687832, at * 11. As in *Garner*, "Plaintiff certainly faces such perils here. Yet the proposed Settlement nevertheless provides the Settlement Class with real, substantial monetary benefit, notwithstanding these difficulties with their claims and the fact that they face serious procedural hurdles to recovery." *Id.*

### 3. Extent Of Discovery And The State Of The Proceedings

The fifth fairness factor—the extent of discovery and the current state of the proceedings—also supports final approval. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-617 (N.D. Cal. 1979); *see also* MCL 4th § 21.62 at 486 ("Some factors that may bear on a review of settlement . . . [include] the maturity of the underlying substantive issues, as measured by the information and experience gained through adjudicating individual actions, developing scientific knowledge, and other factors that bear on the probable outcome of a trial on the merits.")

There simply can be no question that Class Counsel engaged in extensive formal and

informal discovery prior to Settlement that allowed them to fully and fairly evaluate the merits and risks of continued litigation. By the time Plaintiff moved for class certification, more than **56.5 million pages** of documents had been produced and analyzed by Class Counsel. Berns Prelim. App. Decl., ¶ 7. In addition to written discovery, significant fact and expert deposition discovery was taken. Class Counsel deposed six corporate witnesses and four experts designated by CHL to render opinions in opposition to Representative Plaintiff's motion for class certification. Defendants in turn deposed Representative Plaintiff on two separate occasions and deposed three experts designated by Representative Plaintiff. Berns Prelim. App. Decl., ¶ 8. Thus, Plaintiff had "a good grasp on the merits of [his] case before settlement talks began." *Rodriguez*, 563 F.3d at 967; *see also Jaffe*, 2008 WL 346417, at *9 (finding approval appropriate where parties had engaged in extensive discovery prior to settlement).

### 4. The Experience And Views Of Counsel

Class Counsel's extensive experience in litigating consumer class actions uniquely qualifies them to assess whether the proposed Settlement is fair, reasonable, adequate, and in the best interest of the Class as a whole. Indeed, Class Counsel is extremely qualified and well-informed about the facts and law of the case and they believe this proposed Settlement to be an excellent result. *See* Berns Prelim. App. Decl., ¶¶ 19-24, Ex. B and C. Where class counsel is qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal 1980). *See also Rodriguez*, 563 F.3d at 967 ("'[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]'") (citation omitted).

### 5. The Presence Of A Government Participant

No governmental entity is a party to this action. However, in compliance with the notice provision of the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), notice of this Settlement was provided to all appropriate federal and state officials. *See* Declaration of

MPA ISO FINAL APPROVAL OF CLASS ACTION
SETTLEMENT - 10

1  Brooks R. Brown Concerning Class Settlement ("Brown Decl."), ¶¶19-20, Ex. A, B, and
2  Declaration of Roland P. Reynolds Concerning Class Settlement ("Reynolds Decl."), ¶¶9-11,
3  Ex. A, B. "Although CAFA does not create an affirmative duty for either state or federal
4  officials to take any action in response to a class action settlement, CAFA presumes that, once
5  put on notice, state or federal officials will raise any concerns that they may have during the
6  normal course of the class action settlement procedures." *Garner*, 2010 WL 1687832, at *14.
7  As confirmed in the declarations of Mr. Brown and Mr. Reynolds, no concerns or objections to
8  the Settlement have been raised by any federal or state officials as of the date of this filing.
9  Brown Decl., ¶20; Reynolds Decl., ¶12.

### 6. Reaction From The Class

11  Reaction to the Settlement from the Class has been overwhelmingly positive. Nearly
12  500 Class members have contacted Class Counsel by telephone, email or letter expressing
13  support for the Settlement and/or to verify they will be included in the same. Berns Final App.
14  Decl., ¶7. Furthermore, as described above, only two objections are pending and only 84 of
15  75,661 Class members asked to be excluded. Azari Decl., ¶20. These remarkably low
16  objection and opt out rates of .0026 percent and .1 percent, respectively, weigh strongly in
17  favor of approving the Settlement.
18  "Courts have repeatedly recognized 'that the absence of a large number of objections to
19  a proposed class action settlement raises a strong presumption that the terms of a proposed
20  class action settlement are favorable to the class members.'" *Garner*, 2010 WL 1687832, at
21  *14 (citation omitted). "Thus, the Court 'may appropriately infer that a class action settlement
22  is fair, adequate, and reasonable when few class members object to it.'" *Id.* (quoting *Create–*
23  *A–Card, Inc. v. Intuit, Inc.*, No. C 07–06452 WHA, 2009 WL 3073920 at *15 (N.D. Cal. Sept.
24  22, 2009) and citing *Barcia v. Contain–A–Way, Inc.*, No. 07cv938–IEG–JMA, 2009 WL
25  587844, at *4 (S.D. Cal. Mar. 6, 2009) (finding that absence of objectors "strongly supports the
26  fairness, reasonableness, and adequacy of the settlement")); *see also Churchill Village, LLC v.*

1 *Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of 90,000 class
2 members objected to the settlement and 500 class members opted out).

### C. Notice Has Been Highly Effective and Constitutes The Best Notice Practicable.

As noted above, approximately 97 percent of Class members received direct mail notice, and that was augmented by publication notice. *See* Section II, *supra*; *see also* Azari Decl., ¶14. According to the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, "[t]he lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." *See* Berns Final App. Decl., Ex. C; Azari Decl., ¶22. Cameron Azari, a court-recognized class notice expert with Epiq Legal Noticing, has concluded that the notice plan comported with Federal Rule of Civil Procedure 23, and also the guidance for effective notice articulated in the *Manual for Complex Litigation*, 4th Edition. *Id.*, ¶¶21-23. Moreover, no one has suggested that notice was deficient in any way.

### D. Plaintiff's Motion for Attorneys' Fees And Costs And Service Award Is Reasonable And Well-Supported.

As set forth more fully in Plaintiffs' Motion for Attorneys' Fees and Costs and Service Award (Dkt. No. 394), the attorneys' fees and costs sought in this case are slightly less than the Ninth Circuit's benchmark of 25 percent of the common fund, well-supported by a lodestar cross check, and readily meet all relevant fairness criteria. No Class member is objecting to the attorneys' fees and costs requested. Similarly, the service award proposed for the Representative Plaintiff is reasonable and appropriate under the circumstances. *See* Plaintiffs' Motion for Attorneys' Fees and Costs and Service Award, pp. 19-20. Neither of the objections contests or challenges the requested service award of $12,500. Indeed, this amount is consistent with service awards routinely ordered in this Circuit and will fairly compensate

1  Representative Plaintiff, Jay Ralston, for the time and effort spent, and the personal risk he
2  shouldered in the successful prosecution of this case on behalf of 75,000 absent Class members
3  for more than five years.

### E. The Two Objections Are Without Merit And Should Be Overruled.

The Settlement provides valuable relief to the Class and falls squarely within the range of reasonableness for settlements routinely approved by courts in this Circuit. Neither of the objections casts doubt on this conclusion nor presents any reason why the Court should not order final approval.

#### 1. The Objection By John Hutton Should Be Overruled.

Mr. Hutton objects "in whole to the above action" and seeks a restraining order against all parties seeking to dismiss his claims against CHL. *See* Dkt. No. 392. Mr. Hutton also mailed counsel a document entitled "Objection and Motion for Individual Settlement," which was apparently not filed with the Court and is unsigned, asking that he be awarded individual damages in the amount of $314,388, for reimbursement of, among other things, escrow costs, past mortgage payments, money paid as a result a divorce action and damages resulting from a lien on a second property. *See* Berns Final App. Decl., Ex. B. Nowhere in either document does Mr. Hutton offer any legal authority or other explanation of why the Settlement may not be fair, adequate and reasonable under applicable standards. Nor does he explain how awarding him his requested damages would improve the Settlement reached on behalf of the Class or how such damages could even be addressed in the class action context. Given the nature of the submission, Class Counsel contacted Mr. Hutton to ensure he understood his rights as an objector versus opting out. *Id.*, ¶5. Although Mr. Hutton advised Class Counsel that he wants to object rather than opt-out, *see id.,* his "objection" is still really in the nature of an exclusion request as it indicates that he does not want to release CHL and he wants different consideration than is being offered in the settlement. Under the terms of the settlement, Mr. Hutton is expected to receive approximately $2,300. Because Mr. Hutton has failed to

articulate why the Settlement is unfair or unreasonable under the circumstances, his objection should be overruled.

### 2. The Objections By Rizwan Begg Should Be Overruled.

Rizwan Begg filed separate, timely objections for two different properties he financed with Pay Option ARM loans. *See* Dkt. Nos. 399-400. Other than the fact that they identify two different properties as his primary residence, the objections are identical. Without citing any legal authority, Mr. Begg complains that the amount he is personally expected to receive under the Settlement is too low. He does not contend that payments to other Class members or the overall amount of the Settlement are unfair, but only that he is entitled to receive at least 50 to 75 percent of the extra principal added to his balance over time. While Class Counsel appreciates the frustration Mr. Begg has experienced with his loans, his objection does not in any way demonstrate that the Settlement is not fair, adequate and reasonable. As noted above, the Court has only certified a UCL claim, which provides only for restitution, and not damages. Thus, if the Court were later to conclude that negative amortization, the primary method of class-wide restitution advocated by Plaintiff, is not an appropriate measure of restitution under the UCL, it is possible that there would be no recovery at all for Mr. Begg or any other Class member. *See* Section III.B.1, *supra*. This was a formidable obstacle to recovery in this action. *See, e.g., Boschma*, 198 Cal.App.4th 230, 251. Under the terms of the Settlement, which remove that risk entirely, Mr. Begg is expected to receive a total of approximately $5,100.

At bottom, Mr. Begg's objection is nothing more than a "should have done better" objection, which Ninth Circuit courts and courts elsewhere have routinely rejected:

> [Objectors] offer nothing more than speculation about what damages "might have been" won had they prevailed at trial. The court has aptly held that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for*

*Justice*, *supra*, 688 F.2d at 625) (emphasis in original). Because Mr. Begg has failed to demonstrate that the Settlement is unfair, unreasonable or inadequate under the circumstances, his objection should be overruled.

## IV. CONCLUSION

The proposed Settlement is an excellent result for the Class and bears all the hallmarks of a fair, adequate, and reasonable settlement. Therefore, Plaintiff respectfully requests that this Court grant his motion for final approval of the proposed Settlement and grant Plaintiffs' Motion for Attorneys' Fees and Costs and Service Award in its entirety.

Dated: August 19, 2013

**ANDRUS ANDERSON LLP**

By: ___*/s/ Jennie Lee Anderson*___
      Jennie Lee Anderson

Jennie Lee Anderson (SBN 203586)
jennie@andrusanderson.com
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 986-1400
Facsimile: (415) 986-1474

**BERNS WEISS LLP**
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
20700 Ventura Blvd., Suite 140
Woodland Hills, CA 91364
Telephone: (818) 961-2000
Facsimile: (818) 999-1500

– and –

Lee A. Weiss (admitted *pro hac vice*)
lweiss@law111.com
585 Stewart Avenue, Suite L-20
Garden City, NY 11530
Telephone: (516) 222-2900
Facsimile: (818) 999-1500

*Co-Lead Class Counsel for Plaintiff and the Class*

## **CERTIFICATE OF SERVICE**

I, Jennie Lee Anderson, hereby certify that on August 19, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record registered with the CM/ECF system.

Dated:  August 19, 2013

ANDRUS ANDERSON LLP

By:  */s/ Jennie Lee Anderson*
      Jennie Lee Anderson

Jennie Lee Anderson (SBN203586)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone:  (415) 986-1400
Facsimile:  (415) 986-1474
jennie@andrusanderson.com