**E-Filed 9/19/2013**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAY J. RALSTON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MORTGAGE INVESTORS GROUP, INC., et al.,<br><br>Defendants. | Case No. 5:08-cv-00536-JF (PSG)<br><br>ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; OVERRULING OBJECTIONS; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS; AND GRANTING SERVICE PAYMENT<br><br>[re: ECF Nos. 394, 413] |

On August 26, 2013, the Court heard (1) the parties' motion for final approval of class action settlement; (2) objections to the proposed settlement; (3) Plaintiff's motion for an award of attorneys' fees and costs; and (4) Plaintiff's request for a service payment. The Court has considered the briefing submitted by the parties, the objections submitted by certain class members, and the oral arguments presented at the hearing. The Court finds and concludes as follows:

**I. BACKGROUND**

On January 24, 2008, Plaintiff Jay J. Ralston ("Ralston") filed this class action lawsuit against Defendants Mortgage Investors Group, Inc. and Mortgage Investors Group, a general

partnership (collectively, "MIG"), on behalf of himself and others who had obtained Option Adjustable Rate Mortgage loans ("Pay Option ARM loans") from MIG. ECF No. 1. Ralston subsequently added Countrywide Home Loans, Inc. ("Countrywide"), Bank of America Corporation ("BofA"), and the Bank of New York ("BONY") as defendants. ECF No. 78. Ralston ultimately abandoned his claims against BofA and BONY; the operative third amended complaint ("TAC") asserts two claims against MIG and Countrywide: (1) fraudulent omissions under California law; and (2) violation of California's unfair competition law ("UCL"). ECF 142. On August 12, 2010, the Court denied Defendants' motions to dismiss those claims. ECF No. 152.

Ralston claims that Countrywide "concocted and implemented" a fraudulent scheme under which MIG and other mortgage originators marketed Pay Option ARM loans using deceptive loan documents. TAC ¶ 1, ECF No. 142. The loans offered low "teaser" interest rates that applied for only thirty days. *Id*. ¶ 3. After that initial period, the terms of the loans changed significantly such that a borrower who followed the payment schedule provided in the Truth-In-Lending Disclosure Statement ("TILDS") was certain to incur negative amortization. *Id*. Ralston alleges that the loan documents were misleading, as they indicated that negative amortization was only a possibility and not a certainty. *Id*. ¶ 28. He claims that had class members understood that negative amortization was a certainty, they would not have acquired the loans. *Id*. ¶ 29.

On March 30, 2012, the Court certified a class of California borrowers who assert claims under California's UCL; the Court declined to certify a nationwide UCL class or a fraud class. ECF No. 368. The parties subsequently entered into a settlement agreement, which was preliminarily approved by the Court on June 19, 2013. ECF No. 388.

The proposed settlement provides for relief on behalf of the following class:

> [A]ll persons who, from January 24, 2004 through the date of this Agreement, obtained a Loan from MIG or any other Countrywide Correspondent Lender that was subsequently sold to CHL.

Settlement Agreement ¶ 1.04, ECF No. 386-2.

The term "Loan" is defined as:

> [A] Pay Option Adjustable Rate mortgage loan made (a) to a Class Member by MIG or any other Countrywide Correspondent Lender during the Class Period, (b) which was secured (or formerly secured) by property located in California that, according to

2

mortgage loan application records, was used as the Class Member's principal residence at the inception of the Loan.

*Id*. ¶ 1.19.

Under the settlement agreement, class members will release MIG, Countrywide, and affiliated entities from all claims arising out of the Loans that were or could have been asserted in this lawsuit. *Id*. ¶ 4.01. In return, Defendants will pay a total of $100,150,000 in settlement of this action. *Id*. ¶ 1.34. Of this amount, at least $74,800,000 is earmarked for distributions to class members, *id*. ¶ 3.01; a maximum of $25,037,500 will go to attorneys' fees and costs, *id*. ¶ 2.19; a maximum of $225,000 will go to administration costs, *id*. at ¶ 2.02; and a maximum of $12,500 will go to Ralston as a service payment, *id*. ¶ 2.22. The parties now ask the Court to grant final approval of the settlement agreement and to grant Ralston's motion for attorneys' fees and costs.

## II. MOTION FOR FINAL APPROVAL OF SETTLEMENT

A court may approve a class action settlement only after allowing absent class members to be heard, Fed. R. Civ. P. 23(e)(2), and finding the settlement to be "fundamentally fair, adequate, and reasonable," *Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir. 2000). Assessing a settlement proposal requires a district court to balance a number of factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). The district court also must satisfy itself that the settlement is not the product of collusion among the negotiating parties. *Id*. at 576. The issue is not whether the settlement could have been better, but whether it is fair, reasonable, adequate, and free from collusion. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998).

**Notice to the Class**

As an initial matter, the Court concludes that adequate notice of the settlement was given to the class members. The parties submit the declaration of Cameron R. Azari ("Azari"), the Director

3

of Epiq Legal Noticing ("Epiq"), "a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans." Azari Decl. ¶¶ 1-2, ECF No. 413-5. Azari states that he has been recognized as a class action notice expert by other courts and has been involved in many complex class action notice programs. *Id*. ¶ 2. In preparation for sending out the class notice, Epiq obtained name and address information for all class members from Countrywide. *Id*. ¶ 8. After removing records for non-qualifying loans, records for 75,661 individual class members remained. *Id*. ¶ 9. Epiq checked the postal mailing addresses for these class members against the National Change of Address database maintained by the United States Postal Service ("USPS"); any addresses that were found to be invalid were updated through a third-party address search service. *Id*. ¶ 10. Epiq took a number of other steps to verify class members' addresses, described in Azari's declaration, and as a result updated 23,204 of the class members' records. *Id*.

On June 21, 2013, Epiq sent class notices to all class members by first class mail. *Id*. ¶ 11. Addresses for 1,565 class members were corrected through the USPS and the class notices were either re-mailed by Epiq or forwarded by the USPS. *Id*. ¶ 12. Epiq used a third-party address search service to aid in the re-mailing of an additional 955 class notices that were returned as undeliverable. *Id*. On June 27, 2013, a postcard was mailed to all class members, informing them that the original class notice listed an incorrect telephone number for one of the class counsel and providing the correct telephone number. *Id*. ¶ 13. As of August 19, 2013, 2,112 of the class notice mailings remained undelivered; direct mail class notices thus appear to have reached approximately 97% of the class members. *Id*. ¶ 14.

In addition to notice by direct mail, Epiq placed a publication notice two times in the main news section of *USA Today*. *Id*. ¶ 15. Also, a settlement website, www.OptionArmSettlement.com, went live on June 212, 2013. *Id*. ¶ 16. The website contained additional information about the settlement, including frequently asked questions as well as a copy of the settlement agreement, the TAC, and the preliminary approval order. *Id*.

### *Churchill* Factors

Turning to the *Churchill* factors listed above, the Court notes that the case is strong enough that the Court denied Defendants' motion to dismiss the operative TAC and certified a California

4

UCL class (factor 1). However, the parties have very different views as to the appropriate calculation of class-wide restitution, s*ee* Order Granting in Part Pl.'s Mot. for Class Cert. at 3-4, ECF No. 368, and the law appears to be unsettled as to whether class members' negative amortization can be recovered as restitution under the UCL, *compare Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 14 (2012), *with Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 251 (2011). Accordingly, continued litigation would pose a significant risk to the class with respect to the scope of recovery on the UCL claim (factor 2). Moreover, Defendants have indicated that if the litigation were to proceed, they would seek decertification based upon the post-certification decision of the United States Supreme Court in *Comcast Corp. v. Behrend*, --- U.S. ---, 133 S.Ct. 1426 (2013). Accordingly it is not certain that class action status would be maintained through trial (factor 3).

Defendants have offered a significant amount of money in settlement – $100,150,000 (factor 4). Settlement Agreement ¶ 1.34, ECF No. 386-2. Of this amount, at least $74,800,000 is earmarked for distributions to class members. *Id*. ¶ 3.01. Class counsel represents that each class member will receive between $250 and $2,707, depending on the original principal amount of the loan and the time period for which the class member made regular monthly payments. Mot. for Final Approval at 8, ECF No. 413. The parties have engaged in extensive discovery, which resulted in production of more than 56,000,000 pages of documents and the taking of several depositions, Berns Decl. ¶¶ 7-8, ECF No. 386-1, and the litigation is considerably advanced, the pleadings having been finalized and class certification having been granted in part (factor 5). Class counsel, who are well-known to the Court as experienced litigators in the area of consumer class actions, believe the settlement to be an excellent result (factor 6).

There is no government participant in this action (factor 7). However, notice of the settlement was provided to all federal and state officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715, and no concerns or objections have been raised by any public official. *See* Brown Decl. ¶¶ 19-20; Reynolds Decl. ¶¶ 9-12.

The response of the class has been favorable (factor 8). Of the 75,661 class members who were sent notice, only eighty-four have requested exclusion and only five have objected. Berns

5

Case No. 5:08-cv-00536-JF (PSG)
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT ETC.

Decl. ¶ 2, ECF No. 413-1.  The five objectors are:  John Hutton, Rizwan Begg, Mary Roche, David Mansker, and Susan House.  After reviewing the objections, class counsel communicated with independent counsel for Ms. Roche and independent counsel for Mr. Mansker, and confirmed that those two individuals would prefer to opt out of the class rather than remain in the class to pursue their objections.  *Id*. ¶ 3.  Defendants have agreed to treat the submissions of Ms. Roche and Mr. Mansker as timely opt-outs.  *Id*.  Accordingly, the Court has granted the motions of Ms. Roche and Mr. Mansker to withdraw their objections.  ECF Nos. 418, 419.  Ms. House's objection was submitted to class counsel, but not to the Court.  Berns Decl. ¶ 4, ECF No. 413-1.  Class counsel determined that Ms. House's objection was untimely, and contacted her independent counsel, who informed class counsel that Ms. House did not wish to pursue her objection.  *Id*.  Ms. House subsequently filed a notice of withdrawal of her objection, ECF No. 410, which is hereby approved by the Court.  Accordingly, only the objections of Mr. Hutton and Mr. Begg remain pending.

**Objections**

Mr. Hutton filed an objection to the settlement dated July 2, 2013, stating that he objects "in whole to the above action brought before the court."  Hutton Obj. at 1, ECF No. 392.  Mr. Hutton recites his address and some of the terms of his loan, and then requests "a Restraining Order against all parties seeking to dismiss my claim against Countrywide or its assignees."  *Id*. at 2.  Mr. Hutton also mailed class counsel a second document dated July 10, 2013, that was not filed with the Court, entitled "Objection and Motion for Individual Settlement."  Berns Decl. ¶ 5, ECF No. 413-1; July 10 Doc., ECF No. 421.  In that document, Mr. Hutton requests that he personally be awarded damages in the amount of $314,388.  Neither the July 2 document nor the July 10 document contains any legal or factual basis for concluding that the settlement is not fair, reasonable, and adequate.

On July 24, 2013, Mr. Begg filed two separate objections for two different properties that he financed with Pay Option ARM loans.  ECF Nos. 399-400.  The objections are substantively identical and thus are treated as a single objection for purposes of analysis.  Mr. Begg asserts that he is hundreds of thousands of dollars under water on his two loans, that the loans are causing him stress, and that it is not his fault that he is in this situation because "this loan should have never hit the market as the Banks know better that property values increase and decrease over time."  *Id*.  He

6

wonders why homeowners "should suffer and pay for something that was never really our fault," and demands that he personally receive at least fifty to seventy percent of the amount that his principal balances increased as a result of the Pay Option ARM loans he took out. *Id*. Like Mr. Hutton, Mr. Begg fails to provide any legal or factual basis for concluding that the settlement is not fair, reasonable, and adequate.

In essence, the objections of Mr. Hutton and Mr. Begg reflect their respective opinions that they each are entitled to recover hundreds of thousands of dollars from Defendants. To the extent that they contend that class counsel could have obtained a settlement that would have provided for pay-outs of that magnitude to all class members, Mr. Hutton and Mr. Begg have failed to make any showing to support such a contention. This appears to be a classic "should have done better" argument, which the Ninth Circuit has rejected as a basis for denying final approval of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Under the proposed settlement, Mr. Hutton would receive approximately $2,300 and Mr. Begg would receive approximately $5,100. *See* Mot. for Final Approval at 13-14, ECF No. 413. If Mr. Hutton and Mr. Begg believe that they can do better on their own, the Court will permit them to opt out of the settlement even though the time to seek opt-out has expired.

**Conclusion**

Having considered the record as a whole, the Court concludes that approval of the proposed settlement is warranted. It was reached after extensive arms length negotiations, including three day-long sessions with a neutral mediator over a three-month period. Berns Decl. ¶ 14, ECF No. 394-1. There is no evidence of collusion. Although two class members believe that they personally should receive more money – hundreds of thousands of dollars each – the issue before the Court is not whether the settlement could have been better, but whether it is fair, reasonable, adequate, and free from collusion. *Hanlon*, 150 F.3d at 1027. The Court answers this inquiry in the affirmative.

**III. MOTION FOR ATTORNEYS' FEES AND COSTS AND SERVICE PAYMENT**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). However, the district court has "an independent obligation to ensure that the award, like the settlement itself, is

7

reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Where, as here, the settlement produces a common fund for the benefit of the entire class, the district court has discretion to evaluate a motion for attorneys' fees under either the lodestar method or the percentage-of-recovery method. *Id*. at 942. The Ninth Circuit has commented on the appropriate exercise of this discretion as follows:

> Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure.

*Id*.

In this case, class counsel request a total award of attorneys' fees and costs in the amount of $25,037,500, which is twenty-five percent of the common fund of $100,150,000. Because the requested award includes both fees and costs, it is below the Ninth Circuit's benchmark of twenty-five percent for attorneys' fees (exclusive of costs). The Court perceives no special circumstances justifying departure from the twenty-five percent benchmark. When considering whether to depart from the benchmark, the district court should consider all of the circumstances of the case, including the results achieved, the risk of litigation, whether counsel generated benefits beyond the cash settlement, the market rate, and the contingent nature of the fee and the financial burden. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) ("*Vizcaino II*"). The Court concludes that counsel achieved an excellent result for the class. The common fund of $100,150,000 is substantial, and the individual class recoveries ranging from $250 to $2,700 per loan are significant given that the class contains more than 75,000 individuals. As discussed above, continuing with the litigation would have been risky given the unsettled nature of the governing law. Counsel did not generate benefits beyond the cash settlement. However, counsel did litigate this case on a contingent basis for five years, during which time counsel reviewed more than 56,000,000 pages of documents, conducted depositions, and made and responded to several substantive motions. The Court, which has presided over the case since its inception, observes that class counsel has acted professionally and capably throughout the litigation. The Court notes that in its experience, few

8

Case No. 5:08-cv-00536-JF (PSG)
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT ETC.

cases of this type survive motion practice or are granted class certification.

      A lodestar cross-check confirms the reasonableness of the award of fees and costs. Class counsel has provided a summary showing the hours worked by all of the partners, associates, and support staff. Berns Decl. ¶¶ 25-38 and Exs. A-L, ECF No. 394-1. The total lodestar for all class counsel is $8,654,256.25. *Id.* ¶ 39. Counsel incurred costs in the amount of $420,265.05. Application of a multiplier of 2.8 would result in the requested award of fees and costs. Courts have approved greater multipliers in other large common fund cases. *See, e.g., Vizcaino v. Microsoft*, 142 F. Supp. 2d 1299, 1305-06 (W.D. Wash. 2001) (holding that "a multiplier of at least 3 or 4 is wholly justified" and awarding attorneys' fees and costs in excess of $27,000,000 out of a common fund of $96,885,000), *aff'd by Vizcaino II*, 290 F.3d 1043. The reasonableness of the fees also is confirmed by the fact that no class members have objected to the proposed award despite the fact that it was disclosed expressly in the class notice in compliance with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2012).

      Courts often award service payments to class representatives in compensation for assuming significant burdens during the litigation, such as retaining counsel, producing documents, responding to written discovery, and conferring with counsel. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (approving incentive awards of $5,000 to each of two class representatives in a settlement of $1.725 million). Defendants have agreed, subject to Court approval, to pay Ralston a service payment of $12,500. The Court concludes that the proposed service payment is appropriate. Ralston acted as the sole class representative for more than five years, during which time he responded to class counsel's requests for information, reviewed court filings, provided documents in response to Defendants' discovery requests, and twice was deposed by Defendants' counsel. Berns Decl. ¶ 43, ECF No. 394-1. The proposed service payment represents less than 1/80 of 1% of the $100,150,000 settlement fund. *Id.* No class members have objected to the proposed service payment despite the fact that it was disclosed expressly in the class notice.

//

//

//

9

Case No. 5:08-cv-00536-JF (PSG)
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT ETC.

## IV. ORDER

For the foregoing reasons,

(1) the motion for final approval of the class action settlement is GRANTED;

(2) the objections to the class action settlement are OVERRULED. Mr. Hutton and Mr. Begg may opt out of the settlement by filing written notice with the Court not later than thirty (30) days from the date this order is filed; otherwise, they shall be bound by the settlement.

(3) the motion for attorneys' fees and costs is GRANTED in the amount of $25,037,500; and

(4) the request for a service payment to Plaintiff is GRANTED in the amount of $12,500.

DATED: September 19, 2013

_____
JEREMY FOGEL
United States District Judge

10

Case No. 5:08-cv-00536-JF (PSG)
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT ETC.