1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JAY J. RALSTON,

             Plaintiff,

      v.

MORTGAGE INVESTORS GROUP, INC.,
et al.,

           Defendants.

Case No. 08-CV-00536-JF (LHK)

**ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP**

Re: Dkt. No. 432

Lead class counsel Berns Weiss LLP and Andrus Anderson LLP (collectively, "Lead Class Counsel") bring the instant motion to finalize the amount of attorneys' fees and costs for non-lead counsel Browne George Ross LLP ("BGR"). ECF No. 432 ("Mot."). Lead Class Counsel and BGR were among 10 law firms that served as class counsel in the instant case, a nationwide class action lawsuit before U.S. District Judge Jeremy Fogel which alleged that mortgage originators used deceptive loan documents to convince consumers to take out certain mortgage loans.[1] *See* ECF No. 142 ("Third Amended Complaint" or "TAC"), ¶¶1-3, 28. On September 19, 2013, Judge

---

[1] Judge Fogel is currently serving as Director of the Federal Judicial Center in Washington, D.C. The instant Motion was assigned to this Court as a general duty matter on July 10, 2015.

1

United States District Court
Northern District of California

1  Fogel granted final approval of a class action settlement which provided for, among other things,

2  the provision of $25,037,500 in attorneys' fees and costs to class counsel ("Settlement Award").

3  ECF No. 426 ("Order Final Appr."), at 10. In the instant Motion, Lead Class Counsel requests that

4  this Court finalize BGR's allocation of attorneys' fees and costs from the Settlement Award in the

5  amount of $338,481.25 in attorneys' fees and $20,830.82 in expenses. Mot. at 24. BGR opposes

6  the Motion, arguing in effect that BGR is entitled to a greater share of the Settlement Award. *See*

7  Opposition of Browne George Ross LLP to Motion to Finalize Attorneys' Fees and Costs, ECF

8  No. 445 ("Opp'n"). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for

9  resolution without oral argument, and hereby VACATES the hearing on this matter currently

10  scheduled for August 27, 2015, at 1:30 p.m. Having considered the parties' submissions, the

11  relevant law, and the record in this case, the Court DENIES the instant Motion, for the reasons

12  stated below.

13  **I.  BACKGROUND**

14    **A.  Factual Background**

15      **1.  Filing of the instant litigation**

16      On January 24, 2008, Plaintiff Jay J. Ralston ("Ralston") filed the instant litigation

17  ("*Ralston*"), a class action lawsuit against Defendants Mortgage Investors Group, Inc. and

18  Mortgage Investors Group, a general partnership (collectively, "MIG"). Order Final Appr. at 1-2;

19  ECF No. 1 (original class action complaint). Ralston filed the lawsuit on behalf of himself and

20  other consumers who obtained Option Adjustable Rate Mortgage loans ("Pay Option ARM

21  loans") from MIG. Order Final Appr. at 1-2. Ralston later amended his Complaint to add

22  Countrywide Home Loans, Inc. ("Countrywide"), Bank of America Corporation ("BofA"), and the

23  Bank of New York ("BONY") as defendants. *Id.* Subsequently, Ralston dismissed BofA and

24  BONY as defendants. *Id.* Ralston's Third Amended Complaint, the operative Complaint in this

25  matter, alleged two claims against MIG and Countrywide (collectively, "Defendants"): (1)

26  fraudulent omission under California law; and (2) violations of the unlawful, unfair, and

27

28
Case No. 08-CV-00536-JF   (LHK)
ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

1  fraudulent prongs of California's Unfair Competition Law ("UCL"), Business & Professions Code
2  §§ 17200 *et seq*. TAC ¶¶ 66-109.

3          The gravamen of Ralston's lawsuit was that Countrywide "concocted and implemented" a
4  fraudulent scheme under which MIG and other mortgage originators marketed Pay Option ARM
5  loans using deceptive loan documents. TAC ¶ 1. The loans offered low "teaser" interest rates that
6  applied for 30 days. *Id.* ¶¶ 3, 18. After that initial period, the terms of the loans changed such that
7  a borrower who followed the payment schedule provided in the Truth-in-Lending Disclosure
8  Statement was certain to incur negative amortization because the monthly payment was
9  insufficient to pay both accrued interest and principal. *Id.* ¶ 3. Ralston alleged that the loan
10  documents were misleading because they indicated that negative amortization was only a
11  possibility and not a certainty. *Id.* ¶ 28. Ralston further contended that had class members
12  understood that negative amortization was a certainty, class members would not have acquired the
13  subject loans. *Id.* ¶ 29.

14          **2.  The Joint Prosecution Agreements for *Ralston* and related litigation**

15          In April 2008, approximately three months after *Ralston* was filed, 14 law firms that were
16  pursuing class action litigation against mortgage lenders for fraudulent practices entered into a
17  Global Joint Prosecution Agreement ("2008 JPA"). Declaration of Jeffrey K. Berns in Support of
18  Motion ("Berns Decl."), ECF No. 432-1, ¶ 19. The 2008 JPA covered approximately 55 cases
19  filed in courts around the country, including *Ralston* (the "Mortgage Cases"). Berns Decl., Ex. A,
20  at 2-3. Neither Lead Class Counsel nor BGR were signatories to the 2008 JPA. *See id.* at 1.
21  However, among the signatories to the 2008 JPA were the Law Offices of Jeffrey K. Berns and the
22  law firm of Andrus Liberty & Anderson LLP, where attorneys currently practicing as Lead Class
23  Counsel practiced at the time. *See id.* at 1. Also among the signatories to the 2008 JPA was Drier,
24  Stein, Kahan, Browne, Woods, George, which was where some of the attorneys currently at BGR
25  practiced at that time. *Id.* at 1; Mot. at 13 n.1. The 2008 JPA provided a formula for how any
26  attorneys' fees and costs recovered from the Mortgage Cases would be divided among the

28  Case No. 08-CV-00536-JF  (LHK)
ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

1    signatories. *Id.* at 1-4.

2         In early 2009, additional law firms had begun to participate in the Mortgage Cases, while

3    some of the original signatories to the 2008 JPA were no longer actively involved in such

4    litigation. Berns. Decl. ¶ 20. Accordingly, lead class counsel Jeffrey K. Berns ("Mr. Berns")

5    drafted a new Global Joint Prosecution Agreement ("2009 JPA"). *Id.* Again, while Lead Class

6    Counsel was not a signatory to the JPA, both the Law Offices of Jeffrey K. Berns and Andrus,

7    Liberty and Anderson were signatories. Berns Decl., Ex. B, at 1. Browne Woods George LLP, the

8    predecessor law firm to BGR, was also a signatory to the 2009 JPA. *Id.* at 5; Mot. at 13 n.1. Like

9    the 2008 JPA, the 2009 JPA provided a formula for the division of any attorneys' fees and costs

10   recovered from the Mortgage Cases. *Id.* at 1-4.

11        **3.   Proceedings and settlement in *Ralston***

12        On August 12, 2010, Judge Fogel denied Defendants' motion to dismiss the Third

13   Amended Complaint in *Ralston*. Order Final Appr. at 2; ECF No. 152. On March 30, 2012, Judge

14   Fogel certified a class of California borrowers who asserted claims under the UCL. Order Final

15   Appr. at 2; ECF No. 368. Judge Fogel also declined to certify a nationwide UCL class or a fraud

16   class. Order Final Appr. at 2; ECF No. 368. The parties subsequently entered into a settlement

17   agreement ("*Ralston* Settlement" or "Settlement"), which Judge Fogel preliminarily approved on

18   June 19, 2013. Order Final Appr. at 2; ECF No. 388. The *Ralston* Settlement provided relief on

19   behalf of a class defined as "all persons who, from January 24, 2004 through the date of [the

20   settlement agreement], obtained a Loan from MIG or any other Countrywide Correspondent

21   Lender that was subsequently sold to [Countrywide]."[2] ECF No. 386-2, ¶ 1.04. The Settlement

22   created a fund of $100,150,000. ECF No. 386-2, ¶ 1.34. Of that amount, the Settlement earmarked

23   a minimum of $74,800,000 for distribution to class members, *id.* ¶ 3.01; and a maximum of 25

24

25   [2] The settlement agreement defined the term "Loan" as a "Pay Option Adjustable Rate mortgage
     loan made (a) to a Class Member by MIG or any other Countrywide Correspondent Lender during
26   the Class Period, (b) which was secured (or formerly secured) by property located in California
     that, according to mortgage loan application records, was used as the Class Member's principal
27   residence at the inception of the Loan." ECF No. 386-2, ¶ 1.19.

28   Case No. 08-CV-00536-JF   (LHK)
     ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
     AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

United States District Court
Northern District of California

1    percent of the settlement fund—or $25,037,500—for attorneys' fees and costs, *id.* ¶ 2.19.

2         On July 17, 2013, in advance of the hearing for final approval of the Settlement, Lead

3    Class Counsel filed a motion for attorneys' fees and costs. ECF No. 394. In connection with that

4    motion, all 10 law firms which served as class counsel, including Lead Class Counsel and BGR,

5    submitted declarations affirming their respective fees and costs. *See* Declaration of Jeffrey K.

6    Berns in Support of Plaintiff's Motion for Award of Attorneys' Fees and Costs, and Service

7    Award to Class Representative Plaintiff, ECF No. 394-1. The declaration for BGR, which was

8    submitted by Eric M. George, stated that BGR spent 465.15 hours on the instant litigation,

9    resulting in a lodestar of $338,481.25 and incurred expenses of $20,830.82. *Id.* at 141. The

10   remaining nine law firms (i.e. all of class counsel in *Ralston* except for BGR) incurred a lodestar

11   of $8,315,775 and expenses of $399,434.23. *See* Order Final Appr. at 9.

12        On September 19, 2013, Judge Fogel granted final approval to the Settlement. *See id.*

13   Judge Fogel also approved the award of $25,037,500 in attorneys' fees and costs. *Id.* at 7-10. Also

14   on September 19, 2013, Judge Fogel entered judgment and dismissed the instant case with

15   prejudice. ECF No. 428.

16   **B. Procedural Background**

17        **1. BGR files litigation in Los Angeles County Superior Court**

18        On December 30, 2013, BGR filed a lawsuit against Berns Weiss LLP and Mr. Berns[3]

19   ("State Court Litigation Defendants") before Judge Kleifield of the Superior Court for the County

20   of Los Angeles, *Browne George Ross LLP v. Berns Weiss LLP et al.*, Case No. BC531900 ("State

21   Court Litigation"). *See* Berns Decl., Ex. D. In the original Complaint in that lawsuit, BGR alleged

22   that the State Court Litigation Defendants failed to pay BGR its share of attorneys' fees and costs

23   for BGR's work on approximately 30 Mortgage Cases. *Id.* ¶¶ 2-3. BGR alleged a cause of action

24   for fraudulent inducement and rescission based on the contention that the State Court Litigation

25

26   _____

27   [3] Berns Weiss LLP, along with Andrus Anderson LLP, filed the instant Motion as Lead Class
     Counsel in *Ralston*. *See* Mot. Mr. Berns is a member of Berns Weiss LLP. Berns Decl. ¶ 1.

28   Case No. 08-CV-00536-JF   (LHK)
     ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
     AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

United States District Court
Northern District of California

1    Defendants fraudulently induced BGR to enter into the 2008 JPA, and a second cause of action for

2    fraud based on the defendants' alleged failure to compensate BGR. *Id.* ¶¶ 31-53.

3          On July 17, 2014, BGR filed a First Amended Complaint which revised BGR's causes of

4    action. *See* Berns Decl., Ex. E. In the First Amended Complaint, BGR alleged that the State Court

5    Litigation Defendants had provided BGR with attorneys' fees for BGR's work on two lawsuits,

6    *Velazquez v. Aegis Mortgage Corporation* and *Mandrigues v. World Savings*, but that BGR's

7    work on other Mortgage Cases, including *Ralston*, had gone uncompensated. *Id.* ¶¶ 16-17. BGR

8    further alleged that as a result, the State Court Litigation Defendants breached the 2009 JPA. *Id.*

9    ¶¶ 22-26. BGR replaced its original causes of action with a cause of action for breach of contract,

10   and a second cause of action for imposition of a constructive trust. *Id.* ¶¶ 21-31.

11         On August 5, 2014, BGR filed a motion for preliminary injunction, seeking to have the

12   State Court Litigation Defendants deposit the disputed money into an escrow account. Declaration

13   of Lori Sambol Brody in Support of Opposition of Browne George Ross to Motion to Finalize

14   Attorneys' Fees and Costs, ECF No. 445-1 ("Sambol Decl."), ¶ 7. On August 13, 2014, the State

15   Court Litigation Defendants sent BGR a check purportedly paying BGR for its work on the

16   Mortgage Cases. *Id.*

17         On April 2, 2015, the parties to the State Court Litigation filed a stipulation to the effect

18   that there was no binding fee sharing agreement between BGR and the State Court Litigation

19   Defendants. Berns Decl. ¶ 28. Subsequently, on April 28, 2015, BGR filed a Second Amended

20   Complaint, which is the operative complaint in that lawsuit. *See* Berns Decl., Ex. G. The Second

21   Amended Complaint repeated BGR's allegation that BGR worked on approximately 30 Mortgage

22   Cases, that some of those lawsuits had reached a settlement, and that the State Court Litigation

23   Defendants had not provided BGR with attorneys' fees for BGR's work on many of those

24   lawsuits, including *Ralston*. *Id.* ¶¶ 7-16. BGR alleged that it incurred more than $5 million in

25   attorneys' fees for BGR's work on the Mortgage Cases. *Id.* ¶ 16. BGR further contended that there

26   was no valid fee-sharing agreement between BGR and the State Court Litigation Defendants

27

28

United States District Court
Northern District of California

6

1   because Mr. Berns "failed to obtain client consents" to the 2009 JPA as mandated by the Rules of

2   Professional Conduct. *Id.* ¶ 24. BGR amended its causes of action to allege a single cause of

3   action for *quantum meruit*, contending that BGR was owed a "fair and reasonable value of the

4   services provided to [the State Court Litigation] Defendants," which BGR estimated to be "more

5   than $5 million, in an amount to be proven at trial, plus a multiplier." *Id.* ¶ 22.

6       On June 1, 2015, the State Court Litigation Defendants filed a demurrer to the Second

7   Amended Complaint. Berns Decl., Ex. E. On August 19, 2015, Judge Kleifield overruled the

8   demurrer and ordered the State Court Litigation Defendants to answer. ECF No. 453, at 5.

9       To date, BGR and the State Court Litigation Defendants have engaged in extensive

10  discovery in the State Court Litigation, including the depositions of six witnesses. Sambol Decl.

11  ¶ 11. Trial in the State Court Litigation is scheduled to commence on January 27, 2016. *Id.* ¶ 13.

12      **2.  Lead Class Counsel file the instant Motion**

13      On July 10, 2015, while proceedings in the State Court Litigation were ongoing, Lead

14  Class Counsel filed the instant Motion. *See* Mot. In the Motion, Lead Class Counsel requested an

15  order from this Court finalizing the amount of attorneys' fees and costs to which BGR is entitled

16  in connection with the *Ralston* settlement, in an amount equal to BGR's lodestar and incurred

17  expenses. Mot. at 1. Lead Class Counsel also requested that the Court find BGR "should not

18  receive any multiplier in its lodestar [in *Ralston*] because: (1) BGR played little or no role in the

19  pivotal events in this action; and (2) BGR dramatically minimized its commitment to this action at

20  a time when recovery was far from assured." *Id.* Lead Class Counsel also argued that this Court

21  has jurisdiction to decide the instant Motion because the *Ralston* settlement provided this Court

22  with continuing jurisdiction over the fee dispute between Lead Class Counsel and BGR or, in the

23  alternative, because this Court had ancillary jurisdiction over such a dispute. *Id.* at 16-18. In

24  support of the Motion, Lead Class Counsel filed three declarations and eight exhibits. ECF Nos.

25  432-1, 432-2, 432-3, 432-4, 432-5.

26      On July 17, 2015, BGR filed an Opposition. *See* Opp'n. In the Opposition, BGR argued

27

28

Case No. 08-CV-00536-JF   (LHK)
ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

United States District Court
Northern District of California

that the *Ralston* settlement did not provide the Court with continuing jurisdiction over this attorneys' fee dispute. *Id.* at 14. BGR also contended that even if the Court had ancillary jurisdiction over the instant Motion, the Court should exercise its discretion to decline to exercise such jurisdiction. *Id.* at 14-18. BGR then argued that if the Court found jurisdiction to decide Lead Class Counsel's Motion, the Court should hold an evidentiary hearing. *Id.* at 19. Finally, if the Court addressed the attorneys' fee dispute, BGR requested that the Court apply principles of *quantum meruit*, and that the Court award BGR (based on either a *quantum meruit* or lodestar methodology) a multiplier based on BGR's work on the Mortgage Cases as a whole, which BGR argued necessarily impacted the outcome in *Ralston*. *Id.* at 19-25. In conjunction with its Opposition, BGR also filed three declarations with 50 exhibits. *See* ECF Nos. 445-1, 445-2, 445-3, 445-4, 445-5, 445-6, 445-7.

On July 28, 2015, Defendants in *Ralston* (MIRS and Countrywide) filed a statement in which Defendants stated that they took no position on the Motion. ECF No. 440, at 1.

On August 12, 2015, Lead Class Counsel filed a Reply in support of the Motion. ECF No. 450 ("Reply"). Lead Class Counsel also filed a supporting declaration with six exhibits. ECF Nos. 451-4, 451-5.

### 3.  Lead Class Counsel files similar motions in related actions

On July 31, 2015, while briefing regarding the instant Motion was ongoing, Lead Class Counsel filed a motion to finalize the amount of attorneys' fees and costs for non-lead counsel Browne George Ross LLP in one of the Mortgage Cases before U.S. District Judge S. James Otero in the Central District of California. Exhibit A to Reply Declaration of Jeffrey K. Berns in Support of Lead Class Counsel's Reply to Non-Lead Counsel Browne George Ross LLP's Opposition, ECF No. 451-4 ("Berns Reply Decl."). In that motion, Lead Class Counsel requested that Judge Otero finalize the amount of attorneys' fees and costs to which BGR is entitled in connection with the settlement in *Joseph A. Monaco et al. v. Bear Stearns Residential Mortgage Corporation et al.*, Case No. 2:09-CV-05438-SJO (JCx) ("*Monaco*"). *Id.* at 1. Judge Otero had granted final approval

8

1    to a settlement in *Monaco* on February 4, 2014, which included the provision of $5,490,000 in

2    attorneys' fees and costs to class counsel. Case No. 2:09-CV-05438, Dkt. No. 429, at 3.

3            Also on July 31, 2015, Lead Class Counsel filed a motion to finalize the amount of

4    attorneys' fees and costs for non-lead counsel Browne George Ross LLP in another Mortgage

5    Case that is before U.S. District Judge Josephine Staton in the Central District of California.

6    Exhibit B to Reply Declaration of Jeffrey K. Berns in Support of Lead Class Counsel's Reply to

7    Non-Lead Counsel Browne George Ross LLP's Opposition, ECF No. 451-4. In that motion, Lead

8    Class Counsel asked Judge Staton to finalize the amount of attorneys' fees and costs to which

9    BGR is entitled in connection with the settlement in *Timothy Peel et al. v. BrooksAmerica*

10   *Mortgage Corporation et al.*, Case No. 8:11-CV-00079-JLS (RNBx) ("*Peel*"). *Id.* at 1. Judge

11   Staton granted final approval to a settlement in *Peel* on April 6, 2015, which included the

12   allocation of $3,000,000 in attorneys' fees and costs to class counsel. Case No. 8:11-CV-00079,

13   Dkt. No. 205, at 13-16.

14           **4.  Lead Class Counsel's compensation of BGR to date**

15           According to BGR, to date Lead Class Counsel has provided BGR with $2,772,943 in

16   attorneys' fees for BGR's work on the Mortgage Cases. Opp'n at 13. This includes $473,873.15 in

17   attorneys' fees for BGR's work in *Ralston*, which includes a $84,620 "lead counsel risk fee," and

18   a multiplier of approximately 1.15 based on BGR's lodestar in *Ralston* of $338,481.25. *Id.* Lead

19   Class Counsel also provided BGR with $20,831 in costs for BGR's work in *Ralston*, which fully

20   reimburses BGR for costs incurred in this matter. *Id.*

21   **II.  LEGAL STANDARD**

22           When determining attorneys' fees, the Ninth Circuit has held that "the district court has

23   discretion to use either a percentage or lodestar method." *Hanlon v. Chrysler Corp.*, 150 F.3d

24   1011, 1029 (9th Cir. 1998). "The percentage method means that the court simply awards the

25   attorneys a percentage of [a common fund] sufficient to provide class counsel with a reasonable

26   fee." *Id.* "The lodestar calculation begins with the multiplication of the number of hours

27

28   Case No. 08-CV-00536-JF   (LHK)
ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

*United States District Court*
*Northern District of California*

9

1    reasonably expended by a reasonable hourly rate," and the "resulting figure may be adjusted

2    upward or downward to account for several factors including the quality of the representation, the

3    benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of

4    nonpayment." *Id.* (internal citations omitted). A district court has discretion in awarding attorneys'

5    fees. *Id*.

6    **III. ANALYSIS**

7         The Court first discusses whether it has jurisdiction to decide Lead Class Counsel's

8    motion. As previously discussed, Lead Class Counsel argues that according to the terms of the

9    *Ralston* Settlement, this Court has continuing jurisdiction to decide a dispute over the allocation of

10   attorneys' fees between class counsel. Mot. at 18. Second and in the alternative, Lead Class

11   Counsel also asserts that this Court has ancillary jurisdiction to decide the instant dispute. *Id.* at

12   16-17. The Court considers each argument in turn.

13       **A. Jurisdiction Pursuant to the *Ralston* Settlement**

14        The *Ralston* Settlement provides that after entering judgment, "the Court shall retain

15   jurisdiction over the interpretation, effectuation, enforcement, administration, and implementation

16   of this Agreement." ECF No. 362-2, § 6.23. Lead Class Counsel argues that based on this

17   language, "there can be no serious dispute that this Court continues to have jurisdiction to resolve

18   any dispute relating to the attorneys' fees that it awarded previously in this action." Mot. at 18.

19        The Court disagrees with Lead Class Counsel that the terms of the *Ralston* Settlement

20   provide jurisdiction to decide the instant Motion. There are two parts of the *Ralston* Settlement

21   that govern the payment of attorneys' fees. First, the Settlement provides that Ralston and class

22   counsel may "make written application to the Court for an award of attorneys' fees and actual

23   litigation costs incurred in the prosecution of the Action not to exceed, in the aggregate, twenty-

24   five (25%) percent of the Settlement Amount." ECF No. 362-2, § 2.19. The second is a provision

25   which states that Countrywide shall pay the "Attorney Fee/Litigation Cost Award ordered by the

26   Court (up to a maximum amount of twenty-five (25%) percent of the Settlement Amount) to Class

27

28
Case No. 08-CV-00536-JF   (LHK)
ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

1    Counsel by wire transfer to Berns Weiss, LLP" within "twenty (20) business days after the Final

2    Approval Date."[4] *Id.* § 3.08. The Settlement is silent as to how any attorneys' fee award is to be

3    divided among class counsel, or how such an award is otherwise treated once Countrywide makes

4    the payment of an attorneys' fee award. In short, by its plain language the reach of the *Ralston*

5    Settlement, as far as attorneys' fees are concerned, ends once Countrywide makes the "Attorney

6    Fee/Litigation Cost Award ordered by the Court" to "Class Counsel." *Id.* § 3.08.

7           Judge Fogel's Order Granting Motion for Final Approval of the Settlement confirms the

8    limited scope of the *Ralston* Settlement with regards to attorneys' fees. The only part of Judge

9    Fogel's Order regarding the award of attorneys' fees was to grant class counsel's "motion for

10   attorneys' fees and costs . . . in the amount of $25,037,500." Order Final Appr. at 10. Judge Fogel

11   made no mention as to how such fees are to be divided among class counsel.

12          Accordingly, the instant Motion—which concerns a dispute amongst class counsel over

13   how attorneys' fees are to apportioned after Countrywide made payment of the fees awarded by

14   Judge Fogel—does not involve the "interpretation, effectuation, enforcement, administration, and

15   implementation of" the Settlement. ECF No. 362-2, § 6.23. Indeed, the *Ralston* Settlement is not

16   implicated in any way by the instant Motion. Furthermore, the *Ralston* Settlement does not

17   provide for continuing jurisdiction over an attorneys' fee dispute, which is another reason to find

18   that the Settlement provides no jurisdiction here. *See Barrera v. Gamestop Corp.*, No. 2:09-CV-

19   01399-ODW EX, 2012 WL 1470170, at *1-2 (C.D. Cal. Apr. 27, 2012) (finding that settlement

20   agreement did not provide jurisdiction to resolve attorneys' fee dispute between co-counsel where

21   "the parties here neither conditioned dismissal of this action on compliance with [a] fee-sharing

22   agreement nor included a separate provision in the Order Re: Final Approval of Class Action

23   Settlement 'retaining jurisdiction' to resolve such a dispute."). Therefore, the *Ralston* Settlement

24   by its plain terms does not provide this Court with jurisdiction to decide the instant dispute.

25   _____

26   [4] The Court notes that neither party argues that Countrywide failed to make timely payment of the
     attorneys' fees awarded by Judge Fogel to Berns Weiss LLP pursuant to the terms of the *Ralston*
27   Settlement.

28
     Case No. 08-CV-00536-JF   (LHK)
     ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
     AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

United States District Court
Northern District of California

1    Lead Class Counsel argues that "[c]ourts have consistently held that [the] type of

2    reservation of jurisdiction [in the *Ralston* Settlement] provides the court that approved the

3    settlement agreement with jurisdiction over legal fee disputes between firms that represented the

4    class." Reply at 3. Lead Class Counsel cites only one case, *Vasquez v. Jim Aartman, Inc.*, in

5    support of this proposition. *Id.* (citing *Vasquez*, No. CV-F-02-5624AWILJO, 2005 WL 1836949,

6    at *4 (E.D. Cal. Aug. 1, 2005)). However, *Vasquez* is distinguishable. The jurisdictional language

7    in the settlement at issue in that case was broad, as it provided that the "'parties and their counsel

8    hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and

9    enforcing the settlement embodied in this Agreement *and all orders and judgments entered in*

10   *connection therewith.*'" *Id.* at *4 (emphasis in original). Based on the language "and all orders and

11   judgments entered in connection therewith," the *Vasquez* court found that the parties "have

12   provided for the continuing jurisdiction of this Court *for matters connected with the settlement*,"

13   which in turn provided the *Vasquez* court jurisdiction to decide a fee dispute between class

14   counsel. *Id.* at *5 (emphasis added). In contrast, here the *Ralston* Settlement provides only that the

15   Court shall retain jurisdiction over the "interpretation, effectuation, enforcement, administration,

16   and implementation of" the agreement. ECF No. 362-2, § 6.23. The *Ralston* Settlement omits the

17   language upon which the *Vasquez* found continuing jurisdiction, specifically the phrase, "and all

18   orders and judgments entered in connection therewith."[5] *See Vasquez*, 2005 WL 1836949, at *4-5.

19   For the reasons stated above, the Court finds that the *Ralston* Settlement does not provide

20   the Court with jurisdiction to decide the instant Motion.

21

22   _____

23   [5] Similarly, other cases cited by Lead Class Counsel involved settlement agreements which
     expressly retained jurisdiction to settle disputes over the allocation of attorneys' fees amongst
     counsel. *See Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 749 (4th Cir. 2003) (settlement

24   agreement provided that district court "shall have exclusive and continuing jurisdiction over all
     disputes arising from or relating to the [settlement], including disputes concerning attorney's

25   fees," and the order granting final approval stated that the "Court shall have and retain exclusive
     jurisdiction with respect to . . . any applications or disputes concerning attorney's fees . . . which

26   may arise."); *In re High Sulfur Content Gasoline Products Liab. Litig.*, 517 F.3d 220, 224 (5th Cir.
     2008) (final approval order "stated that any dispute concerning the [attorneys'] fee allocation

27   would be subject to its exclusive jurisdiction.").

12
28   Case No. 08-CV-00536-JF   (LHK)
     ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
     AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

United States District Court
Northern District of California

**B. Ancillary Jurisdiction**

The Court now turns to Lead Class Counsel's argument in the alternative that the Court has ancillary jurisdiction over the instant Motion.

"There is no debate that a federal court properly may exercise ancillary jurisdiction 'over attorney fee disputes collateral to the underlying litigation.'" *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 968 (9th Cir. 2014) (quoting *Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004)). "Moreover, such ancillary jurisdiction exists even after the underlying litigation has concluded." *Id.* "Thus, even years after the entry of a judgment on the merits a federal court could consider an award of counsel fees." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990).

However, it is also well-settled that "the exercise of ancillary jurisdiction over an attorney's fees dispute is discretionary." *Torlakson*, 762 F.3d at 971; *see also In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 101 (2d Cir. 2003) ("We have previously recognized that the existence of ancillary jurisdiction to adjudicate a fee dispute after the dismissal of a lawsuit calls for the sound exercise of a district court's discretion whether to entertain the merits of the dispute . . . ."); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion."). In deciding whether to exercise ancillary jurisdiction, a district court should consider whether exercising such jurisdiction would "(1) . . . permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) . . . enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994) (internal citations omitted).

Accordingly, district courts have declined to exercise ancillary jurisdiction over an attorneys' fee dispute where exercising such jurisdiction would not comport with the two factors the U.S. Supreme Court articulated in *Kokkonen*. *See Womack v. Dolgencorp., Inc.*, 957 F. Supp. 2d 1350, 1357 (N.D. Ala. 2013) (finding an attorneys' fee dispute between class counsel did not satisfy either *Kokkonen* factor where, *inter alia*, the dispute "does not relate to the distribution of

13

1    settlement funds from the court's registry" and, pursuant to the terms of the settlement, "[t]his

2    court does not have control over what happens to the fee now that it has been approved"); *Barrera*,

3    2012 WL 1470170, at *2 (declining to exercise ancillary jurisdiction where *Kokkonen* factors not

4    shown because the fee dispute was "remotely related to the underlying litigation in this case," and

5    where "neither party conditioned dismissal of this action on compliance with [a] fee-sharing

6    agreement nor included a separate provision in the Order Re: Final Approval of Class Action

7    Settlement 'retaining jurisdiction' to resolve such a dispute"); *see also Replogle v. Borrego*, No. C

8    07-04170 CRB, 2008 WL 2338573, at *1 (N.D. Cal. June 4, 2008) (declining to exercise ancillary

9    jurisdiction over an attorneys' fee dispute between counsel where, *inter alia*, the dispute did not

10   "involve the enforcement of a settlement agreement or disputes arising under a settlement

11   agreement").

12          The Court finds that the *Kokkonen* factors do not support the exercise of ancillary

13   jurisdiction over the instant Motion. With respect to the first factor, whether the exercise of

14   ancillary jurisdiction would "permit disposition by a single court of claims that are, in varying

15   respects and degrees, factually interdependent," *Kokkonen*, 511 U.S. at 379, the Court notes that

16   there is a related lawsuit and two motions pending in three other fora concerning the attorneys' fee

17   dispute between Lead Class Counsel and BGR. First, there is the ongoing litigation in Los Angeles

18   County Superior Court in which BGR alleges that Berns Weiss LLP and Mr. Berns owe BGR

19   attorneys' fees for BGR's work on approximately 30 different Mortgage Cases, including *Ralston*,

20   *Monaco*, and *Peel*. Berns Decl., Ex. G, ¶¶ 12-14 (Second Amended Complaint in the State Court

21   Litigation). Second, on July 31, 2015 Lead Class Counsel filed a motion to finalize the amount of

22   attorneys' fees and costs for BGR in *Monaco*, which is, like *Ralston*, one of the Mortgage Cases.

23   Berns Reply Decl., Ex. A. Third, also on July 31, 2015, Lead Class Counsel filed a motion to

24   finalize the amount of attorneys' fees and costs for BGR in *Peel*, another one of the Mortgage

25   Cases. Berns Reply Decl., Ex. B. The State Court Litigation, the two pending motions in *Monaco*

26   and *Peel*, and the instant Motion in *Ralston* raise or have the potential to raise overlapping issues,

27

28   Case No. 08-CV-00536-JF   (LHK)
     ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
     AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

14

United States District Court
Northern District of California

1    including whether BGR is entitled to a lodestar multiplier based on BGR's work on the Mortgage

2    Cases as a whole. *See, e.g.*, Opp'n at 22-25 (arguing that BGR is entitled to a lodestar multiplier in

3    *Ralston* based in part on the work BGR performed on "the TILA Cases [i.e. the Mortgage Cases]

4    as a whole"). Accordingly, even if this Court decides the instant Motion on the merits, such a

5    decision would not "permit disposition by a single court" of the entirety of the fee dispute between

6    Lead Class Counsel and BGR. *See Kokkonen*, 511 U.S. at 379-80.

7              In addition, the second *Kokkonen* factor, whether the exercise of ancillary jurisdiction

8    would "enable a court to function successfully, that is, to manage its proceedings, vindicate its

9    authority, and effectuate its decrees," *Kokkonen*, 511 U.S. at 380, also weighs against the exercise

10   of jurisdiction here. As previously discussed, the only provisions of the *Ralston* Settlement

11   regarding the payment of attorneys' fees are the section providing that class counsel may recover

12   up to "twenty-five (25%) percent of the Settlement Amount" in attorneys' fees, and the provision

13   that such fees must be paid by Countrywide within 20 business days "after the Final Approval

14   Date" to "Berns Weiss, LLP." ECF No. 362-2, §§ 2.19, 3.08. Furthermore, the only part of Judge

15   Fogel's Order Granting Motion for Final Approval of the Settlement that concerned the award of

16   attorneys' fees was to grant class counsel's "motion for attorneys' fees and costs . . . in the amount

17   of $25,037,500." Order Final Appr. at 10. Neither the *Ralston* Settlement nor Judge Fogel's Order

18   concerned, referred to, or otherwise discussed how class counsel were to divide an award of

19   attorneys' fees amongst themselves. Accordingly, the instant dispute between Lead Class Counsel

20   and BGR over how the attorneys' fees awarded in *Ralston* are to be apportioned is beyond the

21   scope of both the *Ralston* Settlement and Judge Fogel's Order approving the Settlement.

22   Therefore, resolution of the instant dispute would not "enable [the Court] to function successfully"

23   by "vindicating [the Court's] authority, and effectuating its decrees." *Kokkonen*, 511 U.S. at 380.

24   Indeed, other district courts have declined to exercise ancillary jurisdiction over an attorneys' fee

25   dispute that arose after the attorneys' fees were distributed pursuant to the terms of the settlement,

26   and neither the settlement nor a court order dictated how such fees were to be allocated among co-

27

28

Case No. 08-CV-00536-JF   (LHK)
ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

United States District Court
Northern District of California

counsel. *See, e.g.*, *Replogle*, 2008 WL 2338573, at *1 (declining to exercise ancillary jurisdiction over an attorney's fee dispute where the court had previously ordered the distribution of attorney's fees from a settlement fund, the attorney's fee award was distributed, and "[t]hus as far as this Court is concerned, the issue of attorney's fees to be awarded [in the litigation] has been finally resolved."); *Womack*, 957 F. Supp. 2d at 1357 (declining to exercise ancillary jurisdiction over an attorneys' fee dispute after court awarded attorneys' fees out of a settlement fund and the award was paid, because the dispute "does not relate to the distribution of settlement funds from the court's registry" and, pursuant to the terms of the settlement, "[t]his court does not have control over what happens to the fee now that it has been approved"); *Barrera*, 2012 WL 1470170, at *2 (declining to exercise ancillary jurisdiction where "attorney's fees have already been awarded and distributed" pursuant to a settlement agreement, and "[t]he only dispute here is how the attorney fees are to be divided pursuant to a private fee-sharing agreement").

Furthermore, other courts faced with attorneys' fee disputes similar to the one raised in the instant Motion have found three additional factors to be relevant to the ancillary jurisdiction inquiry, and the Court finds that all three of these additional factors weigh against exercising jurisdiction here. First, courts have held that one reason "'a district court remain[s] primarily responsible for resolving fee disputes'" is "'because it is in the better position to evaluate the quality and value of the attorney's efforts.'" *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988) (quoting *Ballard v. Schweiker*, 724 F.2d 1094, 1098 (4th Cir. 1984)); *accord Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (according district court deference in its decision how to award attorneys' fees because "the district court has the benefit of first-hand contact with the litigation and the lawyers involved"). Here, however, before considering the instant Motion, this Court had no familiarity or contact with this litigation, or the efforts expended in this litigation by Lead Class Counsel and BGR. To the contrary, Judge Fogel presided over the entirety of the instant litigation, including Defendants' motion to dismiss the Second Amended Complaint, Ralston's motion for class certification, Ralston's motion for

16

United States District Court
Northern District of California

1    preliminary approval of the settlement, and the motion for final approval and award of attorneys'

2    fees and costs. *See* Order Final Appr. at 2 (summarizing procedural history of this case). The

3    instant Motion was only assigned to this Court as a general duty matter on July 10, 2015—which

4    was the date this Court was first made aware of this lawsuit—because Judge Fogel is currently

5    serving as Director of the Federal Judicial Center in Washington, D.C. The fact that this Court had

6    no familiarity with the underlying litigation until Lead Class Counsel filed the instant Motion

7    weighs against finding ancillary jurisdiction over this attorneys' fee dispute. *See Kenyon &*

8    *Kenyon v. Advanced Eng'g Research & Dev. Corp.*, No. 97 CIV. 5909 (DC), 1998 WL 318712, at

9    *2 (S.D.N.Y. June 16, 1998) (district court order stating, "I decline to exercise ancillary

10   jurisdiction over this [attorneys'] fee dispute" because, *inter alia*, "I have no familiarity with the

11   subject matter of this suit because the underlying case was heard not by me, but by Judge

12   Kaplan.").

13            Second, in deciding whether to exercise ancillary jurisdiction, a court may consider

14   "whether the policies of," *inter alia*, "'fairness to litigants' are furthered by the assumption of

15   jurisdiction." *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 64 (2d Cir. 1991) (quoting *United*

16   *Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Here, the Court notes that Lead Class Counsel

17   filed the instant Motion only after the State Court Litigation had proceeded for approximately one

18   and a half years. *See* Berns Decl., Ex. D (original Complaint of BGR filed in Los Angeles County

19   Superior Court on December 30, 2013). Extensive discovery has already occurred in the State

20   Court Litigation, including the depositions of six witnesses, and trial is scheduled to commence on

21   January 27, 2016. Sambol Decl. ¶¶ 11, 13. Now, approximately six months before trial, Lead

22   Class Counsel seeks to circumvent the State Court Litigation by trying to resolve at least one of

23   the issues raised in that case—whether BGR is entitled to a lodestar multiplier for work in

24   *Ralston*—with the instant Motion. Accordingly, the Court finds that the policy of fairness to

25   litigants, specifically BGR, would not be furthered by assuming ancillary jurisdiction here.

26            Third, the Ninth Circuit has held that the exercise of ancillary jurisdiction over an

27

28   Case No. 08-CV-00536-JF   (LHK)
     ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
     AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

United States District Court
Northern District of California

United States District Court
Northern District of California

1     attorneys' fee dispute may be especially warranted when a party is "seeking attorneys' fees

2     pursuant to federal law." *Torlakson*, 762 F.3d at 970 (finding that district court, within its

3     discretion, could exercise ancillary jurisdiction over motion for attorneys' fees brought pursuant to

4     the Americans with Disabilities Act and Individuals with Disabilities Education Act). Here, by

5     contrast, neither Lead Class Counsel nor BGR seek to allocate attorneys' fees from the *Ralston*

6     Settlement pursuant to any provision of federal law.

7        Finally, Lead Class Counsel argues that the Court should consider another factor in

8     deciding whether to exercise ancillary jurisdiction, which is that "the district court has an

9     independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure

10    that attorneys' fees are reasonable and divided fairly among plaintiffs' counsel." Mot. at 17. The

11    only authority Lead Class Counsel cites in support of this argument is *In re High Sulfur Content*

12    *Gasoline Products Liability Litigation*, 517 F.3d 220 (5th Cir. 2008), a case which is inapposite. *In*

13    *re High Sulfur* involved a class action settlement in which the district court (1) appointed a five-

14    member Fee Committee consisting of certain class counsel to allocate a fee award among 32 law

15    firms and 79 plaintiffs' attorneys, and (2) issued a final approval order stating "that any dispute

16    concerning the fee allocation would be subject to [the district court's] exclusive jurisdiction." *Id.*

17    at 224. The Fee Committee subsequently recommended how attorneys' fees should be divided, a

18    recommendation the district court adopted after an *ex parte* hearing. *Id.* at 225-26. The Fifth

19    Circuit reversed, holding that the district court abused its discretion in the award of attorneys' fees

20    because the court "used flawed procedures to award individual attorneys' fees and to review

21    objections to those fees." *Id.* at 226. The Fifth Circuit did not address the question of ancillary

22    jurisdiction, because jurisdiction was never contested in that case. Accordingly, Lead Class

23    Counsel's citation to *In re High Sulfur* is not persuasive on the question of whether this Court

24    should exercise ancillary jurisdiction in the instant case.

25        For the reasons stated above, the Court declines to exercise ancillary jurisdiction over the

26    instant Motion. In addition, because the Court declines to exercise jurisdiction, the Court need not

27

28    Case No. 08-CV-00536-JF   (LHK)
      ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES
      AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP

reach the merits of the parties' arguments regarding the amount of attorneys' fees and costs to which BGR is entitled.

**IV. CONCLUSION**

For the reasons stated above, the Court DENIES Lead Class Counsel's Motion.

**IT IS SO ORDERED.**

Dated: August 25, 2015

_____
LUCY H. KOH
United States District Judge

Case No. 08-CV-00536-JF   (LHK)
ORDER DENYING LEAD CLASS CONSEL'S MOTION TO FINALIZE THE AMOUNT OF ATTORNEYS' FEES AND COSTS FOR NON-LEAD COUNSEL BROWNE GEORGE ROSS LLP